Case 2:11-cv-05320-GAF-CW   Document 1   Filed 06/24/11   Page 1 of 42   Page ID #:1
Case 2:10-ap-02945-BR   Doc 10-2   Filed 01/25/11   Entered 01/25/11 16:58:36   Desc
Case 2:10-ap-02945-BR   First Amended Complaint   Page 1 of 41
Doc 7   Filed 01/11/11   Entered 01/11/11 15:59:00   Desc
Main Document   Page 1 of 44

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

| 1 | Richard M. Pachulski (CA Bar No. 90073) |
| 2 | Dean A. Ziehl (CA Bar No. 84529)<br>Alan J. Kornfeld (CA Bar No. 130063) |
| 3 | Gillian N. Brown (CA Bar No. 205132)<br>PACHULSKI STANG ZIEHL & JONES LLP |
| 4 | 10100 Santa Monica Blvd., 11th Floor<br>Los Angeles, California 90067-4100 |
| 5 | Telephone: 310/277-6910<br>Facsimile: 310/201-0760 |
| 6 | E-mail:rpachulski@pszjlaw.com<br>    dziehl@pszjlaw.com |
| 7 |     gbrown@pszjlaw.com |

FILED
CLERK, U.S. DISTRICT COURT

JUN 24 2011

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

CV11  05320  GAF

8  Special Counsel for Bradley D. Sharp, Chapter 11
   Trustee for Estate of Namco Capital Group, Inc.

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**LOS ANGELES DIVISION**

| 11 | In re: | Case No.: 2:08-bk-32333-BR |
| 12 | NAMCO CAPITAL GROUP, INC., a California<br>corporation, | Chapter 11 |
| 13 | Debtor. | **FIRST AMENDED COMPLAINT FOR**<br>**DAMAGES, EQUITABLE** |
| 14 | | **SUBORDINATION, DECLARATORY**<br>**AND INJUNCTIVE RELIEF;** |
| 15 | | **OBJECTION TO CLAIMS** |
| 16 | BRADLEY D. SHARP, solely in his capacity as<br>Chapter 11 Trustee of NAMCO CAPITAL GROUP,<br>INC., | Adv. Proc. No. 2:10-ap-02945 |
| 17 | | |
| 18 | Plaintiff, | |
| 19 | vs. | |
| 20 | MOUSA NAMVAR, HOOSHANG NAMVAR,<br>HOMAYOUN NAMVAR, RAMIN NAMVAR, | |
| 21 | HELEN SHADI, HILDA BAYANFAR, LIDA<br>SHRAGA, NATALY NAMVAR, DANIEL | |
| 22 | NAMVAR, BENJAMIN NAMVAR, MALKA<br>NAMVAR, SHIRAH NAMVAR, TRIFISH, LLC, | |
| 23 | TRIBUN, LLC, MAGDIEL, LLC, TRISISTER,<br>LLC, BELIEVERS, LLC, NET, LLC, LIGHT | |
| 24 | SOURCE, LLC, LA HOTEL VENTURE, LLC,<br>LANCAM PROPERTIES, LLC, LACY 20, LLC, | |
| 25 | NAM 5, LTD., NAMCO 8 LLC, WISHLAB 90,<br>LLC, BUNHERST, LLC, DGADE OF | |
| 26 | DELAWARE, LLC, TOYRAM, LLC, NAMARI,<br>LLC, WOODMAN PARTNERS, LLC, | |
| 27 | TRITOWNE, LLC, TRIGROVE, LLC and HARON<br>SHABATIAN, | |
| 28 | Defendants. | |

59701-001\DOCS_LA:216892.12

## Nature of the Action

1.    Creditors entrusted hundreds of millions of dollars to Namco Capital Group, Inc. ("Namco") expecting that it would be invested prudently, in a manner consistent with Namco's promise of regular interest payments at a healthy but unspectacular rate. Instead, Ezri Namvar ("Ezri") and his brothers, Mousa Namvar ("Mousa"), Hooshang Namvar ("Sean"), Homayoun Namvar ("Tony") and Ramin Namvar ("Ramin" and, collectively, the "Namvar Brothers") used the money as a family piggy bank. The Namvar Brothers would use money held by Namco to purchase millions of dollars of stock for family members, to fund their own personal real estate development ventures, or for personal non-business purposes, such as a $200,000 wedding party for Ramin. The primary beneficiaries of this largesse were the Namvar Brothers, their sisters, Helen Shadi ("Helen"), Hilda Bayanfar ("Hilda") and Lida Shraga ("Lida"), their spouses and their children. (The family members named as defendants herein are referenced collectively as the "Namvar Defendants").

2.    The largest destination for investor funds was real estate projects that the Namvar Brothers acquired and/or developed with Namco money, but placed in family-owned limited liability companies ("LLCs"). The Namvar Brothers used Namco as an unrestricted source of capital to purchase property of every kind, size and description: hotels, rural residential development property, agricultural property with no entitlements, an equestrian center, pistachio farms, shopping centers, land for commercial development, a trailer park, storage facilities, small apartment properties, small strip centers in marginal areas, single family residences, conference center sites, property to be developed into golf courses, ground leases, medical office buildings, and government-assisted housing projects. Often they were acquired with little or no due diligence and reckless disregard for the economic viability of the project.

3.    Typically, the Namvar Brothers would pick a property and have Namco provide the equity funding, without any security or any written agreement beyond a journal entry. Then they would form one or more LLCs to hold title and would distribute LLC ownership interests directly and indirectly to various combinations of Namvar family members. The LLCs were uncapitalized; thus unless there was third party financing, Namco would continue to fund the project. Because

1

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Case 2:11-cv-05320-GAF-CW   Document 1   Filed 06/24/11   Page 3 of 42   Page ID #:3
Case 2:10-ap-02945-BR   Doc 10-2   Filed 01/25/11   Entered 01/25/11 16:58:36   Desc
Case 2:10-ap-02945-BR First Document Filed 01/11/11 Page 3 of 44/11 15:59:00   Desc
Main Document      Page 3 of 44

there was typically no written agreement with Namco, the Namvar Brothers exercised broad

flexibility to manage the funds in whatever manner suited their interests. If an investment could be

refinanced or sold at a gain, they might use the free cash to repay Namco with interest, or they might

decide to roll the profits into a new project through section 1031 exchanges (thereby creating a false

impression that they were contributing their own capital in the successor investments). Millions of

dollars were transferred back and forth among these LLC's and Namvar Defendants via entries in

Namco's general journal. One thing was certain: If the project was unsuccessful, Namco took the

loss. In this way, Namco funds were systematically diverted and managed for the benefit of family

members, at the expense of Namco's creditors.

4.       Hundreds of LLCs were created in this way and for this purpose – most without even

a pretense of independent or adequate capitalization. This essential element of any LLC operating

agreement – who contributed how much capital for what ownership percentage – was routinely

ignored because nobody was contributing anything except their signature. Instead – under the

heading "Capital Contributions" – the operating agreements would typically assign ownership

percentages to family members without requiring any capital contributions. Often, more than one of

these zombie LLCs would be placed sequentially in the chain of ownership, for no apparent purpose

other than perhaps to obfuscate title or give the appearance of limited liability. Ownership interests

were redistributed or transferred for no purpose related to the project. Although the capital and the

risk was Namco's, virtually all of the LLC ownership interests were held beneficially by family

members who risked nothing.

5.       By 2008, the total amount of Namco funds invested and owing to its creditors

exceeded $600 million. With their intrinsically fraudulent manner of operating, the Namvar

Brothers fed Namco sufficient cash to pay a return to its creditors (while generating large gains for

family members). When the real estate market turned, however, this "business model" quickly

collapsed, leaving behind hundreds of millions of dollars in unpaid debts, a slew of foreclosures, an

FDIC takeover of the family-controlled bank, and a gigantic mess of accounting and title issues.

6.       Ezri and Tony were officers of Namco. It is beyond question that their mishandling

of funds invested in Namco breached Ezri's and Tony's fiduciary duties, and that the other Namvar

2

59701-001\DOCS_LA:216892.12

1   Brothers knowingly and intentionally encouraged, assisted, participated in and enabled these

2   breaches of fiduciary duty. The Court should deal harshly with these fiduciary abuses and impose

3   punitive damages in addition to the compensatory damages suffered by Namco as a result of their

4   misconduct.

5   　　　　7.　　　This lawsuit also seeks repayment from the Namvar Defendants of the transfers of

6   Namco funds made to or for their benefit and booked by Namco to their accounts. Substantially all

7   of these transfers were made to the LLCs named as defendants herein (the "LLC Defendants").

8   Many of the LLC Defendants are defunct, no surprise since they were never capitalized. The

9   Namvar Defendants are members of the LLC Defendants, as specified herein, and should not be

10  entitled to assert the separate existence of sham LLCs to shield themselves from joint and several

11  liability as joint venturers. The Namvar Brothers created hundreds of LLCs as empty shells, with no

12  independent capitalization or ability to honor their obligations, meaningless except as legal vehicles

13  to hold title (for Namvar family members) and as conduits for the use of Namco funds, which were

14  shuffled back and forth. This abuse of the corporate form precludes the Namvar Defendants from

15  interposing the LLC Defendants as a shield to liability; rather, on such facts, the law treats the

16  relationship of the Namvar Defendants to creditors and between themselves as that of joint

17  venturers, with joint and several responsibility for the debts of the LLC Defendants.

18  　　　　8.　　　This lawsuit also seeks the avoidance of several transfers of Namco property to or for

19  the benefit of the Namvar Brothers. Certain transfers described herein were made with the intent to

20  hinder or delay creditors, and/or while insolvent and for less than reasonably equivalent value, and

21  so are avoidable as actual and constructively fraudulent transfers. Certain other transfers were

22  preferential and were made to insider Defendants within one year of the Petition Date.

23  　　　　9.　　　Among the hundreds of millions of dollars of creditor losses are the life savings of

24  many families. This lawsuit seeks to mitigate the creditors' losses by seeking recovery from some of

25  the primary perpetrators of this tragedy.

26

27

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

3

59701-001\DOCS_LA:216892.12

Case 2:11-cv-05320-GAF-CW   Document 1   Filed 06/24/11   Page 5 of 42   Page ID #:5
Case 2:10-ap-02945-BR   Doc 10-2   Filed 01/25/11   Entered 01/25/11 16:58:36   Desc
Case 2:10-ap-02945-BR   First Amended Complaint   Page 5 of 44   Entered 01/11/11 15:59:00   Desc
Main Document   Page 5 of 44

**Jurisdiction and Venue**

10.     On December 22, 2008 (the "<u>Petition Date</u>"), involuntary chapter 11 bankruptcy petitions were filed against Ezri and Namco.  On January 29, 2009, orders for relief were entered in both bankruptcy cases.

11.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(a) and 1334(a).  This is a core proceeding pursuant to 28 U.S.C. § 157.

12.     Venue in this district is proper pursuant to 28 U.S.C. § 1409(a).

**The Parties**

13.     Plaintiff, Bradley D. Sharp ("<u>Plaintiff</u>"), was appointed as the chapter 11 trustee of Namco on May 8, 2009.

14.     Plaintiff is informed and believes, and thereon alleges, that defendant Mousa Namvar is an individual and at all times material to this Complaint was a resident of the County of Los Angeles, California.  Mousa is one of Ezri's brothers.

15.     Plaintiff is informed and believes, and thereon alleges, that defendant Ramin Namvar is an individual and at all times material to this Complaint was a resident of the County of Los Angeles, California.  Ramin is one of Ezri's brothers.

16.     Plaintiff is informed and believes, and thereon alleges, that defendant Homayoun Namvar is an individual and at all times material to this Complaint was a resident of the County of Los Angeles, California.  Tony is one of Ezri's brothers.  At all times material to this Complaint, Tony was an officer of Namco.

17.     Plaintiff is informed and believes, and thereon alleges, that defendant Hooshang Namvar is an individual and at all times material to this Complaint was a resident of the County of Los Angeles, California.  Sean is one of Ezri's brothers.

18.     Plaintiff is informed and believes, and thereon alleges, that defendant Lida Shraga is an individual and at all times material to this Complaint was a resident of the County of Los Angeles, California.  Lida is one of Ezri's sisters.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

4

Case 2:11-cv-05320-GAF-CW   Document 1   Filed 06/24/11   Page 6 of 42   Page ID #:6
Case 2:10-ap-02945-BR   Doc 10-2   Filed 01/25/11   Entered 01/25/11 16:58:36   Desc
Case 2:10-ap-02945-BR   First Amended Complaint   Page 6 of 44   Entered 01/11/11 15:59:00   Desc
Main Document   Page 6 of 44

19.     Plaintiff is informed and believes, and thereon alleges, that defendant Helen Shadi is an individual and at all times material to this Complaint was a resident of the County of Los Angeles, California.  Helen is one of Ezri's sisters.

20.     Plaintiff is informed and believes, and thereon alleges, that defendant Hilda Bayanfar is an individual and at all times material to this Complaint was a resident of the County of Los Angeles, California.  Hilda is one of Ezri's sisters.

21.     Plaintiff is informed and believes, and thereon alleges, that defendant Nataly Namvar ("Nataly") is an individual and at all times material to this Complaint was a resident of the County of Los Angeles, California.  Nataly is the wife of Sean.

22.     Plaintiff is informed and believes, and thereon alleges, that defendant Daniel Namvar ("Daniel") is an individual and at all times material to this Complaint was a resident of the County of Los Angeles, California.  Daniel is one of Ezri's children.

23.     Plaintiff is informed and believes, and thereon alleges, that defendant Benjamin Namvar ("Benjamin") is an individual and at all times material to this Complaint was a resident of the County of Los Angeles, California.  Benjamin is one of Ezri's children.

24.     Plaintiff is informed and believes, and thereon alleges, that defendant Malka Namvar ("Malka") is an individual and at all times material to this Complaint was a resident of the County of Los Angeles, California.  Malka is one of Ezri's children.

25.     Plaintiff is informed and believes, and thereon alleges, that defendant Shirah Namvar ("Shirah") is an individual and at all times material to this Complaint was a resident of the County of Los Angeles, California.  Shirah is one of Ezri's children.

26.     Plaintiff is informed and believes, and thereon alleges, that defendant Trifish, LLC ("Trifish") is a limited liability company organized under the laws of the State of California which, at all times relevant hereto, was wholly owned by Sean, Tony and Ramin.

27.     Plaintiff is informed and believes, and thereon alleges, that defendant Tribun, LLC, ("Tribun"), is a limited liability company organized under the laws of the State of Delaware which, at all times relevant hereto, was 99% owned by Trifish and 1% by Parnas Financial LLC..

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

5

59701-001\DOCS_LA:216892.12

Case 2:11-cv-05320-GAF-CW   Document 1   Filed 06/24/11   Page 7 of 42   Page ID #:7
Case 2:10-ap-02945-BR    Doc 10-2    Filed 01/25/11    Entered 01/25/11 16:58:36    Desc
Case 2:10-ap-02945-BR    First Amended Complaint    Page 7 of 41
Doc 7    Filed 01/11/11    Entered 01/11/11 15:59:00    Desc
Main Document    Page 7 of 44

28.   Plaintiff is informed and believes, and thereon alleges, that defendant Magdiel, LLC ("Magdiel") is a limited liability company organized under the laws of the State of California which, at all times relevant hereto, was wholly owned by Mousa.

29.   Plaintiff is informed and believes, and thereon alleges, that defendant Trisister, LLC ("Trisister") is a limited liability company organized under the laws of the State of California which, at all times relevant hereto, was wholly owned in equal parts by Lida, Helen and Hilda.

30.   Plaintiff is informed and believes, and thereon alleges, that defendant Believers, LLC ("Believers") is a limited liability company organized under the laws of the State of California, interests in which were originally owned 100% by Sean, later owned 99% by Sean and 1% by Nataly, and ultimately reallocated 40% to Sean and 60% to Nataly.

31.   Plaintiff is informed and believes, and thereon alleges, that defendant Net, LLC ("Net"), is a limited liability company organized under the laws of the State of California which, at all times relevant hereto, was wholly owned by Ramin.

32.   Plaintiff is informed and believes, and thereon alleges, that defendant Light Source, LLC ("Light Source") is a limited liability company organized under the laws of the State of California which, at all times relevant hereto, was wholly owned by Tony.

33.   Plaintiff is informed and believes, and thereon alleges, that defendant Nam 5, Ltd. ("Nam 5"), is a limited partnership which, at all times relevant hereto, was owned in equal 20% interests by Ezri, Tony, Sean, Mousa and Ramin.

34.   Plaintiff is informed and believes, and thereon alleges, that defendant LA Hotel Venture, LLC ("LA Hotel Venture"), is and, at all times material to this Complaint, was a limited liability company organized under the laws of the State of California, which, at all times relevant hereto, was owned by Toyram, LLC.

35.   Plaintiff is informed and believes, and thereon alleges, that defendant Toyram, LLC ("Toyram") is and, at all times material to this Complaint, was a limited liability company organized under the laws of the State of California, which, at all times relevant hereto, was owned by Namari, LLC.

6

59701-001\DOCS_LA:216892.12

36.     Plaintiff is informed and believes, and thereon alleges, that defendant Namari, LLC ("Namari") is and, at all times material to this Complaint, was a limited liability company organized under the laws of the State of California, which, at all times relevant hereto, was owned by 14% by Magdiel, 9% by Trifish, 33.33% by Light Source, 33.33% by Net, 3% by Trisister, 64% by Ezri and 10% by The Safi Trust.

37.     Plaintiff is informed and believes, and thereon alleges, that defendant Lancam Properties, LLC ("Lancam Properties"), is a limited liability company organized under the laws of the State of California which, at all times relevant hereto, was wholly owned by Lacy 20, LLC.

38.     Plaintiff is informed and believes, and thereon alleges, that defendant Lacy 20, LLC ("Lacy 20"), is and, at all times material to this Complaint, was a limited liability company organized under the laws of the State of California, which, at all times relevant hereto, was owned by (a) the Namvar Family Trust (a self-settled revocable trust for Ezri's children, Daniel, Malka and Shirah) (20%); (b) Mousa Namvar (9%); (c) Daniel Namvar (7%); (d) Malka Namvar (7%); (e) Shirah Namvar (7%) and (f) Woodman Partners, LLC (50%).

39.     Plaintiff is informed and believes, and thereon alleges, that defendant Woodman Partners LLC ("Woodman Partners"), is and, at all times material to this Complaint, was a limited liability company organized under the laws of the State of California, which, at all times relevant hereto, was owned by: (a) Sean (18%); (b) Tony (18%); (c) Ramin (18%); (d) Helen Shadi (5%); (e) Daniel Namvar (6%); (f) Malka Namvar (6%); (g) Shirah Namvar (6%); (h) Mousa (18%) (i) Hilda Bayanfar (2.5%); and (j) Lida Shraga (2.5%).

40.     Plaintiff is informed and believes, and thereon alleges, that defendant DGADE of Delaware, LLC ("DGADE"), is and, at all times material to this Complaint, was a limited liability company organized under the laws of the State of Delaware, which, at all times relevant hereto, was owned in equal 20% shares by each of Danielle Namvar, Gabriella Namvar, Ariel Namvar, Davina Namvar and Eliora Namvar, who on information and belief are the children of Mousa.

41.     Plaintiff is informed and believes, and thereon alleges, that defendant Bunherst, LLC ("Bunherst"), is and, at all times material to this Complaint, was a limited liability company

7

organized under the laws of the State of Delaware, which, at all times relevant hereto, was wholly owned by DGADE.

    42.    Plaintiff is informed and believes, and thereon alleges, that defendant Namco 8 LLC ("Namco 8"), is a limited liability company organized under the laws of the State of Delaware which, at all times relevant hereto, was wholly owned by Wishlab 90, LLC.

    43.    Plaintiff is informed and believes, and thereon alleges, that defendant Wishlab 90, LLC ("Wishlab 90"), is a limited liability company organized under the laws of the State of Delaware which, at all times relevant hereto, was owned by Magdiel (64%), Trifish (6%), Beshmada (18%), Chapar, LLC (5%) and OPICS Properties, LLC (7%).

    44.    Plaintiff is informed and believes, and thereon alleges, that defendant Tritowne, LLC ("Tritowne") is and, at all times material to this Complaint, was a limited liability company organized under the laws of the State of California, which, at all times relevant hereto, was wholly owned by Trifish.

    45.    Plaintiff is informed and believes, and thereon alleges, that defendant Trigrove, LLC ("Trigrove") is and, at all times material to this Complaint, was a limited liability company organized under the laws of the State of California, which, at all times relevant hereto, was wholly owned by Trifish.

    46.    Plaintiff is informed and believes, and thereon alleges, that defendant Haron Shabatian ("Shabatian"), is an individual and at all times material to this Complaint was a resident of the County of Los Angeles, California.

    47.    In addition to obligations incurred in their individual capacities, each of the Namvar Defendants is legally responsible for the repayment of transfers made to or for the benefit of their children.

    48.    Plaintiff is informed and believes, and thereon alleges, that each Defendant, at all material times, was the agent, employee, servant, alter ego, partner, co-conspirator, co-venturer and/or legal representative of each of the other Defendants. Plaintiff is also informed and believe, and thereon alleges, that in doing the things alleged in this Complaint, each Defendant acted within

8

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Case 2:11-cv-05320-GAF-CW   Document 1   Filed 06/24/11   Page 10 of 42   Page ID #:10
Case 2:10-ap-02945-BR   Doc 10-2   Filed 01/25/11   Entered 01/25/11 16:58:36   Desc
Case 2:10-ap-02945-BR First Amended Complaint   Page 10 of 44   Entered 01/11/11 15:59:00   Desc
Main Document      Page 10 of 44

the course and scope of said relationships and with the knowledge, permission, consent, ratification, and/or adoption of the other Defendants.

49.     There exists, and at all times herein mentioned there existed, a unity of interest and ownership and control among the Namvar Defendants and the LLC Defendants, such that any individuality and separateness between them have ceased, and they are the alter egos of each other. Adherence to the fiction of the separate existence of the LLC Defendants distinct from the Namvar Defendants would permit an abuse of the corporate privilege and would sanction fraud and promote injustice, and, accordingly, the rights and duties of the Namvar Defendants in relation to each other and to third parties should be deemed those of joint venturers.

## General Allegations

### A.     LA Marriott Hotel

50.     On information and belief, Namco provided 100% of the equity required to purchase the Marriott Hotel in downtown Los Angeles (the "LA Marriott"). Prior to the purchase Namco paid $24,133,218 directly to Marriott and other third parties, including three transfers of $5,000,000 each on August 16, 2006, September 14, 2006 and October 13, 2006, and one transfer of $8,857,446 on the closing date, March 1, 2007. The purchase price was $108,750,000. The balance of the purchase price was paid from the proceeds of a purchase and construction loan from General Electric Real Estate.

51.     Although Namco provided the investment capital, beneficial ownership was distributed among family members through a series of uncapitalized family entities. Title was placed in the name of, and payments were booked to the account of, LA Hotel Venture, which was formed on November 22, 2006, after Namco had already begun funding the purchase. On information and belief, LA Hotel Venture was uncapitalized. The operating agreement for LA Hotel Venture reflects a stated capitalization of $1000 and, on information and belief, neither it nor any of its beneficial owners provided any of the funds used to purchase the LA Marriott.

52.     100% of the membership interests of LA Hotel Venture was held by Toyram, which also appears to have been formed in November 2006 pursuant to an undated operating agreement with a stated capital contribution of $1000 by its sole member, Namari.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

9

Case 2:11-cv-05320-GAF-CW   Document 1   Filed 06/24/11   Page 11 of 42   Page ID #:11

Case 2:10-ap-02945-BR   Doc 10-2   Filed 01/25/11   Entered 01/25/11 16:58:36   Desc
Case 2:10-ap-02945-BR   First Amended Complaint   Page 11 of 41   15:59:00   Desc
Main Document      Page 11 of 44

53.     Namari was also created in November 2006 though an initial operating agreement was not executed until just before the closing date, on February 27, 2007. Again, the stated capital contributions of its members totaled $1000.

54.     Ezri was the designated manager of LA Hotel Venture, Toyram and Namari.

55.     Pursuant to its amended operating agreement, Namari was owned 64% by Ezri, 14% by Magdiel, 9% by Trifish, 3% by Trisister and 10% by The Safi Trust.

56.     At all relevant times, Magdiel was wholly owned by Mousa, Trisister was wholly owned by Helen, Lida and Hilda, and Trifish was owned in equal shares by Ramin, Sean and Tony. Trifish was formed February 15, 1999 without any stated capital contributions by these three brothers. On or about April 3, 2003, two of the Trifish brothers replaced themselves with wholly owned entities: T.N. Management, Inc. (wholly owned by Tony), Net (wholly owned by Ramin) and Believers (originally owned 99% by Sean and 1% by his wife, Nataly). In January 2008, Tony's children (Alexandra, Noah and Rachel) were each assigned 18% of T.N. Management, Inc. In January 2009, T.N. Management, Inc assigned its interest in Trifish to T.N. Management, LLC. In July 2009, T.N. Management, LLC assigned its interest in Trifish to Light Source. The manager of Light Source is Tony Namvar. In January 2009, Sean reallocated 60% of the ownership of Believers to his wife, Nataly.

57.     Shortly after the closing of the LA Marriott purchase, on March 5, 2007, Ezri and his brothers redistributed its beneficial ownership among the family. Ezri reduced his overall share of Namari to 64%. Mousa's share increased to 14%. Trifish's interest was reduced to 9%. The Safi Trust was given 10% and 3% was given to Trisister (held 1/3 each by Ezri's sisters, Helen, Hilda and Lida). The amendment does not reflect any capital contributions to Namari by the new members.

58.     Reflecting the inadequate capitalization of LA Hotel Venture, Toyram, and Namari, Namco continued to subsidize the project after the closing date, making transfers of $3,776,115 that were booked internally by Namco to the LA Marriott account. The cumulative total of Namco's transfers in connection with the LA Marriott (the "LA Marriott Transfers") was $27,909,333. Namco was repaid a total of $5,303,098, leaving an unpaid principal balance of $22,606,235. With

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEY AT LAW
LOS ANGELES, CALIFORNIA

10

Case 2:11-cv-05320-GAF-CW   Document 1   Filed 06/24/11   Page 12 of 42   Page ID #:12

Case 2:10-ap-02945-BR   Doc 10-2   Filed 01/25/11   Entered 01/25/11 16:58:36   Desc
Case 2:10-ap-02945-BR   Doc 7   Filed 01/11/11   Entered 01/11/11 15:59:00   Desc
First Amended Complaint   Page 12 of 41
Main Document   Page 12 of 44

8% simple interest to September 15, 2010, totaling $6,806,735, the total owed to Namco in repayment of the LA Marriott Transfers is $29,412,970.

59.    Based on the facts alleged herein, including without limitation the lack of capitalization of the LLC Defendants, the unity of interest and control by the Namvar Brothers, the absence of any economic substance or purpose except as titleholders and conduits for Namco funds for the benefit of the Namvar Defendants, and their use in furtherance of the fiduciary defalcations, fraud, diversion of assets and usurpation of corporate opportunities by the Namvar Defendants, adherence to the fiction of the separate existence of the LLC Defendants would sanction fraud and promote injustice, and the LLC Defendants LA Hotel Venture, Toyram, Namari, Magdiel, Trifish and Trisister and their member Namvar Defendants are jointly and severally liable for repayment of the LA Marriott Transfers.

### B.    Las Vegas - Flamingo Road

60.    Between 2005 and 2007, Namco transferred millions of dollars to acquire properties in Las Vegas, with the intention of developing residential condominiums, casinos, shopping centers and apartment projects.

61.    On information and belief, Namco provided 100% of the equity required to purchase commercial real property located at 3715 West Flamingo Road in Las Vegas. Namco made escrow deposits of $3,673,800: $500,000 on June 16, 2005, $1.5 million on July 6, 2005, $1,670,500 on February 23, 2006 and $3,300 on February 24, 2006, toward a total purchase price of $11,650,000. The balance of the purchase price was paid from a loan from Mirae Bank. The transaction closed on February 27, 2006.

62.    Although Namco provided all of the investment capital, title was placed in the name of an entity, Dynasty 1 Tower, LLC ("Dynasty"), whose sole member was Ezri. Dynasty was formed on February 16, 2006 and, prior to the February 26, 2006 closing of the purchase of the Flamingo Road property, Ezri assigned his membership interest in Dynasty 1 Tower to Simon Shakib. Pursuant to an Assignment Agreement dated March 10, 2006, Shakib's membership interest was purchased by LLC Defendant Lancam, which was formed in August 2004 with no stated capital contribution by its sole member, LLC Defendant Lacy 20.

11

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Case 2:11-cv-05320-GAF-CW   Document 1   Filed 06/24/11   Page 13 of 42   Page ID #:13
Case 2:10-ap-02945-BR   Doc 10-2   Filed 01/25/11   Entered 01/25/11 16:58:36   Desc
Case 2:10-ap-02945-BR First Amended Complaint   Page 13 of 41 15:59:00   Desc
Main Document   Page 13 of 44

63.     Like the operating agreements of other Namvar family LLCs, the Lacy 20 operating agreement does not contain any capital contribution requirements. Rather, under the heading "Capital Contribution of Members of Lacy 20, LLC as of November 15, 1996," the operating agreement simply assigns ownership percentages to Namvar family members. As set forth above, the members of Lacy 20 and their assigned membership percentages were (a) the Namvar Family Trust (a self-settled revocable trust for Ezri's children, Daniel, Malka and Shirah) (20%); (b) Mousa (9%); (c) Daniel (7%); (d) Malka Namvar (7%); (e) Shirah Namvar (7%) and (f) Woodman Partners (50%).

64.     Likewise, the operating agreement of defendant Woodman Partners lists no capital contributions from its members under the heading "Capital Contribution of Members," but only assigns ownership percentages. The members of Woodman Partners and their assigned ownership percentages are: (a) Sean (18%); (b) Tony (18%); (c) Ramin (18%); (d) Mousa (18%); (e) Helen (5%); (f) Daniel (6%); (g) Malka Namvar (6%); (h) Shirah Namvar (6%); (i) Hilda (2.5%); and (j) Lida (2.5%). Subsequently, in January 2003, Woodman Partners' operating agreement was amended to substitute Believers for Sean, and T.N. Management, Inc. for Tony and Net for Ramin.

65.     In January 2009, Sean assigned a 60% interest in Believers to Nataly Namvar. In January 2008, T.N. Management, Inc. assigned 18% interests to each of Tony's children (Alexandra, Noah and Rachel), then in January 2009 assigned its interest in Woodman Partners to T.N. Management, LLC. In July 2009, T.N. Management, LLC assigned its interest in Woodman Partners to Light Source (owned by Tony).

66.     Subsequent to the closing, Namco received a wire transfer of $3,000,000 from Simon Shakib that was booked to this account and referenced as a loan repayment. Namco also made journal entries reclassifying four other transactions, totaling $700,000, as repayments on this account.

67.     Reflecting that the LLCs with legal or beneficial ownership lacked economic substance, it was Namco that made all monthly payments on the Mirae Bank loan from the closing date until October 1, 2008, and paid the property taxes. Namco made a total of $2,015,845 in post-purchase transfers, for a combined total of $5,689,645 (the "Flamingo Road Transfers").

12

59701-001\DOCS_LA:216892.12

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Case 2:11-cv-05320-GAF-CW   Document 1   Filed 06/24/11   Page 14 of 42   Page ID #:14

Case 2:10-ap-02945-BR   Doc 10-2   Filed 01/25/11   Entered 01/25/11 16:58:36   Desc
Case 2:10-ap-02945-BR   First Amended Complaint   Page 14 of 41   Entered 01/11/11 15:59:00   Desc
Main Document     Page 14 of 44

68.     The credits and debits alleged above leave an unpaid account balance of $1,989,645. At 8% simple interest, $663,877 in interest has accrued as of September 15, 2010.  Thus the total owed to Namco in repayment of the Flamingo Road Transfers is $2,653,622.

69.     Based on the facts alleged herein, including without limitation the lack of capitalization of the LLC Defendants, the unity of interest and control by the Namvar Brothers, the absence of any economic substance or purpose except as titleholders and conduits for Namco funds for the benefit of the Namvar Defendants, and their use in furtherance of the fiduciary defalcations, fraud, diversion of assets and usurpation of corporate opportunities by the Namvar Defendants, adherence to the fiction of the separate existence of the LLC Defendants would sanction fraud and promote injustice, and the LLC Defendants Lancam, Lacy 20 and Woodman Partners and their member Namvar Defendants are jointly and severally liable for repayment of the Flamingo Road Transfers.

C.     **Las Vegas - Sunset Springs**

70.     On information and belief, Namco advanced $35,497,957 to Lancam in connection with the development of vacant land located at 10705 Rose Ave. in Las Vegas ("Sunset Springs" and the "Sunset Springs Transfers").

71.     On information and belief, Sunset Springs was acquired on February 20, 2006 for a purchase price of $30,367,213.  Ownership of Sunset Springs was allocated 58% to Lancam (a shell wholly owned by Lacy 20, as set forth above.

72.     The remaining 42% interest in Sunset Springs was allocated to 10705 Rose Ave., LLC, which was 70% owned by Beshmada, LLC ("Beshmada"), comprised of Ezri and his children, and 30% by a third party, Shuster Properties.  Unlike most other Namvar LLCs, the 10705 Rose Ave., LLC operating agreement actually specified initial capital contributions:  $2,280,000 by Beshmada and $120,000 by Shuster Properties.  On January 4, 2006, Shuster Properties' interest was transferred to Dimes, LLC ("Dimes") and the 30% ownership interest in 10705 Rose Ave., LLC was assigned to Dimes, which was owned 50% by Ezri and 16.6% each by his children, Daniel, Malka and Shirah.  Beshmada was owned 25% each by Ezri's children, Daniel, Malka and Shirah, and by Benjamin Namvar.

13

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

73.     Namco credited Lancam with $28,949,596 in repayments, leaving an account balance of $6,648,361, with interest of $2,062,254 through September 15, 2010. Thus the total owed to Namco in repayment of the Sunset Springs Transfers is $8,710,715.

74.     Based on the facts alleged herein, including without limitation the lack of capitalization of the LLC Defendants, the unity of interest and control by the Namvar Brothers, the absence of any economic substance or purpose except as titleholders and conduits for Namco funds for the benefit of the Namvar Defendants, and their use in furtherance of the fiduciary defalcations, fraud, diversion of assets and usurpation of corporate opportunities by the Namvar Defendants, adherence to the fiction of the separate existence of the LLC Defendants would sanction fraud and promote injustice, and the LLC Defendants Lancam, Lacy 20, Woodman Partners and their member Namvar Defendants are jointly and severally liable for repayment of the Sunset Springs Transfers.

**D.     Nam 5, Ltd. Account Receivable**

75.     On August 25, 2004, Namco transferred $5,000,000 to "Dream Team Partners, LLC." Thereafter, Namco periodically made wire transfers to banks in Israel for the accounts of Dream Team Partners, LLC, Nam 5, Ltd. and NUM 5 Ltd., all of which were all booked internally by Namco to the same general ledger account number, in the name of Nam 5 Ltd. On information and belief, Nam 5 is owned in equal 20% interests by Ezri, Tony, Sean, Mousa and Ramin.

76.     The total of Namco's transfers (the "Nam 5 Transfers") was $15,015,987.50. Of this amount, $9,292,739 was repaid, leaving an unpaid principal balance of $5,723,248. An additional $2,003,669 in simple interest at 8% had accrued as of September 15, 2010. Thus a total of $7,726,917, plus interest accrued after September 15, 2010, is owed to Namco in repayment of the Nam 5 Transfers.

77.     Based on the facts alleged herein, including without limitation the lack of capitalization of the LLC Defendants (including Dream Team Partners LLC, Nam 5, Ltd. and NUM 5 Ltd., whatever their corporate form), the unity of interest and control by the Namvar Brothers, the absence of any economic substance or purpose except as titleholders and conduits for Namco funds for the benefit of the Namvar Defendants, and their use in furtherance of the fiduciary defalcations, fraud, diversion of assets and usurpation of corporate opportunities by the Namvar Defendants,

14

Case 2:11-cv-05320-GAF-CW  Document 1  Filed 06/24/11  Page 16 of 42  Page ID #:16

Case 2:10-ap-02945-BR  Doc 10-2  Filed 01/25/11  Entered 01/25/11 16:58:36  Desc
Case 2:10-ap-02945-BR First Amended Complaint  Page 16 of 41
Case 2:10-ap-02945-BR Doc 1 Filed 09/17/11  Entered 09/17/11 15:59:00  Desc
Main Document  Page 16 of 44

adherence to the fiction of the separate existence of the LLC Defendants would sanction fraud and promote injustice, the Namvar Brothers, Nam 5 Ltd., Dream Team Partners, LLC, and NUM 5 Ltd. are jointly and severally liable for repayment of the Nam 5 Transfers.

### E.   DGADE of Delaware, LLC

78.   DGADE is a limited liability company owned in equal 20% shares by Mousa's children: Danielle Namvar, Gabriella Namvar, Ariel Namvar, Davina Namvar and Eliora Namvar. Mousa is the sole signatory to the DGADE Operating Agreement as manager and as custodian for each of his children.

79.   Namco made numerous transfers to or for the benefit of DGADE:

a.   On November 3, 2005, Namco paid $484,030 for the purchase by DGADE of an interest in vacant land in Hilo, Hawaii ("Kuristown Heights").

b.   On December 28, 2006 and July 31, 2007, Namco made transfers to DGADE of $1,957,500 and $2,203,500 for investment in Older & Wiser, LLC ("Older & Wiser") a Namvar family LLC in which DGADE was assigned a 45% ownership interest.

d.   On November 15, 2005, April 4, 2006, October 24, 2006 and June 27, 2007, Namco made transfers invested by Mousa on DGADE's account in Older & Wiser in the amounts of $1,100,000, $652,500, $72,500 and $464,000.

80.   The total of these transfers by Namco on DGADE's account (the "DGADE Transfers") was $6,934,030. No amount has been repaid. An additional $2,151,871 in simple interest at 8% had accrued as of September 15, 2010.

81.   Based on the facts alleged herein, including without limitation the lack of capitalization of the LLC Defendants, the unity of interest and control by the Namvar Brothers, the absence of any economic substance or purpose except as titleholders and conduits for Namco funds for the benefit of the Namvar Defendants, and their use in furtherance of the fiduciary defalcations, fraud, diversion of assets and usurpation of corporate opportunities by the Namvar Defendants, adherence to the fiction of the separate existence of the LLC Defendants would sanction fraud and promote injustice, and Mousa is jointly and severally liable with DGADE for repayment of the DGADE Transfers.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

15

82.   Beginning in October 2008, DGADE transferred or caused to be transferred on its account approximately $6,948,400 to Mousa (the "DGADE Fraudulent Transfers"). These transfers were made with the actual intent to hinder or defraud Namco's collection of amounts owed by DGADE, and/or rendered DGADE insolvent and were made for less than reasonably equivalent value, and thus are avoidable as fraudulent transfers and recoverable from Mousa.

**F.   Security Pacific Bank**

83.   In or about 1997, Ezri acquired a majority interest in Security Pacific Bancorp, a state chartered bank based at Namco's headquarters in the Wilshire Bundy building, 12121 Wilshire Boulevard, in West Los Angeles. Ezri was the majority shareholder and Chairman of the Board of Directors.

84.   Namco funds were used to purchase stock for family members in Security Pacific. All of the Namvar Brothers, their three sisters, three of Ezri's children and the Namvar Family Trust held shares of Security Pacific. As of December 31, 2006, there were 7,843,183 shares outstanding of which 7,649,383, or 97.53%, were owned by the Namvar family members.

85.   By general journal entries and checks made or issued five separate times during late 2002 and additionally on March 27, 2003, May 5, 2003, May 19, 2003, September 30, 2003, March 3, 2004, June 30, 2004, September 29, 2004, December 30, 2005, June 30, 2006, and December 29, 2006, Namco transferred a total of $4,850,952 to Mousa for the purchase of shares of Security Pacific (the "Mousa SP Transfers"). None of this amount has been repaid. With unpaid interest of $2,460,957 accrued through September 15, 2010 from the date of such transfers, the total unpaid balance is $7,311,909. Mousa is individually liable for payment of this amount, plus interest accrued after September 15, 2010.

86.   By general journal entries made on May 19, 2003, March 3, 2004, June 30, 2004, September 29, 2004, and December 29, 2006, Namco transferred a total of $1,807,871 to Trifish for the purchase of Security Pacific stock (the "Trifish SP Transfers"). As set forth above, Trifish was owned at such time in equal parts by Ramin, Sean and Tony. On March 27, 2003, Namco made a general journal entry issuing a $343,962 credit to Trifish on this account, leaving a principal unpaid balance of $1,463,909. With unpaid interest of $658,364 accrued through September 15, 2010 from

16

Case 2:11-cv-05320-GAF-CW   Document 1   Filed 06/24/11   Page 18 of 42   Page ID #:18

Case 2:10-ap-02945-BR   Doc 10-2   Filed 01/25/11   Entered 01/25/11 16:58:36   Desc
Case 2:10-ap-02945-BR   First Amended Complaint   Page 18 of 41   Entered 09/11/11 15:59:00   Desc
Main Document   Page 18 of 44

the date of such transfers, the total unpaid balance is $2,122,273. That amount, with interest accrued thereafter, is owed to Namco in repayment of the Trifish SP Transfers. Based on the facts alleged herein, Ramin, Sean and Tony are jointly and severally liable with LLC Defendant Trifish for repayment of the Trifish SP Transfers.

87.     On December 29, 2006, Namco transferred $805,231.43 to Trisister for the purchase of Security Pacific stock ("First Trisister SP Transfer"). Trisister is owned by Ezri's sisters, Helen, Hilda and Lida, in equal shares. None of this amount has been repaid. With unpaid interest of $242,643 accrued through September 15, 2010 from the date of the transfer, the total unpaid balance is $1,047,874.

88.     On August 29, 2008, Namco transferred $2,964,880 for the purchase of shares of Security Pacific for Trisister (the "Second Trisister SP Transfer" and, with the First Trisister SP Transfer, the "Trisister SP Transfers"). The memo field for this transaction indicates that Helen Shadi should be allocated 2 shares, or 50% of the total, while Hilda and Lida should be allocated 25%. None of this amount has been repaid. With unpaid interest of $492,170 accrued through September 15, 2010 from the date of the transfer, the total unpaid balance is $3,457,050. Thus, collectively, the amount owed Namco in repayment of the Trisister SP Transfers is $4,504,924, plus interest accrued since September 15, 2010.

89.     Based on the facts alleged herein, Trisister, Helen, Hilda and Lida are jointly and severally liable for repayment of the Trisister SP Transfers.

G.     Wilshire Bundy Ground Lease

90.     On February 21, 2007, Namco purchased the ground lease underlying its headquarters at 12121 Wilshire Blvd., Los Angeles (the "Wilshire Bundy Ground Lease"). The real property subject to the Wilshire Bundy Ground Lease is leased to five LLCs that own the leasehold estate on the fourteen story, 307,000 square foot office building located thereon (the "Wilshire Bundy Property").

91.     The total purchase price of the Wilshire Bundy Ground Lease was $10,400,000. Namco transferred to escrow all of the cash required for the down payment and transaction costs, in

17

the amount of $502,038.74 (the "Wilshire Bundy Ground Lease Purchase Transfers"), and $10,000,000 was borrowed from American Gen. Life and Accident Ins. Co.

92.     Although Namco paid 100% of the equity capital, title was given to three family LLCs, pursuant to a Tenants in Common Agreement dated February 14, 2007: (a) 15% to Tribun (99% owned by Trifish); (b) 18% to Bunherst (wholly owned by DGADE, i.e., Mousa's children); and (c) 67% to Bundy Dimes, LLC, a shell LLC wholly owned by Dimes, LLC which, in turn, was owned 50% by Ezri and 16.6% each by his children, Daniel, Malka and Shirah. Namco made journal entries reclassifying its wire transfer to escrow to debit the accounts of Bundy Dimes ($336,366), Tribun ($75,306) and Bunherst ($90,367).

93.     Subsequent to the closing, Namco made transfers totaling $148,373 for payment of obligations in connection with the Wilshire Bundy Ground Lease (the "Wilshire Bundy Post-Closing Transfers" and, collectively with the Wilshire Bundy Ground Lease Purchase Transfers, the "Wilshire Bundy Transfers").

94.     A total of $381,372 in repayments was credited to the accounts of Bundy Dimes and Bunherst, including a purported repayment by Bunherst of $90,372 capital contribution and a $250,000 check from Pentaco Management credited to Bundy Dimes. No repayment was made on account of Tribun or Trifish. The gross unpaid account balance is $269,040. With unpaid interest of $106,017 accrued through September 15, 2010, the total balance due to Namco in repayment of the Wilshire/Bundy Transfers is $375,057.

95.     Based on the facts alleged herein, including without limitation the lack of capitalization of the LLC Defendants, the unity of interest and control by the Namvar Brothers, the absence of any economic substance or purpose except as titleholders and conduits for Namco funds for the benefit of the Namvar Defendants, and their use in furtherance of the fiduciary defalcations, fraud, diversion of assets and usurpation of corporate opportunities by the Namvar Defendants, adherence to the fiction of the separate existence of the LLC Defendants would sanction fraud and promote injustice, and Ramin, Sean and Tony and LLC Defendants Tribun and Trifish are jointly and severally liable for repayment of the Wilshire/Bundy Transfers.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

18

**H.   Trigrove, LLC**

96.   On information and belief, on October 5, 2004, Namco transferred $3,500,000 to acquire a 300 unit apartment building located at 150 Woodway Drive, Jackson, Mississippi (the "Trigrove Transfer").  Title was placed in Trigrove, which on information and belief was an uncapitalized entity wholly owned by Trifish, which was owned in equal thirds by Sean (through Believers), Tony (through Light Source) and Ramin (through Net).

97.   Trigrove did not repay the Trigrove Transfer.  Ramin, Sean and Tony are jointly and severally liable, with LLC Defendants Trigrove and Trifish, for the amount of the Trigrove Transfer, $3,500,000, plus unpaid interest of $1,688,556 accrued through September 15, 2010, in the gross amount of $5,188,556.

98.   On January 1, 2008, Namco purported to cancel Trigrove's liability.  It made general journal entries reclassifying the Trigrove account receivable by applying it to Namco's purported debt to Trifish.  In substance, the general journal entries effectuated a payment from Namco to Trifish in the amount of the Trigrove account receivable.

99.   In the event that the application of the Trigrove account receivable to the purported Trifish account payable is deemed to reduce the liability of Trigrove to Namco, such transfer was made to or for the benefit of Trifish within twelve months of the petition date, and so would be avoidable as a preference (the "Trigrove Preferential Transfer").

100.   Based on the facts alleged herein, including without limitation the lack of capitalization of the LLC Defendants, the unity of interest and control by the Namvar Brothers, the absence of any economic substance or purpose except as titleholders and conduits for Namco funds for the benefit of the Namvar Defendants, and their use in furtherance of the fiduciary defalcations, fraud, diversion of assets and usurpation of corporate opportunities by the Namvar Defendants, adherence to the fiction of the separate existence of the LLC Defendants would sanction fraud and promote injustice, Trigrove, Trifish, Ramin, Sean and Tony are jointly and severally liable for repayment of the Trigrove Transfer or the Trigrove Preferential Transfer.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

19

Case 2:11-cv-05320-GAF-CW   Document 1   Filed 06/24/11   Page 21 of 42   Page ID #:21

Case 2:10-ap-02945-BR   Doc 10-2   Filed 01/25/11   Entered 01/25/11 16:58:36   Desc
Case 2:10-ap-02945-BR   First Amended Complaint   Page 21 of 41   Entered 01/11/11 15:59:00   Desc
Main Document   Page 21 of 44

## I.   Tritowne, LLC

101.   On information and belief, on June 15, 2004, Namco transferred $2,750,000 to acquire a 139 unit apartment building located at 3895 Northview Dr., Jackson, Mississippi (the "Tritowne Transfer"). Title was placed in Tritowne, which on information and belief was an uncapitalized entity wholly owned by Trifish, owned in equal thirds by Sean (through Believers), Tony (through Light Source) and Ramin (through Net).

102.   Tritowne did not repay the Tritowne Transfer. Tritowne, Ramin, Sean and Tony are jointly and severally liable for the amount of the Tritowne Transfer, $2,750,000, plus unpaid interest of $1,395,167 accrued through September 15, 2010, in the gross amount of $4,145,167.

103.   On January 1, 2008, Namco purported to cancel Tritowne's liability. It made general journal entries reclassifying the Tritowne account receivable by applying it to Namco's purported debt to Trifish. In substance, the general journal entries effectuated a payment from Namco to Trifish in the amount of the Tritowne account receivable.

104.   In the event that the application of the Tritowne account receivable to the purported Trifish account payable is deemed to reduce the liability of Tritowne to Namco, such transfer was made to or for the benefit of Trifish within twelve months of the petition date, and so would be avoidable as a preference (the "Tritowne Preferential Transfer").

105.   Based on the facts alleged herein, including without limitation the lack of capitalization of the LLC Defendants, the unity of interest and control by the Namvar Brothers, the absence of any economic substance or purpose except as titleholders and conduits for Namco funds for the benefit of the Namvar Defendants, and their use in furtherance of the fiduciary defalcations, fraud, diversion of assets and usurpation of corporate opportunities by the Namvar Defendants, adherence to the fiction of the separate existence of the LLC Defendants would sanction fraud and promote injustice, Tritowne, Trifish, Ramin, Sean and Tony are jointly and severally liable for repayment of the Tritowne Transfer or the Tritowne Preferential Transfer.

59701-001\DOCS_LA:216892.12

**J.     Trifish Preferential Transfers**

106.    On information and belief, Namco made the following transfers to Trifish, totaling $1,160,000 (the "Trifish Preferential Transfers"), within twelve months of the Petition Date, on the dates indicated:

|     |       |          |
| --- | ----- | -------- |
| a.  | 1/09/08 | $500,000 |
| b.  | 2/19/98 | $200,000 |
| c.  | 4/03/08 | $250,000 |
| d.  | 8/18/08 | $210,000 |

107.    Such payments were made on account of an antecedent debt to Trifish.

108.    Based on the facts alleged herein, including without limitation the lack of capitalization of the LLC Defendants, the unity of interest and control by the Namvar Brothers, the absence of any economic substance or purpose except as titleholders and conduits for Namco funds for the benefit of the Namvar Defendants, and their use in furtherance of the fiduciary defalcations, fraud, diversion of assets and usurpation of corporate opportunities by the Namvar Defendants, adherence to the fiction of the separate existence of the LLC Defendants would sanction fraud and promote injustice, Trifish, Ramin, Sean and Tony are jointly and severally liable for repayment of the Trifish Preferential Transfers.

**K.     Mousa Preferential Transfers**

109.    On information and belief, Namco made the following transfers to Mousa, totaling $900,000 (the "Mousa Preferential Transfers"), within twelve months of the Petition Date, on the dates indicated:

|     |       |          |
| --- | ----- | -------- |
| a.  | 1/25/08 | $100,000 |
| b.  | 1/28/08 | $100,000 |
| c.  | 3/26/08 | $100,000 |
| d.  | 4/11/08 | $250,000 |
| e.  | 5/01/08 | $50,000  |
| f.  | 5/14/08 | $300,000 |

110.    Such payments were made on account of an antecedent debt to Mousa.

21

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

L.    **RPM Preferential Transfer**

111.    On or about April 20, 2007, RPM Investments ("RPM") transferred $9,300,000 to Trifish, and Trifish executed a $9,300,000 promissory note in favor of RPM. On the same date, Trifish loaned $9,000,000 to Namco.

112.    On or about June 29, 2007, RPM transferred $6,500,000 to Trifish, which executed a $6,500,000 promissory note in favor of RPM. On the same date, Trifish loaned $6,500,000 to Namco.

113.    On information and belief, on or about December 31, 2007, Namco assumed the $15,800,000 obligation of Trifish to RPM, which transaction was recorded on the books of both Trifish and Namco as reducing Namco's account payable to Trifish in like amount (the "RPM Preferential Transfer").

114.    Based on the facts alleged herein, including without limitation the lack of capitalization of the LLC Defendants, the unity of interest and control by the Namvar Brothers, the absence of any economic substance or purpose except as titleholders and conduits for Namco funds for the benefit of the Namvar Defendants, and their use in furtherance of the fiduciary defalcations, fraud, diversion of assets and usurpation of corporate opportunities by the Namvar Defendants, adherence to the fiction of the separate existence of the LLC Defendants would sanction fraud and promote injustice, Trifish, Ramin, Sean and Tony are jointly and severally liable for repayment of the RPM Preferential Transfer.

M.    **Family Transfers**

115.    On information and belief, commencing on July 1, 1998, Namco made frequent transfers to Daniel and to third parties on behalf of Daniel (the "Daniel Transfers"), and kept an account of debits and credits attributable to Daniel. The balance of such account is $51,198,185, plus accrued interest of $18,243,514 through September 15, 2010, which sum is owed and payable to Namco by Daniel, with current interest.

116.    On information and belief, commencing on January 8, 2004, Namco made frequent transfers to Benjamin and to third parties on behalf of Benjamin (the "Benjamin Transfers"), and kept an account of debits and credits attributable to Benjamin. The balance of such account is

22

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Case 2:11-cv-05320-GAF-CW   Document 1   Filed 06/24/11   Page 25 of 42   Page ID #:25

Case 2:10-ap-02945-BR   Doc 10-2   Filed 01/25/11   Entered 01/25/11 16:58:36   Desc
Case 2:10-ap-02945-BR   Doc 1   Filed 01/11/11   Entered 01/11/11 15:59:00   Desc
First Amended Complaint   Page 24 of 41
Main Document   Page 24 of 44

$52,269,242, plus accrued interest of $19,569,325 through September 15, 2010, which sum is owed and payable to Namco by Benjamin, with current interest.

117.   On information and belief, commencing July 1, 1998, Namco made frequent transfers to Malka and to third parties on behalf of Malka (the "Malka Transfers"), and kept an account of debits and credits attributable to Malka. The balance of such account is $51,206,578, plus accrued interest of $18,193,855 through September 15, 2010, which sum is owed and payable to Namco by Malka, with current interest.

118.   On information and belief, commencing on July 1, 1998, Namco made frequent transfers to Shirah and to third parties on behalf of Shirah (the "Shirah Transfers"), and kept an account of debits and credits attributable to Shirah. The balance of such account is $51,243,147, plus accrued interest of $18,215,514 through September 15, 2010, which sum is owed and payable to Namco by Shirah, with current interest.

119.   On information and belief, commencing July 1, 1998, Namco made frequent transfers to Helen and to third parties on behalf of Helen (the "Helen Transfers"), and kept an account of debits and credits attributable to Helen. The balance of such account is $767,933, plus accrued interest of $371,777 through September 15, 2010, which sum is owed and payable to Namco by Helen, with current interest.

**N.   Namco 8 and Red Feather Mall**

120.   Namco 8 was formed on or about January 18, 2002, to develop real property located at 4920 W. Cheyenne Avenue, Las Vegas, Nevada (the "Red Feathers Mall"). The property was purchased on or about March 27, 2002 for $7,913,852.

121.   Namco 8's sole member was Wilshire 19, LLC, whose sole member was Ezri.

122.   On or about February 10, 2004, Wilshire 19 assigned its interest in Namco 8 to Canyon Springs Shopping Center, LLC, for a purchase price of $11,650,000.00.

123.   On June 29, 2007, Wishlab 90 acquired Canyon Springs' interest in Namco 8, for $6.2 million and assumption of the $5.8 million balance on the secured loan. On information and belief, Wishlab 90 was owned 64% by Mousa (through Magdiel), 6% by Trifish, 5% by Chapar, LLC, 7% by OPICS Properties, LLC and 18% by Beshmada, LLC.

23

59701-001\DOCS_LA:216892.12

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Case 2:11-cv-05320-GAF-CW   Document 1   Filed 06/24/11   Page 26 of 42   Page ID #:26

Case 2:10-ap-02945-BR   Doc 10-2   Filed 01/25/11   Entered 01/25/11 16:58:36   Desc
Case 2:10-ap-02945-BR   First Amended Complaint   Filed 01/11/11 15:59:00   Desc
Main Document   Page 25 of 44

124.    Commencing February 4, 2002, Namco made transfers to Namco 8 totaling $29,062,610.10.  Of that amount, $18,594,767 was credited as paid, leaving a principal unpaid balance of $10,467,843.  With unpaid simple interest at 8% accrued through September 15, 2010 in the amount of $5,997,118, the Namvar Brothers are jointly and severally liable with Namco 8 and Wishlab 90 in the amount of $16,464,961.

125.    Namco accounted separately for additional transfers made to or for the benefit of Namco 8 in connection with the Red Feathers Mall, commencing on or about January 12, 2004.  These transfers totaled $6,454,552.78, of which $3,004,097.16 was repaid, leaving a principal balance of $3,450,455.62.  With unpaid simple interest at 8% accrued through September 15, 2010 in the amount of $1,349,310, the Namvar Brothers are jointly and severally liable with Namco 8 and Wishlab 90 for an additional $4,799,766.  Thus the total amount owed to Namco on the transfers made by Namco on the accounts of Namco 8 and the Red Feathers Mall (the "Red Feathers Transfers") is $21,264,727, plus interest accrued after September 15, 2010.

126.    Based on the facts alleged herein, including without limitation the lack of capitalization of the LLC Defendants, the unity of interest and control by the Namvar Brothers, the absence of any economic substance or purpose except as titleholders and conduits for Namco funds for the benefit of the Namvar Defendants, and their use in furtherance of the fiduciary defalcations, fraud, diversion of assets and usurpation of corporate opportunities by the Namvar Defendants, adherence to the fiction of the separate existence of the LLC Defendants would sanction fraud and promote injustice, Namco 8, Wishlab 90 and the Namvar Brothers are jointly and severally liable for repayment of the Red Feathers Transfers.

## FIRST CLAIM FOR RELIEF

### (Breach of Fiduciary Duty)

### (Against Tony)

127.    Plaintiff refers to and incorporates by reference, as though fully set forth herein, each of the foregoing allegations of this Complaint.

24

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Case 2:11-cv-05320-GAF-CW   Document 1   Filed 06/24/11   Page 27 of 42   Page ID #:27

Case 2:10-ap-02945-BR   Doc 10-2   Filed 01/25/11   Entered 01/25/11 16:58:36   Desc
Case 2:10-ap-02945-BR First Amended Complaint   Entered 01/11/11 15:59:00   Desc
Main Document   Page 26 of 44

128.   At all relevant times, Tony owed a fiduciary duty to Namco to act in good faith, in the best interests of the corporation, with such care as an ordinarily prudent person in a like position would use under similar circumstances, and without conflict of interest.

129.   In engaging in the conduct, directing, causing, authorizing and entering into the transactions described and alleged herein, Tony violated that fiduciary duty.

130.   As a proximate result of the breaches of fiduciary duty, Namco suffered damages, in an amount to be established at trial.

131.   In engaging in the conduct alleged herein, Tony was guilty of oppression, fraud or malice, entitling Plaintiff, in addition to the actual damages, to recover damages for the sake of example and by way of punishing this defendant.

## SECOND CLAIM FOR RELIEF

### (Aiding and Abetting Breach of Fiduciary Duty)

### (Against Mousa, Sean and Ramin)

132.   Plaintiff refers to and incorporates by reference, as though fully set forth herein, each of the foregoing allegations of this Complaint.

133.   At all relevant times, Ezri and Tony owed a fiduciary duty to Namco to act in good faith, in the best interests of the corporation, with such care as an ordinarily prudent person in a like position would use under similar circumstances, and without conflict of interest.

134.   In engaging in the conduct, directing, causing, authorizing and entering into the transactions described and alleged herein, Ezri and Tony violated that fiduciary duty.

135.   Mousa, Sean, and Ramin had actual knowledge of Ezri's and Tony's violation of such fiduciary duty.

136.   Mousa, Sean, and Ramin substantially assisted Ezri and Tony in breaching their fiduciary duty.

137.   As a proximate result of the breaches of fiduciary duty, Namco suffered damages, in an amount to be established at trial.

25

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Case 2:11-cv-05320-GAF-CW   Document 1   Filed 06/24/11   Page 28 of 42   Page ID #:28

Case 2:10-ap-02945-BR   Doc 10-2   Filed 01/25/11   Entered 01/25/11 16:58:36   Desc
Case 2:10-ap-02945-BR   First Amended Complaint   Page 27 of 44/11 15:59:00   Desc
Main Document   Page 27 of 44

138.     In engaging in the conduct alleged herein, Mousa, Sean, and Ramin were guilty of oppression, fraud or malice, entitling Plaintiff, in addition to the actual damages, to recover damages for the sake of example and by way of punishing these defendants.

### THIRD CLAIM FOR RELIEF

### (Breach of Express or Implied Contract)

### (Against All Defendants)

139.     Plaintiff refers to and incorporates by reference, as though fully set forth herein, each of the foregoing allegations of this Complaint.

140.     As alleged herein, Namco made transfers to certain Defendants described and referenced in the Complaint as: (a) the LA Marriott Transfers; (b) the Flamingo Road Transfers; (c) the Sunset Springs Transfers; (d) the Nam 5 Transfers; (e) the DGADE Transfers; (f) the Mousa SP Transfers; (g) the Trifish SP Transfers; (h) the Trisister SP Transfer; (i) the Trisister SP Transfers; (j) the Wilshire Bundy Transfers; (k) the Tritowne Transfer; (l) the Trigrove Transfer; (m) the Daniel Transfers; (n) the Benjamin Transfers; (o) the Malka Transfers; (p) the Shirah Transfers; (q) the Helen Transfers; and (r) the Red Feathers Transfers (collectively, the "Namvar Family Transfers").

141.     As to each of the Namvar Family Transfers, Namco and Defendants understood and agreed that transfers made by Namco to or for the benefit of a Defendant, or a Defendant's children, would be repaid to Namco, with interest from the time of such transfers.

142.     Defendants agreed to be bound by such terms without a written agreement, and/or confirmed such agreement by their conduct.

143.     All conditions required for each Defendant's performance of each agreement have been satisfied, except those excused by reason of a Defendant's conduct.

144.     The Namvar Family Transfers identified below have not been repaid by the parties responsible for the repayment of such transfers (as identified below in parentheses), in the following amounts (plus interest accrued after September 15, 2010):

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

26

(a)   The LA Marriott Transfers: $29,412,970 (Mousa, Ramin, Sean, Tony, LA Hotel Venture, Toyram, Namari, Magdiel and Trifish, jointly and severally)

(b)   Flamingo Road Transfers: $2,653,622 (all Namvar Defendants, Lancam, Lacy 20 and Woodman Partners, jointly and severally)

(c)   Sunset Springs Transfers: $8,710,715 (all Namvar Defendants, Lancam, Lacy 20 and Woodman Partners, jointly and severally)

(d)   Nam 5 Transfers: $7,726,917 (Ezri, Mousa, Sean, Tony, Ramin, Nam 5, Ltd., Dream Team Partners, LLC, and NUM 5, LLC, jointly and severally)

(e)   DGADE Transfers: $9,08,901 (Mousa and DGADE, jointly and severally)

(f)   Mousa SP Transfers: $7,311,909 (Mousa)

(g)   Trifish SP Transfers: $2,122,273 (Ramin, Sean, Tony and Trifish, jointly and severally)

(h)   Trisister SP Transfers: $4,504,924 (Helen, Lida, Hilda and Trisister, jointly and severally)

(i)   Wilshire Bundy Transfers: $375,057 (Ramin, Sean, Tony, Tribun, and Trifish, jointly and severally)

(j)   Trigrove Transfer: $5,188,556 (Ramin, Sean, Tony, Trifish, and Trigrove, jointly and severally)

(k)   Tritowne Transfer: $4,145,167 (Ramin, Sean, Tony, Trifish, and Tritowne, jointly and severally)

(l)   Daniel Transfers: $69,441,699 (Daniel)

(m)   Benjamin Transfers:  $71,838,567 (Benjamin)

(n)   Malka Transfers:  $69,400,433 (Malka)

(o)   Shirah Transfers:  $69,458,661 (Shirah)

(p)   Helen Transfers:  $1,139,710 (Helen)

(q)   Red Feathers Transfers: $21,264,727 (Namco 8, Wishlab 90, Mousa, Tony, Sean and Ramin)

145.   Namco has been harmed by Defendants' failure to repay the Namvar Family

Transfers, in the amounts stated or subject to proof at trial, plus interest to the date of judgment.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

27

## FOURTH CLAIM FOR RELIEF

### (Open Book Account)

### (Against All Defendants)

146.    Plaintiff refers to and incorporates by reference, as though fully set forth herein, each of the foregoing allegations of this Complaint.

147.    Namco and Defendants engaged in regular financial transactions, specifically including the Namvar Family Transfers.

148.    Namco kept accounts of the debits and credits in the investments in which the Namvar Family Transfers were made;

149.    Defendants owe Namco money on such accounts, in the amounts and by the Defendants alleged in paragraph 136, *supra*.

## FIFTH CLAIM FOR RELIEF

### (Unjust Enrichment)

### (Against All Defendants)

150.    Plaintiff refers to and incorporates by reference, as though fully set forth herein, each of the foregoing allegations of this Complaint.

151.    In making the Namvar Family Transfers alleged herein, Namco conferred a benefit upon the recipients and beneficiaries of the Namvar Family Transfers.

152.    Defendants knew of and accepted the benefit.

153.    Retention of the benefit of the Namvar Family Transfers under the circumstances would be inequitable or unconscionable.

28

Case 2:11-cv-05320-GAF-CW   Document 1   Filed 06/24/11   Page 31 of 42   Page ID #:31

Case 2:10-ap-02945-BR   Doc 10-2   Filed 01/25/11   Entered 01/25/11 16:58:36   Desc
Case 2:10-ap-02945-BR   First Amended Complaint   Entered 01/11/11 15:59:00   Desc
Main Document   Page 30 of 44

## SIXTH CLAIM FOR RELIEF

**(For Avoidance and Recovery of Trigrove Preferential Transfer Pursuant to 11 U.S.C. §§ 547 and 550)**

**(Against Sean, Tony, Ramin and Trifish)**

154.    Plaintiff refers to and incorporates by reference, as though fully set forth herein, each of the foregoing allegations of this Complaint.

155.    The Trigrove Preferential Transfer was a transfer of an interest of Namco in property, to or for the benefit of Trifish, Sean, Tony and Ramin, on account of an antecedent debt owed by Namco before such transfer was made.

156.    The Trigrove Preferential Transfer was made while Namco was insolvent.

157.    Trifish, Sean, Tony and Ramin are each insiders within the meaning of 11 U.S.C. § 101(31).

158.    The Trigrove Preferential Transfer was made within one year of the Petition Date.

159.    The Trigrove Preferential Transfer enabled Sean, Tony, Ramin and Trifish to receive more than they would receive if Namco's case were a case under Chapter 7 of the Bankruptcy Code, the transfer had not been made, and they received payment on the debt to the extent provided by the Bankruptcy Code.

160.    Accordingly, pursuant to 11 U.S.C. §§ 547 and 550, Plaintiff is entitled to avoidance of the Trigrove Preferential Transfer, and for judgment against the Sean, Tony, Ramin and Trifish in the amount of $3,500,000, plus interest.

## SEVENTH CLAIM FOR RELIEF

**(For Avoidance and Recovery of Tritowne Preferential Transfer Pursuant to 11 U.S.C. §§ 547 and 550)**

**(Against Sean, Tony, Ramin and Trifish)**

161.    Plaintiff refers to and incorporates by reference, as though fully set forth herein, each of the foregoing allegations of this Complaint.

29

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Case 2:11-cv-05320-GAF-CW   Document 1   Filed 06/24/11   Page 32 of 42   Page ID #:32
Case 2:10-ap-02945-BR   Doc 10-2   Filed 01/25/11   Entered 01/25/11 16:58:36   Desc
Case 2:10-ap-02945-BR   First Amended Complaint   Page 31 of 41   Entered 05/17/11 15:59:00   Desc
Main Document   Page 31 of 44

162.    The Tritowne Preferential Transfer was a transfer of an interest of Namco in property, to or for the benefit of Trifish, Sean, Tony and Ramin, on account of an antecedent debt owed by Namco before such transfer was made.

163.    The Tritowne Preferential Transfer was made while Namco was insolvent.

164.    Trifish, Sean, Tony and Ramin are each insiders within the meaning of 11 U.S.C. § 101(31).

165.    The Tritowne Preferential Transfer was made within one year of the Petition Date.

166.    The Tritowne Preferential Transfer enabled Sean, Tony, Ramin and Trifish to receive more than they would receive if Namco's case were a case under Chapter 7 of the Bankruptcy Code, the transfer had not been made, and they received payment on the debt to the extent provided by the Bankruptcy Code.

167.    Accordingly, pursuant to 11 U.S.C. §§ 547 and 550, Plaintiff is entitled to avoidance of the Tritowne Preferential Transfer, and for judgment against the Sean, Tony, Ramin and Trifish in the amount of $2,750,000, plus interest.

## EIGHTH CLAIM FOR RELIEF

### (For Avoidance and Recovery of Trifish Preferential Transfers Pursuant to 11 U.S.C. §§ 547 and 550)

### (Against Sean, Tony, Ramin and Trifish)

168.    Plaintiff refers to and incorporates by reference, as though fully set forth herein, each of the foregoing allegations of this Complaint.

169.    The Trifish Preferential Transfers were transfers of an interest of Namco in property, to or for the benefit of Trifish, Sean, Tony and Ramin, on account of an antecedent debt owed by Namco before such transfer was made.

170.    The Trifish Preferential Transfers were made while Namco was insolvent.

171.    Trifish, Sean, Tony and Ramin are each insiders within the meaning of 11 U.S.C. § 101(31).

172.    The Trifish Preferential Transfers were made within one year of the Petition Date.

30

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Case 2:11-cv-05320-GAF-CW   Document 1   Filed 06/24/11   Page 33 of 42   Page ID #:33
Case 2:10-ap-02945-BR    Doc 10-2    Filed 01/25/11   Entered 01/25/11 16:58:36   Desc
Case 2:10-ap-02945-BR   First Amended Complaint   Page 33 of 41   15:59:00   Desc
Main Document      Page 32 of 44

173.    The Trifish Preferential Transfers enabled Sean, Tony, Ramin and Trifish to receive more than they would receive if Namco's case were a case under Chapter 7 of the Bankruptcy Code, the transfer had not been made, and they received payment on the debt to the extent provided by the Bankruptcy Code.

Accordingly, pursuant to 11 U.S.C. §§ 547 and 550, Plaintiff is entitled to avoidance of the Tritowne Preferential Transfer, and for judgment against the Sean, Tony, Ramin and Trifish in the amount of $1,160,000, plus interest

### NINTH CLAIM FOR RELIEF

**(For Avoidance and Recovery of Mousa Preferential Transfers Pursuant to 11 U.S.C. §§ 547 and 550)**

**(Against Mousa)**

174.    Plaintiff refers to and incorporates by reference, as though fully set forth herein, each of the foregoing allegations of this Complaint.

175.    The Mousa Preferential Transfers were transfers of an interest of Namco in property, to or for the benefit of Mousa, on account of an antecedent debt owed by Namco before such transfer was made.

176.    The Mousa Preferential Transfers were made while Namco was insolvent.

177.    Mousa is an insider within the meaning of 11 U.S.C. § 101(31).

178.    The Mousa Preferential Transfers were made within one year of the Petition Date.

179.    The Mousa Preferential Transfers enabled Mousa to receive more than they would receive if Namco's case were a case under Chapter 7 of the Bankruptcy Code, the transfer had not been made, and they received payment on the debt to the extent provided by the Bankruptcy Code.

Accordingly, pursuant to 11 U.S.C. §§ 547 and 550, Plaintiff is entitled to avoidance of the Tritowne Preferential Transfer, and for judgment against the Mousa in the amount of $900,000, plus interest

31

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Case 2:11-cv-05320-GAF-CW   Document 1   Filed 06/24/11   Page 34 of 42   Page ID #:34

Case 2:10-ap-02945-BR   Doc 10-2   Filed 01/25/11   Entered 01/25/11 16:58:36   Desc
Case 2:10-ap-02945-BR   First Amended Complaint   Page 33 of 44   Entered 01/11/11 15:59:00   Desc
Main Document   Page 33 of 44

## TENTH CLAIM FOR RELIEF

**(For Avoidance and Recovery of RPM Preferential Transfer Pursuant to 11 U.S.C. §§ 547 and 550)**

**(Against Sean, Tony, Ramin and Trifish)**

180.   Plaintiff refers to and incorporates by reference, as though fully set forth herein, each of the foregoing allegations of this Complaint.

181.   The RPM Preferential Transfer was a transfer of an interest of Namco in property, to or for the benefit of Trifish, Sean, Tony and Ramin, on account of an antecedent debt owed by Namco before such transfer was made.

182.   The RPM Preferential Transfer was made while Namco was insolvent.

183.   Trifish, Sean, Tony and Ramin are each insiders within the meaning of 11 U.S.C. § 101(31).

184.   The RPM Preferential Transfer was made within one year of the Petition Date.

185.   The RPM Preferential Transfer enabled Sean, Tony, Ramin and Trifish to receive more than they would receive if Namco's case were a case under Chapter 7 of the Bankruptcy Code, the transfer had not been made, and they received payment on the debt to the extent provided by the Bankruptcy Code.

186.   Accordingly, pursuant to 11 U.S.C. §§ 547 and 550, Plaintiff is entitled to avoidance of the RPM Preferential Transfer, and for judgment against the Sean, Tony, Ramin and Trifish in the amount of $15,800,000, plus interest.

## ELEVENTH CLAIM FOR RELIEF

**(For Avoidance and Recovery of Fraudulent Transfers Pursuant to 11 U.S.C. §§ 544(b) and 550 and California Civil Code §§ 3439.04, 3439.05 and 3439.07)**

**(Against All Defendants)**

187.   Plaintiff refers to and incorporates by reference, as though fully set forth herein, each of the foregoing allegations of this Complaint.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

32

Case 2:11-cv-05320-GAF-CW   Document 1   Filed 06/24/11   Page 35 of 42   Page ID #:35

Case 2:10-ap-02945-BR   Doc 10-2   Filed 01/25/11   Entered 01/25/11 16:58:36   Desc
Case 2:10-ap-02945-BR   First Amended Complaint   Page 34 of 41 11 15:59:00   Desc
Main Document   Page 34 of 44

188.   Namco did not receive reasonably equivalent value in exchange for (a) the LA Marriott Transfers; (b) the Flamingo Road Transfers; (c) the Sunset Springs Transfers; (d) the Nam 5 Transfers; (e) the DGADE Transfers; (f) the Mousa SP Transfers; (g) the Trifish SP Transfers; (h) the Trisister SP Transfers; (i) the Wilshire Bundy Transfers; (j) the Tritowne Transfer; (k) the Trigrove Transfer; (l) the Daniel Transfers; (m) the Benjamin Transfers; (n) the Malka Transfers; (o) the Shirah Transfers; (p) the Helen Transfers; and (q) the Red Feathers Transfers (collectively, the "Namvar Fraudulent Transfers").

189.   At the times that Namco made each of the Namvar Fraudulent Transfers, it (i) was engaged or was about to be engaged in a business or transaction for which the remaining assets of Namco were unreasonably small in relation to the business or transaction, or (ii) intended to incur, or reasonably should have believed that it would incur, debts beyond its ability to pay as they came due.

190.   The Namvar Fraudulent Transfers were made without receiving reasonably equivalent value in exchange, and Namco was insolvent at the time of each transfer, in that at fair valuations, the sum of its debts was greater than all of its assets.

191.   As of the Petition Date, there was at least one creditor whose claim arose prior to each of the Namvar Fraudulent Transfers.

192.   Accordingly, the Namvar Fraudulent Transfers are avoidable, and should be avoided, as fraudulent pursuant to 11 U.S.C. § 544(b) and Cal. Civil Code §§ 3439.04-05, and may be recovered pursuant to 11 U.S.C. § 550 and Cal. Civil Code § 3439.07.

## TWELFTH CLAIM FOR RELIEF

**(For Avoidance and Recovery of Fraudulent Transfers Pursuant to 11 U.S.C. §§ 544(b) and 550 and California Civil Code §§ 3439.04, 3439.05 and 3439.07)**

**(Against Mousa)**

193.   Plaintiff refers to and incorporates by reference, as though fully set forth herein, each of the foregoing allegations of this Complaint.

194.   At all times material hereto, Namco was a creditor of DGADE.

33

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

195.   DGADE did not receive reasonably equivalent value in exchange for the DGADE Fraudulent Transfers.

196.   At the time that DGADE made each of the DGADE Fraudulent Transfers, it (i) was engaged or was about to be engaged in a business or transaction for which the remaining assets of Namco were unreasonably small in relation to the business or transaction, or (ii) intended to incur, or reasonably should have believed that it would incur, debts beyond its ability to pay as they came due.

197.   The DGADE Fraudulent Transfers were made without receiving reasonably equivalent value in exchange, and Namco was insolvent at the time of each transfer, in that at fair valuations, the sum of its debts was greater than all of its assets.

198.   Accordingly, the DGADE Fraudulent Transfers are avoidable, and should be avoided, as fraudulent pursuant to 11 U.S.C. § 544(b) and Cal. Civil Code §§ 3439.04-05, and may be recovered from Mousa pursuant to 11 U.S.C. § 550 and Cal. Civil Code § 3439.07.

## THIRTEENTH CLAIM FOR RELIEF

### (For Constructive Trust)

### (Against Tribun and Bunherst)

199.   Plaintiff refers to and incorporates by reference, as though fully set forth herein, each of the foregoing allegations of this Complaint.

200.   Through the Wilshire Bundy Ground Lease Purchase Transfers, Namco provided 100% of the equity capital for the acquisition of the Wilshire Bundy Ground Lease.  Title was distributed to Namvar family members as tenants in common: 67% to Bundy Dimes (Ezri and children), 15% to Tribun (Trifish) and 18% to Bunherst (DGADE, i.e., Mousa's children).

201.   In authorizing Namco to provide such funding while distributing ownership to family members and children, Ezri and Tony breached their fiduciary duties to Namco, and Sean, Mousa and Ramin aided and abetted such violation of his fiduciary duty.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

34

59701-001\DOCS_LA:216892.12

Case 2:11-cv-05320-GAF-CW   Document 1   Filed 06/24/11   Page 37 of 42   Page ID #:37

Case 2:10-ap-02945-BR    Doc 10-2    Filed 01/25/11    Entered 01/25/11 16:58:36    Desc

Case 2:10-ap-02945-BR   Doc 7   Filed 01/11/11   Entered 01/11/11 15:59:00   Desc
First Amended Complaint   Page 36 of 41
Main Document    Page 36 of 44

202.   Tribun and Bunherst, and the Namvar Brothers through their ownership of Tribun and Bunherst, have benefited from and been unjustly enriched by this wrongful conduct, in that they are in possession of the property on which the Namco funds were expended – the Wilshire Bundy Ground Lease, which has appreciated in value since its acquisition.

203.   Tribun, Bunherst and the Namvar Brothers would be unjustly enriched by the retention of their interests in the Wilshire Bundy Ground Lease.

204.   To avoid unjust enrichment and prevent the Namvar Brothers from deriving profits from their violations of fiduciary obligations and substantial participation therein, the Court should deem that the tenants-in-common ownership interests of Tribun and Bunherst in the Wilshire Bundy Ground Lease are held in constructive trust for the benefit of Plaintiff.

## FOURTEENTH CLAIM FOR RELIEF

**(For Avoidance and Recovery of Fraudulent Transfers Pursuant to 11 U.S.C. §§ 544(b) and 550 and California Civil Code §§ 3439.04, 3439.05 and 3439.07)**

**(Against Haron Shabatian)**

205.   Plaintiff refers to and incorporates by reference, as though fully set forth herein, each of the foregoing allegations of this Complaint.

206.   Since in or around March 2002 Tony and his wife, Katayoun Namvar, have owned real property commonly known as 129 S. Rockingham Avenue, Los Angeles, California 90049 ("Rockingham Property").

207.   The legal description of the Rockingham Property is:

Those portions of Block 31 of Brentwood Park, in the City of Brentwood, County of Los Angeles, State of California, as per map recorded in Book 9, Page 10 of Maps, in the office of the County Recorder of said County, and of Lot 143 of said Tract, and of Canon Drive, now vacated, and of Lot 3 of Tract No. 4098, recorded in Book 63, Page 95 of Maps, records of said County, described as a whole as follows:

Beginning at a point in the East line of said Lot 3, distant Southerly thereon 98.71 feet from the Northeast corner of said Lot; thence Westerly in a direct line, 279.35 feet to a point in the West line of said Lot 3; distant Southerly thereon 96.10 feet from the Northwest corner of said Lot; thence Southerly along said West line and prolongation thereof, 141.19 feet to a 2 inch iron pipe shown on said Tract No. 4098, as an angle point in the West line of Lot 24 of said Block 31; thence Southerly in a direct line 57.40 feet to the Northwest corner of Lot 1 of

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

59701-001\DOCS_LA:216892.12

Case 2:11-cv-05320-GAF-CW   Document 1   Filed 06/24/11   Page 38 of 42   Page ID #:38

Case 2:10-ap-02945-BR   Doc 10-2   Filed 01/25/11   Entered 01/25/11 16:58:36   Desc
Case 2:10-ap-02945-BR   First Amended Complaint   Page 37 of 41   Entered 07/11/11 15:59:00   Desc
Main Document   Page 37 of 44

1    Tract No. 4097, recorded in Book 64, Page 46 of said map Records; thence Easterly 299.08
2    feet along the North line of said Lot 1, to the Northeast corner of said Lot; thence Northerly
84.12 feet, more or less, along Rockingham Avenue, 75 feet wide, to the point of beginning.

3    Assessor's Parcel Number: 4406-015-008

4        208.    On information and belief, on or about October 1, 2008, Tony and his wife, Katayoun

5    Namvar, executed a promissory note in the principal sum of $5,050,000.00 in favor of Haron

6    Shabatian ("Shabatian" and the "Shabatian Note") and, concurrently, recorded as Instrument

7    Number 20081760761 in the official records of the Office of the County Recorder of Los Angeles

8    County, California a purported Deed of Trust in favor of Shabatian (the "Shabatian Deed") securing

9    obligations under the Shabatian Note.

10        209.    Tony and Katayoun Namvar did not receive reasonably equivalent value in exchange

11    for the Shabatian Note and Shabatian Deed of Trust.

12        210.    At the time that Tony and Katayoun Namvar executed the Shabatian Note and gave

13    the Shabatian Trust Deed, they (i) were engaged or were about to be engaged in a business or

14    transaction for which their remaining assets were unreasonably small in relation to the business or

15    transaction, or (ii) intended to incur, or reasonably should have believed that it would incur, debts

16    beyond their ability to pay as they came due.

17        211.    The Shabatian Note was executed and the Shabatian Trust Deed given without

18    receiving reasonably equivalent value in exchange, and Tony and Katayoun Namvar were insolvent

19    at the time of each transfer, in that at fair valuations, the sum of their debts was greater than all of

20    their assets.

21        212.    On information and belief, the Shabatian Note was executed and the Shabatian Deed

22    was placed on the Rockingham Property by Tony and Katayoun Namvar with the actual intent to

23    hinder, delay or defraud their then and future creditors, including Plaintiff, in the collection of their

24    debts and claims. Plaintiff has been damaged by the fraudulent Shabatian Deed that was placed on

25    the Rockingham Property in that the fraudulent lien purports to create a senior secured obligation

26    that would take priority over any judgment or execution lien awarded to Plaintiff in this action, that

27    might be levied upon in order to partially satisfy the judgment to be awarded herein.

28

36

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Case 2:11-cv-05320-GAF-CW   Document 1   Filed 06/24/11   Page 39 of 42   Page ID #:39
Case 2:10-ap-02945-BR   Doc 10-2   Filed 01/25/11   Entered 01/25/11 16:58:36   Desc
Case 2:10-ap-02945-BR   First Amended Complaint   Page 38 of 41   Entered 07/11/11 15:59:00   Desc
Main Document   Page 38 of 44

213.    Accordingly, the Shabatian Note and Shabatian Trust Deed are avoidable, and should be avoided, as fraudulent pursuant to 11 U.S.C. § 544(b) and Cal. Civil Code §§ 3439.04-05, and may be recovered from Shabatian pursuant to 11 U.S.C. § 550 and Cal. Civil Code § 3439.07.

## FIFTEENTH CLAIM FOR RELIEF

### (Declaratory Relief)

### (Against All Defendants)

214.    Plaintiff refers to and incorporates by reference, as though fully set forth herein, each of the foregoing allegations of this Complaint.

215.    An actual, present and justiciable controversy has arisen between Plaintiff and Defendants, in that Plaintiff alleges that the recipients of each of the Namvar Fraudulent Transfers hold the property received thereby, and all proceeds of such property, in constructive trust for the benefit of the Plaintiff, and that Plaintiff is entitled to title and possession of all such property.  On information and belief, Defendants disagree.

216.    Plaintiff seeks a declaratory judgment that Plaintiff is entitled to possession and title to all property transferred in the Namvar Fraudulent Transfers, and all proceeds of such property.

## SIXTEENTH CLAIM FOR RELIEF

### (Equitable Subordination)

### (Against the Namvar Defendants and LLC Defendants)

217.    Plaintiff refers to and incorporates by reference, as though fully set forth herein, each of the foregoing allegations of this Complaint.

218.    Certain of the Namvar Defendants, and/or LLC Defendants in which any of them may claim a membership interest, have asserted or may assert claims against Namco, seeking an affirmative recovery or for purposes of establishing a right to offset.

219.    In engaging in the conduct alleged herein, the Namvar Brothers engaged in inequitable conduct.

37

59701-001\DOCS_LA:216892.12

220.   The Namvar Defendants' inequitable conduct injured creditors and/or conferred an unfair advantage upon them.

221.   Subordination of any claims of the Namvar Defendants and/or any LLC Defendants in which they claim a membership interest to all other claims would not be inconsistent with the Bankruptcy Code.

## OBJECTION TO CLAIMS

### (Against all Defendant/Claimants)

222.   Plaintiff refers to and incorporates by reference, as though fully set forth herein, each of the foregoing allegations of this Complaint.

223.   Defendants are entities from which property is recoverable under sections 542, 550 or 553 of the Bankruptcy Code, and/or are transferees of transfers avoidable under section 544, 547 or 548 of the Bankruptcy Code.

224.   Under section 502(d) of the Bankruptcy Code, any claim asserted in this case by any such entity or transferee shall be disallowed unless such person or entity or transferee has paid the amount or turned over any such property for which such entity or transferee is liable under sections 542, 550 or 553 of the Bankruptcy Code.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests judgment on the Complaint as follows:

1.   On the First and Second Claims for Relief, for compensatory and punitive damages, in an amount to be established at trial.

2.   On the Third, Fourth and Fifth Claims for Relief, for compensatory damages in the amounts alleged or to be established at trial, and for interest at 8% to the date of judgment.

3.   On the Sixth Claim for Relief, for an order avoiding and setting aside the Trigrove Preferential Transfer and awarding Plaintiff judgment against Trifish, Sean, Tony and Ramin in the amount of $3,500,000.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

38

Case 2:11-cv-05320-GAF-CW  Document 1  Filed 06/24/11  Page 41 of 42  Page ID #:41

Case 2:10-ap-02945-BR  Doc 10-2  Filed 01/25/11  Entered 01/25/11 16:58:36  Desc
Case 2:10-ap-02945-BR  First Amended Complaint  Page 40 of 44  Entered 01/11/11 15:59:00  Desc
Main Document  Page 40 of 44

4. On the Seventh Claim for Relief, for an order avoiding and setting aside the Tritowne Preferential Transfer and awarding Plaintiff judgment against Trifish, Sean, Tony and Ramin in the amount of $2,750,000.

5. On the Eighth Claim for Relief, for an order avoiding and setting aside the Trifish Preferential Transfer and awarding Plaintiff judgment against Trifish, Sean, Tony and Ramin in the amount of $620,000.

6. On the Ninth Claim for Relief, for an order avoiding and setting aside the Mousa Preferential Transfers and awarding Plaintiff judgment against Mousa in the amount of $775,000.

7. On the Tenth Claim for Relief, for an order avoiding and setting aside the RPM Preferential Transfer and awarding Plaintiff judgment against Trifish, Sean, Tony and Ramin in the amount of $15,800,000.

8. On the Eleventh Claim for Relief, avoiding the Namvar Fraudulent Transfers and awarding judgment to Plaintiff in an amount to be proven at trial.

9. On the Twelfth Claim for Relief, avoiding the DGADE Fraudulent Transfers and awarding judgment to Plaintiff in an amount to be proven at trial.

10. On the Thirteenth Claim for Relief, for judgment imposing a constructive trust upon the Wilshire Bundy Ground Lease, for the benefit of Plaintiff.

11. On the Fourteenth Claim for Relief, for a judgment avoiding and setting aside the Shabatian Deed and awarding Plaintiff judgment against Shabatian in the amount of $5,050,000.

12. On the Fifteenth Claim for Relief, for a declaratory judgment that Plaintiff is entitled to possession and title to all property transferred in the Namvar Fraudulent Transfers, and all proceeds of such property.

13. On the Sixteenth Claim for Relief, for judgment subordinating any claim of the Namvar Defendants and any entity in which any of the Namvar Defendants have an ownership interest, to the claims of any other creditor in these cases.

14. On the First, Second, Fifth, and Eleventh through Fifteenth Claims for Relief, for injunctive relief enjoining the transfer, hypothecation or alienation of any property or proceeds of

39

59701-001\DOCS_LA:216892.12

Case 2:11-cv-05320-GAF-CW   Document 1   Filed 06/24/11   Page 42 of 42   Page ID #:42
Case 2:10-ap-02945-BR    Doc 10-2   Filed 01/25/11   Entered 01/25/11 16:58:36   Desc
Case 2:10-ap-02945-BR   First Amended Complaint   Page 41 of 41   Entered 01/11/11 15:59:00   Desc
Main Document    Page 41 of 44

property obtained through the breaches of fiduciary duty or Namvar Fraudulent Transfers alleged herein.

15.     On the Objection to Claims, for an order disallowing pursuant to section 502(d) of the Bankruptcy Code the claim of any entity or transferee that is liable under sections 542, 550 or 553 of the Bankruptcy Code, unless such entity or transferee has paid the amount or turned over any such property for which such entity or transferee is liable.

16.     On all claims, for Plaintiffs' costs of suit.

17.     For such other and further relief as the Court may deem appropriate.

Dated:     January 11, 2011                    PACHULSKI STANG ZIEHL & JONES LLP

                                    By    /s/ Dean A. Ziehl
                                          Richard M. Pachulski
                                          Dean A. Ziehl
                                          Alan J. Kornfeld
                                          Gillian N. Brown

                                          Special Counsel for Bradley D. Sharp,
                                          Chapter 11 Trustee for Estate of Namco
                                          Capital Group, Inc.

40

59701-001\DOCS_LA:216892.12