# MEMBERSHIP INTERESTS PURCHASE AGREEMENT

by and among:

**WISHLAB 90, LLC**
a Delaware limited liability company;

and

**CANYON SPRINGS SHOPPING CENTER, LLC,**
a California limited liability Company

Dated as of June 29, 2007

# MEMBERSHIP INTERESTS PURCHASE AGREEMENT

THIS MEMBERSHIP INTERESTS PURCHASE AGREEMENT is entered into as of June 29, 2007, by and between WISHLAB 90 LLC, a Delaware limited liability company ("Buyer") and CANYON SPRINGS SHOPPING CENTER, LLC, a Delaware limited liability company ("Seller"), the sole member of Namco 8, LLC, a Delaware limited liability company ("Company"). Certain capitalized terms used in this Agreement are defined in Exhibit A.

## RECITALS

A. Seller owns beneficially and of record all of Company's issued and outstanding Membership Interests.

B. Seller desires to sell to Buyer, and Buyer desires to acquire from Seller, all of the Membership Interests for the consideration and on the terms and subject to the conditions set forth in this Agreement.

## AGREEMENT

In consideration of the foregoing premises and the mutual covenants and conditions set forth below, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, with the intent to be obligated legally and equitably, the parties to this Agreement agree as follows:

1. SALE OF MEMBERSHIP INTERESTS; CLOSING.

   1.1 Sale of Membership Interests. On the terms and subject to the conditions set forth in this Agreement, at the Closing, but effective as of the Effective Time, Seller shall sell, convey, assign, transfer and deliver to Buyer, and Buyer shall purchase from Seller, the entire Membership Interests of the Company free and clear of any Encumbrances.

   1.2 Consideration. The cash consideration for the Membership Interests (the "Purchase Price") will be Six Million Two Hundred Thousand and 00/100 Dollars ($6,200,000.00). That Purchase Price takes into account the on-going liability of the Company for that certain loan in the original amount of $7,900,000.00 with the current outstanding balance of $5,800,000.00 (the "Loan"), is secured by a deed of trust lien on that certain real property that is owned by the Company (the "Land"). The deed of trust was recorded on March 26, 2002 at Clark County Recorder's No. 2002-032702988 (the "Deed of Trust"). In accordance with Section 1.4(b), at the Closing, Buyer shall deliver the Purchase Price to Seller by wire transfer.

   1.3 Closing. The purchase and sale of Membership Interests provided for in this Agreement (the "Closing") will take place at the offices of Seller, 9301 Wilshire Blvd., Suite 315, Beverly Hills, California 90210 commencing at 10:00 a.m. (local time) on June 29, 2007, unless Buyer and Seller otherwise agree to a subsequent date for Closing if and as necessary to complete all required due diligence on the part of either Seller or Buyer as contemplated in this Agreement. Failure to consummate the purchase and sale of Membership Interests provided for in this Agreement on the initial date and time and at the place set forth above in this Section 1.3 will not result in the termination of this Agreement and will not relieve any party of any

other evidence of actions or actions in lieu of meetings taken by the Seller as Member or by the Company acting through its manager or managers.

### 2.2 Enforceability; Authority; No Conflict.

(a) This Agreement constitutes the legal, valid and binding obligation of Seller, enforceable against Seller in accordance with its terms. Seller has the absolute and unrestricted right, power, authority and capacity to execute and deliver this Agreement and to perform Seller's obligations under this Agreement.

(b) Neither the execution and delivery of this Agreement nor the consummation or performance of any of the Contemplated Transactions will: (i) breach (A) any provision of any of Company's governing documents or (B) any resolution adopted by Company's sole member; (ii) breach or give any Governmental Body or other Person the right to challenge any of the Contemplated Transactions or to exercise any remedy or obtain any relief under any Legal Requirement or any order to which Company or Seller, or any of the assets owned or used by Company, may be subject; or (iii) result in the imposition or creation of any Encumbrance upon or with respect to any of the assets owned or used by Company.

(c) Neither Seller nor Company is or will be required to obtain any Consent from any Person in connection with the execution and delivery of this Agreement or the consummation or performance of any of the Contemplated Transactions.

### 2.3 Capitalization and Liabilities.
Company's authorized capital consists solely of Membership Interests. Seller owns all of the Membership Interests. Seller is and will be on the Closing Date the sole record and beneficial owner and holder of all of the Membership Interests, free and clear of all Encumbrances. Other than the Membership Interests owned by Seller, there are no outstanding equity securities or other securities (including economic interests) of Company. There are no Contracts relating to the issuance, sale or transfer of any equity securities or other securities of Company. None of the outstanding equity securities or other securities of Company was issued in violation of the Securities Act of 1933 or any other Legal Requirement. All of the Membership Interests have been duly authorized and validly issued and are fully paid and nonassessable. Company does not own, or have any contract to acquire, any equity securities or other securities of any Person or any direct or indirect equity or ownership interest in any other business. Except for the Loan, there are no other "Contracts," liabilities or obligations of the Company that have been entered into and which remain in any force or effect (except for all Contracts, liabilities or obligations entered into or incurred by Theodore Kohan or his Representatives on behalf of the Company) and the Company will not enter into any other "Contract" on or before the Closing Date without the prior written consent of the Buyer, made after full disclosure of the terms and conditions of any such additional agreement.

references to "Articles," "Sections" and "Parts" refer to the corresponding Articles, Sections and Parts of this Agreement and the Disclosure Letter.

6.7  Time of Essence. With regard to all dates and time periods set forth or referred to in this Agreement, time is of the essence.

6.8  Governing Law. This Agreement will be governed by and construed under the laws of the State of California without regard to conflicts-of-laws principles that would require the application of any other law.

6.9  Execution of Agreement. This Agreement may be executed in one or more counterparts, each of which will be deemed to be an original copy of this Agreement and all of which, when taken together, will be deemed to constitute one and the same agreement. The exchange of copies of this Agreement and of signature pages by facsimile transmission shall constitute effective execution and delivery of this Agreement as to the parties and may be used in lieu of the original Agreement for all purposes. Signatures of the parties transmitted by facsimile shall be deemed to be their original signatures for all purposes.

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date first written above.

Buyer:

Wishlah 90, LLC,
a Delaware limited liability company

By: _____Faramarz Rahan_____
    Faramarz Rahun, Manager
    7-2-07

Seller:

Canyon Springs Shopping Center, LLC,
a California limited liability company

By: _____ 7/2/07
    Isaac Moradi, Manager

8