BRIAN L. DAVIDOFF (SBN 102654)
BDavidoff@GreenbergGlusker.com
BERNARD M. RESSER (SBN 92873)
BResser@GreenbergGlusker.com
LORI L. WERDERITCH (SBN 247345)
LWerderitch@GreenbergGlusker.com
GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067
Telephone: 310-553-3610
Facsimile: 310-553-0687

Attorneys for Defendants Mousa Namvar, Magdiel, LLC, DGADE of Delaware, LLC, Namco 8, LLC, Bunherst, LLC, and Wishlab 90, LLC

UNITED STATES DISTRICT COURT FOR THE

CENTRAL DISTRICT OF CALIFORNIA – LOS ANGELES DIVISION

| | |
|---|---|
| In re: NAMCO CAPITAL GROUP, INC., a California corporation,<br><br>Debtor. | Case No.: 2:11-cv-05320-GAF<br><br>Bankr. Case No.: 2:08-bk-32333-BR<br>Bankr. Adv. Proc. No.: 2:10-ap-02945-BR<br><br>Chapter 11 |
| BRADLEY D. SHARP, solely in his capacity as Chapter 11 Trustee of NAMCO CAPITAL GROUP, INC.,<br><br>Plaintiff,<br><br>vs.<br><br>MOUSA NAMVAR, et al.,<br><br>Defendants. | **NOTICE OF MOTION AND MOTION TO EXCLUDE EXPERT REPORT AND TESTIMONY OF DAVID JUDD; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>[Request for Judicial Notice and Declarations of Bernard M. Resser and Jason A. Engel filed herewith]<br><br>Date: August 19, 2013<br>Time: 9:30 a.m.<br>Place: Courtroom 740<br><br>Complaint Filed: October 26, 2010<br>Trial Date: October 29, 2013 |

**TO PLAINTIFF BRADLEY D. SHARP, CHAPTER 11 TRUSTEE OF NAMCO CAPITAL GROUP, INC., AND HIS ATTORNEYS OF RECORD:**

1

**PLEASE TAKE NOTICE** that on August 19, 2013 at 9:30 a.m., or as soon thereafter as the parties may be heard, in Courtroom 740 of the above-entitled Court, located at 255 East Temple St., Los Angeles, California 90012, Defendants Mousa Namvar, Magdiel, LLC, DGADE of Delaware, LLC, Namco 8, LLC, Bunherst, LLC, and Wishlab 90, LLC (collectively, "Mousa Defendants") will and hereby do move the Court for an order excluding the Expert Report of David Judd (the "Judd Report") submitted in support of the First Amended Complaint filed by Plaintiff Bradley D. Sharp ("Plaintiff"), Chapter 11 Trustee of Namco Capital Group, Inc., and testimony related thereto on the grounds that Plaintiff failed to comply with the expert disclosure requirements of Federal Rule of Civil Procedure 26(a)(2), and the Judd Report does not meet the evidentiary requirements for expert testimony pursuant to Federal Rule of Evidence 702.

This Motion is based upon this Notice of Motion, the attached Memorandum of Points and Authorities, the accompanying Request for Judicial Notice and Declarations of Bernard M. Resser and Jason A. Engel, and all supporting evidence filed concurrently herewith, all of the records, pleadings and papers on file in this action, and upon such further oral or documentary evidence as may be presented at or before the hearing on this Motion.

DATED: July 22, 2013

GREENBEG GLUSKER FIELDS
CLAMAN & MACHTINGER, LLP

By: /s/ Brian L. Davidoff
BRIAN L. DAVIDOFF
BERNARD M. RESSER
LORI L. WERDERITCH
Attorneys for Defendants Mousa Namvar, Magdiel, LLC, DGADE of Delaware, LLC, Namco 8, LLC, Bunherst, LLC, and Wishlab 90, LLC

## TABLE OF CONTENTS

Page

MEMORANDUM OF POINTS AND AUTHORITIES ................................................. 1
I. INTRODUCTION .................................................................................................. 1
II. STATEMENT OF RELEVANT FACTS ............................................................. 2
    A. Prior Proceedings ............................................................................................. 2
    B. The Court's Scheduling Order Regarding Expert Disclosures ................. 3
    C. Discovery .......................................................................................................... 3
    D. Plaintiff's Deficient Expert Report ............................................................... 3
    E. Plaintiff's Expert's Deposition ...................................................................... 7
III. ARGUMENT .......................................................................................................... 9
    A. Mr. Judd's Report and Opinions Should Be Excluded Because Plaintiff Did Not Comply with the Statutory Requirements for Expert Disclosures ................................................................................................. 9
    B. Mr. Judd's Report and Opinions Should Be Excluded Because the Judd Report Does Not Satisfy the Evidentiary Requirements for Expert Testimony ................................................................................. 12
IV. CONCLUSION ..................................................................................................... 13

## TABLE OF AUTHORITIES

Page

**CASES**

Daubert v. Merrell Dow Pharms., Inc.,
  509 U.S. 579 (1993) .......................................................................... 12

Elgas v. Colorado Belle Corp.,
  179 F.R.D. 296 (D. Nev. 1998) .................................................... 9, 10

Kumho Tire Co., Ltd. v. Carmichael,
  119 S.Ct. 1167 (1999) ....................................................................... 12

McCloughan v. City of Springfield,
  208 F.R.D. 236 (C.D. Ill. 2002) ................................................... 9, 10

Smith v. Union Pacific Railroad Co.,
  168 F.R.D. 626 (N.D. Ill. 1996) ............................................... 9, 10, 11

Upsher-Smith Lab. v. Mylan Lab., Inc.,
  944 F.Supp. 1411 (D. Minn. 1996) .................................................. 10

**OTHER AUTHORITIES**

F.R.C.P. 26(a)(2)(B)(i), (ii) ....................................................................... 9

F.R.C.P. 37(c)(1) ..................................................................................... 10

Federal Rule of Civil Procedure 12(b)(6) ................................................. 2

Federal Rule of Civil Procedure 26(a)(2) ................................................. 9

Federal Rule of Evidence 702 ................................................................ 12

Rule 16 ...................................................................................................... 3

Rule 26(a)(2)(B)'s ................................................................................... 10

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Defendants Mousa Namvar, Magdiel, LLC, DGADE of Delaware, LLC, Namco 8, LLC, Bunherst, LLC, and Wishlab 90, LLC (collectively, the "Mousa Defendants") seek to exclude the report of David Judd (the "Judd Report"), Plaintiff Bradley D. Sharp, Chapter 11 Trustee of Namco Capital Group, Inc.'s ("Plaintiff") designated expert, and his testimony related thereto on the grounds the Judd Report does not comply with the federal expert disclosure requirements and does not satisfy the evidentiary requirements for expert testimony.

Instead of disclosing the requisite expert information, Plaintiff has repeatedly and intentionally concealed it. The federal expert disclosure requirements are designed so that the parties have sufficient information to cross-examine each other's experts, with or without a deposition. To that end, experts must submit reports that not only disclose their opinions but also the "basis and reasons" for and "data or other information" considered in forming their opinions. Mr. Judd failed in his report to provide any information regarding the basis for the multi-million dollar adjustments he made to Namco's financial statements in order to form his opinions. This is all the more problematic as both this Court, and before it the Bankruptcy Court, have expressed specific concerns about the authenticity and veracity of Namco's books and records. Mr. Judd also failed to bring a single document to the first day of deposition in response to any of the Mousa Defendants' 20 requests for production. Incredibly, he was "advised by counsel [he] didn't need to bring anything."

Although he produced information on the second day of his deposition, it was so voluminous that it took most of the day just for Defendants' counsel to format and print it. Thus, it was of absolutely no use in examining Mr. Judd at his deposition. Moreover, Defendants are prejudiced in that their expert Jason Engel will not be able to review and analyze the new information in time to rebut the Judd Report during his own upcoming deposition. While Plaintiff has offered to make Mr. Judd available

again, the Mousa Defendants' counsel will not be able to consult with Mr. Engel about the voluminous new information in advance of another session and the discovery cutoff.

In addition to Plaintiff's failure to comply with the disclosure requirements, the Judd Report also does not satisfy the evidentiary requirements for expert testimony. It does not include the "sufficient facts or data" required for admission of expert testimony.

Based on these deficiencies, the Judd Report and any testimony related to the opinions therein should be excluded.

## II. STATEMENT OF RELEVANT FACTS

### A. Prior Proceedings.

Debtor Namco Capital Group, Inc. ("Namco") entered bankruptcy via an involuntary petition on December 22, 2008, Case No. 2:08-bk-32333-BR, pending in the United States Bankruptcy Court for the Central District of California. Soon thereafter, Plaintiff was appointed as Chapter 11 Trustee of Namco.

Plaintiff spent more than two years and many millions of dollars investigating the collapse of Namco. As part of that effort, Plaintiff filed the First Amended Complaint ("FAC") herein, alleging that the Mousa Defendants are alter-egos of one another and are responsible for damages incurred by Namco in connection with various real estate deals and monetary transfers. The FAC purports to hold all of the Defendants liable for a series of transfers from Namco on a "one for all and all for one" alter-ego theory. The FAC however is bereft of the detail necessary to show how and why the Mousa Defendants are allegedly liable. *See* Request for Judicial Notice ("RJN"), Ex. 1.

Accordingly, on March 28, 2011, while this litigation was still pending with the United States Bankruptcy Court, the Mousa Defendants filed a Motion to Dismiss Pursuant to Pursuant to Federal Rule of Civil Procedure 12(b)(6) (the "Motion to Dismiss"). RJN, Ex. 2. The Motion to Dismiss complained that Plaintiff did not

adequately provide detail of the damages sought, *e.g.*, as to the Fourth and Eleventh Causes of Action. *Id.* at pp. 17-24. While the Motion to Dismiss was ultimately denied, it put Plaintiff on notice of the FAC's failure to identify the damages sought.

### B. The Court's Scheduling Order Regarding Expert Disclosures.

The Court issued its Rule 16 Scheduling Order in this action on June 25, 2012 (Declaration of Bernard M. Resser ("Resser Decl."), Ex. D), providing the following deadlines relevant to this motion:

- Discovery, including expert discovery, must be completed by July 26, 2013 (Id. at p. 2);
- Expert witness disclosures must be served no later than 70 days prior to the discovery cutoff, i.e., May 17, 2013 (Id.); and
- Rebuttal expert reports must be served no later than 30 days after the other party's disclosure (Id. at p. 3).

### C. Discovery

During the course of discovery in this case, Plaintiff has produced tens of thousands of pages of documents. Much like the confusing nature of the FAC, the documents produced (while extensive) have not been provided in any organized fashion, but rather have required the Mousa Defendants to spends tens of thousands of dollars to ferret through them to "find a needle in the haystack." In fact, the parties engaged in a "meet and confer" conference for the very purpose of guiding the Mousa Defendants to where in the avalanche of documents the information pertinent to Plaintiff's claims could be found. With this background, Plaintiff was well aware it was increasingly important to identify with greater particularity their claims during discovery.

### D. Plaintiff's Deficient Expert Report.

Plaintiff's expert report continues to hide the ball. On May 17, 2013, Plaintiff served the report of its expert David Judd ("Judd Report") (Resser Decl., at ¶ 2.) In the Judd Report, Mr. Judd states his opinion regarding the date of Namco's

3

insolvency. He also purports to perform a liquidation analysis in connection with preferential transfers allegedly made by Namco. (Declaration of Jason A. Engel ("Engel Decl."), Ex. F at p. 2).)

Defendants' expert Jason A. Engel reviewed and analyzed the Judd Report and served a rebuttal expert report on June 17, 2013 ("Engel Rebuttal"). (Engel Decl., at ¶ 4 and Ex G.) However, Mr. Engel was unable to properly evaluate and rebut Mr. Judd's findings and analysis due to material deficiencies in the Judd Report as set forth below. (Id. at ¶ 4.)

### 1. Cash Flow Analysis

There are material unexplained differences between Mr. Judd's cash flow analysis and the cash flow analysis derived directly from Namco's financial statements. (Engel Decl., at ¶ 5 and Ex. G, Schedules C, C-1, C-2, C-3.) Mr. Engel could not identify the reason(s) for the material differences, however, because the Judd Report did not include the source of, basis for, or schedules that reference how Mr. Judd's cash flow numbers were derived. (Id. at ¶ 5.)

Based on the cash flow analysis that Mr. Engel prepared, the Judd Report materially understates cash flow for certain years. (Engel Decl., at ¶ 7.) Mr. Judd's conclusion that Namco never generated cash flow subsequent to March 31, 2006 appears to be incorrect. (Engel Decl., at ¶ 7 and Ex. F at p. 10.) Mr. Engel determined through his review of Namco's financial statements that Namco generated a $4.7 million cash flow in 2007. (Engel Decl., at ¶ 7 and Ex. G, Schedules C.)

Mr. Judd's cash flow analysis and conclusions are also materially deficient in that Mr. Judd did not provide any supporting schedules, or sources, or include any footnotes indicating on what he based the specific financial data used to reach his findings and conclusions. (Engel Decl., at ¶ 6.)

//
//
//

4

## 2. Insolvency Analysis

The financial data contained in Mr. Judd's balance sheets is materially different from the financial data contained in Namco's March 31, 2006 balance sheet[1]. (Engel Decl., at ¶ 9 and Ex. G, Schedule D.) Mr. Engel could not identify the reason(s) for the differences, however, because (similar to his cash flow analysis) Mr. Judd did not include the source of or basis for the beginning balances used in his insolvency analysis and did not attach the documents on which he relied. (Engel Decl., at ¶ 9.) When asked to produce this information, Plaintiff's counsel refused. (Resser Decl., at ¶ 8.)

Further, Mr. Judd's analysis and conclusions (See Engel Decl., Ex. F (Balance Sheet Analysis #2)) are materially deficient because he bases them on over $25 million of adjustments he made to Namco's March 31, 2006 balance sheet. The adjustments are also materially deficient because he did not reference or provide any supporting schedules or analysis or sources or include any footnotes, indicating from where he derived these substantial adjustments. Mr. Judd's $25 million adjustment resulted in an insolvency deficiency opinion of approximately $4 million (i.e., liabilities exceeded assets by $4 million). (Engel. Decl., at ¶ 11 and Ex. F at p. 18).

Overall, the $25 million adjustments consisted of an upward adjustment to Namco's liabilities. Mr. Judd made a $20 million adjustment for accrued interest payable to Namco Financial Inc.("NFI") and Namco Financial Exchange, Inc.

---

[1] The Trustees' First Financial Report ("Trustees' Report"), which Mr. Judd's firm participated in, contains findings that: (a) Namco's profits were realized from real estate investments (Engel Decl., Ex. G, Schedule T at ¶¶ 1, 6); (b) Namco was often repaid with principal and interest from realized profits (id. at ¶ 14); (c) if certain properties were sold, profits in excess of $100 million could be related from real estate investments (id. at ¶ 11); (d) the expectation of profits evaporated due to the "largest financial downturn in recent memory" (id. at ¶¶ 4, 7, 13); and that (e) Namco failed due to economic contraction and downturn (id. at ¶¶ 8-9).

Mr. Judd's analysis and conclusion that Namco was insolvent as of March 31, 2006 is also inconsistent with these findings in the Trustees' Report. Real estate values had reached their peak at the end of 2006 and, accordingly, real estate prices increased after March 31, 2006. Moreover, the decline in real estate values was relatively modest in 2007; most of the decline occurred in 2008. (Engel Decl., Ex. G, Schedules G-1, G-2, and G-3).)

("NFE"). (Engel Decl., Ex. F at p. 18.) In this regard, Mr. Judd did not provide any calculations, schedules or information as to how he arrived at his $20 million adjustment. Similarly, Mr. Judd made an upward adjustment of approximately $5 million to Namco's liability of accrued interest payable to Namvar family members (id.), without any calculations, schedules or information as to how he arrives at his $5 million adjustment.

### 3. Presentation of Background Facts

Mr. Judd makes various alleged statements of fact regarding Namco and the Namvar family without any factual basis or referenced sources. In addition, Mr. Judd makes various references and allegations regarding various Namvar family members without identifying the specific family member, the degree of the family member's alleged involvement, or the degree of Ezri Namvar's involvement. (Engel Decl., at ¶ 13.)

For example, Mr. Judd states that "beginning in 2002, using investment capital from [Namco], Ezri and the Namvar Family purchased significant amounts of real property." (Engel Decl., at ¶ 14 and Ex. F at p. 4.) Mr. Judd further states that the "primary consumers of these funds during 2004 and 2005 were members of the Namvar Family either individually or through various LLC's." (Id.) Mr. Judd does not, however, give any indication of which members of the "Namvar Family" he is referring to, the source of the financial or other information that he relied on to conclude that they used investment capital from Namco to purchase "significant amounts of real property," or the amount of capital allegedly used by the unidentified family members or Ezri Namvar. Therefore, these conclusions have no factual basis and are misleading. The Judd Report is fraught with similar, unsupported conclusions

of fact. (Engel Decl., at ¶ 14.)[2]

### E. Plaintiff's Expert's Deposition

Defendants served a Notice of Deposition and Request for Production of Documents to Mr. Judd on June 26, 2013 (the "Deposition Notice"). (Resser Decl., Ex. B.) Defendants requested that Mr. Judd produce 20 categories of documents, including all documents "relied upon, reviewed, consulted or otherwise used" which related to the Judd Report. (Resser Decl., at ¶ 4 and Ex. C (Request No. 15).)

Mr. Judd appeared for deposition on July 8-9, 2013. Mr. Judd could not confirm whether the Curriculum Vitae he provided to Defendants was up to date. (Id., Ex. C (74:4-10).) He admitted both that he has never before testified in a fraudulent transfer case (id. at 74:11-13), and that a previous insolvency opinion he offered was excluded by the court (id. at 71:14-22.)

Mr. Judd's insolvency findings and conclusions are based entirely on adjustments he made to the actual books and records of Namco. Id. at 93:3-21.) Yet, Mr. Judd admitted that significant, relevant information indicating the basis for his adjustments exceeding $25 million was omitted from the Judd Report.

Mr. Judd admitted that the Judd Report omitted the specific source of the beginning balances in his insolvency analysis. Instead, the Judd Report referred to a list of 35 broad categories of documents Mr. Judd claims to have reviewed in preparing his report. (Id. at 91:8-92:5; 98:11-99:9.) Mr. Judd testified that the source of the beginning balances could be obtained within two exceptionally broad categories

---

[2] The generality of lumping the entire "Namvar Family" together as though they were one individual is consistent with Plaintiff's strategy throughout the Namco bankruptcy case. Even Plaintiff as Trustee in the Namco bankruptcy case had to recognize that the lumping of the entire Namvar Family into one is inadequate. After Defendants' objection to this nomenclature in the proposed plan of reorganization filed by Plaintiff in the Namco bankruptcy case, Plaintiff filed an amended document reflecting at least to some extent the distinction between the Namvar Family defendants. See RJN, Ex. 3. An expert should be held to at least as high a standard.

7

among the 35: "Namco Capital Group, Inc. – Monthly Balance Report – 2001 through 2008" and "QuickBooks file – Namco Capital Group, Inc." (Id. 99:10-21; See also Exhibit 1 to Ex. F (Nos. 7 and 11).)

Mr. Judd admitted that the Judd Report also omitted the analysis he prepared of accrued interest payable for the Namvar family, NFE, and NFI (id. at 101:5-19; 143:12-144:20) because he "just didn't think it was necessary" (id. at 143:21-144:4).

Mr. Judd admitted that the Judd Report also omitted a copy of the March 31, 2006 balance sheet he adjusted in forming the findings and conclusions of his insolvency analysis. (Id. at 103:25-104:13.) Even though this document was the starting point and critical to his analysis, he claimed to be unsure whether he still had a copy of the balance sheet and that he "wouldn't even know where to put [his] hands on it" if he did. (Id. at 104:14-24.)

Despite these admitted deficiencies in the Judd Report, Defendants' express request in the Deposition Notice for all documents related to the Judd Report, and a meet and confer between counsel (Resser Decl. at ¶ 4), **Mr. Judd did not bring one responsive document to his deposition on July 9** (Resser Decl., Ex. C (52:22-24; 98:11-18; 201:17-20; 202:12-14)) because he was **"advised by counsel [he] didn't need to bring anything"** (id. at 101:20-23).

On July 9, day two of Mr. Judd's deposition, he produced several Excel files with multiple spreadsheets, purporting to constitute the documents he relied on in making over $25 million in adjustments to Namco's actual financial statements. (Resser Decl., at ¶7 and Exs. C (202:15-203:23) and D.) The spreadsheets cover a period of 15 years, back to 1998. It took Defendants' counsel six hours to format and print them. When printed, they consisted of approximately six inches of 17- inch by 11- inch pages in very fine, single-spaced print. (Resser Decl., at ¶ 7 and Ex. D.) Defendants' expert cannot review and analyze this new material and communicate his findings to Defendants' counsel in time for a subsequent day of meaningful deposition on this subject prior to the discovery cutoff of July 26. (Resser Decl., at ¶ 9.) Nor can

8

MOTION TO EXCLUDE
EXPERT REPORT AND TESTIMONY
59776-00002/1950211.4

1 he do so in advance of his own deposition.

## III. ARGUMENT

### A. Mr. Judd's Report and Opinions Should Be Excluded Because Plaintiff Did Not Comply with the Statutory Requirements for Expert Disclosures.

Federal Rule of Civil Procedure 26(a)(2) governs expert witness disclosures. When expert witnesses specially retained by a party are designated, the designation must be accompanied by a written report. The expert report must contain, among other things: (1) the "basis and reasons" for the opinions therein and (2) the "data or other information" considered in forming the opinion. F.R.C.P. 26(a)(2)(B)(i), (ii) (emphasis added).

The disclosure requirement was promulgated based on concerns about "less than meaningful" disclosures regarding expert witness testimony. Smith v. Union Pacific Railroad Co., 168 F.R.D. 626, 627 (N.D. Ill. 1996).

> The reason for requiring expert reports is "the elimination of unfair surprise to the opposing party and the conservation of resources. The test of a report is whether it was sufficiently complete, detailed and in compliance with the Rules so that surprise is eliminated, unnecessary depositions are avoided, and costs are reduced."

Elgas v. Colorado Belle Corp., 179 F.R.D. 296, 299 (D. Nev. 1998) (citations omitted); see also McCloughan v. City of Springfield, 208 F.R.D. 236, 240 (C.D. Ill. 2002).

The law is clear that where a party fails to comply with the statutory requirements with respect to the disclosure of expert opinion, the proper remedy is to exclude the testimony of the expert in question. As explained in Elgas:

> Rule 26(a)(2)(B) appears "to require exact compliance in all particulars with the disclosures" requirement. . . "[A] literal

9

>reading of [the Rules] would result in the application of the automatic exclusion of an expert's trial testimony if there was not complete compliance with the requirements of Rule 26(a)(2)(B), unless the court finds that there was substantial justification for the failure to make complete disclosure or that failure to disclose is harmless."

179 F.R.D. at 299, citing Sullivan v. Glock, Inc., 175 F.R.D. 497, 503 (D. Md. 1997). See also McCloughan, 208 F.R.D. at 236 ("If a party fails to comply with Rule 26(a)(2)(B)'s disclosure requirements, a district court has the authority to strike the party's expert as a sanction."); F.R.C.P. 37(c)(1).

Reports that fail to disclose the facts and rationale which underlie the opinion, are inadequate. See, e.g., Upsher-Smith Lab. v. Mylan Lab., Inc., 944 F.Supp. 1411, 1440 (D. Minn. 1996) (Expert witness reports that were "uninformative, boilerplate renditions" and "wholly fail[ed] to disclose, in any intelligible way, the facts and rationale which underlie[d] the opinions expressed" were insufficient and "provide[d] virtually no assistance to opposing counsel in preparing to cross-examine" the experts).

A report stating simply that an expert's opinion is based on a "review" of relevant documents is similarly violative of the disclosure requirements and may be excluded. See Smith, 168 F.R.D. at 629. In Smith, a doctor's opinion that plaintiff's knee injury was the result of a pre-existing condition was inadequate where his expert report disclosed only that he based the opinion "upon a review of the complete medical records of the plaintiff and the plaintiff's deposition testimony." Id.

In this case, it is beyond dispute that the Judd Report does not comply with the federal expert disclosure requirements. It does not disclose the "basis and reasons" for Mr. Judd's opinions or include the "data or other information" on which he based his opinions. Mr. Judd concedes that the Judd Report omits material information which he claims to have relied on in forming his opinion that Namco was insolvent as of

March 31, 2006. Although Mr. Judd bases his entire insolvency analysis on adjustments made to Namco's books and records, the Judd Report does not include any of the documents on which he claims to have based the adjustments or the documents forming the basis for his beginning balances. Mr. Judd's general reference to a list of 35 broad categories of documents he reviewed in preparing his report is legally insufficient.[3] (See Smith, supra, at 629.)

In addition to his woefully inadequate report, Mr. Judd (and/or his counsel) simply thumbed his nose at Defendants' Deposition Notice, remarkably failing to produce a single document on the first day of his deposition based on the instruction of Plaintiff's counsel. When prodded into producing information on the second day, it was so voluminous that it took six hours to format and print. It would likely take Defendants' expert weeks to wade through and form an opinion about the (at least) 6 inches of 17-inch by 11-inch spreadsheets of fine print. Thus, not only did Defendants' counsel not have an opportunity to effectively examine Mr. Judd at his deposition, based on his tardy disclosures, they will not have an opportunity to do so prior to the July 26 discovery cutoff in this action. Moreover, Defendants' expert Mr. Engel will not have an opportunity to rebut Mr. Judd's report prior to his deposition.

There is no justification, much less "substantial justification," for Mr. Judd's dereliction. The purpose of the federal expert disclosure rules is to provide complete and meaningful information to one's adversaries to enable them to effectively prepare for examination of the expert and to allow them to properly designate a rebuttal expert. By completely flouting the Federal Rules, Plaintiff has interfered with Defendants' right to effectively rebut the Judd Report and, as a result, Defendants' counsel could not meaningfully examine Mr. Judd at his deposition.

---

[3] Plaintiff's counsel contended at Mr. Judd's deposition that Plaintiff had already produced or made available the broad categories of documents reviewed by Mr. Judd. (Resser Decl., at ¶ 8.)

11

Such conduct should not be countenanced. The Court should exclude the Judd Report and any testimony related to the opinions stated therein. This is especially so given the prejudice suffered by Defendants both in examining Mr. Judd and their expert's ability to prepare a rebuttal.

### B. Mr. Judd's Report and Opinions Should Be Excluded Because the Judd Report Does Not Satisfy the Evidentiary Requirements for Expert Testimony.

Testimony by expert witnesses is governed by Federal Rule of Evidence 702, which provides that even if scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, expert testimony is only admissible if (1) the testimony is based upon sufficient facts or data; (2) the testimony is the product of reliable principles and methods; and (3) the expert has applied the principles and methods reliably to the facts of the case. See also Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 592-93 (1993) (assessment of expert testimony is to make preliminary assessment whether reasoning or methodology underlying witness's testimony is valid and can properly be applied to evidence or fact in issue). In Daubert, 509 U.S. 579 (1993), the leading decision on expert testimony, the United States Supreme Court contemplated "a gatekeeping role for the [Federal trial] judge," stating that the Rules "assign to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." Id. at 597. Since Daubert, the Supreme Court has elaborated its holding, stating "that Daubert's ... holding-setting forth the trial judge's general 'gatekeeping' obligation-applies not only to testimony based on 'scientific' knowledge, but also to testimony based on 'technical' and 'other specialized' knowledge." Kumho Tire Co., Ltd. v. Carmichael, 119 S.Ct. 1167, 1171 (1999) (citation omitted).

Based on the same deficiencies stated above with respect to expert disclosures, the Judd Report (and testimony related thereto) is also not based on "sufficient facts or

data" to be admissible as expert testimony. Mr. Judd's entire insolvency analysis is based on over $25 million in adjustments to Namco's financial statements for which the Judd Report provides absolutely no basis or data. The Judd Report also does not provide a source or basis for the beginning balances used in either Mr. Judd's cash flow analysis or insolvency analysis. The Judd Report also does not provide any supporting schedules, analysis or cite any specific sources on which Mr. Judd based the financial data used in either his cash flow analysis or insolvency analysis.

Based on the Judd Report's complete lack of "facts or data," let alone the requisite "sufficient" facts or data, the Court should use its gatekeeping role and exclude the Judd Report and any testimony regarding the opinions stated therein.

## IV. CONCLUSION

In light of Plaintiff's failure to comply with the applicable rules regarding expert disclosures and testimony, the Mousa Defendants respectfully request that the Court exclude the Judd Report and any testimony related thereto.

DATED: July 22, 2013

GREENBERG GLUSKER FIELDS
CLAMAN & MACHTINGER, LLP

By: */s/ Brian L. Davidoff*
BRIAN L. DAVIDOFF
BERNARD M. RESSER
LORI L. WERDERITCH
Attorneys for Defendants Mousa Namvar, Magdiel, LLC, DGADE of Delaware, LLC, Namco 8, LLC, Bunherst, LLC, and Wishlab 90, LLC

# PROOF OF SERVICE

## STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am over the age of 18 and not a party to the within action; I am employed by GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP in the County of Los Angeles at 1900 Avenue of the Stars, 21st Floor, Los Angeles, California 90067.

On July 22, 2013, I served the foregoing document(s) described as:
**NOTICE OF MOTION AND MOTION TO EXCLUDE EXPERT REPORT AND TESTIMONY OF DAVID JUDD; MEMORANDUM OF POINTS AND AUTHORITIES**

☐ By placing the true copies thereof enclosed in sealed envelopes addressed as stated below.

☐ **(BY MAIL)** I placed said envelope(s) for collection and mailing, following ordinary business practices, at the business offices of GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER, LLP, and addressed as shown on the attached service list, for deposit in the United States Postal Service. I am readily familiar with the firm's practice for collection and processing correspondence for mailing with the United States Postal Service, and said envelope(s) will be deposited with the United States Postal Service on said date in the ordinary course of business.

☒ **(BY OVERNIGHT DELIVERY).** On July 22, 2013 I caused said document(s) to be placed in a Norco Overnite envelope and taken to the Norco Overnite Drop Box located at 1900 Avenue of the Stars, Los Angeles, California 90067 for delivery to the parties listed on the attached service list:

VIA NORCO OVERNITE
Honorable Gary A. Feess
United States District Court
255 East Temple Street, Courtroom 740
Los Angeles, California 90012

☒ **(BY ELECTRONIC SERVICE)** by causing the foregoing document(s) to be electronically filed using the Court's Electronic Filing System which constitutes service of the filed document(s) on the individual(s) listed on the attached mailing list.

Alan J Kornfeld: akornfeld@pszyj.com
Elissa Wagner: ewagner@pszyj.com
Genise R. Reiter: grr@srblaw.com
Alan Frank Broidy: fbroidy@ix.netcom.com
Robert B Mobasseri: Robert@lawyer.com
Brian Leslie Davidoff: BDavidoff@GreenbergGlusker.com; jreinglass@greenbergglusker.com; kwoodson@greenbergglusker.
Lori L Werderitch    LWerderitch@GreenbergGlusker.com,
Office of the U.S. Trustee: ustpregion16.la.ecf@usdoj.gov

14

MOTION TO EXCLUDE
EXPERT REPORT AND TESTIMONY

59776-00002/1950211.4

☒ (Federal) I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made. I declare under penalty of perjury that the above is true and correct.

Executed on July 22, 2013 at Los Angeles, California.

/s/ Jan Reinglass
JAN REINGLASS