1  BRIAN L. DAVIDOFF (SBN 102654)
   BDavidoff@GreenbergGlusker.com
2  BERNARD M. RESSER (SBN 92873)
   BResser@GreenbergGlusker.com
3  LORI L. WERDERITCH (SBN 247345)
   LWerderitch@GreenbergGlusker.com
4  GREENBERG GLUSKER FIELDS CLAMAN
    & MACHTINGER LLP
5  1900 Avenue of the Stars, 21st Floor
   Los Angeles, California 90067
6  Telephone: 310-553-3610
   Facsimile:  310-553-0687
7
8  Attorneys for Defendants Mousa Namvar,
   Magdiel, LLC, DGADE of Delaware, LLC,
9  Namco 8, LLC, Bunherst, LLC, and
   Wishlab 90, LLC

10              UNITED STATES DISTRICT COURT FOR THE

11                   CENTRAL DISTRICT OF CALIFORNIA

12

| | |
|---|---|
| 13  In re: NAMCO CAPITAL GROUP,<br>    INC., a California corporation,<br>14<br>           Debtor.<br>15 | Case No.: 2:11-cv-05320-GAF<br><br>Bankr. Case No.: 2:08-bk-32333-BR<br>Bankr. Adv. Proc. No.: 2:10-ap-02945-BR |
| 16 ———————————————<br>17<br>18<br>19  BRADLEY D. SHARP, solely in his<br>    capacity as Chapter 11 Trustee of<br>20  NAMCO CAPITAL GROUP, INC.,<br>21           Plaintiff,<br>22  vs.<br>23  MOUSA NAMVAR, et al.,<br>24           Defendants.<br>25<br>26<br>27<br>28 | Chapter 11<br><br>**NOTICE OF MOTION AND MOTION FOR AN ORDER:**<br><br>**(A)   LIMITING DAVID JUDD AND BERKELEY RESEARCH GROUP'S TESTIMONY ON THE MONETARY CLAIMS AND DAMAGES ALLEGED BY PLAINTIFF BRADLEY D. SHARP, CHAPTER 11 TRUSTEE OF NAMCO CAPITAL GROUP, INC TO REBUTTAL EXPERT TESTIMONY LIMITED IN SCOPE TO THE TESTIMONY ACTUALLY GIVEN AT TRIAL BY THE MOUSA DEFENDANTS' FORENSIC ACCOUNTING EXPERT; AND**<br><br>**(B)   EXCLUDING BOTH EXPERT AND PURPORTED PERCIPIENT WITNESS TESTIMONY FROM MR. JUDD AND BERKELEY RESEARCH GROUP ON THE MONETARY CLAIMS AND DAMAGES ALLEGED** |

**BY PLAINTIFF DURING PLAINTIFF'S CASE-IN-CHIEF**

**BY DEFENDANTS MOUSA NAMVAR, MAGDIEL, LLC, NAMCO 8, LLC, WISHLAB 90, LLC, BUNHERST, LLC, AND DGADE OF DELAWARE, LLC; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

[Request for Judicial Notice and Engel, Werderitch, and Resser Declarations filed herewith]

Date:   August 19, 2013
Time:   9:30 a.m.
Place:  Courtroom 740

Complaint Filed:   October 26, 2010
Trial Date:        October 29, 2013

## TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

**PLEASE TAKE NOTICE** that on August 19, 2013 at 9:30 a.m., or as soon thereafter as the parties may be heard, in Courtroom 740 of the above-entitled Court, located at 255 East Temple St., Los Angeles, California 90012, Defendants Mousa Namvar, Magdiel, LLC, DGADE of Delaware, LLC, Namco 8, LLC, Bunherst, LLC, and Wishlab 90, LLC (collectively, "Mousa Defendants") will and hereby do move the Court for an Order:

(a)    Limiting David Judd and Berkeley Research Group's ("BRG's") testimony on the monetary claims and damages alleged by Plaintiff Bradley D. Sharp, Chapter 11 Trustee of Namco Capital Group, Inc. ("Plaintiff") to rebuttal expert testimony limited in scope to the testimony actually given at trial by the Mousa Defendants' forensic accounting expert; and

(b)    Excluding both expert and purported percipient witness testimony from Mr. Judd and BRG on the monetary claims and damages alleged by Plaintiff during Plaintiff's case-in-chief.

2

59776-00002/1950215.8

1    This Motion is made on the grounds that Plaintiff's damages analysis was

2    performed by a designated forensic accounting expert, David Judd (and his company,

3    BRG), who were not disclosed by Plaintiff during Plaintiff's initial expert disclosures,

4    and were disclosed only in rebuttal to the Mousa Defendants' forensic accounting

5    expert's more limited opinions, all causing great prejudice to the Mousa Defendants.

6    *See,* Fed. R. Civ. Proc. 26(a)(2)(D)(ii); *Goodman v. Staples The Office Superstore,*

7    *LLC* (9th Cir. 2011) 644 F.3d 817, 826-27 (affirming exclusion of rebuttal expert

8    witnesses during plaintiff's case-in-chief); *Lindner v. Meadow Gold Dairies, Inc.*, 249

9    F.R.D. 625, 636 (D. Ha. 2008) (where "rebuttal" was actually "of a direct nature" to a

10   "central factual issue" in the case, the court held that the expert should have been

11   disclosed and a report produced within the time provided for initial reports).

12   This Motion is based upon this Notice of Motion and Motion, the attached

13   Memorandum of Points and Authorities, the accompanying Request for Judicial

14   Notice and Declarations of Jason A. Engel, Lori L. Werderitch, and Bernard M.

15   Resser and exhibits thereto, and all supporting evidence filed concurrently herewith,

16   all of the records, pleadings and papers on file in this action, and upon such further

17   oral or documentary evidence as may be presented at or before the hearing on this

18   Motion.

19   DATED:  July 22, 2013                    GREENBEG GLUSKER FIELDS
                                              CLAMAN & MACHTINGER, LLP
20

21                                           By: */s/ Brian L. Davidoff* .
                                                 BRIAN L. DAVIDOFF
22                                               BERNARD M. RESSER
                                                 LORI L. WERDERITCH
23                                           Attorneys for Defendants Mousa Namvar,
                                             Magdiel, LLC, DGADE of Delaware, LLC,
24                                           Namco 8, LLC, Bunherst, LLC, and Wishlab
                                             90, LLC
25

26

27

28

                                        3

59776-00002/1950215.8

1

2

# TABLE OF CONTENTS

I.      INTRODUCTION ..............................................................................................1

II.     FACTUAL SUMMARY .....................................................................................2

        A.      Prior Proceedings.....................................................................................2

        B.      Appointment of LECG, LLC and BRG...................................................3

        C.      The Court's Scheduling Order Regarding Expert Disclosures.................3

        D.      Plaintiff's Expert Disclosures Did Not Include a Damages Analysis ......3

        E.      The Mousa Defendants' Expert Report As to Namco's Lack of  Damages...............4

        F.      The Parties Meet and Confer Concerning the Absence of an Expert  Damages
                Analysis from Plaintiff's Initial Designations ..........................................5

        G.      Plaintiff Attempts to Submit an Expert Damages Analysis for the  First Time
                in Rebuttal Disclosures............................................................................6

        H.      The Parties Meet and Confer Concerning the Motion................................7

        I.      David Judd Admits at His Deposition There is No Material  Distinction
                Between His Expert and Purported Percipient Witness  Opinion ...............8

III.    AS A REBUTTAL EXPERT WITNESS, MR. JUDD'S DAMAGES  TESTIMONY
        SHOULD BE EXCLUDED FROM PLAINTIFF'S CASE- IN-CHIEF...............11

        A.      Mr. Judd's and BRG's Lay Opinion Must Be Excluded Because It Is Based
                On Specialized Knowledge and Therefore Triggers the  Requirements of
                FRCP 26(a)(2)(B) ...................................................................................11

        B.      Mr. Judd's and BRG's Damages Testimony Should Be Limited to
                Rebuttal...................................................................................................12

IV.     THE MOUSA DEFENDANTS WILL INCUR SUBSTANTIAL  PREJUDICE IF
        MR. JUDD'S AND BRG'S DAMAGES TESTIMONY IS  NOT LIMITED AS
        REQUESTED.....................................................................................................14

V.      CONCLUSION ..................................................................................................16

i

59776-00002/1950215.8

# TABLE OF AUTHORITIES

**CASES**                                                                         **PAGE**

*AZ Holding, L.L.C. v. Frederick,*
  2009 WL 2432745 (D. Ariz. Aug. 10, 2009) ........................................ 13

*Bowman v. General Motors Corp.,*
  427 F.Supp. 234 (D.C. Pa. 1977) ........................................................ 13

*Britz Fertilizers, Inc. v. Bayer Corp.,*
  2009 WL 1748775 (E.D. Cal. Jun. 17, 2009) ...................................... 12

*Crowley v. Chait,*
  322 F. Supp. 2d 530 (D.N.J. 2004) ...................................................... 14

*De La Torre v. Merck Enters., Inc.,*
  540 F.Supp.2d 1066 (D. Az. 2008) ...................................................... 11

*Donell v. Fidelity Nat. Title Agency of Nev.,*
  2012 WL 170990 (D. Nev. Jan. 20., 2012) .......................................... 14

*Emerick v. U.S. Suzuki Motor Corp.,*
  750 F.2d 19 (3d Cir.1984) .................................................................... 14

*Exxon Corp. v. Halcon Shipping Co.,*
  156 F.R.D. 586 (D.N.J. 1994) .............................................................. 13

*Goodman v. Staples The Office Superstore, LLC*
  (9th Cir. 2011) 644 F.3d 817 ........................................................ 13, 14

*Int'l Bus. Machines Corp. v. Fasco Indus., Inc.,*
  1995 WL 115421 (N.D. Cal. Mar. 15, 1995) ...................................... 13

*Johnson v. Grays Harbor Community Hosp.,*
  2007 WL 4510313 (W.D. Wash. Dec. 18, 2007) ................................ 13

*Lindner v. Meadow Gold Dairies, Inc.,*
  249 F.R.D. 625 (D. Ha. 2008) ........................................................ 12, 13

*Matsuura v. E.I. du Pont De Nemours and Co.,*
  2007 WL 433115 (D. Ha. Feb. 2, 2007) .............................................. 12

*Step-Saver Data Sys., Inc. v. Wyse Technology,*
  752 F. Supp. 181 (E.D. Pa. 1990), rev'd on other grounds ................ 14

**OTHER AUTHORITIES**

Fed. R. Civ. Proc. 26(a)(2)(D)(ii) ............................................................ 12

FRCP 26(a)(2)(B) ................................................................................ 11, 12

ii

59776-00002/1950215.8

# TABLE OF AUTHORITIES (CONT'D)

PAGE

Rule 16 ............................................................................................................... 3

Rule 26 .................................................................................................... 7, 12, 15

NOTICE OF MOTION AND MOTION
TO LIMIT DAMAGES TESTIMONY

59776-00002/1950215.8

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Either by omission or design, Plaintiff Bradley D. Sharp's, Chapter 11 Trustee of Namco Capital Group, Inc. ("Plaintiff") designated David Judd a forensic accounting expert on damages and all "other financial-related allegations at issue in the adversary proceeding" only at the time of rebuttal. This Trojan horse, whether or not intentional, causes substantial prejudice to Defendants Mousa Namvar, Magdiel, LLC, DGADE of Delaware, LLC, Namco 8, LLC, Bunherst, LLC, and Wishlab 90, LLC (collectively, the "Mousa Defendants"). The Mousa Defendants have been deprived of the opportunity to respond to the delayed expert damages analysis, by rebuttal or otherwise. The Mousa Defendants' trial preparation to date, including the report of their own expert witness, is understandably predicated on the timely disclosures made by Plaintiff. After incurring great expense to prepare their defense for the impending trial, Plaintiff pulled a "bait and switch" and turned the expert disclosure process on its head, requiring the Mousa Defendants to try to catch up and change course at the eleventh hour.

***Plaintiff has not played by the rules.*** The express function of rebuttal experts and rebuttal reports is to rebut or contradict the testimony of opposing experts. Rebuttal reports cannot be used to bolster or support direct testimony; nor can rebuttal experts be used to fill holes in a case-in-chief. Plaintiff offers David Judd only as a "rebuttal" expert on damages, so David Judd's damages analysis should be limited in scope to rebutting the Mousa Defendants forensic accounting expert's testimony. The report that was not disclosed as part of Plaintiff's case-in-chief (and any predecessors or permutations) should not be permitted in Plaintiff's case-in-chief. Plaintiff's delayed disclosure causes severe prejudice to the Mousa Defendants' defense.

Accordingly, the Mousa Defendants move for an order:

(a)     Limiting David Judd and BRG's testimony on the monetary claims and damages alleged by Plaintiff to rebuttal expert testimony limited in scope to the

1

59776-00002/1950215.8

testimony actually given at trial by the Mousa Defendants' forensic accounting expert; and

(b)     Excluding both expert and purported percipient witness testimony from Mr. Judd and BRG on the monetary claims and damages alleged by Plaintiff during Plaintiff's case-in-chief.

## II.     FACTUAL SUMMARY

### A.     Prior Proceedings.

Namco Capital Group, Inc. ("Namco") entered bankruptcy via an involuntary petition on December 22, 2008.  Soon thereafter, plaintiff Bradley D. Sharp (the "Trustee" or "Plaintiff") was appointed as Chapter 11 Trustee of Namco.

The Trustee spent more than two years and many millions of dollars (including fees paid to forensic accountants such as Mr. Judd and BRG) investigating the collapse of Namco and pursuing alleged creditors to recoup Namco losses.  As part of that effort, the Trustee retained BRG as forensic accountants and later filed the First Amended Complaint ("FAC") herein based on BRG's analysis alleging claims against the Mousa Defendants.  Plaintiff also alleges Mousa Defendants are alter-egos of one another, and are responsible for damages incurred by Namco in connection with various real estate deals and monetary transfers.  The FAC purports to hold all of the Mousa Defendants liable for a series of transfers from Namco on a "one for all and all for one" alter-ego theory.  The FAC however is bereft of the detail necessary to show how and why the Mousa Defendants are allegedly liable.  (*See* Request for Judicial Notice ("RJN") filed concurrently herewith at ¶1.)

Accordingly, on March 28, 2011, while this litigation was still pending with the United States Bankruptcy Court, the Mousa Defendants filed a Motion to Dismiss  to Pursuant to FRBP 12(b)(6) (the "Motion to Dismiss").  (RJN ¶2.)  The Motion to Dismiss complained that Plaintiff did not adequately provide detail of the damages sought, *e.g.*, as to the Fourth and Eleventh Causes of Action.  (*Id.* at pp. 17-24.)  While the Motion to Dismiss was ultimately denied, the Court citing the availability

2

1  of pretrial disclosures and discovery, Plaintiff was on notice of the FAC's failure to

2  identify the basis for the money and damages sought from Defendants.

3        **B.**    **Appointment of LECG, LLC and BRG.**

4        In July 2009, the Bankruptcy Court appointed LECG, LLC (and then Director

5  David Judd) as accountant and financial consultant to the Trustee. (RJN ¶3.)  BRG

6  (and current Director David Judd) is the successor accountant and financial consultant

7  to LECG LLC. (RJN ¶5; *see also* **Exhibits C and I** to accompanying Declaration of

8  Lori L. Werderitch ("Werderitch Dec.") ¶¶5 and 11 at p. 2.)

9        **C.**    **The Court's Scheduling Order Regarding Expert Disclosures.**

10        The Court issued its Rule 16 Scheduling Order on June 25, 2012 (RJN ¶4),

11  providing initial expert disclosures to be due 70 days prior to the discovery cutoff, or

12  May 17, 2013. (*Id.* at p. 2:26-28.)  It further provides that rebuttal disclosures be

13  served thirty (30) days thereafter, or June 17, 2013. (*Id.* at p. 2:28-3:2.)

14        **D.**    **Plaintiff's Expert Disclosures Did Not Include a Damages Analysis.**

15        Pursuant to the Scheduling Order, Plaintiff served his Initial Expert Disclosures

16  on May 17, 2013. (**Exhibit A** to Werderitch Dec. ¶3.)  Plaintiff identified David Judd

17  as an expert witness solely on topics related to Namco's insolvency and liquidation

18  value, serving David Judd's Expert Report on the subject. (**Exhibit C** to Werderitch

19  Dec.)  Plaintiff did not offer an expert report in support of his claim for money or

20  damages.[1] (Werderitch Dec. ¶3.)

21        Plaintiff's failure to disclose a damages expert in initial expert disclosures

22  communicated to the Mousa Defendants that Plaintiff's damages would not be

23  supported by expert testimony and/or analysis. (Werderitch Dec. ¶3.)  The Mousa

24  Defendants' expert prepared his rebuttal report and his initial report without the

25  benefit of an expert report from Plaintiff's expert. (*Id.*)  The Mousa Defendants

26  prepared their defense for trial accordingly. (*Id.*)

27

28  ---

[1] As used herein, the term "damages" specifically refers to the calculations contained within Namco's books and records.

NOTICE OF MOTION AND MOTION
TO LIMIT DAMAGES TESTIMONY

59776-00002/1950215.8

**E.      The Mousa Defendants' Expert Report As to Namco's Lack of Damages.**

On May 17, 2013, the Mousa Defendants also served their expert designation, designating Jason A. Engel. (**Exhibit B** to Werderitch Dec. ¶4.) Mr. Engel was retained by counsel for the Mousa Defendants to investigate various financial allegations made in Plaintiff's FAC against the Mousa Defendants.

Mr. Engel struggled with evaluating how to address the damages sought by Plaintiff because Plaintiff's FAC did not contain a clear basis for the damages and did not seem to square with Namco's books and general ledger. During discovery, Plaintiff produced hundreds of thousands of documents absent any guidance to the Mousa Parties whatsoever as to the identification of those pertaining to damages and/or damages calculations. Only after the meet and confer occurred regarding this motion did Plaintiff's counsel identify Mr. Judd's earlier calculations and spreadsheets (sandwiched among thousands of other pages) that he and BRG prepared for the FAC. (Werderitch Dec. ¶¶2 and 9.)

The absence of any damages analysis in Mr. Judd's Expert Report only added to the Mousa Defendant's bewilderment on this issue. The Mousa Defendants were forced to prepare for trial and Mr. Engel prepared his report based on the limited information available to Mr. Engel, including the limited scope of the Judd Expert Report. (Declaration of Jason A. Engel ("Engel Dec.") ¶¶1-4.)

The Mousa Defendants served Mr. Engel's report. (**Exhibit D** to Werderitch Dec. ¶6.) To prepare his initial report, Mr. Engel compared his analysis of Namco's financial records to the allegations in Plaintiff's FAC. (Engel Dec. at ¶3.) As many of the allegations in the FAC were too vague to perform analysis, Mr. Engel stated various topics upon which he would defer analysis until receipt of Plaintiff's forensic accounting expert report in Mr. Engel's rebuttal report (*e.g.*, amounts of transfers and debts, interest rate, interest accrual, alter-ego, capitalization). (**Exhibit D** to Werderitch Dec. ¶6 at pp. 5, 13; Engel Dec. at ¶3.) Thus, his initial damages analysis

4

is built solely upon, and limited by, his reading of the FAC's general allegations and an effort to distill the thousands of pages of documents produced by Plaintiff and not upon any specific expert calculations or analysis. (Engel Dec. at ¶4.)

**F.    The Parties Meet and Confer Concerning the Absence of an Expert Damages Analysis from Plaintiff's Initial Designations.**

Noting that Plaintiff failed to provide any damages analysis to support the damages allegations in the FAC, through counsel, the Mousa Defendants promptly sent a meet and confer letter to Plaintiff's counsel to confirm the manner in which damages would be proven. (**Exhibit E** to Werderitch Dec. ¶7.)

Prior to the conference, on June 10, 2013, the Mousa Defendants received Plaintiff's Revised and Second Supplemental Initial Disclosures, listing Mr. Judd as an expert witness on the topics contained in his report (insolvency and liquidation), as well as a so-called "percipient witness" on the vague subject of "information in the possession of the Trustee." (**Exhibit F** to Werderitch Dec. ¶8 at p. 3.) Thus, the Mousa Defendants were told by Plaintiff's counsel his damages would not be supported by expert testimony, analysis, and/or forensic accounting.

On June 17, 2013, counsel for the Mousa Defendants telephonically met and conferred with counsel for Plaintiff regarding Plaintiff's failure to serve an expert report concerning damages. (Werderitch Dec. ¶9.) Counsel for Plaintiff, Elissa Wagner of Pachulski, Stang, Ziehl & Jones, stated that documentary support for Plaintiff's damages is contained on a series of spreadsheets produced by Plaintiff that summarize the book entries in Namco's records. (*Id.*) Ms. Wagner further represented that these spreadsheets were prepared by Mr. Judd and his company, and that Mr. Judd would (somehow) introduce those entries as a "percipient" witness at trial. (**Exhibit G** to Werderitch Dec. ¶9.)

//

//

//

5

59776-00002/1950215.8

**G.      Plaintiff Attempts to Submit an Expert Damages Analysis for the First Time in Rebuttal Disclosures.**

On June 17, 2013, either because of their omission, or by deliberate stratagem, Plaintiff served David Judd's Rebuttal Expert Report (the "Rebuttal Report") and designated Mr. Judd as rebuttal expert to Jason Engel.  (**Exhibits H** and **I** to Werderitch Dec. ¶¶10 -11.)  Specifically, Plaintiff's Rebuttal Designation designates Mr. Judd as Plaintiff's damages expert witness as follows:

- "The reports, evidence, opinions and/or testimony provided by the individuals designated as expert by the defendants . . ."
- Further, "the subject areas identified in the defendants' expert witness designations or disclosures" including Namco's accounting system and records, balances owed to and from Namco, and the claims, transfers, and "<u>other financial-related allegations at issue in the adversary proceeding</u>" (emphasis added).
- The contents of Mr. Judd's Rebuttal Report.

(**Exhibit H** to Werderitch Dec. ¶10.)

The Rebuttal Report purports to provide, *for the first time*, an expert financial analysis of the real estate deals and transfers alleged in the FAC and a demonstration of the calculations performed to determine the amounts of money and damages sought.  (**Exhibit I** to Werderitch Dec. ¶11.)  These expert calculations are based upon the same variety of spreadsheets using the same process that Mr. Judd and BRG used for the FAC from Namco's book entries.  (*Id.* at pp. 34-77.[2])

Plaintiff's attempt to introduce his damages analysis on rebuttal deprives the Mousa Defendants, and their expert Mr. Engel, of any fair opportunity to analyze the calculations and respond.  (Werderitch Dec. ¶12; Engel Dec. at ¶¶4-8.)  It is also directly contradictory to the statements made by Ms. Wagner at the June 17 meet and

---

[2]  Additionally, the Rebuttal Report rebuts the initial report of the Mousa Defendants' expert, Mr. Engel, and co-defendants' expert, Mr. Mowrey.

6

NOTICE OF MOTION AND MOTION
TO LIMIT DAMAGES TESTIMONY

1  confer that percipient witness testimony would be offered on this topic. Further, it

2  undermines the Mousa Defendants' expert report, rebuttal report, and trial strategy

3  that were based in part, upon Plaintiff's failure to designate a forensic accounting

4  expert on damages. (Werderitch Dec. ¶12.)  Great expense has already been invested

5  in the Mousa Defendants' trial defense with limited time until trial.  The time

6  remaining needs to be devoted to numerous depositions still to be taken, and trial

7  preparation, not rebutting a rebuttal.  The Mousa Defendants' defense is severely

8  prejudiced by both the change in course as well as by their expert's inability to

9  respond.  (*Id.*)

10  **H.    The Parties Meet and Confer Concerning the Motion.**

11      Given that Plaintiff disclosed a damages analysis for the very first time on

12.  rebuttal, the Mousa Defendants' counsel again requested a meet and confer conference

13  concerning a stipulation to limit Mr. Judd's damages testimony to rebuttal only.

14  (**Exhibit J** to Werderitch Dec. ¶13.)  On June 28, 2013, counsel participated in a

15  telephonic meet and confer wherein Plaintiff's counsel declined to stipulate, stating

16  Plaintiff's intention somehow to introduce their forensic accounting expert Mr. Judd's

17  "lay opinion testimony" as to alleged money and damages owed by Defendants during

18  Plaintiff's case-in-chief. (Werderitch Dec. ¶¶13-14; *see also* **Exhibit K** to Werderitch

19  Dec. ¶14.)

20      It is entirely improper and duplicitous for Plaintiff to take the position that Mr.

21  Judd will testify as a percipient witness on the issue of damages and at the same time

22  include an expert damages analysis in his Rebuttal Expert Report. Thus,

23  notwithstanding the Mousa Defendants' efforts, the parties have been unable to reach

24  a resolution on the issue, necessitating the filing of the accompanying motion to avoid

25  prejudice and uphold Rule 26.  (Werderitch Dec. ¶16.)

26  //

27  //

28  //

7

NOTICE OF MOTION AND MOTION
TO LIMIT DAMAGES TESTIMONY

**I.      David Judd Admits at His Deposition There is No Material Distinction Between His Expert and Purported Percipient Witness Opinion.**

Dilatory and subversive litigation tactics seem to be a commonplace practice for Plaintiff, who has used this same hide-the-ball tactic with David Judd in other actions, springing a Judd analysis on the opposition at the last minute, resulting in exclusion of Mr. Judd's entire opinion in another case arising out of this bankruptcy. (**Exhibit L** to Werderitch Dec. ¶15; RJN ¶7.) Mr. Judd himself admitted there is no distinction between his role as an expert or as a purported "percipient witness." During his recent deposition, Mr. Judd admits:

- Mr. Judd's and BRG's Specialized Knowledge

> Q.     The fees for which you applied to the court for compensation, those fees related to work you did in your capacity as an accountant, correct?
> A.     In my capacity as a director of LECG and BRG.
> Q.     And the expertise that you brought to your work in that capacity for LECG and BRG included your expertise as a CPA specializing in bankruptcy and litigation services and investigative accounting correct?
> A.     Yes.

(**Exhibit M** to accompanying Declaration of Bernard M. Resser ("Resser Dec.") ¶2 at pp. 25:17-26:2.)

- BRG's web address is "www.brg-expert.com," and describes its work: "Berkeley Research Group, LLC is a leading global expert services and consulting firm that provides independent expert testimony, litigation and regulatory support, authoritative studies, strategic advice, and document and data analytics to major law firms, Fortune 500 corporations,

8

- government agencies, and regulatory bodies around the world." (http://www.brg-expert.com/about.html).

- <u>Mr. Judd's bio states</u>: "David Judd has almost 30 years of experience as a Certified Public Accountant (CPA) <u>specializing in bankruptcy and litigation services and investigative accounting.</u>" (**Exhibit N** to Resser Dec. ¶3; emphasis added.)

- <u>That The FAC and Rebuttal Report Were Prepared By BRG From the Same Source Materials</u>

Q. Okay.  In preparing your rebuttal expert report, did you consult any of the schedules that were prepared for the trustee or counsel that were the basis for the damages amounts in the first amended complaint?

A. Yes.

Q. And is that the schedules that you prepared for the damages for the first amended complaint the starting point for your damages analysis in the rebuttal expert report?

A. I don't know that those schedules were the starting point but the underlying support information that was in those binders would have -- would really be the starting point.  That and the other books and records of Namco.

(*Id.* at pp. 38:18-39:8.)

Q. Take a look at Exhibit 156 and Exhibit 1 to exhibit -- that exhibit.  It's -- Exhibit 1 follows page 30 of the report.  What is Exhibit 1 to Exhibit 156?

A. It is a schedule of the documents that I looked at in preparing this report.

Q. Is this list -- does this list include data and information relied on by the trustee for the allegations made in the first amended complaint?

A. Yes.

NOTICE OF MOTION AND MOTION
TO LIMIT DAMAGES TESTIMONY

(*Id.* at pp. 42:22-43:6; *see also id.* at pp. 53:23-54:4, 107:8-17 (same categories of documents reviewed to prepare Rebuttal Report as to prepare analysis for FAC).

- <u>The FAC Damages Were Calculated By the Same Process As the Rebuttal Report Damages Analysis</u>

> Q.   The process itself, in terms of gathering information from the documents that are in the binders and from Namco's books and records, that process that you used to prepare the schedules is the same process that you used to prepare the rebuttal report, correct?
> A.   The process was pretty much the same, yes.

(*Id.* at pp. 40:18-41:2.)

- <u>Mr. Judd's and BRG's Expert Engagement Is the Same as That Approved by the Court</u>

> Q.   The documents that memorialize, refer or relate to the compensation that you received or expect to receive in connection with your rendering of services as a consultant or an expert in this litigation, are those contained in applications that have been made to the court?
> A.   Yes.

(*Id.* at pp. 53:23-54:4.)

- <u>That the Expert Rebuttal Is the Most Up-to-Date, Definitive Damages Calculation of the Categories Outlined in the FAC</u>

Specifically, Mr. Judd testified:

  o Rebuttal Report contains definitive damages alleged concerning Namco 8, LLC (**Exhibit M** to Resser Dec. ¶2 at pp. 45:4-13).

  o Rebuttal Report contains definitive damages alleged concerning DGADE of Delaware, LLC (**Exhibit M** to Resser Dec. ¶2 at pp. 46:11-15).

10

1    o Rebuttal Report contains definitive damages alleged concerning

2     Security Pacific Bancorp (**Exhibit M** to Resser Dec. ¶2 at pp.

3     47:3-7).

4    o Rebuttal Report contains definitive damages alleged concerning

5     Wilshire Bundy Ground Lease (**Exhibit M** to Resser Dec. ¶2 at pp.

6     47:8-14).

7  In summary, Mr. Judd's testimony establishes that no material distinction exists

8 between his and BRG's expert opinion on money and damages allegedly owed and the

9 purported "percipient witness" testimony Plaintiff now attempts to introduce.

10 **III. AS A REBUTTAL EXPERT WITNESS, MR. JUDD'S DAMAGES**

11 **  TESTIMONY SHOULD BE EXCLUDED FROM PLAINTIFF'S CASE-**

12 **  IN-CHIEF**

13 **  A. Mr. Judd's and BRG's Lay Opinion Must Be Excluded Because It**

14 **   Is Based On Specialized Knowledge and Therefore Triggers the**

15 **   Requirements of FRCP 26(a)(2)(B).**

16  During the meet and confer process, Plaintiff proffered an explanation for their

17 failure to submit the Rebuttal Report as an initial disclosure that would have afforded

18 the Mousa Defendants the opportunity for rebuttal prior to trial. (**Exhibit J** to

19 Werderitch Dec. ¶13.) Plaintiff now contends David Judd offers both an expert

20 opinion and a "lay opinion" on the damages analysis contained in the one Rebuttal

21 Report. (*Id.*) This after-the-fact "explanation" is either a fiction concocted to conceal

22 Plaintiff's omission or a deliberate use of misdirection in flagrant disregard for the

23 Federal Rules of Civil Procedure.

24  Mr. Judd and BRG are not percipient witnesses. Lay opinions are limited to the

25 witnesses' "perception," *i.e.*, "events perceived through physical senses or when

26 testifying about opinions rationally based on personal observation." *De La Torre v.*

27 *Merck Enters., Inc.*, 540 F.Supp.2d 1066, 1075 (D. Az. 2008). Mr. Judd's and BRG's

28 specialized forensic accounting analysis of Namco's voluminous books cannot

NOTICE OF MOTION AND MOTION
TO LIMIT DAMAGES TESTIMONY

possibly be characterized as mere "personal observation." In fact, opinion testimony regarding information obtained from outside personal knowledge (for example, Namco's extensive books and records) triggers the requirements of Fed. R. Civ. Proc. 26(a)(2)(B). *Matsuura v. E.I. du Pont De Nemours and Co.*, 2007 WL 433115 at *3-4 (D. Ha. Feb. 2, 2007); *see also Britz Fertilizers, Inc. v. Bayer Corp.*, 2009 WL 1748775 at *3 (E.D. Cal. Jun. 17, 2009) ("expert testimony is generally testimony that a witness prepares using an analysis based on specialized knowledge").

Indeed, the uncertainty of the books and records in this case has already been acknowledged by this Court, and this Court already ruled that BRG is not qualified as a percipient witness regarding Namco's business records. (RJN ¶6.)

Moreover, the "adjustments" made by Mr. Judd to Namco's books and records require accounting expertise.

It is clear that Plaintiff retained Mr. Judd for his expertise in forensic accounting and financial analysis, designating Mr. Judd as an expert in both Rule 26 and expert disclosures and relying on the Rebuttal Report and BRG's spreadsheets to compute its alleged damages and claims for money. (*See also* **Exhibits C** and **I** to Werderitch Dec. ¶¶5 and 11 at p. 2; RJN ¶¶3, 5; **Exhibit N** to Resser Dec. ¶3.[3])

Indeed, Mr. Judd is in a position to testify only because of his forensic accounting expertise and specialized knowledge. Therefore, his opinion is that of an expert and not a percipient witness.

**B.     Mr. Judd's and BRG's Damages Testimony Should Be Limited to Rebuttal.**

Rebuttal reports and witnesses are utilized "solely to contradict or rebut the evidence of a witness identified by another party." *Lindner v. Meadow Gold Dairies, Inc.*, 249 F.R.D. 625, 636 (D. Ha. 2008); Fed. R. Civ. Proc. 26(a)(2)(D)(ii). In fact, courts can properly reject attempts to use a rebuttal report as a vehicle to make up for testimony that should have been presented through the initial reports as is threatened

---

[3]  The Namco Estate has incurred millions in fees with LECG and BRG as experts.

NOTICE OF MOTION AND MOTION
TO LIMIT DAMAGES TESTIMONY

here.  *See, e.g., Exxon Corp. v. Halcon Shipping Co.*, 156 F.R.D. 586, 586-88 (D.N.J. 1994) (where "rebuttal" was actually "of a direct nature" to a "central factual issue" in the case, the court held that the expert should have been disclosed and a report produced within the time provided for initial reports).

Here, the Rebuttal Report is a damages analysis purportedly submitted to "rebut" the analysis of the Mousa Defendants' expert, Mr. Engel.  (**Exhibits H** and **I** to Werderitch Dec. ¶¶10-11.)  However, the Rebuttal Report goes far beyond mere rebuttal of Mr. Engel's report.  It provides a comprehensive outline of Plaintiff's damages and claims for money, and an updated analysis by Mr. Judd of those damages he calculated for the FAC.  As such, pursuant to applicable law, the damages analysis prepared by Mr. Judd and/or his company, BRG, should be limited to rebuttal testimony and limited in scope only to opinions expressed by Mr. Engel and excluded from Plaintiff's case-in-chief.  *See Goodman v. Staples The Office Superstore, LLC* (9th Cir. 2011) 644 F.3d 817, 826-27 (affirming exclusion of rebuttal expert witnesses during plaintiff's case-in-chief), and *Lindner, supra*, 249 F.R.D. at 636 (testimony of rebuttal experts is limited such that, at trial, rebuttal expert cannot testify in a plaintiff's case-in-chief, and cannot testify unless and until the defendant's experts testify as to the opinions for which the rebuttal experts have been designated); *see also Bowman v. General Motors Corp.*, 427 F.Supp. 234, 241 (D.C. Pa. 1977) ("there is unanimous agreement that on rebuttal it is properly within the discretion of the trial judge to limit testimony to that which is precisely directed to rebutting new matter or new theories presented by the defendant's case-in-chief"); *Johnson v. Grays Harbor Community Hosp.*, 2007 WL 4510313 at *2-3 (W.D. Wash. Dec. 18, 2007) (granting motion to strike non-rebuttal testimony from designated rebuttal witnesses); *Int'l Bus. Machines Corp. v. Fasco Indus., Inc.*, 1995 WL 115421 at *6 (N.D. Cal. Mar. 15, 1995) (rebuttal experts testimony to be restricted to attacking the adversary's experts); *AZ Holding, L.L.C. v. Frederick*, 2009 WL 2432745 at *6 (D. Ariz. Aug. 10, 2009) (designated rebuttal expert "may only offer testimony to contradict or rebut" the

13

59776-00002/1950215.8

testimony of the adversary's expert on the same subject matter); *Donell v. Fidelity Nat. Title Agency of Nev.*, 2012 WL 170990 at *4 (D. Nev. Jan. 20., 2012) citing *Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 759 (8th Cir.2006) (rebuttal evidence may be introduced to challenge the evidence or theory of an opponent, but may not be used to establish a case-in-chief).

These cases demonstrate that the stratagem employed by Plaintiff has been previously attempted – and failed – in costly litigation. The cases also show the proper remedy: exclusion from case-in-chief and limitation in scope to actual rebuttal.

## IV.   THE MOUSA DEFENDANTS WILL INCUR SUBSTANTIAL PREJUDICE IF MR. JUDD'S AND BRG'S DAMAGES TESTIMONY IS NOT LIMITED AS REQUESTED

As noted above, Plaintiff did not submit an expert damages analysis with its initial reports due on May 17, 2013. (Werderitch Dec. ¶3.) Plaintiff may have overlooked his desire for expert testimony on an essential element of each of the causes of action in the FAC. But Plaintiff may not fix that mistake on rebuttal because rebuttal reports are not proper vehicles for missing analysis. *See Step-Saver Data Sys., Inc. v. Wyse Technology*, 752 F. Supp. 181, 193 (E.D. Pa. 1990) (explaining that rebuttal is not "an opportunity for the correction of any oversights in the plaintiff's case-in-chief"), rev'd on other grounds by 939 F.2d 91, 107 (3d Cir. 1991), and quoted for this proposition in *Crowley v. Chait*, 322 F. Supp. 2d 530, 551 (D.N.J. 2004).

Indeed, "It is well settled that evidence which properly belongs in the case-in-chief but is first introduced in rebuttal may be rejected, so as to avoid prejudice to the defendant and to ensure the orderly presentation of proof." *Emerick v. U.S. Suzuki Motor Corp.*, 750 F.2d 19, 22 (3d Cir.1984). The burden to prove harmlessness from the delayed designation lies with Plaintiff. *See Goodman, supra*, 644 F.3d at 827. Plaintiff cannot make such showing. Here, the Mousa Defendants are unduly prejudiced by Plaintiff's failure to introduce its damages analysis until rebuttal:

14

- The vague allegations in the FAC are insufficient to put the Mousa Defendants on notice of the exact damages claimed and calculated;
- Throughout the months of documents discovery, the hundreds of thousands of pages of documents that Plaintiff produced did not make any clearer how the damages were calculated;
- The Mousa Defendants relied on Plaintiff's initial disclosures which included no damages expert in and instructed their expert and prepared their defense for trial accordingly.
- As such, Mr. Engel's initial damages analysis is limited by and is built solely upon his reading of the FAC's general allegations and what he could glean from the documents, and not upon any specific expert calculations or analysis.
- Plaintiff continually represented to the Mousa Defendants that its damages would be proven through percipient testimony, a position consistent with their Rule 26 Supplemental Disclosures.
- Then, in flagrant disregard for the Federal Rules governing expert disclosures, Plaintiff produced a comprehensive expert damages analysis for the very first time on expert rebuttal.
- Mr. Engel now has no opportunity to perform a true analysis of damages based upon Mr. Judd's calculations or to rebut them.

As noted above, the Mousa Defendants have already incurred extraordinary expense resulting from this litigation. Plaintiff has spent millions on these experts and now wants to use them as "percipient witnesses" and be exempt from the Federal Rules requiring disclosure. Great amounts of time and strategy are already invested in the Mousa Defendants' trial defense. On the eve of discovery cutoff, and the time for expert designations having lapsed, their defense is severely undermined by Plaintiff's omission to timely designate an expert on damages and money allegedly due from Defendants, as well as Jason Engel's inability to respond to the delayed disclosure.

15

NOTICE OF MOTION AND MOTION
TO LIMIT DAMAGES TESTIMONY

# V.    **CONCLUSION**

For the foregoing reasons, David Judd's and Berkeley Research Group's expert testimony expert testimony on Plaintiff's damages should be limited to rebuttal, and their percipient testimony regarding damages excluded entirely during Plaintiff's case-in-chief.

DATED:  July 22, 2013                    GREENBEG GLUSKER FIELDS
                                         CLAMAN & MACHTINGER, LLP


                                    By:  /s/ Brian L. Davidoff                .
                                         BRIAN L. DAVIDOFF
                                         BERNARD M. RESSER
                                         LORI L. WERDERITCH
                                         Attorneys for Defendants Mousa Namvar,
                                         Magdiel, LLC, DGADE of Delaware, LLC,
                                         Namco 8, LLC, Bunherst, LLC, and
                                         Wishlab 90, LLC

16

59776-00002/1950215.8

# PROOF OF SERVICE

## STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am over the age of 18 and not a party to the within action; I am employed by GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP in the County of Los Angeles at 1900 Avenue of the Stars, 21st Floor, Los Angeles, California 90067.

On July 22, 2013, I served the foregoing document(s) described as:

**NOTICE OF MOTION AND MOTION FOR AN ORDER:**

**(A)    LIMITING DAVID JUDD AND BERKELEY RESEARCH GROUP'S TESTIMONY ON THE MONETARY CLAIMS AND DAMAGES ALLEGED BY PLAINTIFF BRADLEY D. SHARP, CHAPTER 11 TRUSTEE OF NAMCO CAPITAL GROUP, INC TO REBUTTAL EXPERT TESTIMONY LIMITED IN SCOPE TO THE TESTIMONY ACTUALLY GIVEN AT TRIAL BY THE MOUSA DEFENDANTS' FORENSIC ACCOUNTING EXPERT; AND**

**(B)    EXCLUDING BOTH EXPERT AND PURPORTED PERCIPIENT WITNESS TESTIMONY FROM MR. JUDD AND BERKELEY RESEARCH GROUP ON THE MONETARY CLAIMS AND DAMAGES ALLEGED BY PLAINTIFF DURING PLAINTIFF'S CASE-IN-CHIEF**

**BY DEFENDANTS MOUSA NAMVAR, MAGDIEL, LLC, NAMCO 8, LLC, WISHLAB 90, LLC, BUNHERST, LLC, AND DGADE OF DELAWARE, LLC; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

☐    By placing the true copies thereof enclosed in sealed envelopes addressed as stated below.

☐    **(BY MAIL)** I placed said envelope(s) for collection and mailing, following ordinary business practices, at the business offices of GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER, LLP, and addressed as shown on the attached service list, for deposit in the United States Postal Service.  I am readily familiar with the firm's practice for collection and processing correspondence for mailing with the United States Postal Service, and said envelope(s) will be deposited with the United States Postal Service on said date in the ordinary course of business.

☒    **(BY OVERNIGHT DELIVERY).** On July 22, 2013, I caused said document(s) to be placed in a Norco Overnite envelope  and taken to the Norco Overnite Drop Box located at 1900 Avenue of the Stars, Los Angeles, California 90067 for delivery to the parties listed on the attached service list:

VIA NORCO OVERNITE
Honorable Gary A. Feess
United States District Court
255 East Temple Street, Courtroom 740
Los Angeles, California 90012

17

NOTICE OF MOTION AND MOTION
TO LIMIT DAMAGES TESTIMONY

59776-00002/1950215.8

1  ☒  **(BY ELECTRONIC SERVICE)** by causing the foregoing document(s) to be
2     electronically filed using the Court's Electronic Filing System which constitutes
      service of the filed document(s) on the individual(s) listed on the attached
3     mailing list.

4     Alan J Kornfeld:  akornfeld@pszyj.com
      Elissa Wagner: ewagner@pszyj.com
      Genise R. Reiter:  grr@srblaw.com
5     Alan Frank Broidy:  fbroidy@ix.netcom.com
      Robert B Mobasseri:  Robert@lawyer.com
6     Brian Leslie Davidoff:  BDavidoff@GreenbergGlusker.com;
         jreinglass@greenbergglusker.com; kwoodson@greenbergglusker.
7     Lori L Werderitch   LWerderitch@GreenbergGlusker.com,
      Office of the U.S. Trustee: ustpregion16.la.ecf@usdoj.gov

8  ☒  (Federal)  I declare that I am employed in the office of a member of the
9     bar of this court at whose direction the service was made.  I declare under
      penalty of perjury that the above is true and correct.

10    Executed on July 22, 2013 at Los Angeles, California.

11                            _/s/ Jan Reinglass_____
12                            JAN REINGLASS

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                    NOTICE OF MOTION AND MOTION
                                    TO LIMIT DAMAGES TESTIMONY

59776-00002/1950215.8