PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Dean A. Ziehl (CA Bar No. 84529)
Alan J. Kornfeld (CA Bar No. 130063)
Gillian N. Brown (CA Bar No. 205132)
Elissa A. Wagner (CA Bar No. 213589)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd., 13th Floor
Los Angeles, California 90067
Telephone: 310/277-6910
Facsimile: 310/201-0760
E-mail:  dziehl@pszjlaw.com
         gbrown@pszjlaw.com
         ewagner@pszjlaw.com

Special Counsel for Plaintiff Bradley D. Sharp,
Chapter 11 Trustee for Namco Capital Group,
Inc.

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## LOS ANGELES DIVISION

| | |
|---|---|
| In re: | Case No. 2:11-cv-05320-GAF (CWx) |
| NAMCO CAPITAL GROUP, INC., a California corporation, | Chapter 11 |
| Debtor. | Bankr. Case No. 2:08-bk-32333-BR |
| | Bankr. Adv. No. 2:10-ap-02945-BR |
| BRADLEY D. SHARP, solely in his capacity as Chapter 11 Trustee of NAMCO CAPITAL GROUP, INC., | **TRUSTEE'S REQUEST FOR SPECIAL NOTICE IN SUPPORT OF OPPOSITION TO DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT, SUMMARY ADJUDICATION OF CLAIMS AND SUMMARY ADJUDICATION OF ISSUES** |
| Plaintiff, | |
| vs. | Date:  August 19, 2013 |
| MOUSA NAMVAR, *et al.*, | Time:  9:30 a.m. |
| Defendants. | Place:  Courtroom 740 |
| | Discovery Cutoff:  July 26, 2013 |
| | Pretrial Conf.:  September 23, 2013 |
| | Trial: October 29, 2013 |
| | Judge:  Hon. Gary A. Feess |
| | Magistrate:  Hon. Carla Woehrle |

DOCS_LA:269871.1 59701/001

1   Plaintiff Bradley D. Sharp (the "<u>Trustee</u>"), in his capacity as the chapter 11
2   trustee of debtor Namco Capital Group, Inc., submits this Request for Judicial Notice
3   seeking judicial notice pursuant to Federal Rule of Evidence 201(b)(2) ("<u>Rule</u>
4   <u>201(b)(2)</u>") (providing that the Court "may judicially notice a fact that is not subject to
5   reasonable dispute because it . . . can be accurately and readily determined from
6   sources whose accuracy cannot reasonably be questioned").
7       The Trustee seeks judicial notice of the attached, true and correct copies of
8   certified documents from County Recorder's offices.  These are the types of
9   documents that may be judicially noticed under Rule 201(b)(2)  *See Wise v. Wells*
10  *Fargo Bank, N.A.,* 850 F.Supp.2d 1047, 1056-57 (C.D. Cal. 2012) (taking judicial
11  notice of grant deed, deed of trust, assignment of deed of trust, and notice of default
12  and election to sell under deed of trust, all of which were recorded in Los Angeles
13  County Recorder's Office)*; Maves v. First Horizon Home Loans,* 461 Fed.Appx. 636,
14  637-38 (9th Cir. 2011) (finding no abuse of discretion of lower court's grant of
15  judicial notice of deed of trust and notice of default, both publicly recorded).

16  1.  Attached hereto at **Exhibit 1** is a true and correct certified copy of the
17      *Trustee's Deed Upon Sale* relating to the downtown Los Angeles Marriott
18      Hotel, recorded in the Los Angeles County, California Recorder's Office on
19      August 10, 2009.

20  2.  Attached hereto at **Exhibit 2** is a true and correct certified copy of the *Notice*
21      *of Trustee's Sale* relating to the Red Feather Mall[1] property, recorded in the
22      Clark County, Nevada Recorder's Office on February 10, 2010.

23  3.  Attached hereto at **Exhibit 3** is a true and correct certified copy of the *Note*
24      *and Fee and Leasehold Deed of Trust Assumption Agreement* relating to the
25      Wilshire Bundy ground lease recorded in the Los Angeles County,
26      California Recorder's Office on October 25, 2010.

---

27  [1]  Terms not otherwise defined in this *Request for Judicial Notice* shall have the meanings ascribed
     to them in the *Plaintiff's Opposition to Defendants' Motions for Summary Judgment, Summary*
28  *Adjudication of Claims and Summary Adjudication of Issues [D.I. 147, 166, 167, 201].*

-1-

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

4. Attached hereto at **Exhibit 4** is a true and correct certified copy of the *Trustee's Deed Upon Sale* relating to Flamingo Road, recorded in the Clark County, Nevada Recorder's Office on March 17, 2010.

5. Attached hereto at **Exhibit 5** is a true and correct certified copy of the *Treasurer Quitclaim Deed* relating to Sunset Springs, recorded in the Clark County, Nevada Recorder's Office on May 20, 2013.

6. Attached hereto at **Exhibit 6** is a true and correct certified copy of the *Treasurer Quitclaim Deed* relating to Sunset Springs, recorded in the Clark County, Nevada Recorder's Office on May 20, 2013.

7. Attached hereto at **Exhibit 7** is a true and correct certified copy of the *Treasurer Quitclaim Deed* relating to Sunset Springs, recorded in the Clark County, Nevada Recorder's Office on May 20, 2013.

Dated:  July 29, 2013                    PACHULSKI STANG ZIEHL & JONES LLP

                          By     */s/ Gillian N. Brown*
                                 Dean A. Ziehl
                                 Alan J. Kornfeld
                                 Gillian N. Brown
                                 Elissa A. Wagner

                                 Special Counsel for Plaintiff Bradley D.
                                 Sharp, Chapter 11 Trustee for Namco
                                 Capital Group, Inc.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

DOCS_LA:269871.1 59701/001

**EXHIBIT 1**



Los Angeles County **REGISTRAR-RECORDER/COUNTY CLERK**

DEAN C. LOGAN
Registrar-Recorder/County Clerk

If this document contains any restriction based on race, color, religion, sex, gender, gender identity, gender expression, sexual orientation, familial status, marital status, disability, genetic information, national origin, source of income as defined in subdivision (p) of Section 12955, or ancestry, that restriction violates state and federal fair housing laws and is void, and may be removed pursuant to Section 12956.2 of the Government Code. Lawful restrictions under state and federal law on the age of occupants in senior housing or housing for older persons shall not be construed as restrictions based on familial status.

RER 2011

P.O. Box 1130, Norwalk,  California  90651-0489 - www.lavote.net

EXHIBIT 

**This page is part of your document - DO NOT DISCARD**



# 20091219075



**Pages:
0004**

**Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California**

**08/10/09 AT 08:00AM**

| | |
|---|---|
| FEES: | 15.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 15.00 |



**L E A D S H E E T**

200908100200004

00001016501

002252194

**SEQ:
22**

DAR - Title Company (Hard Copy)

**THIS FORM IS NOT TO BE DUPLICATED**

t72

Recording Requested By

WHEN RECORDED MAIL TO
Leeward Strategic Properties, Inc.
c/o Sheppard, Mullin, Richter & Hampton LLP
Attn:  Juliette M. Ebert, Esq.
Four Embarcadero Center, 17th Floor
San Francisco, CA  94111

 MAIL TAX STATEMENTS TO
 same as above



Space above this line for recorder's use only

Trustee Sale No. 1671-40    Loan No. 69-0078288    Title Order No. 820000311-T01

# TRUSTEE'S DEED UPON SALE

APN 5151-011-036   T.R.A. No. 0000005
The undersigned grantor declares:
1)      The Grantee herein <u>was</u> the foreclosing beneficiary.
2)      The amount of the unpaid debt together with costs was.......................................$101,924,704.68
3)      The amount paid by the grantee at the trustee sale was ........................................$ 59,000,000.00
4)      The documentary transfer tax is...............................................................................$    -0-
5)      Said property is in the city of Los Angeles

and CHICAGO TITLE COMPANY, a California corporation (herein called Trustee), as the duly appointed Trustee under the Deed of Trust hereinafter described, does hereby grant and convey, but without covenant or warranty, express or implied, to

**LEEWARD STRATEGIC PROPERTIES, INC., a Delaware corporation**

(herein called Grantee), all of its right, title and interest in and to that certain property situated in the County of Los Angeles, State of California, described as follows:

SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF, CONSISTING OF ONE PAGE.

RECITALS:
This conveyance is made pursuant to the powers conferred upon Trustee by that certain Deed of Trust dated 02/28/2007 and executed by LA HOTEL VENTURE, LLC, a California limited liability company, as Trustor, and General Electric Capital Corporation, a Delaware corporation, as administrative Agent for Lenders, as beneficiary, and recorded on 03/06/2007 as Document No. 20070485027 of official records of Los Angeles County, California, and subsequently assigned to Leeward Strategic Properties, Inc., a Delaware corporation, and after fulfillment of the conditions specified in said Deed of Trust authorizing this conveyance.

Default occurred as set forth in a Notice of Default and Election to Sell which was recorded in the Office of the Recorder of said County, and such default still existed at the time of sale.

All requirements of law regarding the mailing of copies of notices or the publication of a copy of the Notice of Default or the personal delivery of the copy of the Notice of Default and the posting and publication of copies of the Notice of a Sale have been complied with.

1

Trustee Sale No. 1671-40
Loan No. 69-0078288
Title Order No. 820000311-T01

Trustee, in compliance with said Notice of Trustee's Sale and in exercise of its powers under said Deed of Trust, sold the herein described property at public auction on 08/03/2009. Grantee, being the highest bidder at said sale, became the purchaser of said property for the amount bid being $59,000,000.00 by credit bid as the beneficiary under the Deed of Trust.

DATE: 8/7/09

CHICAGO TITLE COMPANY, a California corporation

*Teresa M. Drake*

Teresa M. Drake, Asst. Vice President

*Richard Munsey*

Richard Munsey, Asst. Vice President

STATE OF California
COUNTY OF San Bernardino

On _8/3/2009_ before me, Gwen Cleveland, a Notary Public in and for said State, personally appeared Teresa M. Drake and Richard Munsey who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under penalty of perjury under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

*Gwen Cleveland*

Notary Public in and for said County and State



GWEN CLEVELAND
Commission # 1694213
Notary Public - California
San Bernardino County
My Comm. Expires Sep 17, 2010

2

EXHIBIT "A"

LOT 1 OF TRACT NO. 21788, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 793 PAGES 94 AND 95 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPT THEREFROM ANY AND ALL PORTIONS OF THIRD STREET, FOURTH STREET AND FIGUEROA STREET, AS SHOWN ON THE MAP OF SAID TRACT NO. 21788, AS RESERVED BY THE COMMUNITY REDEVELOPMENT AGENCY OF THE CITY OF LOS ANGELES, CALIFORNIA, IN DEED RECORDED DECEMBER 24, 1980 AS INSTRUMENT NO. 80-1290114, OFFICIAL RECORDS.

ALSO EXCEPT THEREFROM ALL OIL, GAS, AND MINERAL SUBSTANCES, WITHOUT RIGHT OF SURFACE ENTRY, AS EXCEPTED OR RESERVED IN THE FOLLOWING DEEDS:

OCTOBER 7, 1964 AS INSTRUMENT NOS. 1160, 1161, 1162 AND 1165, IN BOOK D2655 PAGES 1, 3, 5 AND 8 OF OFFICIAL RECORDS.

OCTOBER 9, 1964 AS INSTRUMENT NO. 1492 IN BOOK D2658 PAGE 192, OFFICIAL RECORDS.

MARCH 5, 1963 AS INSTRUMENT NO. 1600 IN BOOK D1941 PAGE 835, OFFICIAL RECORDS

APRIL 16, 1963 AS INSTRUMENT NO. 1599 IN BOOK D1993 PAGE 29, OFFICIAL RECORDS

MAY 25, 1962 AS INSTRUMENT NO. 1856 IN BOOK D1627 PAGE 55, OFFICIAL RECORDS

OCTOBER 16, 1961 AS INSTRUMENT NO. 2564 IN BOOK D1387 PAGE 757, OFFICIAL RECORDS

JANUARY 5, 1962 AS INSTRUMENT NO. 1919 IN BOOK D1470 PAGE 49, OFFICIAL RECORDS

APRIL 1, 1963 AS INSTRUMENT NO. 1853 IN BOOK D1974 PAGE 182, OFFICIAL RECORDS

OCTOBER 16, 1961 AS INSTRUMENT NO. 2600 IN BOOK D1387 PAGE 768, OFFICIAL RECORDS

OCTOBER 18, 1961 AS INSTRUMENT NO. 1747 IN BOOK D1390 PAGE 856, OFFICIAL RECORDS

JUNE 20, 1983 AS INSTRUMENT NO. 83-687528, OFFICIAL RECORDS

This is a true and certified copy of the record
if it bears the seal, imprinted in purple ink,
of the Registrar-Recorder/County Clerk

JUL 2 3 2013

Dean C. Logan   REGISTRAR-RECORDER/COUNTY CLERK
LOS ANGELES COUNTY, CALIFORNIA

# EXHIBIT 2

**Stewart Title**

[RECORDING REQUESTED BY
AND WHEN RECORDED MAIL TO:]

**Trustee Corps**
**30 Corporate Park, Suite 400**
**Irvine, CA 92606**

*138-12-813-001*

The undersigned hereby affirms that there is no
Social Security number contained in this document.

Inst# 201002100001349
Fees: $15.00
N/C Fee: $25.00
02/10/2010 10:02:48 AM
Receipt #: 227604
Requestor:
SPL INC
Recorded By: GILKS   Pgs: 2
DEBBIE CONWAY
CLARK COUNTY RECORDER

---

[SPACE ABOVE THIS LINE FOR RECORDER'S USE ONLY]

Trustee Sale# NV0227468   Loan # BOUCH-LV1   Order # 3206-154073

# NOTICE OF TRUSTEE'S SALE

YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED <u>03/07/2003</u>. UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDINGS AGAINST YOU, YOU SHOULD CONTACT A LAWYER.

On <u>03/02/2010</u> at <u>10:00AM</u>, <u>MTC FINANCIAL, INC. dba TRUSTEE CORPS</u> as the duly appointed Substituted Trustee under and pursuant to Deed of Trust <u>Recorded on 04/07/2003 as Document No. 20030407-02264</u> of official records in the Office of the Recorder of <u>Clark</u> County, <u>NEVADA</u>, executed by <u>NAMCO 8 LLC, A DELAWARE LIMITED LIABILITY COMPANY</u> as Trustor, <u>ROYA BOUCHERIAN</u> as Beneficiary,

WILL SELL AT PUBLIC AUCTION TO THE HIGHEST BIDDER FOR CASH  (payable at time of sale in lawful money of the United States, by cash cashier's check drawn by a state or federal credit union, or a check drawn by a state or federal savings and loan association, savings association, or savings bank specified in section 5102 to the Fincancial Code and authorized to do business in this state)  AT: THE FRONT ENTRANCE TO THE NEVADA LEGAL NEWS LOCATED AT 930 SOUTH FOURTH ST., LAS VEGAS, NV 89101

The property heretofore described is being sold "as is".  All right, title and interest conveyed to and now held by it under said Deed of Trust in the property situated in said County and State describing the land therein: A.P.N. # 138-12-813-001

LOT ONE (1) OF RED FEATHER SHOPPING CENTER, AS SHOWN BY MAP THEREOF ON FILE IN BOOK 89 OF PLATS, PAGE 86, IN THE OFFICE OF THE COUNTY RECORDER, CLARK COUNTY, NEVADA.

The street address and other common designation, if any, of the real property described above is purported by the CLARK County Tax Assessor to be:  3231 N DECATUR BLVD., LAS VEGAS, NV.

The undersigned Trustee disclaims any liability for any incorrectness of the street address and other common designation, if any, shown herein.  Said sale will be made, but without covenant or warranty, expressed or implied, regarding title, possession, or encumbrances, to pay the remaining principal sum of the Note(s) secured by said Deed of Trust, with interest thereon, as provided in said Note(s), advances, if any, under the terms of the Deed of Trust, estimated fees, charges and expenses of the Trustee and of the trusts created by said Deed of Trust.  The total amount of the unpaid balance of the obligation secured by the property to be sold and reasonable estimated costs, expenses and advances at the time of the initial publication of the Notice of Trustee's Sale is:  <u>$1,000,000.00</u>  (estimated amount).   Accrued interest and additional advances, if any, will increase this figure prior to sale.

<u>A person who purchases property pursuant to every sale made under the provisions of NRS Chapter 107, is not a bona fide purchaser and the sale may be declared void if the</u>



Trustee Sale# NV0227488   Loan # BOUCH-LV1   Order # 3206-154073

**Trustee or other persons authorized to make the sale does not substantially comply with the provisions of NRS Chapter 107.**

**If the Trustee is unable to convey title for any reason, the successful bidder's sole and exclusive remedy shall be the return of monies paid to the Trustee and the successful bidder shall have no further recourse.**

In order to contact the Nevada Ombudsman's Office please call (877) 829-9907

In order to contact ROYA BOUCHERIAN for assistance in working something out to avoid the foreclosure call (310) 208-1840

The Beneficiary under said Deed of Trust heretofore executed and delivered to the undersigned a written Declaration of Default and Demand for Sale, and a written Notice of Default and Election to Sell. The undersigned caused said Notice of Default and Election to Sell to be recorded in the County where the real property is located and more than three months have elapsed since such recordation.

DATED: **02/10/2010**

**TRUSTEE CORPS, as Successor Trustee**

By:  Matt Kelley, Trustee Sales Officer

State of **CALIFORNIA**

County of **ORANGE**

On **02/10/2010** before me, _____Sinuon Seng_____, a notary public, personally appeared <u>Matt Kelley</u> who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____
Notary Public in and for said County and State

SINUON SENG
Commission # 1651505
Notary Public - California
Orange County
My Comm. Expires Mar 14, 2010

**TRUSTEE CORPS**
30 Corporate Park, Suite 400, Irvine, CA  92612
**FOR SALE INFORMATION CONTACT: (714) 573-1965, (714) 573-7777, (949) 252-8300**
**FOR REINSTATEMENT / PAY OFF REQUESTS CONTACT: (949) 252-8300**

CERTIFIED COPY. THIS
DOCUMENT IS A TRUE AND
CORRECT COPY OF THE
RECORDED DOCUMENT MINUS
ANY REDACTED PORTIONS

2013  2 5. JUL.

*Debbie Conway*
RECORDER

**EXHIBIT 3**



Los Angeles County **REGISTRAR-RECORDER/COUNTY CLERK**

DEAN C. LOGAN
Registrar-Recorder/County Clerk

If this document contains any restriction based on race, color, religion, sex, gender, gender identity, gender expression, sexual orientation, familial status, marital status, disability, genetic information, national origin, source of income as defined in subdivision (p) of Section 12955, or ancestry, that restriction violates state and federal fair housing laws and is void, and may be removed pursuant to Section 12956.2 of the Government Code. Lawful restrictions under state and federal law on the age of occupants in senior housing or housing for older persons shall not be construed as restrictions based on familial status.

RER 2011

P.O. Box 1250, Norwalk, California 90651-0489 - www.lavote.net

EXHIBIT 

**This page is part of your document - DO NOT DISCARD**

## 20101523950



**Pages: 0039**



Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**10/25/10 AT 08:00AM**

| | |
|---|---|
| FEES: | 129.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 129.00 |



**LEADSHEET**



201010250270022

00003172643

002956480

**SEQ:
20**

**DAR - Title Company (Hard Copy)**



**THIS FORM IS NOT TO BE DUPLICATED**

E44472

T72

**CHICAGO TITLE COMPANY**



After recording, return to:

Bilzin Sumberg Baena
Price & Axelrod LLP
200 South Biscayne Boulevard, Suite 2500
Miami, Florida 33131-5340
Attn: Post-Closing Department

_(Space Above For Recorder's Use Only)_

## NOTE AND FEE AND LEASEHOLD DEED OF TRUST ASSUMPTION AGREEMENT
### (JPMCC 2006-LDP7; Loan No. 011052327)

THIS NOTE AND FEE AND LEASEHOLD DEED OF TRUST ASSUMPTION AGREEMENT ("**Agreement**") is executed as of October 22, 2010, effective as of October 22, 2010, and is entered into by and between **U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR THE REGISTERED HOLDERS OF J.P. MORGAN CHASE COMMERCIAL MORTGAGE SECURITIES CORP., COMMERCIAL MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-LDP7** ("**Lender**"), having an address at 209 S. LaSalle Street, Suite 300, Chicago, IL 60604; Re: JPMCC 2006-LDP7; Loan No 011052327 and **DE 12121 WILSHIRE, LP**, a Delaware limited partnership ("**New Borrower**"), having an address at 808 Wilshire Boulevard, Suite 200, Santa Monica, California 90401.

### PRELIMINARY STATEMENT

A.    **WILBUN 7, LLC**, a Delaware limited liability company ("**Wilbun**"), **MISSION REAL ESTATE ASSOCIATES LLC**, a California limited liability company ("**Mission**"), **WILSHIRE BUNDY HOLDINGS LLC**, a Delaware limited liability company ("**Wilshire**"), **CIVIC PALM LLC**, a Delaware limited liability company ("**Civic**") and **BUNWIL CAPITAL LLC**, a Delaware limited liability company ("**Bunwil**" together with Wilbun, Mission, Wilshire and Civic individually and collectively, "**Original Borrower**"), having an address at c/o R. Todd Neilson, Trustee, LECG, 2049 Century Park East, Suite 2300, Los Angeles, California 90067 is the current owner of fee title to that certain real property described as Parcels 1 and 4 on **Exhibit A** attached hereto and incorporated herein (the "**Fee Parcel**") and the buildings and improvements located thereon (the "**Fee Improvements**"), and is also the tenant under the Ground Lease (as defined on **Exhibit B-1** attached hereto) of that certain real property described as Parcel 3 on **Exhibit A** (the "**Ground Leasehold Estate**") and the owner of a determinable fee estate in and to the buildings and improvements located thereon and described as Parcel 2 on **Exhibit A** (the "**Ground Lease Improvements**; together with the Fee Improvements are collectively the "**Improvements**"), which Fee Parcel, Ground Leasehold Estate and Improvements are commonly known as "**Wilshire Bundy Plaza**" located at 12121 Wilshire Boulevard in the City of Los Angeles, County of Los

MIAMI 2170879.7 7249631347
EXECUTION COPY

910065771-X49

Angeles, State of California (the Fee Parcel, Ground Leasehold Estate and Improvements are hereinafter sometimes collectively referred to as the **"Project"**).

B.      Lender is the current owner and holder of a loan ("**Loan**") in the original principal amount of $60,030,000.00, as evidenced and/or secured by the documents described on **Exhibit B** attached hereto (together with any and all other agreements, documents, instruments evidencing, securing or in any manner relating to the Loan, as all of the same may be amended, restated, supplemented or otherwise modified from time to time, shall hereinafter be collectively referred to as the **"Loan Documents"**). The Loan is secured in part by the Project, which Project is described in and encumbered by the **"Security Instrument"** described on **Exhibit B**. The Security Instrument encumbers, among other things, all of Original Borrower's right, title and interest in and to the property described on **Exhibit A** hereto.

C.      New Borrower desires to purchase the Project from Original Borrower and to assume Original Borrower's obligations under the Assumed Loan Documents (as hereinafter defined) as provided herein. As used in this Agreement, the term **"Assumed Loan Documents"** shall mean the Loan Documents described on **Exhibit B** attached hereto excluding the Guaranty.

D.      A sale of the Project to, and the assumption of the Loan by, a third party without the consent of the holder of the Security Instrument is prohibited by the terms thereof.

E.      Mission and Bunwil (the **"Debtor Borrowers"**) are currently debtors in chapter 11 bankruptcy cases in the United States Bankruptcy Court, Central District of California, Los Angeles Division (the **"Court"**) case nos. 2:10-bk-22370-BR and 2:10-bk-22153-BR, respectively (the **"Borrower Bankruptcy Cases"**). R. Todd Nielson ("**Trustee**") is the chapter 11 trustee in *In re Ezri Namvar*, United States Bankruptcy Court, Central District of California, Los Angeles Division case no. 2:08-bk-32349-BR (the **"Namvar Case"**). The Borrower Bankruptcy Cases and the Namvar Case are collectively refereed to herein as the **"Bankruptcy Cases"**).

F.      The Court in the Bankruptcy Cases has approved the sale of the Project by Original Borrower (including Debtor Borrowers) to New Borrower pursuant to a court order entered by the Court.

G.      The Lender has agreed to consent to the following requested actions (collectively the "Requested Actions"): **a)** Original Borrower (including the Debtor Borrowers) selling the Project to New Borrower, and **b)** New Borrower assuming Original Borrower's (including Debtor Borrower's) obligations under the Assumed Loan Documents, on the terms and conditions hereinafter set forth.

In consideration of $10.00 paid by each of the parties to the other, the mutual covenants set forth below, and other good and valuable consideration, receipt and sufficiency of which are acknowledged, the parties agree as follows:

## ARTICLE 1

## ACKNOWLEDGMENTS, WARRANTIES AND REPRESENTATIONS

1.1     **Acknowledgments, Warranties and Representations of New Borrower.** As a material inducement to Lender to enter into this Agreement and to consent to the Requested

Actions, New Borrower acknowledges, warrants, represents and agrees to and with Lender (which representations and warranties are made as of the date hereof) as follows:

(a)     <u>Incorporation of Recitals</u>.   All of the facts set forth in the Preliminary Statement of this Agreement are true and correct and incorporated into this Agreement by reference.

(b)     Authority of New Borrower.

(i)     <u>New Borrower</u>.  New Borrower is a duly formed, validly existing limited partnership in good standing under the laws of the State of Delaware and is qualified to transact business in the State of California.  The execution and delivery of, and performance under, this Agreement by New Borrower has been duly and properly authorized pursuant to all requisite action of the partners of New Borrower and will not (i) violate any provision of any law, rule, regulation, order, writ, judgment, injunction, decree, determination or award presently in effect having applicability to New Borrower or the certificate of formation, limited partnership agreement, or any other organizational documents of New Borrower or (ii) result in a breach of or constitute or cause a default under any indenture, agreement, lease or instrument to which New Borrower is a party or, to New Borrower's knowledge, any indenture, agreement, lease or instrument binding on the Project.

(ii)     <u>New General Partner</u>.   DE 12121 Wilshire GP, LLC, a Delaware limited liability company ("**New General Partner**"), is the sole general partner of New Borrower. New General Partner is a duly formed, validly existing limited liability company in good standing under the laws of the State of Delaware and is qualified to transact business in the State of California.  The undersigned officer of New General Partner, acting alone without the joinder of any other officer or member of New General Partner or any other party, has the power and authority to execute this Agreement and the Loan Documents to which New Borrower is a party on behalf of New General Partner, in its capacity as the general partner of New Borrower, and to duly bind New General Partner and New Borrower under this Agreement and the Loan Documents to which New Borrower is a party.  The execution and delivery of, and performance under, this Agreement by New General Partner has been duly and properly authorized pursuant to all requisite company action of New General Partner and will not (i) violate any provision of any law, rule, regulation, order, writ, judgment, injunction, decree, determination or award presently in effect having applicability to New General Partner or the certificate of formation, limited liability company agreement, or any other organizational documents of New General Partner or (ii) result in a breach of or constitute or cause a default under any indenture, agreement, lease or instrument to which New General Partner is a party.

(c)     <u>Financial Statements</u>.   The consolidated financial statements and other financial information ("**Financial Statements**") of Douglas Emmett, Inc., a Maryland corporation (the "**REIT**"), which have been previously delivered to Lender in connection with Lender's approval of the Requested Actions are true, complete and accurate in all material respects and accurately represent the financial condition of the REIT as of the date thereof.  There has not been any material adverse change to the financial condition of the REIT between the date of the Financial Statements and the date of this Agreement.  New Borrower also acknowledges and

agrees to timely comply with all financial, bookkeeping and reporting requirements applicable to New Borrower or New Indemnitor (as such term is defined in the Joinder By and Agreement of New Indemnitor attached hereto (the "**New Indemnitor Joinder**")) set forth in the Assumed Loan Documents, including, without limitation, those set forth in Section 9.11 of the Loan Agreement, as modified by this Agreement. New Borrower acknowledges that the Financial Statements have been provided to Lender to induce Lender to enter into this Agreement and are being relied upon by Lender for such purposes.

      (d)   <u>Bankruptcy Proceedings</u>. Neither New Borrower nor any of New Borrower's partners, affiliates or other entities which may be owned or controlled directly or indirectly by New Borrower or its partners ("**Related Entities**") has been a party (other than as a creditor) to any voluntary petition under any Chapter of the Bankruptcy Code, Title 11, U.S.C.A. ("**Bankruptcy Code**"), or in any proceeding for relief, protection, reorganization, liquidation, dissolution or similar relief for debtors ("**Debtor Proceeding**") under any local, state, federal or other insolvency law or laws providing relief for debtors within seven (7) years prior to the date of this Agreement.

      (e)   <u>Defaults on Other Indebtedness.</u> Neither New Borrower nor its partners has materially defaulted under its or their obligations with respect to any other indebtedness.

      (f)   <u>New Borrower's Organizational Documents</u>. New Borrower has not transacted any business in New Borrower's name since its formation that is unrelated to the Project. New Borrower is and will continue to be in full compliance with all of its organizational documents and the single purpose entity and separateness requirements of the Assumed Loan Documents, as modified herein, and such organizational documents do not conflict in any material respect with any of such single purpose entity and separateness requirements of the Assumed Loan Documents, as modified herein.

      (g)   <u>Assets of New Borrower</u>. The only assets of New Borrower are the Project, its interest in Leases and Rents (as such terms are defined in the Security Instrument, the personal property owned or leased by New Borrower and used in connection with the Project and cash or cash equivalents.

      (h)   <u>Management of Project</u>. New Borrower is entering into that certain Property Management Agreement with Douglas Emmett Management, LLC, a Delaware limited liability company ("**Project Manager**"), for the management of the Project (the "**New Management Agreement**"). The term "**Management Agreement**" or "**management agreement**" or "**Property Management Contract**" or such other similar term in the Assumed Loan Documents shall hereafter refer to the New Management Agreement. The term "**Property Manager**" or such other similar term in the Assumed Loan Documents shall hereafter refer to the Project Manager. For purposes of the Loan Documents, Lender hereby approves Project Manager, the New Management Agreement and that certain Expense Sharing Agreement dated as of June 18, 2010, by and among, inter alia, Douglas Emmett Properties, LP, a Delaware limited partnership, New Indemnitor and New Borrower (the "**Expense Sharing Agreement**"). New Borrower covenants and agrees to comply with and to cause the Project Manager to comply with all terms and conditions of the Assumed Loan Documents concerning the management of the Project, including without limitation the obligation to obtain Lender's consent to the management of the Project by any entity other than Project Manager or any permitted replacement thereof. On



the date hereof, Project Manager shall execute and deliver to Lender a subordination of the New Management Agreement in form acceptable to Lender, New Borrower and Project Manager.

(i)       Loans to Related Entities.  There are no loans payable by New Borrower to any partner(s) of New Borrower or any other Related Entities or, except for the Loan or as otherwise permitted by the Assumed Loan Documents, to any other entities or persons.

(j)       Non-Consolidation Opinion.  New Borrower will comply with each of the assumptions made with respect to it in that certain substantive non-consolidation opinion letter, dated the date hereof, delivered by New Borrower's counsel in connection with the Requested Actions (the "**Non-Consolidation Opinion**"), including but not limited to, any exhibits attached thereto, any certificates referred to therein and any subsequent non-consolidation opinion delivered by New Borrower's counsel in accordance with the terms and conditions of the Security Instrument.  New Borrower has caused and shall cause each Related Entity other than the New Borrower with respect to which an assumption is made in the Non-Consolidation Opinion, including but not limited to, any exhibits attached thereto, to comply with each of the assumptions made with respect to it in the Non-Consolidation Opinion, including, but not limited to, any exhibits attached thereto, and any certificates referred to therein. All of the assumptions made with respect to New Borrower or any Related Entity in the Non-Consolidation Opinion, including, but not limited to, any exhibits attached thereto, and any certificates referred to therein, are true and correct.

(k)       New Borrower's Interests.  Except for the Loan, neither New Borrower nor any of its partners is obtaining a loan to finance its interest in New Borrower or the Project or pledging its interest in New Borrower to any party, and no one has the right to take over control of New Borrower from New General Partner and New Indemnitor.

(l)       Prohibited Person.  New Borrower warrants and represents, after review of the website identified below, that neither New Borrower nor New Indemnitor nor any of their respective officers, directors, shareholders, partners, members or affiliates (including the holders of indirect equity interests in New Borrower, but excluding (1) the holders of publicly traded (on a nationally recognized stock exchange) equity interests in (w) the REIT, (x) New Indemnitor or (y) any other affiliate of New Borrower or New Indemnitor and (2) the holders of preferred limited partnership interests in DEI X Partnership REIT LP, a Delaware limited partnership) is an entity or person (i) that is listed in the Annex to, or is otherwise subject to the provisions of Section 1 of, Executive Order 13224, issued on September 24, 2001 ("**EO13224**"), (ii) whose name appears on the United States Treasury Department's Office of Foreign Assets Control ("**OFAC**") most current list of "**Specifically Designated Nationals and Blocked Persons**" (which list may be published from time to time in various media including, but not limited to, the OFAC website, http://www.treas.gov/offices/enforcement/ofac/sdn/t11sdn.pdf, (iii) who commits, threatens to commit or supports "**terrorism**", as that term is defined in EO13224, or (iv) who, to the knowledge of New Borrower, is otherwise affiliated with any entity or person described in clauses [i] – [iii] above (any and all parties or persons described in clauses [i] – [iv] above are herein referred to as a "**Prohibited Person**").  New Borrower covenants and agrees that neither New Borrower nor New Indemnitor nor any affiliate thereof controlled directly or indirectly by the REIT will (a) knowingly conduct any business, nor knowingly engage in any transaction or dealing, with any Prohibited Person, including, but not limited to, knowingly making or receiving any contribution of funds, goods, or services, to or for the benefit of a Prohibited Person, or

(b) knowingly engage in or conspire to engage in any transaction that evades or avoids, or has the purpose of evading or avoiding, or attempts to violate, any of the prohibitions set forth in EO13224. New Borrower further covenants and agrees to deliver (from time to time) to Lender any such certification as may be requested by Lender in its reasonable discretion, confirming that, based on reasonable inquiry (q) neither New Borrower nor New Indemnitor nor any of their respective officers, directors, shareholders, partners, members or affiliates (including the holders of indirect equity interests in New Borrower, but excluding (1) the holders of publicly traded (on a nationally recognized stock exchange) equity interests in, (r) the REIT, (s) New Indemnitor or (t) any other affiliate of New Borrower or New Indemnitor and (2) the holders of preferred limited partnership interests in DEI X Partnership REIT LP, a Delaware limited partnership) is a Prohibited Person and (u) to New Borrower's knowledge, neither New Borrower, New Indemnitor nor any affiliate thereof controlled directly or indirectly by the REIT has (a) knowingly conducted any business, nor knowingly engaged in any transaction or dealing, with any Prohibited Person, including, but not limited to, knowingly making or receiving any contribution of funds, goods, or services, to or for the benefit of a Prohibited Person or (b) knowingly engaged in or conspired to engage in any transaction that evaded or avoided, or had the purpose of evading or avoiding, or attempted to violate, any of the prohibitions set forth in EO13224.

(m)    Loan Documents.  This Agreement and the Assumed Loan Documents, from and after the date hereof, are valid and legally binding obligations of New Borrower, enforceable against New Borrower in accordance with their terms except as such enforceability may be limited by bankruptcy, insolvency, reorganization, moratorium or other similar laws affecting the enforcement of creditors' rights generally, and by general principles of equity (regardless of whether such enforceability is considered in a proceeding in equity or at law). This Agreement and the execution of other documents contemplated hereby do not constitute the creation of a new debt or the extinguishment of the debt evidenced by the Loan Documents, nor will they in any way affect or impair the liens and security interests created by the Loan Documents, which New Borrower acknowledges to be valid and existing liens and security interests in the Project.  New Borrower agrees that the lien and security interests created by the Loan Documents continue to be in full force and effect, unaffected and unimpaired by this Agreement or by the transfer of the Project or any collateral described in financing statements filed in connection with the Loan Documents and that said liens and security interests shall so continue in their perfection and priority until the debt secured by the Loan Documents is fully discharged. As of the date hereof, New Borrower has no defenses, affirmative defenses, setoffs, claims, counterclaims, crossclaims or causes of action of any kind or nature whatsoever against Lender or any of Lender's predecessors in interest, and any subsidiary or affiliate of Lender and all of the past, present and future officers, directors, contractors, employees, agents, servicers (including, but not limited to, Berkadia Commercial Mortgage LLC and LNR Partners, LLC, successor by statutory conversion to LNR Partners, Inc.), attorneys, representatives, participants, successors and assigns of Lender and Lender's predecessors in interest (collectively, "**Lender Parties**") with respect to (i) the Loan, (ii) this Agreement or the Assumed Loan Documents, or (iii) the Project.  To the extent New Borrower would be deemed to have any such defenses, affirmative defenses, setoffs, claims, counterclaims, crossclaims or causes of action as of the date hereof, New Borrower knowingly waives and relinquishes any of them existing as of the date hereof.  New Borrower acknowledges that it has received copies of all of the Assumed Loan Documents.

(n)     Waiver of Default.   Lender hereby acknowledges and confirms that all defaults and Events of Default under the Assumed Loan Documents existing before or as of the Acquisition Date have been cured or if not cured, are hereby waived by Lender; provided, however, with respect to any environmental obligations under the Assumed Loan Documents and with respect to the maintenance and other property obligations of New Borrower under the Assumed Loan Documents (collectively, the **"Continuing Project Obligations"**), such waiver by Lender does not and shall not preclude Lender from requiring New Borrower to comply with the Continuing Project Obligations under the Assumed Loan Documents irrespective of whether such Continuing Project Obligations arose prior to the Acquisition Date.

(o)     Inspections.   Other than that certain Letter dated January 13, 2010 Re: Executive Summary of Property Physical Condition Report and Seismic Risk Review, prepared by MHP, Inc., under project number 09-0354-002, and that certain Phase I Environmental Site Assessment Report dated December 23, 2009, prepared by Partner Engineering and Science, Inc., under project number 09-65124.1, and excluding any reports or surveys obtained by any Person other than New Borrower or a Related Entity, New Borrower has not obtained any other written third party inspection reports relating to the Project that have not been delivered to Lender. Additionally, New Borrower has not obtained any tenant estoppel certificates from the tenants located at the Project that have not been delivered to Lender

(p)     Reaffirmation.   To New Borrower's actual knowledge, New Borrower affirms and confirms the truth and accuracy in all material respects of all representations and warranties relating to the Project set forth in the Assumed Loan Documents, as if made on the date hereof, except to the extent any such representations and warranties are modified by the delivery to Lender of updated or additional reports, data or other information, including, without limitation, environmental inspection reports, a survey and an updated title insurance policy or modification endorsement to Lender's existing title insurance policy insuring the Security Instrument.

(q)     Acknowledgment of Waiver of Right to Prepay Loan.   BY INITIALING BELOW, NEW BORROWER EXPRESSLY ACKNOWLEDGES AND UNDERSTANDS THAT, PURSUANT TO THE TERMS OF THE LOAN AGREEMENT, NEW BORROWER HAS AGREED THAT IT HAS NO RIGHT TO PREPAY THE NOTE EXCEPT IN ACCORDANCE WITH THE TERMS AS DESCRIBED IN THE LOAN AGREEMENT AND THE NOTE AND THAT IT SHALL BE LIABLE FOR THE PAYMENT OF THE PROHIBITED PREPAYMENT FEE IN ACCORDANCE WITH THE PROVISIONS OF THE LOAN AGREEMENT FOR ANY PROHIBITED PREPAYMENT (AS DEFINED IN THE LOAN AGREEMENT) OCCURRING AFTER THE ACQUISITION DATE.   FURTHER, BY INITIALING BELOW, NEW BORROWER WAIVES ANY RIGHTS IT MAY HAVE UNDER SECTION 2954.10 OF THE CALIFORNIA CIVIL CODE, OR ANY SUCCESSOR STATUTE THEREOF, AND EXPRESSLY ACKNOWLEDGES AND UNDERSTANDS THAT LENDER HAS CONSENTED TO THE REQUESTED ACTIONS IN RELIANCE UPON SAID AGREEMENTS AND WAIVER OF NEW BORROWER AND THAT LENDER WOULD

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

In this connection, New Borrower, as to itself and all of its heirs, successors and assigns, hereby agrees, represents, and warrants that it realizes and acknowledges that factual matters now unknown to it may have given or may hereafter give rise to causes of action, claims, demands, debts, controversies, damages, costs, losses and expenses which are presently unknown, unanticipated and unsuspected, and New Borrower, as to itself and all of its heirs, successors and assigns, further agrees, represents and warrants that the release herein contained has been negotiated and agreed upon in light of that realization and that, with respect to the foregoing Released Matters, it nevertheless hereby intends to release, discharge and acquit all parties so released from any such unknown claims. Notwithstanding anything to the contrary contained herein, the Released Matters shall not include (i) Lender's representations, warranties, covenants, obligations or liabilities under this Agreement or (ii) Lender's obligations arising under the Loan Documents from and after the Acquisition Date.

2.6     **Further Assurances**.   New Borrower shall execute and deliver to Lender such agreements, instruments, documents, financing statements and other writings as may be requested from time to time by Lender to perfect and to maintain the perfection of Lender's security interest in and to the Project granted pursuant to the Loan Documents, and to consummate the transactions contemplated by or in the Assumed Loan Documents and this Agreement.

## ARTICLE 3

### ADDITIONAL PROVISIONS

3.1     **Consent of Lender**.   Subject to the terms of this Agreement, Lender hereby consents to the Requested Actions.  New Borrower agrees that, except as otherwise expressly provided in Section 3.3 of this Agreement, this Agreement shall not be deemed an agreement by Lender to consent to any other transfer or conveyance of the Project or any other assumption of the Loan, or a consent to any secondary financing or secondary encumbrance on the Project or New Borrower or any interests in New Borrower.

3.2     **Intentionally Omitted**.

3.3     **Modification of Loan Documents**.  The Loan Documents are modified as follows:

(a)     On the Acquisition Date, New Borrower will deposit $37,163.76 into the Insurance Premium Escrow Account which, together with the existing balance of $38,385.24, will constitute a balance on such date of $75,549 (the "**Annual Premium Amount**") in the Insurance Premium Escrow Account.  During the term of the Loan, and provided that a minimum balance equal to the Annual Premium Amount is maintained in the Insurance Premium Escrow Account, New Borrower's obligation to make Monthly Insurance Deposits pursuant to Section 4.03 of the Loan Agreement shall be suspended.  Unless New Borrower fails to maintain the insurance required under Section 9.03 of the Loan Agreement and/or fails to provide Lender with evidence

of insurance coverage as required by Section 9.03 of the Loan Agreement (and such failure
continues for five (5) Business Days after notice of such failure from Lender) and/or an Event of
Default exists, funds in the Insurance Premium Escrow Account shall not be disbursed or used by
Lender to pay Insurance Premiums, subject to Lender's rights to use such funds upon an Event of
Default in accordance with the Loan Documents.  Additionally, if New Borrower fails to timely
provide the evidence of insurance as required by the Loan Agreement (and such failure continues
for five (5) Business Days after notice of such failure from Lender), Lender shall have the right, in
its sole discretion, to make payment of the Insurance Premiums as they become due from the
Insurance Premium Escrow Account (the "**Premium Payment**") and thereafter New Borrower
shall be required to replenish such escrow in the amount of the Insurance Premium Amount.
Additionally, if the annual premium for the insurance required by the Loan Agreement is
increased, the Annual Premium Amount shall also be increased and New Borrower shall deliver
the amount of such increase to Lender for deposit into the Insurance Premium Escrow Account
within thirty (30) days of New Borrower becoming aware of any such increase. During the term of
the Loan, and provided no Event of Default exists, the provisions of Section 4.03(a), (b), (c) and
(d) of the Loan Agreement relating to the deposit, use and adjustment of Monthly Insurance
Deposits will not apply; provided, however, in the event Lender exercises its right to make a
Premium Payment as permitted herein and/or an Event of Default occurs, Sections 4.03(a), (b), (c)
and (d) shall automatically be reinstated.

      (b)    Notwithstanding anything to the contrary contained in the Loan Agreement,
and subject to the terms of any subordination of the New Management Agreement executed by
Project Manager, nothing in the Loan Agreement or the other Loan Documents shall prohibit New
Borrower from paying leasing commissions to Project Manager (or any permitted replacement
thereof) in accordance with the terms of the New Management Agreement (or any permitted
replacement thereof);

      (c)    Section 7.01(c) of the Loan Agreement is modified to provide that the
organizational chart attached thereto is deleted and the organizational chart attached hereto is
hereby substituted in its place. All references to a "substantive consolidation opinion" in Sections
7.01(d) and 11.01(w) of the Loan Agreement shall hereafter refer to "that certain substantive non-
consolidation opinion letter, dated the date hereof, delivered by New Borrower's counsel in
connection with the Requested Actions" and shall not refer to any opinion previously provided to
Lender by Original Borrower or its counsel;

      (d)    The following modifications are made to Section 7.02(a) of the Loan
Agreement:

      (i)    Section 7.02(a)(xiii) of the Loan Agreement is modified as follows:

      (1)    to replace the phrase "two percent (2%) of the outstanding
principal amount of the Loan" with the phrase "two percent (2%) of the original principal amount
of the Loan"; and

      (2)    to add the following phrase to the end of Section
7.02(a)(xiii): "and other than (i) the obligations of New Borrower under the Ground Lease and (ii)
the obligation of New Borrower to pay its allocated share of Insurance Premiums and other costs
and expenses under the Expense Sharing Agreement dated as of June 18, 2010, by and among,

                             11

inter alia, Douglas Emmett Properties, LP, a Delaware limited partnership (the "**Operating
Partnership**"), New Indemnitor and New Borrower (the "**Expense Sharing Agreement**")";

(ii)     Nothing contained in Section 7.02(a)(xiv) of the Loan Agreement
shall prohibit New Borrower and/or New General Partner from preparing and reporting their
financial statements on a consolidated basis with Douglas Emmett Inc., a Maryland corporation
(the "**REIT**"), the Operating Partnership, and the other consolidated Affiliates of the REIT and the
Operating Partnership so long as the consolidated financial statements (and balance sheets, as
applicable) will clearly identify the assets and liabilities of New Borrower as belonging to New
Borrower. If such consolidated financial statements (and balance statements, as applicable) are
prepared, New Borrower shall provide Lender with copies thereof in accordance with Section
9.11(iv) of the Loan Agreement;

(iii)    Nothing contained in Section 7.02(a)(xx) of the Loan Agreement
shall prohibit New Borrower and/or New General Partner from preparing and filing its tax returns
on a consolidated basis with the REIT, the Operating Partnership and the other consolidated
Affiliates of the REIT and the Operating Partnership so long as the consolidated tax returns will
clearly identify the assets and liabilities of New Borrower as belonging to New Borrower and New
Borrower shall provide Lender with copies of any informational tax return for Borrower within ten
(10) Business Days after such tax returns (and/or extensions for such filings) have been filed;

(iv)    Section 7.02(a)(xxiii) of the Loan Agreement is modified as follows:
to replace the phrase "has maintained or shall maintain" with the phrase "has maintained or shall
maintain, or shall cause Property Manager to maintain,";

(e)     Section 7.02(b)(iii) is hereby deleted in its entirety and replaced with the
following: "(iii) with respect to Section 7.02(a)(xii) such SPE Equity Owner has not and shall not
, except for the Loan, its obligations as general partner of New Borrower, costs of maintaining its
existence and costs of performing its obligations under its limited liability company agreement,
incur any debt, secured or unsecured, direct or contingent (including without limitation,
guaranteeing any obligation);"

(f)     Sections 8.35 of the Loan Agreement is hereby deleted in its entirety;

(g)     The parties acknowledge that Lender has elected at this time not to require
New Borrower to provide or maintain earthquake insurance for the Property. Notwithstanding
anything to the contrary contained in Section 9.03 of the Loan Agreement, Lender shall not
require New Borrower to provide or maintain earthquake insurance for the Property during the
term of the Loan unless there has been a change in the relevant determinative criteria for the
Property customarily used by licensed seismic engineers, in accordance with prevailing industry
standards, to perform a seismic risk assessment of the Property and such change results in a
material change to the Scenario Expected Loss (commonly referred to as the Probable Maximum
Loss) for the Property;

(h)     Notwithstanding anything to the contrary contained in Section 9.03 of the
Loan Agreement, while insurance coverage is maintained under blanket insurance policies, New
Borrower may provide evidence of insurance renewals by delivery of Acord 25 and Acord 28
certificates (or other certificates of insurance that are reasonably acceptable to Lender) in lieu of

originals or copies of insurance policies and to provide such evidence on or before the expiration date of the applicable policy. Evidence of proof of payment of Insurance Premiums shall be provided within 10 days after such payment is due;

(i)     Notwithstanding anything to the contrary contained in Section 9.03 of the Loan Agreement, nothing in the Loan Documents shall prohibit the REIT or the Operating Partnership from obtaining additional insurance for the Property provided such insurance does not impair any insurance that is required to be maintained by the Assumed Loan Documents nor shall any such additional insurance be deemed to replace any insurance that is required to be maintained by the Additional Loan Documents;

(j)     For purposes of Section 9.06 of the Loan Agreement, Lender agrees to proceed and process New Borrower's request for approval of a proposed Lease or a proposed modification, supplement, renewal, expansion or extension of an existing Lease (each a "**Lease Action**") based on document drafts submitted by New Borrower provided New Borrower has submitted to Lender a summary of the material terms of such proposed Lease or Lease Action and provided that such Lease or Lease Action is documented pursuant to documentation which is consistent in all material respects with the most recent document draft and lease summary for such Lease or Lease Action previously delivered to Lender. Notwithstanding the foregoing, but consistent with Lender's agreement to act on document drafts, New Borrower shall continue to be required to provide the information and documentation required by the Loan Documents to enable Lender to review such requests and, promptly following Lender's final approval of any request, if given, New Borrower shall provide Lender with copies of all documents executed in connection with such Lease or Lease Action;

(k)     The Lender shall, if requested by New Borrower, enter into a subordination, non-disturbance and attornment agreement with the tenant under a Lease in the form attached hereto as **Exhibit E**, with such commercially reasonable changes thereto as may be requested by such tenant and reasonably approved by Lender;

(l)     For purposes of Section 9.08 of the Loan Agreement, the term "**materially altered**" shall mean alterations that are reasonably anticipated to cost in excess of $1,000,000; provided, however, in the event New Borrower intends to request reimbursement for any material alteration from any reserve, escrow or holdback held by Lender, the foregoing definition of "**materially altered**" shall not apply and New Borrower shall be required to comply with the applicable terms and provisions of Articles 4 and 5 of the Loan Agreement in connection therewith. The restrictions on alterations in the Loan Agreement are not intended to apply to Tenant Improvements required or contemplated by any existing Lease or that, in the case of Leases or Lease Actions entered into after the Acquisition Date, have been approved by Lender or for which Lender's approval is not required under the terms of the Loan Documents so long as such alterations are made consistent with the provisions of such Leases and in accordance with the requirements of the Assumed Loan Documents;

(m)     For purposes of Sections 9.11(a)(i), 9.11(a)(ii) and 9.11(a)(iii) of the Loan Agreement, the phrase "thirty (30) days" is hereby deleted and replaced by the phrase "sixty (60) days";

(n)     **Exhibit A** to the Loan Agreement is hereby deleted and replaced with **Exhibit C** attached hereto;

(o)     Sections 9.18 and 9.21 of the Loan Agreement are each hereby deleted in their entirety;

(p)     Sections 11.01(r), 11.01(s), 11.01(t), 11.01(u) and 11.01(v) of the Loan Agreement are each hereby deleted in their entirety. All references in Section 11.01(w) of the Loan Agreement shall hereafter refer to that certain substantive non-consolidation opinion letter, dated the date hereof, delivered by New Borrower's counsel in connection with the Requested Actions;

(q)     Lender confirms and agrees that, as of the Acquisition Date, the Loan is not fully recourse to New Borrower or New Indemnitor and that Section 12.01 of the Loan Agreement is hereby reinstated and in full force and effect as of the Acquisition Date. New Borrower shall have no personal liability under Article 12 of the Loan Agreement for any of the recourse events set forth in Article 12 of the Loan Agreement arising (i) prior to the Acquisition Date or (ii) on or after the Acquisition Date if, in the case of this clause (ii), such recourse event is caused by, or pertains to, Original Borrower, Civic Palm Manager LLC, a Delaware limited liability company, Mission Real Manager LLC, a Delaware limited liability company, or any of their respective members, managers, agents or Affiliates;

(r)     The following is added to the end of clause (d) of Section 12.02 of the Loan Agreement: "against Borrower and/or any SPE Equity Owner";

(s)     Clause (e) of Section 12.02 of the Loan Agreement is hereby deleted and inserted as a new clause (j) to Section 12.03 of the Loan Agreement;

(t)     Section 12.03(c) of the Loan Agreement is modified by adding the following additional exclusion to Article 7: "and excluding Section 7.02(a)(xiii), to the extent that said Section requires unsecured trade payables not to exceed the two percent (2%) limitation set forth therein and to be paid within 60 days of the date incurred, unless Borrower or the SPE Equity Owner has made distribution to its equity owners in violation of applicable Delaware law that rendered Borrower or SPE Equity Owner, as applicable, unable to comply with such requirement".

(u)     The following modifications are made to Article 19 of the Loan Agreement:

(i)     The definition of "Bank" shall hereinafter mean Bank of America;

(ii)     The definition of "**Borrower**" shall hereinafter mean **DE 12121 WILSHIRE, LP**, a Delaware limited partnership;

(iii)     The definition of "**Environmental Indemnity**" shall hereinafter mean the Environmental Indemnity Agreement, as assumed pursuant to the New Indemnitor Joinder.

(iv)     The definition of "**Guarantor**" shall hereinafter mean Douglas Emmett Partnership X, LP, a Delaware limited partnership.

(v)    The definition of "**Guaranty**" shall hereinafter mean the Guaranty (Exceptions to Nonrecourse Liability), as assumed and modified pursuant to the New Indemnitor Joinder.

(vi)    The definition of "**Individual Borrower**" shall hereinafter mean New Borrower;

(vii)    The definition of "**Lender**" shall hereinafter mean U.S. BANK NATIONAL ASSOCIATION, A NATIONAL BANKING ASSOCIATION, AS TRUSTEE FOR THE REGISTERED HOLDERS OF J.P. MORGAN CHASE COMMERCIAL MORTGAGE SECURITIES CORP., COMMERCIAL MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-LDP7;

(viii)    The definition of "**Operating Account**" shall hereinafter mean the bank account in the name of New Borrower established with Bank given the account number shown on **Exhibit G** hereto;

(ix)    The definition of "**Organizational Chart**" shall hereinafter mean the chart attached hereto as **Exhibit D;**

(x)    The definition of "**Permitted Transfer**" is modified by:

(1)    adding the following to the end of subsection (a):    "(as defined in this Loan Agreement) and/or a Change of Control (as defined in subsection (b) below)"

(2)    deleting subsection (b) and replacing it with the following:

"(b)    the following transfers (subject only to any conditions set forth below):

i.    the issuance, sale, conveyance, transfer, pledge or other disposition (each, a "**REIT Share Transfer**") of any shares of common stock (the "**REIT Shares**") in Douglas Emmett, Inc., a Maryland corporation (the "**REIT**") so long as (A) at the time of the REIT Share Transfer, the REIT Shares are listed on the New York Stock Exchange or any other nationally recognized stock exchange (any such stock exchange, a "**Recognized Stock Exchange**"), and (B) the REIT Share Transfer does not result in or cause a Change of Control (as hereinafter defined);

ii.    the issuance, sale, conveyance, transfer, pledge, or other disposition (each an "**OP Transfer**"), of any limited partnership interests (the "**OP Interests**") in Douglas Emmett Properties, LP, a Delaware limited Partnership ("**OP**") so long as (A) at the time of the OP Transfer, the REIT Shares are listed on a Recognized Stock Exchange, and (B) the OP Transfer does not result in or cause a Change of Control;

iii.    the sale, conveyance, transfer, pledge or other disposition (each a "**PI Transfer**"), of any of the preferred investors (for REIT qualification) limited partnership interests ("**PI Interests**") in either DEI X Partnership REIT, LP, a Delaware limited partnership (the "**Borrower's LP**") and/or Douglas Emmett Partnership X, LP, a

Delaware limited partnership (the **"Guarantor"**) so long as the PI Transfer does not result in or cause a Change of Control;

iv.     the sale, conveyance, pledge, transfer or other disposition (each a **"LP Transfer"**) of any limited partnership interests (the **"Guarantor Interests"**), other than a PI Transfer, in the Guarantor so long as (A) there is no payout or reduction in the invested capital of the Guarantor as a result of any such LP Transfer, (B) there is no redemption of any of the Guarantor Interests as a result of such LP Transfer, and (C) the LP Transfer does not result in or cause a Change of Control;

For purposes of this Section, a **"Change of Control"** shall occur when: (i) the REIT reduces its ownership interest in the OP below 51%, (ii) OP is no longer the sole member of DEI X Partnership GP, LLC, a Delaware limited liability company (**"DEI X GP"**), (iii) DEI X GP is no longer the general partner of the Guarantor, (iv) DEI X GP is no longer the general partner of Borrower's LP, (v) other than the PI Interests, the Guarantor is no longer the owner of all of the limited partnership interests in the Borrower's LP, (vi) the Borrower's LP is no longer the sole limited partner of Borrower, (vii) DE 12121 Wilshire GP, LLC, a Delaware limited liability company (**"Borrower's GP"**) is no longer the general partner of Borrower, (viii) DEI X GP is no longer the sole member of Borrower's GP, (ix) one Person (as such term is defined in the Loan Agreement) or group of affiliated Persons acquires more than 49% of the REIT Shares or the OP interests in one or a series of transactions, (x) as a result of a REIT Share Transfer, the individuals comprising the Board of Directors of the REIT, as the same exists for the twelve (12) month period immediately prior to such REIT Share Transfer, fail to represent a majority of the Board of Directors of the REIT as of the date of completion of the REIT Share Transfer and for a period of six (6) months following the REIT Share Transfer, or (xi) if the REIT enters into a merger, consolidation or other business combination, or a sale of all or substantially all of the REIT's assets and/or ownership interests which in any such case results in Borrower no longer being controlled by the REIT.

In addition to the occurrence of any of the foregoing events causing a **"Change of Control,"** the occurrence of any of the foregoing events, without Lender's prior written consent, shall also constitute an Event of Default under Section 11.01(m) of the Loan Agreement and shall constitute an event causing liability for all losses, claims, expenses or other liabilities incurred by Lender arising out of, or attributable to any of the foregoing events under Section 12.03 of the Loan Agreement and under Section 2.01 of the Guaranty.

(3)     deleting subsection (i);

(xi)     The definition of **"Rent Roll"** shall hereinafter mean the Rent Roll substantially in the form attached hereto as **Exhibit F**;

(xii)     The definition of **"SPE Equity Owner"** shall hereinafter mean DE 12121 Wilshire GP, LLC, a Delaware limited liability company; and

(xiii)     All references in the Loan Documents to **"Title Insurance Policy"** shall hereinafter also include those exceptions shown in any mortgagee title insurance policy, or

endorsement to Lender's existing mortgagee title insurance policy, obtained by Lender on the date hereof in connection with this Agreement.

3.4   **UCC Filings.**  New Borrower hereby grants and confirms unto Lender a security interest in all of New Borrower's personal property in which a security interest is granted to Lender pursuant to the Assumed Loan Documents and in all fixtures now owned or hereafter acquired by New Borrower located at the Project to the maximum extent permitted by the Uniform Commercial Code ("UCC").  New Borrower hereby consents to the filing of any financing statements or UCC forms required to be filed in the applicable states or any other applicable filing office, including, but not necessarily limited to, the state of organization of New Borrower and in the Records (collectively "Filings") in order to perfect or continue the perfection of said interest and, notwithstanding anything contained in any of the Loan Documents to the contrary, in accordance with the UCC, as amended subsequent to the making of the Loan, said Filings may be made by Lender without the consent or signature of New Borrower.

3.5   **References to Loan Documents.**  All references to the term **"Loan Documents"** in the Security Instrument and the other Loan Documents shall hereafter be modified to include this Agreement and all documents further evidencing or securing the Loan executed by New Borrower and/or New Indemnitor in connection with the Requested Actions.

## ARTICLE 4

## MISCELLANEOUS PROVISIONS

4.1   **No Limitation of Remedies.**  No right, power or remedy conferred upon or reserved to or by Lender in this Agreement is intended to be exclusive of any other right, power or remedy conferred upon or reserved to or by Lender under this Agreement, the Loan Documents or at law, but each and every remedy shall be cumulative and concurrent, and shall be in addition to each and every other right, power and remedy given under this Agreement, the Loan Documents or now or subsequently existing at law.

4.2   **No Waivers.**  Except as otherwise expressly set forth in this Agreement, nothing contained in this Agreement shall constitute a waiver of any rights or remedies of Lender under the Loan Documents or at law.  No delay or failure on the part of any party hereto in the exercise of any right or remedy under this Agreement shall operate as a waiver, and no single or partial exercise of any right or remedy shall preclude other or further exercise thereof or the exercise of any other right or remedy.  No action or forbearance by any party hereto contrary to the provisions of this Agreement shall be construed to constitute a waiver of any of the express provisions.  Any party hereto may in writing expressly waive any of such party's rights under this Agreement without invalidating this Agreement.

4.3   **Successors or Assigns.**  Whenever any party is named or referred to in this Agreement, the heirs, executors, legal representatives, successors, successors-in-title and assigns of such party shall be included.  All covenants and agreements in this Agreement shall bind and inure to the benefit of the heirs, executors, legal representatives, successors, successors-in-title and assigns of the parties, whether so expressed or not.

*19*

4.4   **Construction of Agreement.**   Each party hereto acknowledges that it has participated in the negotiation of this Agreement and no provision shall be construed against or interpreted to the disadvantage of any party hereto by any court or other governmental or judicial authority by reason of such party having or being deemed to have structured, dictated or drafted such provision. New Borrower at all times have had access to an attorney in the negotiation of the terms of and in the preparation and execution of this Agreement and have had the opportunity to review and analyze this Agreement for a sufficient period of time prior to execution and delivery. No representations or warranties have been made by or on behalf of Lender, or relied upon by New Borrower, pertaining to the subject matter of this Agreement, other than those set forth in this Agreement. All prior statements, representations and warranties, if any, are totally superseded and merged into this Agreement, which represents the final and sole agreement of the parties with respect to the subject matter hereof. All of the terms of this Agreement were negotiated at arm's length, and this Agreement was prepared and executed without fraud, duress, undue influence or coercion of any kind exerted by any of the parties upon the others. The execution and delivery of this Agreement are the free and voluntary act of New Borrower.

4.5   **Invalid Provision to Affect No Others.**   If, from any circumstances whatsoever, fulfillment of any provision of this Agreement or any related transaction at the time performance of such provision shall be due, shall involve transcending the limit of validity presently prescribed by any applicable usury statute or any other applicable law, with regard to obligations of like character and amount, then *ipso facto*, the obligation to be fulfilled shall be reduced to the limit of such validity. If any clause or provision operates or would prospectively operate to invalidate this Agreement, in whole or in part, then such clause or provision only shall be deemed deleted, as though not contained herein, and the remainder of this Agreement shall remain operative and in full force and effect.

4.6   **Notices.**   Except as otherwise specifically provided to the contrary, any and all notices, elections, approvals, consents, demands, requests and responses ("**Communications**") permitted or required to be given under this Agreement and the Loan Documents shall not be effective unless in writing, signed by or on behalf of the party giving the same, and sent by certified or registered mail, postage prepaid, return receipt requested, or by hand delivery or a nationally recognized overnight courier service (such as FedEx), to the party to be notified at the address of such party set forth below or at such other address within the continental United States as such other party may designate by notice specifically designated as a notice of change of address and given in accordance with this Section. Any Communications shall be effective upon the earlier of their receipt or three days after mailing in the manner indicated in this Section. Receipt of Communications shall occur upon actual delivery but if attempted delivery is refused or rejected, the date of refusal or rejection shall be deemed the date of receipt. Any Communication, if given to Lender, must be addressed as follows, subject to change as provided above:

U.S. Bank National Association, as Trustee
c/o Berkadia Commercial Mortgage LLC
CMBS Special Request
118 Welsh Road
Horsham, PA 19044
Re:  JPMCC 2006-LDP7; Loan No.: 011052327

With a copy to:



> LNR Partners, LLC
> 1601 Washington Avenue, Suite 700
> Miami Beach, Florida 33139
> Attn:   Director of Servicing
> Re:  JPMCC 2006-LDP7 Loan No.:  011052327

and, if given to New Borrower, must be addressed as follows, subject to change as provided above:

> DE 12121 Wilshire, LP
> 808 Wilshire Boulevard, Suite 200
> Santa Monica, California 90401
> Attn:  Jordan L. Kaplan and William Kamer
> Telephone: (310) 255-7700
> Facsimile:  (310) 255-7702

With a copy to:

> Cox, Castle & Nicholson LLP
> 2049 Century Park East, Suite 2800
> Los Angeles, California 90067
> Attn:  Jonathan Sears, Esq. and Marlene D. Goodfried, Esq.
> Telephone: (310) 277-4222
> Facsimile: (310) 277-7889

4.7    **Governing Law.**  This Agreement shall be interpreted, construed and enforced in accordance with the laws of the State in which the Project is located.

4.8    **Headings; Exhibits.**  The headings of the articles, sections and subsections of this Agreement are for the convenience of reference only, are not to be considered a part of this Agreement and shall not be used to construe, limit or otherwise affect this Agreement.

4.9    **Modifications.**  The terms of this Agreement may not be changed, modified, waived, discharged or terminated orally, but only by an instrument or instruments in writing, signed by the party against whom the enforcement of the change, modification, waiver, discharge or termination is asserted. Lender's consent to the Requested Actions shall not be deemed to constitute Lender's consent to any provisions of the organizational documents that would be in violation of the terms and conditions of any of the Loan Documents.

4.10    **Time of Essence; Consents.**  Time is of the essence of this Agreement and the Loan Documents.  Any provisions for consents or approvals in this Agreement shall mean that such consents or approvals shall not be effective unless in writing and executed by Lender.

4.11   **Counterparts**.  This Agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which will constitute one and the same agreement.  Any signature page of this Agreement may be detached from any counterpart of this Agreement without impairing the legal effect of any signatures thereon and may be attached to another counterpart of this Agreement identical in form hereto but having attached to it one or more additional signature pages.

4.12   **New Indemnitor Joinder**.  New Indemnitor (as defined in the New Indemnitor Joinder attached hereto) shall assume the obligations of Original Borrower and/or Original Indemnitor under the Guaranty and Environmental Indemnity pursuant to the New Indemnitor Joinder attached hereto.

4.13   **WAIVER OF TRIAL BY JURY**.  NEW BORROWER WAIVES ITS RIGHT, TO THE FULLEST EXTENT PERMITTED BY LAW, AND AGREES NOT TO ELECT A TRIAL BY JURY WITH RESPECT TO ANY ISSUE ARISING OUT OF THIS AGREEMENT, THE SECURITY INSTRUMENT, THE LOAN AGREEMENT, ANY LOAN DOCUMENT, OR THE RELATIONSHIP BETWEEN NEW BORROWER, AS BORROWER, AND LENDER WITH RESPECT TO THE LOAN.

4.14   **Dealings with New Borrower and New Indemnitor**.  Notwithstanding the fact that Original Borrower and Original Indemnitor have not been released from their respective obligations under the Loan Documents, Lender hereby agrees that from and after the Acquisition Date (i) all notices to the "**Borrower**" under the Loan Documents for matters arising from and after the Acquisition Date or pertaining to New Borrower's obligations under the Assumed Loan Documents or New Indemnitor's obligations under the Guaranty or Environmental Indemnity shall be given to New Borrower pursuant to Section 4 of this Agreement and not to Original Borrower or Original Indemnitor, (ii) all notices to the "**Guarantor**" under the Guaranty or Environmental Indemnity for matters arising from and after the Acquisition Date, shall be given to New Indemnitor pursuant to Section 8 of the New Indemnitor Joinder and not to Original Indemnitor or Original Borrower, (iii) Lender shall, for matters arising from and after the Acquisition Date or pertaining to New Borrower's obligations under the Assumed Loan Documents or New Indemnitor's obligations under the Guaranty or Environmental Indemnity, deal solely with New Borrower and New Indemnitor (and not Original Borrower or Original Indemnitor) with respect to the Project, the administration of the Loan and all matters pertaining to the Project or the Loan under the Loan Documents, (iv) other than the Assumed Loan Documents, as modified by this Agreement, no agreement of any kind between Lender and Original Borrower or Original Indemnitor or their respective agents, personal or legal representatives, successors or assigns shall be binding on New Borrower or New Indemnitor or shall be effective to amend, modify, supplement, waive or otherwise impair or affect any of the terms or provisions of the Loan Documents or any rights or obligations of New Borrower or New Indemnitor under the Loan Documents, (v) no notice or communication of any kind from Original Borrower, Original Indemnitor or their respective agents, personal or legal representatives, successor or assigns shall be binding on New Borrower or New Indemnitor and (vi) no action or omission by Original Borrower, Original Indemnitor or their respective agents, personal or legal representatives, successors or assigns shall constitute a default or Event of Default under the Loan Documents.

4.15   **No Waiver of Lender Rights**.  Any waivers provided by Lender pursuant to the provisions of this Agreement are for the sole purpose of completing the Requested Actions with

New Borrower and New Indemnitor and expressing certain agreements between the parties hereto, and are not intended to be a waiver of any claims Lender may have, if any, against Original Borrower and/or Original Indemnitor.

**(REMAINDER OF PAGE INTENTIONALLY LEFT BLANK)**

23

The parties have executed and delivered this Agreement as of the day and year first above written.

Witnesses:

**LENDER:**

**U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR THE REGISTERED HOLDERS OF J.P. MORGAN CHASE COMMERCIAL MORTGAGE SECURITIES CORP., COMMERCIAL MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-LDP7**

By:     LNR Partners, LLC, a Florida limited liability company, successor by statutory conversion to LNR Partners, Inc., a Florida corporation, as attorney-in-fact

By:     _____
        RANDOLPH WOLPERT
        Vice President

Print Name: SANDRA ARIZMENDI

Print Name: Xiomara Meza Muñiz

STATE OF FLORIDA          )
                          ) SS:
COUNTY OF MIAMI-DADE )

This instrument was acknowledged before me, a notary public this 19th day of October by Randolph Wolpert _____, as Vice President of LNR Partners, LLC, a Florida limited liability company, successor by statutory conversion to LNR Partners, Inc., a Florida corporation, as attorney-in-fact, on behalf of said company as attorney-in-fact for U.S. BANK NATIONAL ASSOCIATION, A NATIONAL BANKING ASSOCIATION, AS TRUSTEE FOR THE REGISTERED HOLDERS OF J.P. MORGAN CHASE COMMERCIAL MORTGAGE SECURITIES CORP., COMMERCIAL MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-LDP7, on behalf of the trust. He is personally known to me or ___ has produced a driver's license as identification.

Notary Public State of Florida
Nulise Santana
My Commission DD737159
Expires 11/27/2011

Notary Public, State of ___ Nulise Santana
My Commission Expires: 11/27/2011

MIAMI 2170879.7 7249631347
EXECUTION COPY

24

The parties have executed and delivered this Agreement as of the day and year first above
written.

Witnesses:                                    **NEW BORROWER:**

                                              **DE 12121 WILSHIRE, LP**, a Delaware limited
                                              partnership

                                              By:     DE 12121 Wilshire GP, LLC, a Delaware
                                                      limited liability company, its General Partner

                                              By:
                                              Name: William Kamer
                                              Title: CEO

STATE OF CALIFORNIA          )
                             ) SS.:
COUNTY OF LOS ANGELES        )

        On October 19, 2010, before me, Deryl Ann Ford (here insert name of
the officer), Notary Public, personally appeared William Kamer , who
proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are
subscribed to the within instrument and acknowledged to me that he/she/they executed the same
in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument,
the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

        I certify under PENALTY OF PERJURY under the laws of the State of California that
the foregoing paragraph is true and correct.

        WITNESS my hand and official seal.

                                              _____
                                              Signature of Notary Public

(Notary Seal)

MIAMI 2170879.7 7249631347
EXECUTION COPY

                                              DERYL ANN FORD
                                              Commission # 1784715
                                              Notary Public - California
                                              Los Angeles County
                                              My Comm. Expires Dec 11, 2011

25

**EXHIBIT A**

**LEGAL DESCRIPTION**

MIAMI 2170879.7 7249631347
EXECUTION COPY

26

## EXHIBIT A

### LEGAL DESCRIPTION

PARCEL 1:

LOTS 2 AND 3 IN BLOCK 4 OF TRACT NO. 5908, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 65 PAGE 70 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

PARCEL 2:

DETERMINABLE FEE ESTATE IN AND TO ALL OF THAT CERTAIN REAL PROPERTY SITUATE, LYING AND BEING IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, COMPRISING THE BUILDINGS AND IMPROVEMENTS, NOW OR HEREAFTER ERECTED OR BEING ON THE FOLLOWING DESCRIBED REAL PROPERTY.

LOT 1 IN BLOCK 4 OF TRACT NO. 5908, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 65 PAGES 70 AND 71 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

LOTS 1 AND 2 IN BLOCK 11 OF SAN VICENTE PARK, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 12 PAGES 62 AND 63 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

SUBJECT TO THE LIMITATIONS CONTAINED IN SECTION 3.5 OF THE GROUND LEASE, RECORDED NOVEMBER 7, 1980 AS INSTRUMENT NO. 80-1119584 AS AMENDED.

PARCEL 3:

LOT 1 IN BLOCK 4 OF TRACT NO. 5908, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 65 PAGES 70 AND 71 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

LOTS 1 AND 2 IN BLOCK 11 OF SAN VICENTE PARK, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 12 PAGES 62 AND 63 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

UNITED CALIFORNIA BANK), PATRICIA WHITNEY, JACK D. BARNARD AND CHARLES M. BARNARD, AS CO-TRUSTEES UTA AUSTIN M. BARNARD, DECEASED (HEREIN "CO-TRUSTEE"), AND FIRST INTERSTATE BANK OF CALIFORNIA AND AUSTIN WHITNEY, AS CO-EXECUTORS OF THE ESTATE OF MARY E. BARNARD, DECEASED (HEREIN TO-EXECUTORS") AND MURCOCK-WB ASSOCIATES, A CALIFORNIA GENERAL PARTNERSHIP, AS AMENDED BY AMENDMENT NO. 1, DATED OCTOBER 1, 1985, ALONG WITH CERTAIN EASEMENTS FOR INGRESS, EGRESS, PASSAGE AND PARKING OF VEHICLES, PASSAGE AND ACCOMMODATION OF PEDESTRIANS AND THE DOING OF SUCH OTHER THINGS AS ARE THEREIN AUTHORIZED OF REQUIRED, WITH RIGHT TO GRANT SAME TO "PERMITEES", OVER PORTIONS OF SAID LAND AS THEREIN DESCRIBED, UPON THE TERMS, COVENANTS AND CONDITIONS AS THEREIN PROVIDED. SAID RECIPROCAL EASEMENT AGREEMENT ALSO PROVIDES FOR NON-EXCLUSIVE EASEMENTS FOR THE DEVELOPMENT AND CONSTRUCTION OF THE BUILDINGS, IMPROVEMENTS AND "COMMON AREA" LOCATED OR TO BE LOCATED ON SAID LAND PURSUANT TO THE UNRECORDED LEASE INSURED HEREIN AND FOR THE RECONSTRUCTION, ERECTION, REMOVAL AND MAINTENANCE OF SAID BUILDINGS, IMPROVEMENTS AND "COMMON AREA".

$29$

## EXHIBIT B

## LOAN DOCUMENTS

1.      Promissory Note dated March 30, 2006, in the principal amount of $60,030,000.00 (the "**Note**"), executed by Original Borrower in favor of GMAC Commercial Mortgage Bank ("**Original Lender**"), and endorsed to the order of Lender.

2.      Fee and Leasehold Deed of Trust Assignment of Rents and Leases, Security Agreement and Fixture Filing dated as of March 30, 2006 ("**Security Instrument**"), executed by Original Borrower in favor of Original Lender and recorded in as Document No. 06-0691169 in the Official Records of Los Angeles County, California ("**Records**"), and assigned to Lender.

3.      Assignment of Leases and Rents dated as of March 30, 2006 ("**Assignment of Leases and Rents**"), executed by Original Borrower in favor of Original Lender and recorded as Document No. 06-0691170 of the Records, and assigned to Lender.

4.      Loan Agreement **[Fixed Rate]** dated as of March 30, 2006, by and between Original Borrower and Original Lender and assigned to Lender.

5.      UCC Financing Statement reflecting Original Borrower, as debtor, and Original Lender, as secured party, and recorded as Document No. 06-7064776861 of the Records, and assigned to Lender.

6.      UCC Financing Statement reflecting Original Borrower, as debtor, and Original Lender, as secured party and filed with the Secretary of State of Delaware under File No. 61085927, and assigned to Lender.

7.      Guaranty (Exceptions to Nonrecourse Liability) dated as of March 30, 2006 ("**Guaranty**"), executed by Ezri Namvar ("**Original Indemnitor**") in favor of Original Lender, and assigned to Lender.

8.      Environmental Indemnity Agreement dated as of March 30, 2006 ("**Environmental Indemnity**"), executed by Original Borrower and Original Indemnitor in favor of Original Lender, and assigned to Lender.

**EXHIBIT B-1**

$3O$

**DESCRIPTION OF GROUND LEASE**

Ground Lease ("**Ground Lease**") originally between Bunherst, LLC, Tribun LLC and
Bundy Dimes, LLC ("**Landlord**") and Original Borrower dated August 19, 1980, as amended.

*31*

## EXHIBIT C

## COMPLIANCE CERTIFICATE

Borrower Name: DE 12121 Wilshire, LP, a Delaware limited partnership ("**Borrower**")

Property Address: 1221 Wilshire Boulevard, Los Angeles, California

GMACCM Loan Number: 011052327

Borrower is providing this Compliance Certificate in accordance with the terms of that certain Loan Agreement dated as of March 30, 2006, as amended, modified and/or supplemented by that certain Note and Fee and Leasehold Deed of Trust Assumption Agreement by and between, inter alia, U.S. Bank National Association, as Trustee for the Registered Holders of J.P. Morgan Chase Commercial Mortgage Securities Corp., Commercial Mortgage Pass-Through Certificates, Series 2006-LDP7 ("**Lender**") (said Loan Agreement, as amended, modified and/or supplemented and in effect from time to time, being collectively referred to herein as the "**Loan Agreement**") and Borrower. Capitalized terms used in this Compliance Certificate and not specifically defined herein have the meaning provided in the Loan Agreement.

This Compliance Certificate covers the period from _____, 201___ through _____, 201__, inclusive ("Covered Period").

Borrower hereby represents warrants and certifies to Lender that, as of the date hereof (or such other date as may be specified below), and unless otherwise provided on **Schedule A** hereto:

1. No Event of Default has occurred and is continuing.

2. The Debt Service Coverage Ratio as of the end of the Covered Period is:

   Actual:        _____ to 1.0

3. The following financial statements of Borrower ("Financial Statements") attached hereto are, in all material respects, true, accurate and complete reports of the period covered thereby:

   [____]   [quarterly][annual] operating statement for the Property.

   [____]   annual balance sheet

   [____]   annual statement of changes in financial position

   [____]   annual profit and loss statement

4. The attached annual operating budget for the Property is a true, accurate and complete projection of Operating Income, Operating Expenses and Capital Expenditures reasonably anticipated in good faith for the period commencing on __. and ending _____ inclusive.

5. The attached Rent Roll is true, accurate and complete as of the date hereof. All tenants identified in the Rent Roll are physically occupying the space they have leased and,

*3C*

unless otherwise identified on the Rent Roll or Schedule A hereto, are open for business at the leased space.

6.  No Transfer has occurred in violation of the Loan Agreement.  If any change has occurred in Borrower's Organizational Chart, a new Organizational Chart is attached hereto.

7.  To Borrower's actual knowledge, no bankruptcy, reorganization, insolvency or similar proceedings under any state or federal law has been initiated by or against a tenant of a Major Lease.

8.  To Borrower's actual knowledge, no event of default currently exists under any Major Lease.

9.  To Borrower's actual knowledge, except as previously disclosed to Lender in writing, no floods, major plumbing or major water leaks have occurred at the Property since the end of the Covered Period in the last Compliance Certificate.

10. To Borrower's actual knowledge, no event or condition exists which, in Borrower's reasonable judgment, could reasonably be expected to have a Material Adverse Effect on Borrower, any Guarantor, the Property, the Property Manager or any Major Lease.

11. No change has occurred in the Property Manager or with respect to the Property Management Contract.  No event of default currently exists under the Property Management Contract, and no event or condition exists that would be an event of default under the Property Management Contract if notice had been given or applicable grace/cure periods had expired (or both).

12. All policies of insurance required for the Loan are in full force and effect and in the required coverage amounts.  Borrower has not received notice that any insurance policy required for the Loan is to be cancelled, not renewed, materially modified or existing coverage excluded.

For purposes of this Compliance Certificate, the qualifying language "to Borrower's actual knowledge" shall include the knowledge of Borrower's related Property Manager, after due inquiry by Borrower.

33

BY SIGNING BELOW, Borrower certifies that (a) all information provided in this Compliance Certificate and **Schedule A** hereto (if attached) is true, accurate and correct in all material respects and does not omit any material fact that would make any statement false or misleading and (b) the undersigned representative is duly authorized to sign this Compliance Certificate on Borrower's behalf.

Date:_____          <u>Borrower</u>


**DE 12121 Wilshire, LP,**

a Delaware limited partnership


By:   DE 12121 Wilshire GP, LLC,

        a Delaware limited liability company

Its:   General Partner


        By:_____

              Name:
              Title:

**SCHEDULE A**

*34*

**EXHIBIT D**

**ORGANIZATIONAL CHART**

See Attached

[INTENTIONALLY DELETED FOR PURPOSES OF RECORDING]

**EXHIBIT F**

**FORM OF RENT ROLL**

See Attached

[INTENTIONALLY DELETED FOR PURPOSES OF RECORDING]

**EXHIBIT G**

[INTENTIONALLY DELETED FOR PURPOSES OF RECORDING]

## JOINDER BY AND AGREEMENT OF NEW INDEMNITOR

*39*

[INTENTIONALLY DELETED FOR PURPOSES OF RECORDING]

This is a true and certified copy of the record
if it bears the seal, imprinted in purple ink,
of the Registrar-Recorder/County Clerk

JUL 2 9 2013

Dean C. Logan   REGISTRAR-RECORDER/COUNTY CLERK
LOS ANGELES COUNTY, CALIFORNIA

REGISTRAR-RECORDER/COUNTY CLERK
COUNTY OF LOS ANGELES · CALIFORNIA

**EXHIBIT 4**

Inst #: 201003170003367
Fees: $16.00 N/C Fee: $25.00
RPTT: $5100.00 Ex: #
03/17/2010 02:36:00 PM
Receipt #: 274410
Requestor:
SERVICELINK SAN BERNARDINO
Recorded By: JFK  Pgs: 4
DEBBIE CONWAY
CLARK COUNTY RECORDER

RECORDING REQUESTED BY
T.D. SERVICE COMPANY

And when recorded mail to
MIRAE BANK
c/o Lim, Ruger & Kim, LLP
RE: Loan # DYNASTY/DYNASTY 1
1055 West Seventh St.
Los Angeles, CA 90017-2570
Suite 2800

APN-162-20-110-007

280024732 _____ Space above this line for recorder's use _____

## TRUSTEE'S DEED UPON SALE

The undersigned declares under penalty of perjury that the following declaration is true and correct:

1) The Grantee herein was the foreclosing Beneficiary.
2) The amount of the unpaid debt together with costs was - - - - - - - - - - - - - - - - - - -  $9,188,055.94
3) The amount paid by the Grantee at the Trustee's Sale was - - - - - - - - - - - - - - - - -  $1,000,000.00
4) The documentary transfer tax is - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  $5,100.00
5) The city transfer tax is - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  $.00
6) The monument preservation tax is - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  $.00
7) Said property is in **Las Vegas**, County of **Clark**

Dated: 03/11/10

T.D. SERVICE COMPANY

By _____
Kimberly Coonradt, Trustee's Sale Officer

T.S. No: B378638 NV    Unit Code: B    Loan No: DYNASTY/DYNASTY 1
AP #1: 162-20-110-007
Property Address: 3715 W. FLAMINGO ROAD, LAS VEGAS, NV 89103

T.D. SERVICE COMPANY
(herein called Trustee)

does hereby GRANT AND CONVEY, without any covenant or warranty, express or implied to

MIRAE BANK
(herein called Grantee), such interest as Trustee has in that certain property described as follows:

SEE ATTACHED EXHIBIT

This conveyance is made pursuant to the authority vested in said Trustee, as Trustee or as duly appointed Trustee by the Deed of Trust described as follows:

Trustor: DYNASTY 1 TOWER, LLC.

THIS INSTRUMENT IS RECORDED AT THE
REQUEST OF SERVICELINK AS AN
ACCOMMODATION ONLY. IT HAS NOT BEEN
EXAMINED AS TO ITS EXECUTION OR AS
TO ITS EFFECTS UPON TITLE.

MAIL TAX STATEMENTS TO ADDRESS SHOWN ABOVE

P31766

# EXHIBIT 

Page 2
T.S. No: B378638 NV      Unit Code: B      Loan No: DYNASTY/DYNASTY 1

Recorded February 27, 2006  as Instr. No. 0002581 in Book 20060227 Page --- of Official Records in the office of the Recorder of CLARK County; NEVADA  and re-recorded  June 9, 2006  as Instr. No. 0002927 in Book 20060609 Page --- , Whereas, the holder of the note secured by said Deed of Trust delivered to Trustee a written Declaration of Default and, pursuant thereto, a Notice of Default was recorded February 18, 2009  as Instr. No.  0003028 in Book 20090218 Page  XX  of Official Records in the office of the Recorder of  CLARK County; NEVADA .

Whereas, Trustee complied with all applicable statutory provisions of the State of Nevada, and of the described Deed of Trust, including the mailing and publication of the Notice of Default and Notice of Sale, as respectively appropriate.

Said Notice of Trustee's Sale stated the time and place that Trustee would sell its interest in the described property at public auction.  On March 11, 2010, the date set forth in the Notice of Trustee's Sale or the properly postponed sale date, Trustee sold the described property to Grantee, the highest qualified bidder present, for the sum of $1,000,000.00  **Pro-tanto**.

In Witness Whereof, the undersigned caused its corporate name and seal (if applicable) to be hereunto affixed.

Dated  March 16, 2010

T.D. SERVICE COMPANY

BY _____        BY _____
    Kimberly Coonradt, Assistant Secretary            Nancy Young, Assistant Secretary

STATE OF CALIFORNIA                    )
COUNTY OF ORANGE                       )SS

On 03/16/10  before me, S. LONG, a Notary Public, personally appeared  KIMBERLY COONRADT and NANCY YOUNG, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under penalty of perjury under the Laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)

S. LONG
COMM. # 1785185
NOTARY PUBLIC CALIFORNIA
ORANGE COUNTY
My comm. expires Jan. 6, 2012

P31787

# EXHIBIT A

## LEGAL DESCRIPTION

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE COUNTY OF **CLARK**, STATE OF **NEVADA**, AND IS DESCRIBED AS FOLLOWS:

THAT PORTION OF LOT ONE (I) OF "VALLEY VIEW/FLAMINGO" AN INDUSTRIAL SUBDIVISION, AS SHOWN BY MAP THEREOF ON FILE IN BOOK 57, PAGE 64 OF PLATS, IN THE CLARK COUNTY, NEVADA, RECORDER'S OFFICE, LYING WITHIN THE NORTHWEST QUARTER (NW 1/4) OF SECTION 20, TOWNSHIP 21 SOUTH, RANGE 61 EAST, M.D.M., CLARK COUNTY, NEVADA, DESCRIBED AS FOLLOWS:

BEGINNING AT THE MOST NORTHWESTERLY CORNER OF SAID LOT 1, SAID POINT BEING ON THE SOUTH LINE OF THE FLAMINGO ROAD RIGHT-OF-WAY (WIDTH VARIES), SAID POINT ALSO BEING THE NORTHEAST CORNER OF THE NEVADA POWER CO. SUBSTATION PROPERTY; THENCE ALONG THE SOUTHERLY LINE OF SAID FLAMINGO ROAD THE FOLLOWING THREE (3) COURSES: SOUTH 89°52' 12" EAST, 31.62 FEET; THENCE SOUTH 01°00' 11" WEST, 16.32 FEET TO A POINT OF A NON-TANGENT CURVE; THENCE FROM A TANGENT BEARING SOUTH 88°59'48" EAST, CURVING TO THE RIGHT ALONG THE ARC OF A 920.00 FOOT RADIUS CURVE, CONCAVE SOUTHWESTERLY, THROUGH A CENTRAL ANGLE OF 09°44'24", AN ARC LENGTH OF 156.40 FEET TO A POINT TO WHICH A RADIAL LINE BEARS NORTH 10°44'36" EAST; THENCE DEPARTING SAID SOUTH LINE SOUTH 09°39' 12" WEST, 33.59 FEET; THENCE CURVING TO THE LEFT ALONG THE ARC OF A 282.50 FOOT RADIUS CURVE, CONCAVE SOUTHEASTERLY, THROUGH A CENTRAL ANGLE OF 11 °08'33", AN ARC LENGTH OF 54.94 FEET; THENCE SOUTH 01°29'21" EAST, 142.16 FEET; THENCE NORTH 89°52' 12" WEST, 233.39 FEET; THENCE NORTH 00°07' 48" EAST 12.00 FEET TO A POINT ON THE NORTHWESTERLY BOUNDARY LINE OF SAID LOT 1; THENCE SOUTH 89°52'12" EAST ALONG SAID BOUNDARY LINE, 58.98 FEET TO AN ANGLE POINT IN THE WESTERLY BOUNDARY LINE OF SAID LOT 1; THENCE NORTH 01°29'21" WEST ALONG SAID WESTERLY BOUNDARY LINE, 250.00 FEET TO THE POINT OF BEGINNING.

EXCEPTING THEREFROM THAT PORTION CONVEYED BY DEED RECORDED JUNE 30, 2004 IN BOOK 20040630 AS DOCUMENT NO. 08358 OF OFFICIAL RECORDS.

FURTHER DEPICTED AS THE "TURTLESTOP PARCEL" ON THAT CERTAIN RECORD OF SURVEY FILED IN FILE 70 OF SURVEYS, PAGE 54 OF OFFICIAL RECORDS.

P31788

06/15/2008   01:28   7028564339   GLOBAL INVESTIGATIV   PAGE   05

STATE OF NEVADA
DECLARATION OF VALUE FORM
1. Assessor Parcel Number(s)
   a. 162-20-110-007
   b. _____
   c. _____
   d. _____
2. Type of Property:
   a. ☐ Vacant Land        b. ☐ Single Fam. Res.      FOR RECORDER'S OPTIONAL USE ONLY
   c. ☐ Condo/Twnhse       d. ☐ 2-4 Plex              Book:_____ Page:_____
   e. ☐ Apt. Bldg          f. ☐ Comm'l/Ind'l          Date of Recording:_____
   g. ☐ Agricultural       h. ☐ Mobile Home           Notes:
      ☑ Other
3. a. Total Value/Sales Price of Property          $ 1,000,000.00
   b. Deed in Lieu of Foreclosure Only (value of property)  (_____)
   c. Transfer Tax Value:                          $_____
   d. Real Property Transfer Tax Due               $ 5,100.00
4. If Exemption Claimed:
   a. Transfer Tax Exemption per NRS 375.090, Section _____
   b. Explain Reason for Exemption:_____
5. Partial Interest: Percentage being transferred: 100 %
   The undersigned declares and acknowledges, under penalty of perjury, pursuant to
NRS 375.060 and NRS 375.110, that the information provided is correct to the best of their
information and belief, and can be supported by documentation if called upon to substantiate the
information provided herein. Furthermore, the parties agree that disallowance of any claimed
exemption, or other determination of additional tax due, may result in a penalty of 10% of the tax
due plus interest at 1% per month. Pursuant to NRS 375.030, the Buyer and Seller shall be
jointly and severally liable for any additional amount owed.

Signature _____   Capacity  Grantor
Signature _____   Capacity  Grantee

SELLER (GRANTOR) INFORMATION            BUYER (GRANTEE) INFORMATION
         (REQUIRED)                              (REQUIRED)
Print Name: T. D Service Co.           Print Name: Mirae Bank C/o Rugar,
Address: 1820 E. First St #210         Address: Kim LLP 1055 W. 17th St
City: Santa Ana                        City: # 2800 Los Angeles
State: CA      Zip: 92711-1988         State: CA      Zip: 90017-2570

COMPANY/PERSON REQUESTING RECORDING (required if not seller or buyer)
Print Name: _____            Escrow #: 060824732
Address: _____ ServiceLink
City: _____ 560 E. Hospitality Lane, Suite 150   State:_____ Zip: _____
                San Bernardino, CA 92408

AS A PUBLIC RECORD THIS FORM MAY BE RECORDED/MICROFILMED

CERTIFIED COPY, THIS
DOCUMENT IS A TRUE AND
CORRECT COPY OF THE
RECORDED DOCUMENT MINUS
ANY REDACTED PORTIONS

JUL. 2 9. 2013

*Debbie Conway*
RECORDER

**EXHIBIT 5**

Inst #: 201305200001813
Fees: $19.00 N/C Fee: $0.00
RPTT: $4437.00 Ex: #
05/20/2013 01:42:32 PM
Receipt #: 1621631
Requestor:
TREASURER CLARK COUNTY
Recorded By: MGM   Pgs: 4
**DEBBIE CONWAY**
CLARK COUNTY RECORDER

APN: 178-02-702-001

When Recorded Mail Tax Statements To:
EQUISOURCE LLC
2009 E WINDMILL LN
LAS VEGAS, NEVADA     89123

## TREASURER QUITCLAIM DEED
[NRS 361.595 (4)]

This Deed, made this 8th day of May, 2013, between LAURA B. FITZPATRICK, County Treasurer, and Ex-Officio Trustee of the County of Clark, State of Nevada, party of the first part, and EQUISOURCE LLC, party of the second part.

WITNESSETH, That Whereas, the Board of County Commissioners of the County of Clark aforesaid, on December 18, 2012, made its order, directing the publication and sale of the real property herinafter described; and.
WHEREAS, pursuant to said order first party caused said real property to be advertised for sale by publication in a local newspaper for twenty consecutive days as required by law; and,

WHEREAS, on May 3, 2013, at the time and place designated in said notice of sale, the said first party did offer for sale all of the rights, title and interest of said Trustee as aforesaid, in and to said real property to the highest bidder for cash; and,

WHEREAS, the said party of the first part has filed with the Clerk of said Board of County Commissioners a proper affidavit of publication of the notice of sale and made her duly verified return of said sale as required by law, which said affidavit and return are numbered ITEM 48 on December 18, 2012 of the records and files of the Clerk of said Board, to which reference is hereby made;

NOW, THEREFORE, The party of the first part, in consideration of the premises and the sum of $870,000.00 to him in hand paid by the party of the second part, the receipt of which is hereby acknowledged, does by these presents, remise, release and forever deed unto the party of the second part, his or her heirs and assigns forever, all the certain piece of land situated in the County of Clark, State of Nevada, described as follows, to wit:

| Assessor Parcel Number | Legal Description |
|---|---|
| 178-02-702-001 | PT NE4 SE4 SEC 02 22 62 |

## Disclaimer:

"This legal description was prepared from information of record, on file in the office of the Clark County Recorder. The citations included herein are to conveyance documents of record which have been mapped by the County, for assessment purposes, pursuant to NRS 361.189. The assessment mapping graphically delineates the subject property.

No liability is assumed for the accuracy, or the locatability of this property description, as it is not based on a field survey performed by a professional land surveyor, licensed pursuant to NRS 625 of Nevada Statutes."



EXHIBIT 5

APN: 178-02-702-001

Together with all singular the tenements, hereditaments, and appurtenances thereunto belonging or anywise appertaining.

IN WITNESS WHEREOF, The said party of the first part has hereunto set her hand, the days and year first written above.

CLARK COUNTY, NEVADA

_____
LAURA B. FITZPATRICK, Treasurer
Ex-Officio Tax Receiver

CLARK COUNTY, NEVADA

_____
REBECCA L. COATES
Assistant Treasurer

STATE OF NEVADA)
                          SS.
COUNTY OF CLARK)

This instrument was acknowledged before me on the 20th day of May 2013 by LAURA B. FITZPATRICK as County Treasurer of Clark County, Nevada or REBECCA L. COATES, Assistant Treasurer of Clark County, Nevada.

Witness my hand and official seal.

_____
Notary Public

LINDA C. HOWARD
NOTARY PUBLIC
STATE OF NEVADA
My Commission Expires: 07/14/13
Certificate No: 09-11576-1

**Exhibit A**
**LEGAL DESCRIPTION**

PORTIONS OF THE NORTHEAST QUARTER (NE 1/4) OF THE SOUTHEAST QUARTER (SE 1/4), AND OF THE SOUTHEAST QUARTER (SE 1/4) OF THE NORTHEAST QUARTER (NE 1/4) OF SECTION 2, TOWNSHIP 22 SOUTH, RANGE 62 EAST, M.D.M., CITY OF HENDERSON, CLARK COUNTY, NEVADA, DESCRIBED AS FOLLOWS:

COMMENCING AT THE SOUTHEAST CORNER OF SAID NORTHEAST QUARTER (NE 1/4) OF THE SOUTHEAST QUARTER (SE 1/4); THENCE SOUTH 89°26'01" WEST ALONG THE SOUTH LINE OF SAID NORTHEAST QUARTER (NE 1/4), A DISTANCE OF 30.00 FEET TO THE POINT OF BEGINNING;

THENCE CONTINUING SOUTH 89°26'01" WEST ALONG SAID SOUTH LINE, 1243.19 FEET TO THE EAST RIGHT-OF-WAY LINE OF A 60-FOOT WIDE UNNAMED STREET; THENCE DEPARTING SAID SOUTH LINE, NORTH 01°41'02" WEST ALONG SAID EAST RIGHT-OF-WAY LINE, 1316.23 FEET TO THE SOUTH RIGHT-OF-WAY LINE OF SUNSET ROAD (WIDTH VARIES); THENCE DEPARTING SAID EAST RIGHT-OF-WAY LINE, NORTH 89°31'46" EAST ALONG SAID SOUTH RIGHT-OF-WAY LINE, 34.39 FEET TO THE BEGINNING OF A CURVE CONCAVE NORTHERLY, HAVING A RADIUS OF 1252.52 FEET; THENCE EASTERLY 272.53 FEET ALONG SAID SOUTH RIGHT-OF-WAY LINE AND SAID CURVE THROUGH A CENTRAL ANGLE OF 12°28'01" TO THE SOUTH RIGHT-OF-WAY LINE OF FOSTER STREET (30 FEET WIDE); THENCE DEPARTING SAID SOUTH RIGHT-OF-WAY LINE OF SUNSET ROAD, SOUTH 42°22'03" EAST ALONG SAID SOUTH RIGHT-OF-WAY LINE OF FOSTER STREET, 250.96 FEET TO THE BEGINNING OF A CURVE CONCAVE NORTHEASTERLY, HAVING A RADIUS OF 534.97 FEET; THENCE SOUTHEASTERLY 449.14 FEET ALONG SAID SOUTH RIGHT-OF-WAY LINE OF FOSTER STREET AND SAID CURVE THROUGH A CENTRAL ANGLE OF 48°06'11"; THENCE NORTH 89°31'46" EAST ALONG SAID SOUTH RIGHT-OF-WAY LINE OF FOSTER STREET, 387.30 FEET TO THE WEST RIGHT-OF-WAY LINE OF BURNS AVENUE (30 FOOT WIDE HALF STREET); THENCE DEPARTING SAID SOUTH RIGHT-OF-WAY LINE OF FOSTER STREET, SOUTH 01°14'32" EAST ALONG SAID WEST RIGHT-OF-WAY LINE, 978.96 FEET TO THE POINT OF BEGINNING AS SHOWN ON THAT CERTAIN MAP ON FILE IN THE CLARK COUNTY RECORDER'S OFFICE IN FILE 153, PAGE 82 OF SURVEYS.

(PARCEL 178-02-702-001)

**STATE OF NEVADA**
**DECLARATION OF VALUE FORM**

1. Assessor Parcel Number(s)
   a)  178-02-702-001
   b) _____
   c) _____
   d) _____

2. Type of Property
   a) ☐ Vacant Land          b) ☐ Single Fam. Res.
   c) ☐ Condo/Twnhse         d) ☐ 2-4 Plex
   e) ☐ Apt. Bldg            f) ☑ Comm'l/Ind'l
   g) ☐ Agriculture          h) ☐ Mobile Home
      ☐ Other

   | FOR RECORDERS OPTIONAL USE ONLY |
   |---|
   | Document/Instrument #: _____ |
   | Book: _____  Page: _____ |
   | Date of Recording: _____ |
   | Notes: _____ |

3. Total Value/Sales Price of Property        $870,000.00
   Deed in Lieu of Foreclosure Only (value of property)   ( _____ )
   Transfer Tax Value:                        $870,000.00
   Real Property Transfer Tax Due:            $4,437.00

**4.  If Exemption Claimed:**
   a.  Transfer Tax Exemption per NRS 375.090, Section  _____
   b.  Explain Reason for Exemption: _____

5.  Partial Interest: Percentage being transferred:  _____ %
   The undersigned declares and acknowledges, under penalty of perjury, pursuant to NRS 375.060 and NRS 375.110, that the information provided is correct to the best of their information and belief, and can be supported by documentation if called upon to substantiate the information provided herein. Furthermore, the parties agree that disallowance of any claimed exemption, or other determination of additional tax due, may result in a penalty of 10% of the tax due plus interest at 1% per month.  Pursuant to NRS 375.030, the Buyer and Seller shall be jointly and severally liable for any additional amount owed.

   Signature _____  Capacity  DEPUTY TREASURER
   Signature _____  Capacity  DEPUTY TREASURER

| SELLER (GRANTOR) INFORMATION (REQUIRED) | | BUYER (GRANTEE) INFORMATION (REQUIRED) | |
|---|---|---|---|
| Print Name: | CLARK COUNTY TREASURER | Print Name: | EQUISOURCE LLC |
| Address: | 500 S GRAND CENTRAL PKWY | Address: | 2009 E WINDMILL LN |
| City: | LAS VEGAS | City: | LAS VEGAS |
| State: | NV          Zip: 89106 | State: | NEVADA      Zip: 89123 |

**COMPANY/PERSON REQUESTING RECORDING (required if not seller or buyer)**
Print Name: _____   Escrow # _____
Address: _____
City: _____   State: _____   Zip: _____

( AS A PUBLIC RECORD THIS FORM MAY BE RECORDED/MICROFILMED )

06/16/2008  01:28     7028564339          GLOBAL INVESTIGATIV                    PAGE  06

CERTIFIED COPY, THIS
DOCUMENT IS A TRUE AND
CORRECT COPY OF THE
RECORDED DOCUMENT MINUS
ANY REDACTED PORTIONS

JUL. 2 9. 2013

*Debbie Conway*
RECORDER

**EXHIBIT 6**

APN: 178-02-801-003                    ④
                                        ˊⁱ

When Recorded Mail Tax Statements To:
    DAVID EMRANI
    1526 S BROADWAY
    LOS ANGELES, CALIFORNIA      90015

Inst #: 201305200001814
Fees: $19.00 N/C Fee: $0.00
RPTT: $3697.50 Ex: #
05/20/2013 01:42:32 PM
Receipt #: 1621631
Requestor:
TREASURER CLARK COUNTY
Recorded By: MGM  Pgs: 4
DEBBIE CONWAY
CLARK COUNTY RECORDER

## TREASURER QUITCLAIM DEED
[NRS 361.595 (4)]

This Deed, made this 8th day of May, 2013, between LAURA B. FITZPATRICK, County Treasurer, and Ex-Officio Trustee of the County of Clark, State of Nevada, party of the first part, and DAVID EMRANI, party of the second part.

WITNESSETH, That Whereas, the Board of County Commissioners of the County of Clark aforesaid, on December 18, 2012, made its order, directing the publication and sale of the real property herinafter described; and,
WHEREAS, pursuant to said order first party caused said real property to be advertised for sale by publication in a local newspaper for twenty consecutive days as required by law; and,

WHEREAS, on May 2, 2013, at the time and place designated in said notice of sale, the said first party did offer for sale all of the rights, title and interest of said Trustee as aforesaid, in and to said real property to the highest bidder for cash; and,

WHEREAS, the said party of the first part has filed with the Clerk of said Board of County Commissioners a proper affidavit of publication of the notice of sale and made her duly verified return of said sale as required by law, which said affidavit and return are numbered ITEM 48 on December 18, 2012 of the records and files of the Clerk of said Board, to which reference is hereby made;

NOW, THEREFORE, The party of the first part, in consideration of the premises and the sum of $725,000.00 to him in hand paid by the party of the second part, the receipt of which is hereby acknowledged, does by these presents, remise, release and forever deed unto the party of the second part, his or her heirs and assigns forever, all the certain piece of land situated in the County of Clark, State of Nevada, described as follows, to wit:

| Assessor Parcel Number | Legal Description |
|---|---|
| 178-02-801-003 | PT SE4 SE4 SEC 02 22 62 |

### Disclaimer:

"This legal description was prepared from information of record, on file in the office of the Clark County Recorder. The citations included herein are to conveyance documents of record which have been mapped by the County, for assessment purposes, pursuant to NRS 361.189. The assessment mapping graphically delineates the subject property.

No liability is assumed for the accuracy, or the locatability of this property description, as it is not based on a field survey performed by a professional land surveyor, licensed pursuant to NRS 625 of Nevada Statutes."



EXHIBIT ⑥

APN: 178-02-801-003

Together with all singular the tenements, hereditaments, and appurtenances thereunto belonging or anywise appertaining.

IN WITNESS WHEREOF, The said party of the first part has hereunto set her hand, the days and year first written above.

CLARK COUNTY, NEVADA

_____
LAURA B. FITZPATRICK, Treasurer
Ex-Officio Tax Receiver

CLARK COUNTY, NEVADA

_____
REBECCA L. COATES
Assistant Treasurer

STATE OF NEVADA)
                            SS.
COUNTY OF CLARK)

This instrument was acknowledged before me on the _20th_ day of _May_ 2013 by LAURA B. FITZPATRICK as County Treasurer of Clark County, Nevada or REBECCA L. COATES, Assistant Treasurer of Clark County, Nevada.

Witness my hand and official seal.

_____
Notary Public

LINDA C. HOWARD
NOTARY PUBLIC
STATE OF NEVADA
My Commission Expires: 07/14/13
Cert/Scate No: 09-11576-1

**Exhibit A**
**LEGAL DESCRIPTION**

THE WEST HALF (W 1/2) OF THE SOUTHEAST QUARTER (SE 1/4) OF THE SOUTHEAST QUARTER (SE 1/4) OF SECTION 2, TOWNSHIP 22 SOUTH, RANGE 62 EAST, M.D.M.

EXCEPTING THEREFROM THAT PORTION OF SAID LAND AS CONVEYED TO THE CITY OF HENDERSON BY THAT CERTAIN DEED RECORDED MAY 12, 1998 IN BOOK 980512, AS DOCUMENT NO. 00826 OF OFFICIAL RECORDS.

178-02-801-003

06/16/2008  01:28    7028564339          GLOBAL INVESTIGATIV              PAGE  01

## STATE OF NEVADA
## DECLARATION OF VALUE FORM

1. Assessor Parcel Number(s)
   a) 178-02-801-003
   b) _____
   c) _____
   d) _____

2. Type of Property

   | | | | |
   |---|---|---|---|
   | a) ✓ Vacant Land | | b) ☐ Single Fam. Res. |
   | c) ☐ Condo/Twnhse | | d) ☐ 2-4 Plex |
   | e) ☐ Apt. Bldg | | f) ☐ Comm'l/Ind'l |
   | g) ☐ Agriculture | | h) ☐ Mobile Home |
   | ☐ Other | | | |

   FOR RECORDERS OPTIONAL USE ONLY
   Document/Instrument #: _____
   Book: _____ Page: _____
   Date of Recording: _____
   Notes:

3. Total Value/Sales Price of Property          $725,000.00
   Deed in Lieu of Foreclosure Only (value of property)   (                    )
   Transfer Tax Value:                          $725,000.00
   Real Property Transfer Tax Due:              $3,697.50

4. **If Exemption Claimed:**
   a. Transfer Tax Exemption per NRS 375.090, Section _____
   b. Explain Reason for Exemption: _____
   _____

5. Partial Interest: Percentage being transferred: _____ %
   The undersigned declares and acknowledges, under penalty of perjury, pursuant to NRS 375.060 and NRS 375.110, that the information provided is correct to the best of their information and belief, and can be supported by documentation if called upon to substantiate the information provided herein. Furthermore, the parties agree that disallowance of any claimed exemption, or other determination of additional tax due, may result in a penalty of 10% of the tax due plus interest at 1% per month. Pursuant to NRS 375.030, the Buyer and Seller shall be jointly and severally liable for any additional amount owed.

   Signature _____   Capacity  DEPUTY TREASURER
   Signature _____   Capacity  DEPUTY TREASURER

   | SELLER (GRANTOR) INFORMATION (REQUIRED) | BUYER (GRANTEE) INFORMATION (REQUIRED) |
   |---|---|
   | Print Name: CLARK COUNTY TREASURER | Print Name: DAVID EMRANI |
   | Address: 500 S GRAND CENTRAL PKWY | Address: 1926 S BROADWAY |
   | City: LAS VEGAS | City: LOS ANGELES |
   | State: NV   Zip: 89106 | State: CALIFORNIA   Zip: 90015 |

   **COMPANY/PERSON REQUESTING RECORDING (required if not seller or buyer)**
   Print Name: _____   Escrow # _____
   Address: _____
   City: _____   State: _____   Zip: _____

   ( AS A PUBLIC RECORD THIS FORM MAY BE RECORDED/MICROFILMED )

CERTIFIED COPY, THIS
DOCUMENT IS A TRUE AND
CORRECT COPY OF THE
RECORDED DOCUMENT, MINUS
ANY REDACTED PORTIONS

JUL 2 9. 2013

*Debbie Conway*
RECORDER

**EXHIBIT 7**

APN: 178-02-801-004

④

When Recorded Mail Tax Statements To:

DAVID EMRANI
1526 S BROADWAY
LOS ANGELES, CALIFORNIA    90015

Inst #: 201305200001815
Fees: $19.00 N/C Fee: $0.00
RPTT: $2601.00 Ex: #
05/20/2013 01:42:32 PM
Receipt #: 1621631
Requestor:
TREASURER CLARK COUNTY
Recorded By: MGM   Pgs: 4
DEBBIE CONWAY
CLARK COUNTY RECORDER

## TREASURER QUITCLAIM DEED

[NRS 361.595 (4)]

This Deed, made this 8th day of May, 2013, between LAURA B. FITZPATRICK, County Treasurer, and Ex-Officio Trustee of the County of Clark, State of Nevada, party of the first part, and DAVID EMRANI, party of the second part.

WITNESSETH, That Whereas, the Board of County Commissioners of the County of Clark aforesaid, on December 18, 2012, made its order, directing the publication and sale of the real property herinafter described; and,
WHEREAS, pursuant to said order first party caused said real property to be advertised for sale by publication in a local newspaper for twenty consecutive days as required by law; and,

WHEREAS, on May 2, 2013, at the time and place designated in said notice of sale, the said first party did offer for sale all of the rights, title and interest of said Trustee as aforesaid, in and to said real property to the highest bidder for cash; and,

WHEREAS, the said party of the first part has filed with the Clerk of said Board of County Commissioners a proper affidavit of publication of the notice of sale and made her duly verified return of said sale as required by law, which said affidavit and return are numbered ITEM 48 on December 18, 2012 of the records and files of the Clerk of said Board, to which reference is hereby made;

NOW, THEREFORE, The party of the first part, in consideration of the premises and the sum of $510,000.00 to him in hand paid by the party of the second part, the receipt of which is hereby acknowledged, does by these presents, remise, release and forever deed unto the party of the second part, his or her heirs and assigns forever, all the certain piece of land situated in the County of Clark, State of Nevada, described as follows, to wit:

| Assessor Parcel Number | Legal Description |
|---|---|
| 178-02-801-004 | PT SE4 SE4 SEC 02 22 62 |

## Disclaimer:

"This legal description was prepared from information of record, on file in the office of the Clark County Recorder. The citations included herein are to conveyance documents of record which have been mapped by the County, for assessment purposes, pursuant to NRS 361.189.  The assessment mapping graphically delineates the subject property.

No liability is assumed for the accuracy, or the locatability of this property description, as it is not based on a field survey performed by a professional land surveyor, licensed pursuant to NRS 625 of Nevada Statutes."



EXHIBIT

APN: 178-02-801-004

Together with all singular the tenements, hereditaments, and appurtenances thereunto belonging or anywise appertaining.

IN WITNESS WHEREOF, The said party of the first part has hereunto set her hand, the days and year first written above.

CLARK COUNTY, NEVADA                          CLARK COUNTY, NEVADA

_____                  _____
LAURA B. FITZPATRICK, Treasurer              REBECCA L. COATES
Ex-Officio Tax Receiver                      Assistant Treasurer


STATE OF NEVADA)
                        SS.
COUNTY OF CLARK)

This instrument was acknowledged before me on the _20th_ day of _May_ 2013 by LAURA B. FITZPATRICK as County Treasurer of Clark County, Nevada or REBECCA L. COATES, Assistant Treasurer of Clark County, Nevada.

Witness my hand and official seal.

_____
Notary Public

LINDA C. HOWARD
NOTARY PUBLIC
STATE OF NEVADA
My Commission Expires: 07/14/13
Certificate No: 09-11676-1

**Exhibit A**
**LEGAL DESCRIPTION**

THE EAST HALF (E 1/2) OF THE SOUTHEAST QUARTER (SE 1/4) OF THE SOUTHEAST QUARTER (SE 1/4) OF SECTION 2, TOWNSHIP 22 SOUTH, RANGE 62 EAST, M.D.M.

EXCEPTING THEREFROM THAT PORTION OF SAID LAND AS CONVEYED TO THE CITY OF HENDERSON BY THAT CERTAIN DEED RECORDED MAY 12, 1998 IN BOOK 980512, AS DOCUMENT NO. 00826 OF OFFICIAL RECORDS.

178-02-801-004

06/16/2008   01:28      7028564339                     GLOBAL INVESTIGATIV              PAGE   03

**STATE OF NEVADA**
**DECLARATION OF VALUE FORM**

1. Assessor Parcel Number(s)
   a)  178-02-801-004
   b)
   c)
   d)

2. Type of Property

| | | | |
|---|---|---|---|
| a) ✓ | Vacant Land | b) ☐ | Single Fam. Res. |
| c) ☐ | Condo/Twnhse | d) ☐ | 2-4 Plex |
| e) ☐ | Apt. Bldg | f) ☐ | Comm'l/Ind'l |
| g) ☐ | Agriculture | h) ☐ | Mobile Home |
| ☐ | Other | | |

**FOR RECORDERS OPTIONAL USE ONLY**
Document/Instrument #:
Book: _____  Page: _____
Date of Recording:
Notes:

3. Total Value/Sales Price of Property          $510,000.00
   Deed in Lieu of Foreclosure Only (value of property)   (                    )
   Transfer Tax Value:                          $510,000.00
   Real Property Transfer Tax Due:              $2,601.00

**4.  If Exemption Claimed:**
   a.  Transfer Tax Exemption per NRS 375.090, Section
   b.  Explain Reason for Exemption:

5.  Partial Interest:  Percentage being transferred:              %
   The undersigned declares and acknowledges, under penalty of perjury, pursuant to NRS 375.060 and NRS
375.110, that the information provided is correct to the best of their information and belief, and can be supported
by documentation if called upon to substantiate the information provided herein. Furthermore, the parties agree
that disallowance of any claimed exemption, or other determination of additional tax due, may result in a penalty
of 10% of the tax due plus interest at 1% per month. Pursuant to NRS 375.030, the Buyer and Seller shall be
jointly and severally liable for any additional amount owed.

Signature _____          Capacity  DEPUTY TREASURER
Signature _____          Capacity  DEPUTY TREASURER

| **SELLER (GRANTOR) INFORMATION**<br>**(REQUIRED)** | **BUYER (GRANTEE) INFORMATION**<br>**(REQUIRED)** |
|---|---|
| Print Name:  CLARK COUNTY TREASURER | Print Name:  DAVID EMRANI |
| Address:  500 S GRAND CENTRAL PKWY | Address:  1526 S BROADWAY |
| City:  LAS VEGAS | City:  LOS ANGELES |
| State:  NV   Zip:  89106 | State:  CALIFORNIA   Zip:  90015 |

**COMPANY/PERSON REQUESTING RECORDING (required if not seller or buyer)**
Print Name: _____   Escrow # _____
Address: _____
City: _____  State: _____  Zip: _____

( AS A PUBLIC RECORD THIS FORM MAY BE RECORDED/MICROFILMED )

06/16/2008  01:28    7028564339              GLOBAL INVESTIGATIV              PAGE  04

CERTIFIED COPY, THIS
DOCUMENT IS A TRUE AND
CORRECT COPY OF THE
RECORDED DOCUMENT MINUS
ANY REDACTED PORTIONS

JUL 2 9 2013

*Debbie Conway*
RECORDER