1   BRIAN L. DAVIDOFF (SBN 102654)
    BDavidoff@GreenbergGlusker.com
2   BERNARD M. RESSER (SBN 92873)
    BResser@GreenbergGlusker.com
3   LORI L. WERDERITCH (SBN 247345)
    LWerderitch@GreenbergGlusker.com
4   GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
    1900 Avenue of the Stars, 21st Floor
5   Los Angeles, California  90067
    Telephone:  310-553-3610
6   Facsimile:  310-553-0687

7   Attorneys for Defendants Mousa Namvar, Magdiel, LLC,
    DGADE of Delaware, LLC, Namco 8, LLC, Bunherst, LLC,
8   and Wishlab 90, LLC

9   PAUL T. DYE (SBN 81753)
    pid@srblaw.com
10  GENISE R. REITER (SBN 80578)
    grr@srblaw.com
11  Saltzburg, Ray & Bergman, LLP
    12121 Wilshire Blvd., Suite 600
12  Los Angeles, CA 90025-1166
    Telephone:  310-481-6757
13  Facsimile:  310-481-6720

14  Attorneys for Defendants Lacy 20, LLC, Hooshang Namvar,
    Homayoun Namvar, Ramin Namvar, Trifish, LLC, Tribun,
15  LLC, Believers, LLC, Net, LLC, Light Source Management,
    LLC and Woodman Partners, LLC

16

            UNITED STATES DISTRICT COURT FOR THE
17              CENTRAL DISTRICT OF CALIFORNIA

18

19  In re: NAMCO CAPITAL GROUP,          Case No.: 2:11-cv-05320-GAF
    INC., a California corporation,
20                                       Bankr. Case No.:  2:08-bk-32333-BR
              Debtor.                    Bankr. Adv. Proc. No.:   2:10-ap-02945-
21                                       BR

22  _____                 Chapter 11

23  BRADLEY D. SHARP, solely in his      **REQUEST FOR JUDICIAL NOTICE IN**
    capacity as Chapter 11 Trustee of    **SUPPORT OF OPPOSITION TO TRUSTEE'S**
    NAMCO CAPITAL GROUP, INC.,           **MOTION IN LIMINE TO SEVER AND**
24                                       **EXCLUDE EVIDENCE RELATING TO**
              Plaintiff,                 **BANKRUPTCY CLAIMS AGAINST NAMCO**
25                                       **CAPITAL GROUP, INC. [DOCKET NO. 283]**
    vs.
26                                       Date:  October 21, 2013
    MOUSA NAMVAR, et al.,                Time:  9:30 a.m.
27                                       Place:  Courtroom 740
              Defendants.
28

                                1

                                        REQUEST FOR
                                        JUDICIAL NOTICE

59776-00002/1981878.1

Pursuant to Rule 201 of the Federal Rules of Evidence, Defendants Mousa Namvar, Magdiel, LLC, Namco 8, LLC, Wishlab 90, LLC, Bunhurst, LLC, DGADE of Delaware, LLC, Lacy 20, LLC, Hooshang Namvar, Homayoun Namvar, Ramin Namvar, Trifish, LLC, Tribun, LLC, Believers, LLC, Net, LLC, Light Source Management, LLC and Woodman Partners, LLC (collectively, "Defendants") hereby request that the Court take judicial notice of the following:

1.     The First Amended Complaint filed herein by Plaintiff Bradley D. Sharp ("Plaintiff"), Chapter 11 Trustee of Namco Capital Group, Inc. as Docket No. 1 (and also filed on January 11, 2011 as Docket No. 7 when this matter was pending as adversary proceeding 2:10-ap-02945-BR in the United States Bankruptcy Court for the Central District of California).

2.     The *Motion to Dismiss* filed by Defendants Mousa Namvar, Magdiel, LLC, Namco 8, LLC, Wishlab 90, LLC, Bunhurst, LLC, DGADE of Delaware, LLC on March 28, 2011, as Docket No. 53, in this matter when it was pending as adversary proceeding 2:10-ap-02945-BR in the United States Bankruptcy Court for the Central District of California, a true and correct copy of which is attached hereto as **Exhibit A**.

3.     The *Motion to Dismiss* filed by Defendants Lacy 20, LLC, Hooshang Namvar, Homayoun Namvar, Ramin Namvar, Trifish, LLC, Tribun, LLC, Believers, LLC, Net, LLC, Light Source Management, LLC and Woodman Partners, LLC on March 28, 2011, as Docket No. 48, in this matter when it was pending as adversary proceeding 2:10-ap-02945-BR in the United States Bankruptcy Court for the Central District of California, a true and correct copy of which is attached hereto as **Exhibit B**.

4.     Plaintiff's *Opposition to Motion to Dismiss,* filed on April 19, 2011 as Docket No. 59 in this matter when it was pending as adversary proceeding 2:10-ap-02945-BR in the United States Bankruptcy Court for the Central District of California,

2

59776-00002/1981878.1

1  a true and correct copy of which is attached hereto as **Exhibit C**.

2      5.     Plaintiff's Opposition to Defendants' Motion To Exclude Evidence Of

3  The Criminal Indictment, Conviction, And/Or Sentencing Of Ezri Namvar from

4  introduction at trial, filed herein as Docket No. 327.

5

6

7  DATED:  September 30, 2013              Respectfully submitted,

8                                          GREENBEG GLUSKER FIELDS
                                           CLAMAN & MACHTINGER, LLP

9

10                                    By:   _/s/ Lori L. Werderitch_____.
                                           BRIAN L. DAVIDOFF
11                                         BERNARD M. RESSER
                                           LORI L. WERDERITCH
12                                         Attorneys for Defendants Mousa Namvar,
                                           Magdiel, LLC, DGADE of Delaware, LLC,
13                                         Namco 8, LLC, Bunherst, LLC, and
                                           Wishlab 90, LLC

14

15  DATED:  September 30, 2013              SALZBURG, RAY & BERGMAN, LLP

16

17                                    By:   _/s/ Paul T. Dye_____.
                                           PAUL T. DYE
18                                         Attorneys for Defendants Lacy 20, LLC,
                                           Hooshang Namvar, Homayoun Namvar,
19                                         Ramin Namvar, Trifish, LLC, Tribun, LLC,
                                           Believers, LLC, Net, LLC, Light Source
20                                         Management, LLC, Woodman Partners,
                                           LLC

21

22

23

24

25

26

27

28

3

REQUEST FOR
JUDICIAL NOTICE

# EXHIBIT A

1    BRIAN L. DAVIDOFF (State Bar No. 102654)
     bdavidoff@rutterhobbs.com
2    GEOFFREY M. GOLD (State Bar No. 142625)
     ggold@rutterhobbs.com
3    RUTTER HOBBS & DAVIDOFF
      INCORPORATED
4    1901 Avenue of the Stars, Suite 1700
     Los Angeles,   California 90067
5    Telephone: (310) 286-1700
     Facsimile:   (310) 286-1728

6

7    Attorneys for Defendants MOUSA NAMVAR, MAGDIEL,
     LLC, DGADE OF DELAWARE, LLC, WISHLAB 90, LLC,
     NAMCO 8, LLC and BUNHERST, LLC

8

9                 UNITED STATES BANKRUPTCY COURT

10        CENTRAL DISTRICT OF CALIFORNIA - LOS ANGELES DIVISION

| | |
|---|---|
| 11   In re: | Case No. 2:08-bk-32333-BR |
| 12   NAMCO CAPITAL GROUP, INC., a California corporation, | Chapter 11 |
| 13            Debtor. | NOTICE OF MOTION AND MOTION OF DEFENDANTS MOUSA NAMVAR, |
| 14 | MAGDIEL, LLC, DGADE OF DELAWARE, LLC, WISHLAB 90, LLC, NAMCO 8, LLC |
| 15   BRADLEY D. SHARP, solely in his capacity as Chapter 11 Trustee of NAMCO CAPITAL GROUP, INC., | AND BUNHERST, LLC TO DISMISS PLAINTIFF BRADLEY D. SHARP'S FIRST AMENDED COMPLAINT PURSUANT TO |
| 16 | FRCP 12(B)(6); AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT |
| 17            Plaintiff, <br> v. | THEREOF |
| 18   MOUSA NAMVAR, HOOSHANG NAMVAR, HOMAYOUN NAMVAR, RAMIN NAMVAR, | Date:     May 3, 2011 |
| 19   HELEN SHADI, HILDA BAYANFAR, LIDA SHRAGA, NATALY NAMVAR, DANIEL | Time:     2:00 p.m. <br> Place:    Courtroom 1668 |
| 20   NAMVAR, BENJAMIN NAMVAR, MALKA NAMVAR, SHIRAH NAMVAR, TRIFISH, LLC, |           Edward R. Roybal Federal Building and Courthouse |
| 21   TRIBUN, LLC, MAGDIEL, LLC, TRISISTER, LLC, BELIEVERS, LLC, NET, LLC, LIGHT |           255 East Temple Street |
| 22   SOURCE, LLC, LA HOTEL VENTURE, LLC, LANCAM PROPERTIES, LLC, LACY 20, LLC, |           Los Angeles, California 90012 |
| 23   NAM 5, LTD., NAMCO 8 LLC, WISHLAB 90, LLC, BUNHERST, LLC, DGADE OF | Adv. Proc. No. 2:10-ap-02945 |
| 24   DELAWARE, LLC, TOYRAM, LLC, NAMARI, LLC, WOODMAN PARTNERS, LLC, | |
| 25   TRITOWNE, LLC, TRIGROVE, LLC and HARON SHARATIAN, | |
| 26 | |
| 27            Defendants. | |

28

RUTTER
HOBBS
DAVIDOFF
INCORPORATED
L A W Y E R S

7631.019  826381.12

1

NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION AND SUMMARY OF ARGUMENT......................................... 1

II.  THE MOTION TO DISMISS OF MOUSA, MAGDIEL, NAMCO 8, DGADE
     AND BUNHERST SHOULD BE GRANTED ................................................. 4

     A.   Standard for Motion to Dismiss ......................................................... 4

     B.   The Second Claim for Aiding and Abetting a Breach of Fiduciary
          Duty Fails to Allege Sufficient Facts as to Mousa ............................ 5

          1.   The FAC fails to allege facts with particularity as to how
               Mousa "aided and abetted" a breach of fiduciary duty ......................... 5

          2.   The Second Claim fails as to Mousa because Plaintiff
               has no standing to assert an aiding and abetting a breach
               of fiduciary duty claim against Mousa.................................... 8

          3.   The Second Claim fails because it is based on the allegations
               in the First Claim for Breach of Fiduciary Duty against Tony
               Namvar, which claim is fatally defective and must be dismissed......... 10

     C.   The Third Claim for Breach of Express or Implied Contract
          Does Not State a Valid Cause of Action........................................... 12

          1.   The FAC fails to allege the terms and conditions of each
               contract sued upon and to even identify who the counter-parties
               were to each contract.......................................................... 12

          2.   The FAC fails to allege when each breach of contract occurred,
               and any breach which occurred more than two years before
               December 22, 2008 us barred by the statute of limitations ................. 13

          3.   To the extent that Plaintiff would seek to hold DGADE,
               Magdiel, Namco 8, Wishlab 90, and Bunherst liable for a
               breach of contract by Mousa on a reverse piercing alter ego
               theory, such claim fails as a matter of law ........................... 15

          4.   It is unclear whether Plaintiff would seek to hold Mousa
               liable for a breach of contract by DGADE, Magdiel,
               Namco 8, Wishlab 90, but in any case, the FAC has failed
               to plead a valid alter ego claim as to these entities ............................ 16

     C.   The Fourth Claim for Open Book Account Does Not State a
          Valid Cause of Action ................................................................. 17

     D.   The Fifth Claim for Unjust Enrichment Does Not State a
          Valid Cause of Action ................................................................. 19

     E.   The Ninth Claim for Relief for Avoidance and Recovery of Mousa's
          Preferential Transfers Should Be Dismissed.................................... 19

RUTTER
HOBBS &
DAVIDOFF
INCORPORATED
L A W Y E R S

| | | | |
|---|---|---|---|
| | F. | The Eleventh Claim for Relief for Avoidance and Recovery of Fraudulent Transfers Does Not State a Valid Cause of Action | 21 |
| | G. | The Twelfth Claim for Avoidance and Recovery of Fraudulent Transfers Does Not State a Valid Cause of Action against Mousa | 25 |
| | | 1. No valid claim for avoidance and recovery of fraudulent transfers pertaining to DGADE is asserted as to Mousa | 25 |
| | | 2. A portion of the claims referenced in the Twelfth Claim for Relief are barred by the statute of limitations | 26 |
| | H. | The Thirteenth Claim for Constructive Trust Does Not State a Valid Cause of Action | 27 |
| | I. | The Fifteenth Claim for Declaratory Relief is Duplicative and Should Be Dismissed | 28 |
| | J. | The Sixteenth Claim for Equitable Subordination Does Not State a Valid Cause of Action | 29 |
| | K. | The "Objection to Claims" Allegations Do Not State a Valid Cause of Action | 31 |
| III. | | CONCLUSION | 32 |

RUTTER
HOBBS &
DAVIDOFF
INCORPORATED
L A W Y E R S
7631.019  826381.12

NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

Allen v. Powell,
   248 Cal. App. 2d 502 , 56 Cal. Rptr. 715 (Cal. Ct. App. 1967)...........................18

Angell v. Haveri (In re Caremerica, Inc,)
   409 B.R. 737 (Bankr. E.D.N.C. 2009)..............................................20, 21, 24

Ashcroft v. Iqbal,
   129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) ...................................4, 6, 11, 20, 21

Bank of Marin v. England,
   385 U.S. 99 , 87 S. Ct. 274, 17 L. Ed. 2d 197 (1966) ..........................................8

Bell Atl. Corp. v. Twombly,
   550 U.S. 544, 127 S. Ct. 1955 , 167 L. Ed. 2d 929 (2007) .........................4, 7, 11,

Bly-Magee v. California,
   236 F.3d 1014 (9th Cir. 2001) ...................................................................8

Buffington v. Ohmert,
   253 Cal. App. 2d 254 , 61 Cal. Rptr. 360 (Cal. Ct. App. 1967)...........................14

California Emergency Physicians Med. Group v. PacifiCare of California,
   111 Cal. App. 4th 1127 , 4 Cal. Rptr. 3d 583 (Cal. Ct. App. 2003).....................13

Carrasco v. Greco Canning Co.,
   58 Cal. App. 2d 673 , 137 P.2d 463 (Cal. Ct. App. 1943)...................................14

Carter v. Canty,
   181 Cal. 749, 186 P. 346 (1919)..................................................................18

Cascade Energy & Metals Corp. v. Banks,
   896 F.2d 1557 (10th Cir. 1990) ............................................................15, 16

Casey v. U.S. Bank Nat'l Ass'n,
   127 Cal. App. 4th 1138 , 26 Cal. Rptr. 3d 401 (Cal. Ct. App. 2005).....................6

Communist Party v. 522 Valencia, Inc.,
   35 Cal. App. 4th 980 , 41 Cal. Rptr. 2d 618 (Cal. Ct. App. 1995).......................28

Cooper v. Pickett,
   137 F.3d 616 (9th Cir. 1997) .....................................................................8

Cortez v. Vogt,
   52 Cal. App. 4th 917 , 60 Cal. Rptr. 2d 841 (Cal. Ct. App. 1997).......................27

Cusano v. Klein,
   264 F.3d 936 (9th Cir. 2001) .....................................................................17

NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT
7631.019  826381.12

RUTTER
HOBBS &
DAVIDOFF
INCORPORATED
L A W Y E R S

<u>**TABLE OF AUTHORITIES**</u>

<u>Page(s)</u>

*Dorland v. Dorland,*
  66 Cal. 189 , 5 P. 77 (1884) ................................................................................ 14

*Fanning v. Montgomery County Children & Youth Services,*
  702 F. Supp. 1184 (E.D. Pa. 1988) ..................................................................... 29

*Fiol v. Doellstedt,*
  50 Cal. App. 4th 1318 , 58 Cal. Rptr. 2d 308 (Cal. Ct. App. 1996) ................... 5, 7

*First Commercial Mortgage Co. v. Reece,*
  89 Cal. App. 4th 731 , 108 Cal. Rptr. 2d 23 (Cal. Ct. App. 2001) ....................... 12

*First Interstate Bank v. State of California,*
  197 Cal. App. 3d 627 , 243 Cal. Rptr. 8 (Cal. Ct. App. 1987) ............................. 18

*Flores v. Emerich & Fike,*
  1:05-CV-0291 AWI DLB, 2008 WL 2489900 (E.D. Cal. June 18, 2008) ............ 27

*Gen. Elec. Capital Corp. v. Lease Resolution Corp.,*
  128 F.3d 1074 (7th Cir. 1997) ............................................................................. 25

*Greiling v. Zahoudanis,*
  CV 08-06467 ODW (ANX, 2009 WL 700049 (C.D. Cal. Mar. 13, 2009) ............ 15

*Honolulu Joint Apprenticeship & Training Comm. of United Ass'n Local Union No. 675 v. Foster,*
  332 F.3d 1234 (9th Cir. 2003) ............................................................................. 28

*In re 3dfx Interactive, Inc.,*
  389 B.R. 842 (Bankr. N.D. Cal. 2008) ................................................................ 24

*In re AlphaStar Ins. Group Ltd.,*
  383 B.R. 231 (Bankr. S.D.N.Y. 2008) .............................................................. 9, 30

*In re APF Co.,*
  308 B.R. 183 (Bankr. D. Del. 2004) .................................................................... 25

*In re Dublin Sec., Inc.,*
  133 F.3d 377 (6th Cir. 1997) ................................................................................. 9

*In re First Alliance Mortg. Co.,*
  471 F.3d 977 (9th Cir. 2006) .................................................................................. 6

*In re Hydrogen, L.L.C.,*
  431 B.R. 337 (Bankr. S.D.N.Y. 2010) ................................................................. 20

*In re Lazar,*
  83 F.3d 306 (9th Cir. 1996) ................................................................................. 30

*In re Maddalena,*
  176 B.R. 551 (Bankr. C.D. Cal. 1995) ................................................................. 23

RUTTER
HOBBS &
DAVIDOFF
INCORPORATED
L A W Y E R S

**TABLE OF AUTHORITIES**

**Page(s)**

*In re Miner,*
185 B.R. 362 (N.D. Fla. 1995) ........................................................................ 25

*In re Monahan Ford Corp. of Flushing,*
340 B.R. 1 (Bankr. E.D.N.Y. 2006) .................................................................. 8

*In re N. Merch., Inc.,*
371 F.3d 1056 (9th Cir. 2004) ...................................................................... 24

*In re Oakwood Homes Corp.,*
325 B.R. 696 (Bankr. D. Del. 2005) ............................................................... 25

*In re Sexton,*
166 B.R. 421 (Bankr. N.D. Cal. 1994) ............................................................ 28

*In re Sharp Int'l Corp.,*
281 B.R. 506 (Bankr. E.D.N.Y. 2002) .............................................................. 6

*In re Southern California Plastics, Inc.,*
165 F.3D 1243 (9th Cir. 1999) ........................................................................ 5

*In re Valley Media, Inc.,*
288 B.R. 189 (Bankr. D. Del. 2003) ............................................................... 21

*Jensen v. Quality Loan Serv. Corp.,*
702 F. Supp. 2d 1183 (E.D. Cal. 2010) .......................................................... 29

*Joslin v. Gertz,*
155 Cal. App. 2d 62 , 317 P.2d 155 (Cal. Ct. App. 1957) .............................. 18

*Katzir's Floor & Home Design, Inc. v. M-MLS.com,*
394 F.3d 1143 (9th Cir. 2004) ...................................................................... 16

*Kearns v. Ford Motor Co.,*
567 F.3d 1120 (9th Cir. 2009) ........................................................................ 8

*Kenneally v. Bank of Nova Scotia,*
711 F. Supp. 2d 1174 (S.D. Cal. 2010) .......................................................... 27

*Lane v. Vitek Real Estate Indus. Group,*
713 F. Supp. 2d 1092 (E.D. Cal. 2010) .......................................................... 28

*Lauriedale Associates, Ltd. v. Wilson,*
7 Cal. App. 4th 1439 , 9 Cal. Rptr. 2d 774 (Cal. Ct. App. 1992) ................... 19

*Leonard v. Gallagher,*
235 Cal. App. 2d 362 , 45 Cal. Rptr. 211 (Cal. Ct. App. 1965) ..................... 14

*Lingad v. Indymac Fed. Bank,*
682 F. Supp. 2d 1142 (E.D. Cal. 2010) .......................................................... 10

NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT
7631.019   826381.12

RUTTER
HOBBS &
DAVIDOFF
INCORPORATED
L A W Y E R S

**TABLE OF AUTHORITIES**

Page(s)

*Maganallez v. Hilltop Lending Corp.,*
505 F. Supp. 2d 594 (N.D. Cal. 2007) ................................................................. 17

*Mangindin v. Washington Mut. Bank,*
637 F. Supp. 2d 700 (N.D. Cal. 2009) ................................................................. 29

*Matter of Fabricators, Inc.,*
926 F.2d 1458 (5th Cir. 1991) ............................................................................ 30

*McFarland v. Memorex Corp.,*
493 F. Supp. 631 (N.D. Cal. 1980) ....................................................................... 8

*Melchior v. New Line Productions, Inc.,*
106 Cal. App. 4th 779 , 131 Cal. Rptr. 2d 347 (Cal. Ct. App. 2003) ................... 19

*Moore v. Browning,*
203 Ariz. 102, 50 P.3d 852 (Ariz. Ct. App. 2002) ............................................... 27

*Moss v. U.S. Secret Serv.,*
572 F.3d 962 (9th Cir. 2009) ................................................................................. 5

*Neilson v. Union Bank of California, N.A.,*
290 F. Supp. 2d 1101 (C.D. Cal. 2003) ............................................................. 6, 8

*Official Comm. of Unsecured Creditors of Allegheny Health Educ. & Research Found. v.
PriceWaterhouseCoopers, LLP,*
605 Pa. 269, 989 A.2d 313 (2010) ....................................................................... 9

*Official Comm. of Unsecured Creditors v. R.F. Lafferty & Co., Inc.,*
267 F.3d 340 (3d Cir. 2001) ................................................................................. 9

*Papasan v. Allain,*
478 U.S. 265 , 106 S. Ct. 2932, 92 L. Ed. 2d 209 (1986) ................................. 4, 11

*Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP,*
133 Cal. App. 4th 658 , 35 Cal. Rptr. 3d 31 (Cal. Ct. App. 2005) ........................ 9

*Pierce v. Lyman,*
1 Cal. App. 4th 1093, 3 Cal. Rptr. 2d 236 (Cal. Ct. App. 1991) ........................... 7

*Postal Instant Press, Inc. v. Kaswa Corp.,*
162 Cal. App. 4th 1510 , 77 Cal. Rptr. 3d 96 (Cal. Ct. App. 2008) .................... 15

*Reigelsperger v. Siller,*
40 Cal. 4th 574 , 150 P.3d 764 (2007) ................................................................. 17

*Richard B. LeVine, Inc. v. Higashi,*
131 Cal. App. 4th 566 , 32 Cal. Rptr. 3d 244 (Cal. Ct. App. 2005) .................... 10

RUTTER
HOBBS &
DAVIDOFF
INCORPORATED
L A W Y E R S

NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT
7631.019  826381.12

**TABLE OF AUTHORITIES**

<b>Page(s)</b>

*Rosenfeld v. JPMorgan Chase Bank, N.A.,*
   732 F. Supp. 2d 952 (N.D. Cal. 2010) ................................................................ 28

*Shearson Lehman Hutton, Inc. v. Wagoner,*
   944 F.2d 114 (2d Cir. 1991) ................................................................................. 9

*Silva v. Providence Hosp. of Oakland,*
   14 Cal. 2d 762 , 97 P.2d 798 (1939) ................................................................... 13

*Smith v. Arthur Andersen LLP,*
   421 F.3d 989 (9th Cir. 2005) ................................................................................ 9

*Smith v. Simmons,*
   638 F. Supp. 2d 1180(E.D. Cal. 2009) ................................................................ 16

*Smithkline Beecham Corp. v. Cont'l Ins. Co., CIV.A. ,*
   04-2252, 2004 WL 1773713 (E.D. Pa. Aug. 4, 2004) ......................................... 29

*Stansfield v. Starkey,*
   220 Cal. App. 3d 59 , 269 Cal. Rptr. 337 (Cal. Ct. App. 1990) .......................... 27

*Stevenson v. San Francisco Hous. Auth.,*
   24 Cal. App. 4th 269 , 29 Cal. Rptr. 2d 398 (Cal. Ct. App. 1994) ...................... 12

*Swartz v. KPMG LLP,*
   476 F.3d 756 (9th Cir. 2007) ................................................................................ 8

*Tilden Lumber Co. v. Perino,*
   2 Cal. App. 2d 133 , 37 P.2d 466 (Cal. Ct. App. 1934) ...................................... 14

*Tomaselli v. Transamerica Ins. Co.,*
   25 Cal. App. 4th 1269 , 31 Cal. Rptr. 2d 433 (Cal. Ct. App. 1994) .................... 17

*Travelers Casualty & Surety Co. of America v. Pacific Gas & Electric Co.,*
   549 U.S. 443, 127 S.ct. 1199 (2007) .................................................................... 5

*United States v. State of Wash.,*
   759 F.2d 1353 (9th Cir. 1985) ............................................................................ 29

*Vess v. Ciba-Geigy Corp. USA,*
   317 F.3d 1097 (9th Cir. 2003) .............................................................................. 5

*Walker v. USAA Cas. Ins. Co.,*
   474 F. Supp. 2d 1168(E.D. Cal. 2007) ............................................................... 19

*Wight v. BankAmerica Corp.,*
   219 F.3d 79 (2d Cir. 2000) ................................................................................... 9

RUTTER
HOBBS &
DAVIDOFF
INCORPORATED
L A W Y E R S

NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT
7631.019  826381.12

## TABLE OF AUTHORITIES

Page(s)

*Youngman v. Nevada Irr. Dist.,*
  70 Cal. 2d 240 , 449 P.2d 462 (1969) .............................................................................. 13

**STATUTES**

11 U.S.C.A. § 544 (West) ........................................................................................................ 22

11 U.S.C.A. § 547 (West) ........................................................................................................ 20

11 U.S.C.A. § 547(b)(1) .......................................................................................................... 20

11 U.S.C.A. § 548 (West) ........................................................................................................ 23

11 U.S.C.A. §§ 542, 550, 553 (West) .................................................................................... 32

11 U.S.C.A. §§ 544, 548 .......................................................................................................... 25

Cal. Civ. Code § 1621 (West) ................................................................................................. 13

Cal. Civ. Code § 337(a) ........................................................................................................... 18

Cal. Civ. Code § 3439.04 ......................................................................................................... 22

Cal. Civ. Code § 3439.04(a) .................................................................................................... 26

Cal. Civ. Code § 3439.04(b) .................................................................................................... 27

Cal. Civ. Code § 3439.05 ................................................................................................... 22, 27

Cal. Civ. Code § 3439.09 (West) ............................................................................................ 26

Cal. Civ. Code § 3439.09(a) .................................................................................................... 27

Cal. Civ. Code § 3439.09(b) .................................................................................................... 27

Cal. Civ. Code §§ 3439.04, 3439.05 (West) ..................................................................... 21, 22

Cal. Corp. Code § 309(a) (West) ............................................................................................. 10

PC, 445 ........................................................................................................................................ 3

RUTTER
HOBBS &
DAVIDOFF
INCORPORATED
L A W Y E R S

7631.019  826381.12

NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT

**TABLE OF AUTHORITIES**

                                                                    **Page(s)**

Rules

Fed. R. Bankr. P. 3007(c) ...............................................................................31

Fed. R. Bankr. P. 3007(d) ...............................................................................31

Fed. R. Bankr. P. 3017(d) ...............................................................................3

Fed. R. Bankr. P. 7009 ...................................................................................30

Fed. R. Bankr. P. 7012(b) ............................................................................2, 4

Fed. R. Civ. P. 12(b)(6) ..........................................................................2, 4, 5, 10

Fed. R. Civ. P. 9 ............................................................................................23

Fed. R. Civ. P. 9(b) ................................................................................. passim

Fed. R. Evid. 201 ..............................................................................................2

FRCP 12(B)(6) ..................................................................................................1

NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT

RUTTER
HOBBS &
DAVIDOFF
INCORPORATED
LAWYERS

7631.019  826381.12

1   TO THE HONORABLE BARRY RUSSELL, UNITED STATES BANKRUPTCY JUDGE, AND TO

2   PLAINTIFF BRADLEY D. SHARP AND HIS ATTORNEYS OF RECORD:

3        PLEASE TAKE NOTICE that at 2:00 p.m. on May 3, 2011, or as soon thereafter as the

4   matter can be heard, in Courtroom 1668 of the above-captioned Court, located at the Edward

5   R. Roybal Federal Building and Courthouse, 255 East Temple Street, Los Angeles, California

6   90012, Defendants Mousa Namvar, Magdiel, LLC, Wishlab 90, LLC, Namco 8, LLC, Dgade of

7   Delaware, LLC and Bunherst, LLC ("Moving Party Defendants") will and hereby do move for

8   an order dismissing the First Amended Complaint ("FAC") filed by Bradley D. Sharp, Trustee

9   of the Estate of Namco Capital Group, Inc ("Plaintiff").

10       This Motion is brought pursuant to Fed. R. Civ. P. 12(b)(6), as made applicable hereto

11  by Fed. R. Bankr. P. 7012(b), on the basis that the FAC fails to state a claim against Moving

12  Party Defendants upon which relief may be granted. Specifically, the Court should dismiss the

13  Third, Fourth, Fifth, Ninth, Eleventh, Twelfth, Thirteenth, Fifteenth and Sixteenth Claims for

14  Relief and Plaintiff's Objection to Claims in the FAC.  This Motion is based upon this Notice of

15  Motion and Motion, the Memorandum of Points and Authorities herewith, the pleadings and

16  papers on file with the Court, and all matters of which the Court may take judicial notice

17  pursuant to Fed. R. Evid. 201.

18       PLEASE TAKE FURTHER NOTICE that Local Bankruptcy Rule 9013-1(c)(2) requires

19  that any response to this Motion be filed with the Court and served upon counsel for the

20  Trust, at the address set forth in the caption above, at least fourteen (14) days prior to the

21  hearing date:

22       (1)    Counsel for Moving Party Defendants: Brian Davidoff, Esq. and Geoffrey M.

23  Gold,  Rutter Hobbs and Davidoff, Incorporated, 1901 Avenue of the Stars, Suite 1700, Los

24  Angeles, California, California 90067.

25       (2)    Counsel for defendants Hooshang Namvar, Homayoun Namvar, Ramin Namvar,

26  Nataly Namvar, Trifish, LLC, Tribun, LLC, Believers, LLC, Net, LLC, Light Source Management,

27  LLC (fka Light Source, LLC), Lacy 20, LLC, Woodman Partners, LLC, Tritowne, LLC and

28  Trigrove, LLC:  Richard S. Berger, Esq. and Peter J. Gurfein, Esq., Landau Gottfried & Berger

RUTTER
HOBBS &
DAVIDOFF
INCORPORATED
L A W Y E R S

7631.019  826381.12

2

NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT

1    LLP, 1801 Century Park East, Suite 1460, Los Angeles, California 90067.

2       (3)     Counsel for defendants Helen Shadi, Lida Schraga, Hilda Bayanfar and

3    Trisister, LLC: Henley L. Saltzburg, Esq., Saltzburg, Ray & Bergman, LLP, 12121 Wilshire

4    Blvd., #600, Los Angeles, California 90025;

5       (4)     Counsel for defendant Haron Shabatian: Robert Mobasseri, Esq., Law Offices

6    Of Robert B. Mobasseri, A PC, 445 South Figueroa Street, 27th Floor, Los Angeles, California

7    90071; and

8       (5)     All other individuals and entities requesting notice in addition to or other than

9    the notice provided by the Court's Notice of Electronic Filing.

10       PLEASE TAKE FURTHER NOTICE that pursuant to Local Bankruptcy Rule 9013-1(h),

11    the failure to timely file and serve a written opposition may be deemed by the Court to be

12    consent to the granting of the relief requested in the Motion.

13

14    DATED: March 25, 2011           RUTTER HOBBS & DAVIDOFF
                                       INCORPORATED

15

16                                  By: _____

17                                    BRIAN L. DAVIDOFF
                                   GEOFFREY M. GOLD

18                                  Attorneys for Defendants MOUSA NAMVAR,
                                 MACDIEL, LLC, DGADE OF DELAWARE, LLC,

19                                  WISHLAB, LLC, NAMCO 8, LLC and BUNHERST,
                                 LLC

20

21

22

23

24

25

26

27

28

RUTTER
HOBBS &
DAVIDOFF
L A W Y E R S    7631.019 826381.12       NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT

1  ## MEMORANDUM OF POINTS AND AUTHORITIES

2  ### I.

3  ### INTRODUCTION AND SUMMARY OF ARGUMENT

4  The First Amended Complaint ("FAC") is filled with wild, accusatory, generalized and

5  unsupported conclusions.

6  Plaintiff Bradley T. Sharp ("Plaintiff"), the Trustee for the Estate of Namco Capital

7  Group, Inc. offers opaque and conclusory allegations that defendant Mousa Namvar

8  ("Mousa") "aided and abetted" defendant Tony Namvar ("Tony") and non-party Ezri Namvar

9  in some constructively fraudulent scheme by "assisting" (how is unclear and unspecified) with

10  a breach of fiduciary duty.

11  The <u>Second Claim</u> for Aiding and Abetting a Breach of Fiduciary Duty is not set forth

12  with particularity.  Plaintiff has not made out an aiding and abetting breach of fiduciary duty

13  claim against Mousa specifically or factually.  Plaintiff cannot plead any such fraud theory

14  only in general terms and through the back-door of aiding and abetting, vicarious liability,

15  and expect to avoid strict pleading requirements under Fed. R. Civ. P. 9(b).  In addition,

16  Plaintiff has no standing to assert this claim.  The Second Claim for Relief for Aiding and

17  Abetting Breach of Fiduciary duty should be dismissed as to Mousa.

18  The <u>Third Claim</u> for Relief for Breach of Express or Implied Contract lumps all

19  defendants together including Mousa and defendants Magdiel, LLC ("Magdiel"), Wishlab 90,

20  LLC ("Wishlab"), Namco 8, LLC ("Namco 8"), Dgade of Delaware, LLC ("DGADE") and

21  Bunherst, LLC ("Bunherst") (collectively "Moving Party Defendants") along with many others.

22  The Third Claim fails to state the terms and conditions of the purported "express" or "implied

23  contract" sued upon, and fails to identify who contracted with Namco Capital Group, Inc.

24  ("Namco").

25  The FAC alleges in general terms that the unspecified total group of "Defendants

26  agreed that transfers. . . would be repaid to Namco, with interest from the time of such

27  transfers." FAC, ¶ 141.  The FAC fails to state when each alleged contract between Namco

28  and various Moving Party Defendants was created, what the precise provisions of each alleged

RUTTER
HOBBS &
DAVIDOFF
INCORPORATED
LAWYERS

1

1    contract were for each named defendant, what particular terms were verbal or implied, and

2    when each alleged breach of contract occurred.  This is particularly critical because it appears

3    that many of the "contract" claims loosely referenced in the FAC are barred by the two year

4    statute of limitations for oral or implied contract claims.  Plaintiff admits that "Defendants

5    agreed to be bound by such terms without a written agreement." FAC, ¶ 142.

6           Further, to the degree that Plaintiff would rely on alter ego theory to extend a breach

7    of contract claim (as for example against Mousa) to reach other entity defendants, the FAC

8    allegations in paragraph 49 are inadequate and do not state sufficient facts to support a claim.

9    Under California law, there can be and is no viable "reverse piercing" alter ego claim.  In other

10   words, assuming (arguendo) Mousa were found to have some contractual liability to Namco,

11   Plaintiff cannot allege alter ego *through Mousa* against the entity defendants.  Plaintiff cannot

12   use a reverse alter-ego piercing theory to make certain limited liability companies like

13   Magdiel, Wishlab, Namco 8, DGADE, and Bunherst responsible for supposed debts, even if

14   some unidentified individual is found liable by way of a breach of contract claim.

15          The Fourth Claim for Relief for Open Book Account fails to specify the alleged open

16   book account which exists as to the Moving Party Defendants.  Again, the pleading is faulty.

17   It does not give adequate notice about the nature of the open book account as to each of the

18   Moving Party Defendants.  For instance, how much does each of Moving Party Defendants

19   owe?  Where is the book account for each? It is not alleged or specified.

20          The Fifth Claim for Relief for Unjust Enrichment is invalid.  Unjust enrichment is a

21   remedy and not a claim.  The Fifth Claim fails to set forth a valid claim and must be

22   dismissed.

23          The Ninth Claim for Relief for Avoidance and Recovery of Mousa Preferential Transfers

24   does not state sufficient facts to support a claim.  In addition, the FAC at paragraph 109

25   alleges six payments totaling $900,000 and then that such payments were made on account of

26   *an antecedent debt* to Mousa, but does not specify any other facts.  Plaintiff does not describe

27   what this antecedent debt was.  The FAC just pleads conclusions.

28   //

RUTTER
HOBBS &
DAVIDOFF
INCORPORATED
L A W Y E R S

1       Moreover, the pleading is mistaken. Paragraph 179 states that "Plaintiff is entitled to

2   avoidance of the Tritowne Preferential Transfer, and for judgment against Mousa in the

3   amount of $900,000, plus interest." Mousa, however, had not a thing to do with, or any

4   interest in, the entity named as Tritowne as referenced in the pleading. The FAC does not

5   allege how Mousa had any connection with Tritowne. He had none. The FAC is jumbled and

6   confused.

7       The <u>Eleventh Claim</u> for Avoidance and Recovery of Fraudulent Transfers against all

8   named defendants is elastic and thus problematic. The pleading should break down and

9   allege who is liable for what. Plaintiff is including as named defendants in this cause of action

10  parties like Moving Party Defendants who did not receive anything on many and most of the

11  transactions referenced. Again, Plaintiff is engaged in a reverse alter ego piercing. Plaintiff is

12  alleging simplistically that all defendants are vicariously liable, seeking to collapse all

13  defendants into one, without pleading sufficient facts to state a claim.

14      The <u>Twelfth Claim</u> for Avoidance and Recovery of Fraudulent Transfers states that this

15  claim is solely against Mousa. But it does not connect the dots as to why *Mousa* is responsible

16  for money which was allegedly paid "for the benefit of" DGADE. In addition, a significant

17  portion of the claim sought is barred by statute of limitations.

18      The <u>Thirteenth Claim</u> for Constructive Trust is redundant. It rehashes the deficient

19  aiding and abetting a breach of fiduciary duty claim and states because Mousa aided and

20  abetted, there should be a remedy of a constructive trust over certain assets owned by

21  Bunherst. It does not plead a viable separate claim, and is not allowable under the

22  circumstances.

23      The <u>Fifteenth Claim</u> for Declaratory Relief is duplicative and not properly stated.

24      The <u>Sixteenth Claim</u> for Equitable Subordination is not pleaded with particularity and

25  must be dismissed.

26      The "<u>Objection to Claims</u>" does not identify either the claims to which the objection is

27  addressed or the individuals or entities who filed those unidentified claims and therefore is an

28  improper omnibus objection under Fed. R. Bankr. P. 3017(d).

RUTTER
HOBBS &
DAVIDOFF
INCORPORATED
L A W Y E R S

3

NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT

7631.019  826381.12

II.

**THE MOTION TO DISMISS OF MOUSA, MAGDIEL, NAMCO 8,**

**DGADE AND BUNHERST SHOULD BE GRANTED**

A.  **Standard for Motion to Dismiss**

Fed. R. Bankr. P. 7012(b) provides that Fed. R. Civ. P. 12(b)(6) applies in adversary

proceedings.  Fed. R. Civ. P. 12(b)(6) authorizes the Court to dismiss a complaint for failure

to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  Indeed, the

United States Supreme Court has held that, pursuant to Fed. R. Civ. P. 12(b)(6), it is "a

plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' [which] requires

<u>more than labels and conclusions, and a formulaic recitation of the elements of a cause of</u>

<u>action will not do</u>." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554, 127 S. Ct. 1955, 1964-65,

167 L. Ed. 2d 929 (2007)(citing *Papasan v. Allain*, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L.

Ed. 2d 209 (1986)) (emphasis added).  Specifically, to survive a motion to dismiss, this

requires a complaint to have "enough facts to state a claim to relief that is plausible on its

face." *Id.* at 570.

The Supreme Court clarified the requisite degree of plausibility in *Ashcroft v. Iqbal*, 129

S. Ct. 1937, 173 L. Ed. 2d 868 (2009), as follows:

> A claim has facial plausibility when the plaintiff pleads factual
> content that allows the court to draw the reasonable inference that
> the defendant is liable for the misconduct alleged.  The plausibility
> standard is not akin to a "probability requirement," but it asks for
> more than a sheer possibility that a defendant has acted
> unlawfully.  Where a complaint pleads facts that are "merely
> consistent with" a defendant's liability, it "stops short of the line
> between possibility and plausibility of 'entitlement to relief.'"

*Id.* at 1949.  The Court further outlined the two principles applicable to a reviewing court's

analysis of a complaint challenged under Fed. R. Civ. P. 12(b)(6):

> First, the tenet that a court must accept as true all of the
> allegations contained in a complaint is *inapplicable* to legal
> conclusions. *Threadbare recitals of the elements of a cause of action,*
> *supported by mere conclusory statements, do not suffice.* . .
> Second, only a complaint that states a plausible claim for relief
> survives a motion to dismiss . . . *where the well-pleaded facts do not*
> *permit the court to infer more than the mere possibility of*

RUTTER
HOBBS &
DAVIDOFF
INCORPORATED
L A W Y E R S

4

NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT
7631.019  826381.12

1   *misconduct, the complaint has alleged – but it has not "shown"—*
2   *"that the pleader is entitled to relief."*

3   *Id.* at 1949-1950(emphasis added).  Thus, under Fed. R. Civ. P. 12(b)(6), "for a complaint to

4   survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences

5   from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief."

6   *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).

7   Under Fed. R. Civ. P. 9(b), claims sounding in fraud are held to a higher pleading

8   standard.  Fed. R. Civ. P. 9(b)("In alleging fraud or mistake, a party must state with

9   particularity the circumstances constituting fraud or mistake.").  "A motion to dismiss a

10  complaint or claim 'grounded in fraud' under Fed. R. Civ. P. 9(b) for failure to plead with

11  particularity is the functional equivalent of a motion to dismiss under Fed. R. Civ. P. 12(b)(6)

12  for failure to state a claim." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir.

13  2003).

14  **B.**   **The Second Claim for Aiding and Abetting a Breach of Fiduciary Duty Fails to Allege**
15       **Sufficient Facts as to Mousa.**[1]

16       1.   The FAC fails to allege facts with particularity as to how Mousa "aided and
17            abetted" a breach of fiduciary duty.

18  Aider and abettor liability may be imposed on one who aids and abets the commission

19  of an intentional tort, if the person either "(a) knows the other's conduct constitutes a breach

20  of duty and gives substantial assistance or encouragement to the other to so act or (b) gives

21  substantial assistance to the other in accomplishing a tortious result and the person's own

22  conduct, separately considered, constitutes a breach of duty to the third person.  *Fiol v.*

23  *Doellstedt*, 50 Cal. App. 4th 1318, 1325-26, 58 Cal. Rptr. 2d 308 (Cal. Ct. App. 1996).  "To

24  satisfy the knowledge prong, the defendant must have 'actual knowledge of the **specific**

25  

26  ─────────────────────
27  [1] The analysis herein of claims set forth in the Amended Complaint involve the discussion of
    state law, as it is fundamental that state law often governs the substance of claims brought in
    bankruptcy courts.  *See, e.g., Travelers Casualty & Surety Co. of America v. Pacific Gas & Electric*
    *Co.*, 549 U.S. 443, 127 S.Ct. 1199, 1205 (2007); *In re Southern California Plastics, Inc.*, 165
28  F.3d 1243, 1247 (9th Cir. 1999).

RUTTER
HOBBS &
DAVIDOFF
INCORPORATED
L A W Y E R S

5
NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT
7631.019  826381.12

primary wrong the defendant substantially assisted." *In re First Alliance Mortg. Co.*, 471 F.3d 977, 993 (9th Cir. 2006) (quoting *Casey v. U.S. Bank Nat'l Ass'n*, 127 Cal. App. 4th 1138, 1145, 26 Cal. Rptr. 3d 401 (Cal. Ct. App. 2005)) (emphasis added). *See also, In re Maxim Integrated Products, Inc., Deriv. In re Maxim Integrated Products, Inc., Deriv. Lit.*, 574 F. Supp. 2d 1046, 1068 (N.D. Cal. 2008) aiding and abetting breach of fiduciary duty claim where complaint did not identify any action taken by alleged aider and abettor that would constitute knowing participation in the breach).

Here, Plaintiff's allegations are wholly conclusory. In paragraphs 135 and 136 of the FAC, Plaintiff alleges only that "Mousa, Sean and Ramin had actual knowledge of Ezri's and Tony's violation of such fiduciary duty," and that "Mousa, Sean and Ramin substantially assisted Ezri and Tony in breaching their fiduciary duty." FAC, at 25:23-26. This is simply a recitation of the formulaic elements of an aider and abettor claim condemned by the Supreme Court in *Ashcroft*, 129 S. Ct. 1937, and it is wholly inadequate to state a claim for aider and abettor liability against Mousa.

It is well-established that "it is necessary to identify precisely the breach of fiduciary duty for which [Plaintiff] seeks to hold [Mousa] liable." *Casey*, 127 Cal. App. 4th at 1147 (emphasis added) (quoting *In re Sharp Int'l Corp.*, 281 B.R. 506, 513 (Bankr. E.D.N.Y. 2002) *aff'd*, 302 B.R. 760 (E.D.N.Y. 2003) *aff'd*, 403 F.3d 43 (2d Cir. 2005). The FAC utterly fails to satisfy that pleading requirement. Wholesale incorporation by reference of 131 paragraphs of allegations (*see* FAC at 16-17) is not "precise" identification of the breaches of fiduciary duty allegedly committed by Ezri and Tony Namvar. Indeed, it is not identification at all.

Next, Plaintiff must allege that Mousa had "actual knowledge" of the specific breach of fiduciary duty for which Plaintiff seeks to hold Mousa liable. *Casey*, 127 Cal. App. 4th at 1148 (a complaint must plead that defendant had actual knowledge" of a specific primary violation) (quoting *Neilson v. Union Bank of California, N.A.*, 290 F. Supp. 2d 1101, 1120 (C.D. Cal. 2003). Here, all that the FAC alleges is that Mousa "had actual knowledge of Ezri's and Tony's violations of [their] fiduciary duty." FAC, at 23-24. This is not an allegation that

RUTTER
HOBBS &
DAVIDOFF
INCORPORATED
L A W Y E R S

6
NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT
7631.019  826381.12

1    Mousa had knowledge of a specific primary violation.  In fact, there is no identification

2    anywhere in the FAC of the alleged "specific primary violations" of fiduciary duty allegedly

3    committed by either Ezri or Tony Namvar.  As a result, the Second Claim for relief is defective

4    on this ground as well.

5         Moreover, Plaintiff does not plead any facts in support of his legal conclusion that

6    Mousa "substantially assisted Ezri's and Tony in breaching their fiduciary duty.  FAC, at 25-26.

7    These conclusory allegations fail to describe in meaningful detail – or at all – how Mousa's

8    actions provided substantial assistance to Ezri and Tony Namvar in breaching their fiduciary

9    duties to Namco.  Further, as previously explained, the Court respectfully cannot come to a

10   conclusion that Mousa knew the particulars of any alleged breach of fiduciary duty – "[m]ere

11   knowledge that a tort is being committed and the failure to prevent it does not constitute

12   aiding and abetting." *Fiol*, 50 Cal. App. 4th at 1326.

13        Plaintiff does not describe any particular conduct of Mousa.  The FAC does not explain

14   how Mousa's conduct shows knowledge by Mousa of allegedly fraudulent conduct of Tony or

15   Ezri, or how Mousa provided substantial assistance or encouragement to anyone committing

16   fraud.  Vague allegations and mere labels and conclusions are insufficient to withstand a

17   motion to dismiss. *See, Bell Atl. Corp.*, 550 U.S. at 555; *see also Pierce v. Lyman*, 1 Cal. App.

18   4th 1093, 1110, 3 Cal. Rptr. 2d 236, 246 (Cal. Ct. App. 1991)("Mere knowledge by a third

19   person that a breach of trust is in process, coupled with the failure to notify the beneficiary or

20   to interfere with the action of the trustee, does not amount to a participation in a breach.

21   Such conduct is inaction which may be reprehensible under the highest standards of ethics,

22   but no legal duty has been violated.").

23        The FAC's pleading deficiencies are exacerbated by the fact that Plaintiff has alleged

24   that Mousa aided and abetted Ezri and Tony Namvar's <u>fraudulent</u> conduct.

25             Under Fed. R. Civ. P. 9(b), the circumstances constituting fraud or mistake must

26   be plead with particularity.  A pleading is sufficient under Fed. R. Civ. P. 9(b) if it "is

27   specific enough to give defendants notice of the particular misconduct which is alleged

28   to constitute the fraud charged so that they can defend against the charge and not just

RUTTER
HOBBS &
DAVIDOFF
INCORPORATED
L A W Y E R S

7

NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT

7631.019  826381.12

deny that they have done anything wrong." *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001)(internal citations omitted.)  To satisfy this standard, plaintiffs must offer the "who, what, when, where, and how" in support their fraud allegations. *Vess*, 317 F.3d, 1106.  *Generally, aiding and abetting fraud claims are held to the same heightened pleading standard.*  [emphasis added] *Neilson, Neilson*, 290 F. Supp. 2d 1101.

Fraud must be alleged with particularity.  *In re Monahan Ford Corp. of Flushing*, 340 B.R. 1, 33 (Bankr. E.D.N.Y. 2006)("Claims of aiding and abetting fraud must meet the particularity standard of Fed. R. Civ. P. 9(b)."); *McFarland v. Memorex Corp.*, 493 F. Supp. 631, 655-56 (N.D. Cal. 1980)(holding plaintiff's pendent state law claims including fraud and breach of fiduciary duty had to be pled with greater specificity).  Claims that "sound in fraud" or are "grounded in fraud" must be pled with particularity in accordance with Fed. R. Civ. P. 9(b).  *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009).  This means that the complaint must allege "the who, what, when, where, and how" of the alleged fraudulent conduct.  *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997).  Where multiple defendants are involved, the plaintiff must identify the role of <u>each</u> defendant in the alleged fraudulent scheme.  *See, Swartz v. KPMG LLP*, 476 F.3d 756, 764-65 (9th Cir. 2007).

Here however the FAC does not allege how Mousa supposedly knew of each breach of fiduciary duty complained of.  For instance, the FAC asserts that Mousa be held responsible for *all* breaches of fiduciary duty ever committed by Tony or Ezri Namvar.  How Mousa knew of what fiduciary duty was being breached at any particular time is not specified.  There is no such thing as an implied aiding and abetting.  The Second Claim for Relief must be dismissed.

    2.    **The Second Claim fails as to Mousa because Plaintiff has no standing to assert an aiding and abetting a breach of fiduciary duty claim against Mousa.**

"The trustee succeeds only to such rights as the bankrupt possessed; and the trustee is subject to all claims and defenses which might have been asserted against the bankrupt but for the filing of the petition." *Bank of Marin v. England*, 385 U.S. 99, 101, 87 S. Ct. 274, 17 L. Ed. 2d 197 (1966).  "[U]nder the Bankruptcy Code the trustee stands in the shoes of the

RUTTER
HOBBS &
DAVIDOFF
INCORPORATED
L A W Y E R S

1   bankrupt corporation and has standing to bring any suit that the bankrupt corporation could

2   have instituted had it not petitioned for bankruptcy." *Smith v. Arthur Andersen LLP*, 421 F.3d

3   989, 1002 (9th Cir. 2005); *Shearson Lehman Hutton, Inc. v. Wagoner*, 944 F.2d 114, 118 (2d

4   Cir. 1991)(trustee has <u>no</u> standing to assert claims against third parties for cooperating in the

5   very misconduct that the debtor had initiated); *In re Dublin Sec., Inc.*, 133 F.3d 377, 380 (6th

6   Cir. 1997)(bankruptcy trustee's claims were barred by *in pari delicto* doctrine on a motion to

7   dismiss); *Official Comm. of Unsecured Creditors v. R.F. Lafferty & Co., Inc.*, 267 F.3d 340, 346,

8   360 (3d Cir. 2001) *disapproved of by Official Comm. of Unsecured Creditors of Allegheny Health*

9   *Educ. & Research Found. v. PriceWaterhouseCoopers, LLP*, 605 Pa. 269, 989 A.2d 313 (2010)

10  motion to dismiss based on *in pari delicto* doctrine).)

11          "A claim against a third party for defrauding a corporation with the cooperation of

12  management accrues to creditors, not to the guilty corporation." *Shearson Lehman Hutton,*

13  *Inc.*, 944 F.2d at 120.[2]   The so-called *Wagoner* Rule "derives from the fundamental principle

14  of agency that the misconduct of managers within the scope of their employment will

15  normally be imputed to the corporation." *Wight v. BankAmerica Corp.*, 219 F.3d 79, 86 (2d

16  Cir. 2000).  Because management's misconduct is imputed to the corporation, and because a

17  trustee stands in the shoes of the corporation, the *Wagoner* rule bars a trustee from suing to

18  recover for a wrong that he himself essentially took part in. *Wight*, 219 F.3d at 87.  "It is

19  settled California law that knowledge of an officer of a corporation within the scope of his

20  duties is imputed to the corporation." *Peregrine Funding, Inc. v. Sheppard Mullin Richter &*

21  *Hampton LLP*, 133 Cal. App. 4th 658, 679, 35 Cal. Rptr. 3d 31 (Cal. Ct. App. 2005).

22          Plaintiff has no standing to assert that Mousa "substantially assisted" in somehow

23  aiding and abetting Namco's officers Tony and Ezri in breaching a fiduciary duty to the

24  corporation.  If any wrong was committed by Namco through its officers, Namco is barred

25  from pursuing that claim which Namco through its officers participated in.  For instance, in *In*

26

27  [2] A trustee in bankruptcy, of course, lacks standing to enforce claims belonging to creditors. *See, e.g.,* (trustee has no standing as a matter of law to bring third party or creditor claims that do not belong to the debtor); (bankruptcy trustee cannot pursue third party creditor claims, even where the party assigned those claims to the trustee to pursue on their behalf).

RUTTER
HOBBS &
DAVIDOFF
INCORPORATED
LAWYERS

28

9

7631.019  826381.12

1    re AlphaStar Ins. Group Ltd., 383 B.R. 231, 274-75 (Bankr. S.D.N.Y. 2008), on a motion to

2    dismiss under Fed. R. Civ. P. 12(b)(6), the Court held that a trustee's claim against an

3    investment banking firm for aiding and abetting a breach of fiduciary duty was barred by the

4    Wagoner rule.  The trustee stood in the shoes of the corporate debtor and alleged that the

5    debtor's decision-makers breached their fiduciary duties to the debtor.  He could not plead a

6    viable aiding and abetting claim.  Similarly, Plaintiff cannot assert a claim against Mousa for

7    aiding and abetting a supposed breach of fiduciary duty by the alleged decision-makers of

8    Namco here.

         3.      **The Second Claim fails because it is based on the allegations in the First Claim**

10                   **for Breach of Fiduciary Duty against Tony Namvar, which claim is fatally**

11                   **defective and must be dismissed.**

12   "Aiding and abetting" is not an independently actionable concept.  Rather, a plaintiff

13   is first required sufficiently to plead an actionable tort before he can properly plead that a

14   defendant aided and abetted, or was otherwise responsible for the commission of that tort.

15   See, e.g., Richard B. LeVine, Inc. v. Higashi, 131 Cal. App. 4th 566, 574, 32 Cal. Rptr. 3d 244

16   (Cal. Ct. App. 2005)("The unifying principle under either theory of recovery, civil conspiracy

17   or aiding and abetting, is that [defendant's] liability depends upon the actual commission of

18   a tort.  Here, the underlying tort is the alleged breach of fiduciary duty.").

19   Plaintiff has failed to allege a viable claim for breach of fiduciary duty in the FAC.

20   Mousa refers to the motion to dismiss (on file) as to the defective First Claim for Relief

21   against Tony Namvar.  "To state a claim for breach of fiduciary duty, a plaintiff must show:

22   (1) the existence of a fiduciary relationship; (2) the breach of that relationship; and (3)

23   damage proximately caused by the breach." Lingad v. Indymac Fed. Bank, 682 F. Supp. 2d

24   1142, 1152 (E.D. Cal. 2010).  The allegations of paragraph 128 of the FAC merely

25   paraphrase Cal. Corp. Code § 309(a) (West), which provides: "A director shall perform the

26   duties of a director, including duties as a member of any committee of the board upon which

27   the director may serve, in good faith, in a manner such director believes to be in the best

28   interests of the corporation and its shareholders and with such care, including reasonable

RUTTER
HOBBS &
DAVIDOFF
INCORPORATED
L A W Y E R S

1  inquiry, as an ordinarily prudent person in a like position would use under similar

2  circumstances." This is insufficient. *Ashcroft*, 129 S. Ct. at 1949(holding that "[t]hreadbare

3  recitals of the elements of a cause of action, supported by mere conclusory statements" are

4  insufficient pleadings). As a result, the Plaintiff's Second Claim for Relief, which alleges that

5  Mousa and others aided and abetted Tony and Ezri Namvar's breach of fiduciary duty – and

6  which depends upon the validity of the First Claim for Relief – is equally defective and must

7  be dismissed on that basis.

8      Plaintiff fails to specify which fiduciary duties allegedly have been breached. It

9  cannot be ascertained from the First Claim for Relief – or from the FAC as a whole – which

10  of the numerous acts alleged are supposed to form the basis for Plaintiff's accusation that

11  *Mousa* is somehow liable, by way of an aiding and abetting theory.

12      Hence, the Second Claim is also infirm because it fails to set forth *how* Tony (a named

13  defendant in the action) and separately Ezri Namvar (who is not named as a defendant)

14  committed a breach of fiduciary duty, for which Mousa may be held vicariously liable. The

15  conclusion is just accepted that there was some breach of fiduciary duty, namely some

16  fraudulent conduct by Tony and Ezri Namvar, as to certain conduct not specifically identified.

17  Plaintiff has not pleaded with any specificity its constructive fraud claim against Tony Namvar

18  (as in the First Claim for Relief) from which the claim in the Second Claim for Relief derives.

19  The bottom line is that there are no facts set forth with particularity as to how Mousa knew

20  about any breach of fiduciary duty and what Mousa did to substantially assist any breach of

21  fiduciary duty.

22      It is "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief'

23  [which] requires more than labels and conclusions, and a formulaic recitation of the

24  elements of a cause of action will not do." *Bell Atl. Corp.*, 550 U.S. at 554(citing *Papasan*,

25  478 U.S., 286). To survive a motion to dismiss, this requires a complaint to have "enough

26  facts to state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial

27  plausibility when the plaintiff pleads factual content that allows the court to draw the

28  reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 129

RUTTER
HOBBS ☒
DAVIDOFF
INCORPORATED
L A W Y E R S

11
NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT
7631.019  826381.12

1    S. Ct. at 1949. Here, there is no such specific pleading. This is an impermissible shotgun

2    pleading and prevents Moving Party Defendants from being able to understand, no less

3    respond to, the charges that have been leveled against them.

4    C.    **The Third Claim for Breach of Express or Implied Contract Does Not State a Valid**

5        **Cause of Action.**

6        1.    The FAC fails to allege the terms and conditions of each contract sued upon and

7          to even identify who the counter-parties were to each contract.

8        The FAC alleges at paragraph 142 that "Defendants agreed to be bound without

9    written agreement and/or confirmed such agreement by their conduct." Strikingly, Plaintiff

10    fails to plead the provisions of the purported contract(s) sued upon as to each named

11    defendant. Instead, Plaintiff has just stated the legal conclusion that "as to each of the

12    Namvar Family Transfers[3], Namco and Defendants understood and agreed that the transfers…

13    would be repaid to Namco with interest from the time of such transfers." FAC, ¶ 141.

14        In order to state a cause of action for breach of contract, a complaint must allege "the

15    existence of the contract, performance by the plaintiff or excuse for nonperformance, breach

16    by the defendant and damages." *First Commercial Mortgage Co. v. Reece,* 89 Cal. App. 4th 731,

17    735, 108 Cal. Rptr. 2d 23 (Cal. Ct. App. 2001). The essential elements of a contract include:

18    (1) parties capable of contracting; (2) their consent; (3) a lawful object; and (4) a sufficient

19    cause or consideration. When pleading an oral contract, a plaintiff also must allege the

20    element of consideration. *Stevenson v. San Francisco Hous. Auth.*, 24 Cal. App. 4th 269, 284,

21    29 Cal. Rptr. 2d 398 (Cal. Ct. App. 1994) ("The statutory presumption of consideration . . .

22    does not, of course, apply to an oral contract. In an action on such an agreement, the

23    essential element of consideration must normally be alleged.").

24        Plaintiff does not allege anything more about the terms and conditions of any alleged

25    oral or implied agreement, or what the consideration for any contract. The FAC fails to allege

26    which "transfers" were subject of any particular oral contract. Who specifically agreed and

27

[3]   The "Namco Family Transfers" are the 18 so-called transfers not described with any
particularity but simply listed in paragraph 140 of the FAC.

RUTTER
HOBBS &
DAVIDOFF
INCORPORATED
L A W Y E R S

NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT

7631.019   826381.12

1     promised Namco to repay the funds? When was each contract entered into? Was the money

2     "lent" by Plaintiff to some named defendant (which one) due on demand, or was the money

3     due immediately upon receipt? What was the interest rate agreed upon, and how was it to be

4     calculated? The Third Claim for Relief does not say.  The FAC does not allege (1) when each

5     contract was entered into; (2) the nature of each transfer; (3) if the transfer was a loan of

6     money, to which defendant was the loan made; (4) whether a "transfer" was due on demand,

7     due immediately on receipt or due at some specific time in the future; or (5) the amount of

8     the agreed-upon interest rate, and how specifically it was to be calculated.  Of even greater

9     significance, the FAC nowhere alleges, or even hints at, what consideration each defendant

10    received for any alleged oral agreement.

11            The Third Claim for relief is equally defective if it is interpreted to be a claim for breach

12    of an implied contract.  An implied contract "consists of obligations arising from a mutual

13    agreement and intent to promise where the agreement and promise have not been expressed

14    in words." *Silva v. Providence Hosp. of Oakland*, 14 Cal. 2d 762, 773, 97 P.2d 798 (1939); Cal.

15    Civ. Code § 1621 (West).  In order to plead a cause of action for implied contract, "the facts

16    from which the promise is implied must be alleged." *Youngman v. Nevada Irr. Dist.*, 70 Cal. 2d

17    240, 247, 449 P.2d 462 (1969); *California Emergency Physicians Med. Group v. PacifiCare of*

18    *California*, 111 Cal. App. 4th 1127, 1134, 4 Cal. Rptr. 3d 583 (Cal. Ct. App. 2003)(same).

19    Here, the FAC has not pleaded any facts from which the alleged promise to repay Namco can

20    be implied.  All Plaintiff has pleaded is the ambiguous legal conclusion that one, some or all of

21    the 33 defendants "agreed" that the identified transfers "would be repaid to Namco" with an

22    unspecified amount of interest.  This is not a sufficient pleading of an implied contract.

23            2.      **The FAC fails to allege when each breach of contract occurred, and any breach**

24                    **which occurred more than two years before December 22, 2008 is barred by the**

25                    **statute of limitations.**

26            A claim based on "a contract, obligation or liability not founded upon an instrument of

27    writing" must be filed within two years of accrual.  Code Civ. Proc. § 339.  The FAC admits

28    that there was no written agreement, and does not specify when any defendant owed money

**RUTTER**
**HOBBS ☒**
**DAVIDOFF**
INCORPORATED
L A W Y E R S

7631.019  826381.12

13

1     to Namco by way of a loan or advance.

2        When no time is specified for the repayment of a loan, it is payable on demand, and

3 the statute of limitations begins to run when the loan is made. This has unquestionably been

4 the law of California for more than a century. *Dorland v. Dorland*, 66 Cal. 189, 190, 5 P. 77

5 (1884)("No time being specified within which [the loan] was to be repaid, the presumption of

6 the law is that it was to be repaid on demand; and that being so, the statute of limitations

7 commenced to run from the time of the loan."); *Leonard v. Gallagher*, 235 Cal. App. 2d 362,

8 375, 45 Cal. Rptr. 211 (Cal. Ct. App. 1965)(loans and notes with no time fixed for payment

9 "were payable on demand"); *Tilden Lumber Co. v. Perino*, 2 Cal. App. 2d 133, 134, 37 P.2d

10 466 (Cal. Ct. App. 1934)(for notes due on demand, the statute begins to run on the date the

11 note was created). "For the purposes of the statute of limitations, loans payable on demand

12 are deemed payable at their inception, and the statute begins to run from such time."

13 *Buffington v. Ohmert*, 253 Cal. App. 2d 254, 256, 61 Cal. Rptr. 360 (Cal. Ct. App. 1967);

14 *Carrasco v. Greco Canning Co.*, 58 Cal. App. 2d 673, 675, 137 P.2d 463 (Cal. Ct. App.

15 1943)(dismissing oral breach of contract claim on statute of limitation grounds).

16        The FAC does not plainly set forth in the Third Claim for relief *when* each breach of

17 contract took place as to the six Moving Party Defendants. Rather, Plaintiff pleads "shotgun"

18 style in paragraph 139 and 140 by wholesale incorporation by reference, that certain

19 "transfers" happened which then made Moving Party Defendants allegedly liable by way of

20 some unstated "express or implied contract." Plaintiff's claim of contract breach for

21 "transfers" that go back more than two years before December 22, 2008 (the date of the filing

22 of the Namco bankruptcy) are barred by the controlling statute of limitations. Code Civ. Proc.

23 § 339.

24        For example, of the alleged "L.A Marriot Transfers" mentioned at paragraph 144(a) of

25 the FAC, all but one of the transfers occurred prior to December 22, 2006. FAC, ¶ 50.

26 Plaintiff seeks interest at 8% from the time the money was transferred, as if the return of

27 money should have happened immediately, and Moving Party Defendants (or some of them)

28 were in breach from the date of the receipt of the funds. All of the alleged "Flamingo Road

RUTTER
HOBBS &
DAVIDOFF
INCORPORATED
L A W Y E R S

14

1    Transfers" identified in paragraph 144(b) occurred in 2005 or 2006 well before December 22,

2    2006.  FAC, ¶ 61.  The alleged "Sunset Springs Transfers" per paragraph 144(c) of the FAC

3    occurred on or before February 20, 2006.  FAC, ¶ 70.  The alleged "Nam 5 Transfers" per

4    paragraph 144(d) took place on either August 25, 2004 or some unspecified time.  FAC, ¶ 75.

5    All but one of the alleged "Mousa SP Transfers" identified in paragraph 144(f) occurred well

6    before December 22, 2006.  FAC, ¶ 61.  Plaintiff fails to specify when the alleged "Red Feather

7    Transfers" took place, but Plaintiff asserts they commenced February 4, 2002 and January 12,

8    2004.  FAC, ¶ ¶ 125, 144(q).

9        **3.**    **To the extent that Plaintiff would seek to hold DGADE, Magdiel, Namco 8,**

10       **Wishlab 90, and Bunherst liable for a breach of contract by Mousa on a reverse**

11       **piercing alter ego theory, such claim fails as a matter of law.**

12   "[O]utside reverse piercing is a radical and problematic change in standard alter ego

13   law." *Postal Instant Press, Inc. v. Kaswa Corp.*, 162 Cal. App. 4th 1510, 1521, 77 Cal. Rptr. 3d

14   96 (Cal. Ct. App. 2008) (holding a claimant may <u>not</u> pierce the corporate veil to reach

15   corporate assets to satisfy a shareholders' personal liability).  In *Greiling v. Zahoudanis,* CV 08-

16   06467 ODW (ANX, 2009 WL 700049 (C.D. Cal. Mar. 13, 2009) the district court held that a

17   reverse piercing alter ego theory contained in a fraudulent transfer claim failed as a matter of

18   California law: "California courts recognize that outside reverse piercing is 'an unacceptable

19   shortcut.'"  The *Greiling* court noted:

20       In rejecting outside reverse piercing, the California Court of Appeal

21       adopted the Tenth Circuit's reasoning in *Cascade Energy & Metals Corp. v. Banks,*

22       896 F.2d 1557, 1577 (10th Cir. 1990).  The Tenth Circuit identified three

23       significant problems with the doctrine.  "First, [outside] reverse piercing 'bypasses

24       normal judgment-collection procedures, whereby judgment creditors attach the

25       judgment debtor's shares in the corporation and not the corporation's assets.'

26       Second, . . . to the extent that the corporation has other non-culpable

27       shareholders, they obviously will be prejudiced if the corporation's assets can be

28       attached directly.  In contrast, in ordinary piercing cases, only the assets of the

RUTTER
HOBBS &
DAVIDOFF
INCORPORATED
L A W Y E R S

15
NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT
7631.019  826381.12

1    particular shareholder who is determined to be the corporation's alter ego are

2    subject to attachment. . ." Third, "recognized legal remedies adequately protected

3    creditors from fraud." *Id.* Thus, "more traditional theories of conversion,

4    fraudulent conveyance of assets, respondeat superior and agency law are

5    adequate to deal with situations where one seeks to recover from a corporation

6    for the wrongful conduct committed by a controlling stockholder without the

7    necessity to invent a new theory of liability."

8    *Id.* at n. 4.

9        There is no good cause for Plaintiff to extend a new theory of liability here which has

10   been rejected. Plaintiff cannot hold entities in which Mousa may have an interest liable for

11   Mousa's alleged breach of contract. The FAC does not state valid claims against entities

12   related to Mousa directly or indirectly, such as DGADE, Namco 8, Magdiel, Wishlab 90, and

13   Bunherst.

14       **4.    It is unclear whether Plaintiff would seek to hold Mousa liable for a breach of**

15           **contract by DGADE, Magdiel, Namco 8, Wishlab 90, but in any case, the FAC**

16           **has failed to plead a valid alter ego claim as to these entities.**

17       Similarly, the incorporation by reference of paragraph 49 of the FAC, which in

18   substance alleges that each defendant is the alter ego of every other defendant (FAC at 9:3-

19   9), adds nothing to the breach of contract claim. "Although there is no specific 'litmus test'

20   for identifying when an individual is the alter ego of an entity, there are, nevertheless, two

21   general requirements: (1) there is such unity of interest and ownership that the separate

22   personalities of the corporation and the individual no longer exist and (2) failure to

23   disregard their separate identities would result in fraud or injustice." *Smith v. Simmons*, 638

24   F. Supp. 2d 1180, 1190 (E.D. Cal. 2009) *aff'd*, 09-17206, 2010 WL 4561368 (9th Cir. Nov. 9,

25   2010). Control alone is insufficient to establish an alter ego relationship. "The mere fact of

26   sole ownership and control does not eviscerate the separate corporate identity that is the

27   foundation of corporate law." *Katzir's Floor & Home Design, Inc. v. M-MLS.com*, 394 F.3d

28   1143, 1149 (9th Cir. 2004); *see also* William Meade Fletcher *et al.*, FLETCHER CYCLOPEDIA OF

RUTTER
HOBBS &
DAVIDOFF
INCORPORATED
LAWYERS

16

NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT
7631.019  826381.12

1  THE LAW OF PRIVATE CORPORATIONS § 41.35, at 671 (perm. ed., rev. vol. 1999) ("Allegations

2  that the defendant was the sole or primary shareholder are inadequate as a matter of law to

3  pierce the corporate veil. Even if the sole shareholder is entitled to all of the corporation's

4  profits, and dominated and controlled the corporation, that fact is insufficient by itself to

5  make the shareholder personally liable.").

6       Under California law, alter ego requires a showing of "inadequate capitalization,

7  commingling of assets, disregard of corporate formalities, [or] other facts which demonstrate

8  the critical element: that an inequitable result would have followed if the corporate

9  separateness had been respected." *Tomaselli v. Transamerica Ins. Co.*, 25 Cal. App. 4th 1269,

10  1285, 31, 31 Cal. Rptr. 2d 433 (Cal. Ct. App. 1994) Ca. Rptr. 2d 433 (1994). The FAC fails

11  to allege any such facts with respect to any corporate veil Plaintiff is seeking to pierce, nor

12  does it establish any basis whatsoever for the allegation that any of the other individual

13  defendants was the alter ego of any specific corporate entity defendant. The FAC's minimal

14  alter ego allegations are nothing but argument and bare legal conclusions. Of course,

15  "[c]onclusory allegations of alter ego status will not survive a motion to dismiss." *Maganallez*

16  *v. Hilltop Lending Corp.*, 505 F. Supp. 2d 594, 607 (N.D. Cal. 2007). Thus, to the extent the

17  Plaintiff's breach of contract claim is based on alleged alter ego relationships, it should be

18  dismissed.

19  **C.**     <u>The Fourth Claim for Open Book Account Does Not State a Valid Cause of Action.</u>

20       An "open book account" is a detailed statement that constitutes the principal record of

21  the transactions between the creditor and debtor arising out of a contract or fiduciary

22  relationship, and details the debits and credits in connection with the relationship. *Cusano v.*

23  *Klein*, 264 F.3d 936, 942 (9th Cir. 2001). "A *book account* is a detailed statement of

24  debit/credit transactions kept by a creditor in the regular course of business, and in a

25  reasonably permanent manner. . . . In one sense, an *open-book account* is an account with one

26  or more items unsettled. However, even if an account is technically settled, the parties may

27  still have an open-book account, if they anticipate possible future transactions between them."

28  *Reigelsperger v. Siller*, 40 Cal. 4th 574, 579, 150 P.3d 764 (2007) (italics in original). "It is, of

RUTTER
HOBBS ☒
DAVIDOFF
INCORPORATED
L A W Y E R S

17

NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT

7631.019  826381.12

1    course, necessary for the book to show against whom the charges are made." *Joslin v. Gertz*,

2    155 Cal. App. 2d 62, 65-66, 317 P.2d 155 (Cal. Ct. App. 1957)(citations omitted).[4]

3          A common count may be used to state a cause of action on an open book account.

4    *Carter v. Canty*, 181 Cal. 749, 186 P. 346 (1919).  Essential allegations of a common count

5    are (1) statement of indebtedness in a sum certain, (2) consideration and (3) non-payment.

6    *First Interstate Bank v. State of California*, 197 Cal. App. 3d 627, 635, 243 Cal. Rptr. 8 (Cal. Ct.

7    App. 1987); *Allen v. Powell*, 248 Cal. App. 2d 502, 512, 56 Cal. Rptr. 715 (Cal. Ct. App. 1967).

8    Plaintiff has not pleaded these elements in the Fourth Claim for Relief as to each Moving Party

9    Defendant.

10          Plaintiff fails to allege what open book account existed *as to Mousa*, and what open

11    book accounts (if any) existed separately as to Magdiel, DGADE, Namco 8 Bunherst and

12    Wishlab 90.  The FAC does not allege what the consideration was for any money advanced or

13    that Plaintiff ever made demand on any book account.  The FAC at paragraph 148 does not

14    specify what the supposed open book account was for each Moving Party Defendant.

15          The FAC only alleges that Plaintiff "kept accounts about the debits and credits <u>in the

16    investments</u> in which Namvar Family Transfers were made."  (Emphasis added.)  If these

17    "accounts" concerned "investments," who was the investor, Plaintiff, or someone else, and

18    who owed the money to Plaintiff on each open book account? Who were the counter-parties

19    on the open book account? Where is the open book account alleged for each named

20    defendant? It is not set forth in the Fourth Claim.

21          "Accounts of the debits and credits in the investments in which the Namvar Family

22    Transfers were made" does not allege the existence of an open book account (as defined in

23    Cal. Civ. Code § 337(a) with any named Moving Party Defendant.  One would expect that if

---

4    "Book account" is defined in Cal. Civ. Code § 337(a) as: "a detailed statement which
constitutes the principal record of one or more transactions between a debtor and a creditor
arising out of a contract or some fiduciary relation, and shows the debits and credits in
connection therewith, and against whom and in favor of whom entries are made, is entered
in the regular course of business as conducted by such creditor or fiduciary, and is kept in a
reasonable permanent form and manner and is (1) in a bound book, or (2) on a sheet or
sheets fastened in a book or to backing but detachable therefrom, or (3) on a card or cards of
a permanent character, or is kept in any other reasonably permanent form or manner."

RUTTER
HOBBS &
DAVIDOFF
INCORPORATED
L A W Y E R S
7631.019  826381.12

NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT

1  Plaintiff believed that an open book account exists between Namco and defendant Mousa, he

2  would plead the existence of such an account, but he has not.

3       In addition, Plaintiff attempts to establish the "statement of indebtedness in a sum

4  certain" element of his claim by alleging that all 33 named defendants "owe Namco money on

5  such accounts, in the amounts and by the Defendants alleged in paragraph 136, supra." FAC

6  ¶ 149, at 28:11-12. However Paragraph 136 does not identify the amounts allegedly owed. It

7  states in its entirety: "Mousa, Sean and Ramin substantially assisted Ezri and Tony in

8  breaching their fiduciary duty." FAC at 25:25-26. This pleading error alone renders the

9  Fourth Claim for Relief fatally defective, since it does not specify the amount allegedly owed

10 by each Moving Party Defendant. Plaintiff has failed to identify for each Moving Party

11 Defendant what the open book account, if any, ever was.

12      Further, the Fourth Claim for Relief does not allege facts showing "consideration" – the

13 second element of a common count on an open book account. In fact, consideration is not

14 mentioned at all in the Fourth Claim for Relief.

15      Separately any one of these defects is enough to justify granting Defendants' motion to

16 dismiss. Taken together, they require that the Fourth Claim for Relief be dismissed.

17 **D.**   **The Fifth Claim for Unjust Enrichment Does Not State a Valid Cause of Action.**

18      Plaintiff's Fifth Claim for Unjust Enrichment is not an independent legal claim.

19 *Melchior v. New Line Productions, Inc.*, 106 Cal. App. 4th 779, 793, 131 Cal. Rptr. 2d 347 (Cal.

20 Ct. App. 2003)("[T]here is no cause of action in California for unjust enrichment."); *Walker v.*

21 *USAA Cas. Ins. Co.*, 474 F. Supp. 2d 1168, 1174 (E.D. Cal. 2007) *aff'd sub nom. Walker v. Geico*

22 *Gen. Ins. Co.*, 558 F.3d 1025 (9th Cir. 2009)("unjust enrichment is merely a synonym for the

23 remedy of restitution and not a stand alone cause of action"). The term unjust enrichment

24 "does not describe a theory of recovery, but an effect: the result of a failure to make

25 restitution under circumstances where it is equitable to do so." *Lauriedale Associates, Ltd. v.*

26 *Wilson*, 7 Cal. App. 4th 1439, 1448, 9 Cal. Rptr. 2d 774 (Cal. Ct. App. 1992); *Melchior,*

27 *Melchior*, 106 Cal. App. 4th at 793("Unjust enrichment is 'a general principle, underlying

28 various legal doctrines and remedies,' rather than a remedy itself") (citations omitted).

RUTTER
HOBBS ☒
DAVIDOFF
INCORPORATED
L A W Y E R S

1    Therefore, although Plaintiff may be entitled to recovery for unjust enrichment under another

2    theory of liability, the claim for unjust enrichment does not constitute a stand-alone cause of

3    action.

4    **E.    The Ninth Claim for Relief for Avoidance and Recovery of Mousa's Preferential**

5         **Transfers Should Be Dismissed.**

6         The Ninth Claim for Relief seeks to avoid as preferential certain purported transfers to

7    Mousa Namvar in the aggregate amount of $900,000, within twelve months of the Petition

8    Date. Plaintiff alleges that the transfers constituted a preference under 11 U.S.C.A. § 547

9    (West), under a theory that the transfers were made on account of an unspecified antecedent

10   debt within one year of the Petition Date and seeks to recover the Mousa Preferential

11   Transfers from Mousa Namvar. FAC, ¶¶ 109-110.

12        The FAC contains nothing more than "[t]hreadbare recitals of the elements of a cause

13   of action, supported by mere conclusory statements" that the Supreme Court has held is

14   insufficient to state a plausible claim for relief. *Ashcroft*, 129 S. Ct., 1949-50. The FAC

15   recites the elements of a preference substantially in the words of the statute, but merely

16   identifies a set of transactions which allegedly are subject to avoidance. A complaint that

17   merely identifies transactions allegedly subject to avoidance does not meet the minimum

18   pleading requirements under *Iqbal* and *Twombly*. *See, In re Hydrogen, L.L.C.*, 431 B.R. 337,

19   353 (Bankr. S.D.N.Y. 2010). Such formulaic recitations of the elements of a preference claim

20   are insufficient as a matter of law to provide a factual basis for the claim. *Id.*

21        Plaintiff must allege facts showing that the transfer was made "to or for the benefit of

22   a creditor." 11 U.S.C.A. § 547(b)(1); *Angell v. Haveri (In re Caremerica, Inc.)*, 409 B.R. 346,

23   351 (Bankr. E.D.N.C. 2009)(conclusory allegation that "each preferential transfer was made

24   to or for the benefit of the Defendant receiving such preferential transfer as a creditor of the

25   debtors" is insufficient). Here, the FAC simply alleges that the transfers were made for

26   Mousa's benefit, with nothing more. FAC, ¶ 175. The FAC does not state or show that

27   Mousa was a creditor.

28        The second element is that the transfers were made "for or on account of an

RUTTER
HOBBS &
DAVIDOFF
INCORPORATED
LAWYERS

20

1  antecedent debt owed by the debtor before such transfer was made." U.S.C. § 547(b)(2).

2  The FAC simply recites the words of the statute without setting forth any facts in support of

3  that allegation. FAC, ¶ 175. Bankruptcy courts have relied upon the holding in *Ashcroft*, 129

4  S. Ct. 1937 to require trustees to "allege facts regarding the nature and amount of the

5  antecedent debt" in order to state a claim for relief,

6  > [T]he trustee must assert the nature and amount of the antecedent debt in

7  > order to allege a plausible claim for relief. In the case at bar, the Amended

8  > Complaint makes the conclusory assertion that each preferential transfer was

9  > made "for, or on account of, an antecedent debt owed by the Transferor to the

10 > Defendant before the transfer was made." However, the trustee fails to assert

11 > facts supporting the existence of an antecedent debt owed by the debtors to the

12 > defendants. In order to satisfy the pleading requirements under *Iqbal*, the court

13 > finds that the trustee is obligated to allege facts regarding the nature and amount

14 > of the antecedent debt which, if true, would render plausible the assertion that a

15 > transfer was made for or on account of such antecedent debt.

16 *Angell v. Haveri (In re Caremerica, Inc.)*, 409 B.R. 737, 751 (Bankr. E.D.N.C. 2009)(citing *In*

17 *re Valley Media, Inc.*, 288 B.R. 189, 192 (Bankr. D. Del. 2003)(requiring "an identification of

18 the nature and amount of each antecedent debt")).

19 Thus, the allegations respecting the avoidance and recovery of the Mousa Preferential

20 Transfers are insufficient as a matter of law.

21 F.  <u>The Eleventh Claim for Relief for Avoidance and Recovery of Fraudulent Transfers</u>

22 <u>Does Not State a Valid Cause of Action.</u>

23 The Eleventh Claim for Relief seeks to recover transfers made by Namco at different

24 times and to different parties and under different circumstances under Cal. Civ. Code §§

25 3439.04, 3439.05 (West), under a theory that the transfers were made while Namco was

26 insolvent, that Namco did not receive reasonably equivalent value for each of the transfers,

27 and that there was at least one creditor (who is unnamed) at the time of the transfers. FAC,

28 ¶¶ 50-126.

RUTTER
HOBBS &
DAVIDOFF
INCORPORATED
L A W Y E R S

NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT
7631.019  826381.12

Plaintiff seeks to recover from *all* of the Defendants certain transfers relating to seventeen separate transactions identified at paragraph 188 as the "Namvar Fraudulent Transfers" and incorporated by reference in numerous paragraphs of the complaint, as fraudulent conveyance claims under Cal. Civ. Code §§ 3439.04, 3439.05, as made applicable by 11 U.S.C.A. § 544 (West). The elements of a fraudulent transfer under the California statute relied upon by Plaintiff are as follows:

(a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether that creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation as follows:

(2) Without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor either:

(A) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction.

(B) Intended to incur, or believed or reasonably should have believed that he or she would incur, debts beyond his ability to pay as they came due.

Cal. Civ. Code § 3439.04, and:

A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation. Cal. Civ. Code § 3439.05.

The supposedly fraudulent transfers are compiled in a single paragraph (FAC, ¶ 188). Plaintiff includes among the transfers sought to be avoided each of the transfers alleged in the Sixth, Seventh, Eighth and Tenth Claims for Relief (<u>which do not even involve or mention any of Moving Party Defendants</u>). With respect to each of the asserted transfers, Plaintiff makes the bald assertion that Namco did not receive reasonable equivalent value on account of any one of the seventeen transactions which are amassed in the Eleventh Claim for Relief. FAC,

RUTTER
HOBBS &
DAVIDOFF
INCORPORATED
LAWYERS

NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT
7631.019  826381.12

1   ¶¶ 188, 190.

2          The FAC's allegations respecting these transfers is substantially a verbatim recitation of

3   the language of the California statute, that Namco was insolvent on the date of each of the

4   transfers or was engaged or was about to be engaged in a business transaction for which the

5   remaining assets of Namco were unreasonably small or intended to incur, or reasonably

6   should have believed that it would incur debts beyond its ability to pay as they came due.

7   FAC, ¶¶ 189, 190.  Such rote recitation is not sufficient for fraudulent conveyance claims.

8          These claims are substantively equivalent to fraudulent transfer claims under 11

9   U.S.C.A. § 548 (West).  Accordingly, these claims are subject to the same pleading standard as

10  claims brought under Code 11 U.S.C.A. § 548.  *In re Maddalena*, 176 B.R. 551, 553 (Bankr.

11  C.D. Cal. 1995) ("California's fraudulent conveyance statutes are similar in form and substance

12  to the [federal Bankruptcy] Code's fraudulent transfer provisions and the Ninth Circuit has

13  held that the state laws may be interpreted contemporaneously").  When these standards are

14  applied to the pleading in the Eleventh Claim for Relief, the conclusory allegations of the FAC

15  are insufficient to state a claim.

16         Fed. R. Civ. P. 9 is made applicable in adversary proceedings through Bankruptcy Rule

17  7009.  Accordingly, the "requirement under Fed. R. Civ. P. 9(b), that allegations of fraud be

18  pleaded with particularity, must be observed in a fraudulent transfer action."  5 *Collier on*

19  *Bankruptcy* ¶¶ 548.04[2][c], at 548-31 (Alan N. Resnick & Henry J. Somers eds., 15th Edition

20  Rev).  In the FAC by way of the Eleventh Claim for Relief, however, Plaintiff simply alleges

21  nothing more than the words of the statute.  FAC, ¶¶ 189, 190, 191.  The only actual facts

22  alleged are the amounts of the transfers.  FAC ¶¶ 58, 68, 73, 76, 80, 85, 86, 87, 94, 97, 102,

23  115, 116, 117, 118, 119, and 125.  The transactions that led to the calculations set forth in

24  the FAC are mentioned in passing, some without dates or parties and in such summary

25  fashion as to leave uncertain key elements of the purported transactions.  These summary

26  allegations are insufficient as a matter of law.

27         Moreover, the conclusory allegation that Namco did not receive reasonably equivalent

28  value with regard to any of the transfers cannot be sufficient to satisfy the pleading

RUTTER
HOBBS ▨
DAVIDOFF
INCORPORATED
LAWYERS

NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT

7631.019  826381.12

1   requirements of Rule 7009.  The proper focus of a determination whether the estate received

2   reasonably equivalent value is the net effect of the transfers on the debtor's estate and on the

3   funds available to unsecured creditors.  *In re 3dfx Interactive, Inc.*, 389 B.R. 842, 863 (Bankr.

4   N.D. Cal. 2008)(citing *In re N. Merch., Inc.*, 371 F.3d 1056, 1059 (9th Cir. 2004).  The

5   allegations in the FAC, however, may recite that transfers occurred, and assign a value to

6   them, but the allegations are devoid of substantive claims respecting the net effect of these

7   transfers on the debtor's estate.

8           Time and again in the FAC, Plaintiff relies upon a mass of general assertions respecting

9   the "lack of capitalization of the LLC Defendants, the unity of interest and control by the

10  Namvar Brothers, the absence of any economic substance or purpose except as titleholders

11  and conduits for Namco funds for the benefit of the Namvar defendants, and their use in

12  furtherance of the fiduciary defalcations, fraud, diversion of assets and usurpation of

13  corporate opportunities by the Namvar Defendants, adherence to the fiction of separate

14  existence of the LLC defendants would sanction fraud and promote injustice. . ." FAC ¶¶ 59,

15  69,74, 77, 81, 95, 100, 105, 108, 114, and 126.

16          Yet nowhere in the FAC does Plaintiff state sufficient facts for a determination of the

17  affect <u>any</u> of the transfers would have upon the Debtor's estate and the basis upon which the

18  Debtor may have been said to be insolvent, or to have incurred obligations or made transfers

19  with remaining assets to be unreasonably small in relation to the business or transaction, at

20  the time of the transfers.  Plaintiff also fails to allege sufficient facts respecting the economic

21  state of the Debtor at the time of the transfer.  Mere boilerplate recital of insolvency is

22  insufficient.  Under *Iqbal*, Plaintiff must allege facts that support it claims, not mere

23  conclusions or labels.  Absent more specific allegations as to the affect upon the Namco estate,

24  the claims must fail because Plaintiff has not alleged facts supporting a lack of reasonably

25  equivalent value.  *Angell v. Havari (In re Caremerica, Inc.)*, 409 B.R. at 756.

26          While Plaintiff seeks to avoid 17 named transfers, he does not identify the date of

27  those transfers, he does not identify the individual(s) or entity(ies) to whom or which the

28  transfer was made and, in many cases, he gives no information at all about the transfer.  For

RUTTER
HOBBS &
DAVIDOFF
INCORPORATED
L A W Y E R S

24

NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT
7631.019 826381.12

1  example, the Trustee seeks to avoid the so-called "Flamingo Road Transfers." Those transfers

2  are described in FAC ¶ 66 as follows "[I]t was Namco that made all monthly payments on the

3  Mirae Bank loan from the closing date until October 1, 2008, and paid the property taxes.

4  Namco made a total of $2,015,845 in post-purchase transfers, for a combined total of

5  $5,689,645 (the "<u>Flamingo Road Transfers</u>")." No specific transfer is identified by date or

6  amount and no specific transferee is named, although the Eleventh Claim for Relief purports

7  to seek a judgment against all 33 defendants named in the FAC.

8        The Eleventh Claim fails to allege more than conclusory statements and must be

9  dismissed.

10  **G.**    <u>The Twelfth Claim for Avoidance and Recovery of Fraudulent Transfers Does Not State</u>

11       <u>a Valid Cause of Action Against Mousa.</u>

12       **1.**    **No valid claim for avoidance and recovery of fraudulent transfers pertaining to**

13           **DGADE is asserted as to Mousa.**

14        Fed. R. Civ. P. 9(b) is applicable to all averments of fraud including a claim for

15  fraudulent transfer. *See e.g., In re Miner*, 185 B.R. 362, 365 (N.D. Fla. 1995) *aff'd sub nom.*

16  *Miner v. Bay Bank & Trust Co.*, 83 F.3d 436 (11th Cir. 1996)(dismissing fraudulent

17  conveyance complaint alleging a constructive fraud for failing to plead fraud with the

18  specificity required by Fed. R. Civ. P. 9(b)); *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*,

19  128 F.3d 1074, 1078-79 (7th Cir. 1997)(applying Fed. R. Civ. P. 9(b) to actual and

20  constructive fraudulent transfer claims); *In re APF Co.*, 308 B.R. 183, 188 (Bankr. D. Del.

21  2004)(applying Fed. R. Civ. P. 9(b) to transfers allegedly fraudulent under non-bankruptcy

22  law); *In re Oakwood Homes Corp.*, 325 B.R. 696, 698-99 (Bankr. D. Del. 2005)("There is no

23  question that Fed. R. Civ. P. 9(b) applies to adversary proceedings in bankruptcy which

24  include a claim for relief under 11 U.S.C.A. §§ 544, 548, whether it is based upon actual or

25  constructive fraud.")

26        It is difficult to decipher the Twelfth Claim. The Twelfth Claim is not set forth without

27  particularity and is defective just as the FAC's Ninth and Eleventh Claims for Relief are. The

28

**RUTTER**
**HOBBS &**
**DAVIDOFF**
INCORPORATED
L A W Y E R S
7631.019 826381.12

25
NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT

1   FAC refers to "transfers" to DGADE which occurred in 2005, 2006, and 2007, which were not

2   allegedly fraudulent, and then obliquely alleges a 2008 "transfer" from DGADE to Mousa,

3   which was allegedly fraudulent. Mousa is the only named defendant in the Twelfth Claim.

4   According to paragraph 78 of the FAC (which seems to be incorporated by reference into the

5   Twelfth Claim), "DGADE is a limited liability company owned in equal shares by Mousa's

6   children" and Mousa himself does not own DGADE. The FAC at paragraph 79 describes

7   certain advances made by Namco in 2005, 2006 and 2007 which were allegedly made for or

8   to benefit DGADE, which the FAC calls the "DGADE Transfers." The FAC at paragraph 81

9   alleges the conclusion that "Mousa is jointly and severally liable with DGADE for repayment of

10  the DGADE Transfers." But DGADE is not named in the Twelfth Claim. Nor does the Twelfth

11  Claim explain why Mousa is liable for any transfers made by Namco to DGADE identified as

12  the "DGADE Transfers" at paragraphs 78 through 80 of the FAC over four years ago.

13          Paragraph 82 of the FAC is highly confusing, alleging that "beginning in October 2008,

14  DGADE transferred on its account approximately $6,948,400 to Mousa." The FAC labels this

15  transfer supposedly from DGADE to Mousa as the "DGADE Fraudulent Transfers" and this is

16  what is referred to in the Twelfth Claim. The FAC does not allege at all specifically what

17  Mousa supposedly did concerning DGADE, or identify what transaction Plaintiff seeks to set

18  aside, which began in October 2008. The Complaint is nebulous. The FAC does not allege

19  that Mousa actually <u>received</u> any property in October 2008 from DGADE (indeed he did not

20  receive $6,948,400 and no check, payment or property transfer or date is identified or

21  specifically referenced), or how or what Mousa did to defraud Plaintiff "beginning in October

22  2008" (he did nothing to defraud Plaintiff).

23          It is impossible for Mousa to respond to the Twelfth Claim as framed. The Twelfth

24  Claim does set forth the particulars for a fraud claim.

25          2.      A portion of the claims referenced in the Twelfth Claim for Relief are barred by

26                  the statute of limitations.

27          Under Cal. Civ. Code § 3439.09 (West), the statute of limitations for an action for relief

28  from a transfer proscribed under Cal. Civ. Code § 3439.04(a)(transfer made with intent to

RUTTER
HOBBS &
DAVIDOFF
INCORPORATED
L A W Y E R S

7631.019  826381.12

26

NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT

1  defraud creditor), is four years after the transfer was made or, if later, one year after the

2  transfer was or could reasonably have been discovered by the claimant (Cal. Civ. Code §

3  3439.09(a)); and the statute for an action for relief from a transfer proscribed by Cal. Civ.

4  Code § 3439.04(b) (transfer without receiving reasonably equivalent value and leaving debtor

5  with unreasonably small assets), or Cal. Civ. Code § 3439.05 (transfer without receiving

6  reasonably equivalent value and leaving debtor insolvent) is four years after the transfer. Cal.

7  Civ. Code § 3439.09(b); *Cortez v. Vogt*, 52 Cal. App. 4th 917, 926, 60 Cal. Rptr. 2d 841 (Cal.

8  Ct. App. 1997) *disapproved of by Moore v. Browning*, 203 Ariz. 102, 50 P.3d 852 (Ariz. Ct.

9  App. 2002).

10       According to paragraph 78 of the FAC, the DGADE transfers took place in 2005, 2006,

11  and 2007 well before Namco was in financial peril.  Plaintiff has not alleged how there were

12  any fraudulent transfers in this period.  In addition, the FAC alleges that on November 3,

13  2005, Namco paid $484,030 for the purchase by DGADE of land in Hilo (FAC, ¶ 79(b)) and

14  on November 15, 2005 Namco paid $1,100,000 on DGADE's for an investment in a company

15  by the name of Older & Wiser in the amount of $1,100,000. FAC, ¶ 79(d).  This transfer part

16  of the "DGADE Transfers" are barred by the statute of limitations.

17  **H.    The Thirteenth Claim for Constructive Trust Does Not State a Valid Cause of Action.**

18       The FAC's Thirteenth Claim for Constructive Trust as to Bunherst should be dismissed.

19  First, there is no such cause of action.  "A constructive trust is not an independent cause of

20  action but merely a type of remedy." *Kennealy v. Bank of Nova Scotia*, 711 F. Supp. 2d 1174,

21  1190 (S.D. Cal. 2010).  As the district court stated in *Flores v. Emerich & Fike*, 1:05-CV-0291

22  AWI DLB, 2008 WL 2489900 (E.D. Cal. June 18, 2008):

23           The court notes that a constructive trust is not a cause of action but rather

24       an equitable remedy.  *Stansfield v. Starkey*, 220 Cal. App. 3d 59, 76, 269 Cal. Rptr.

25       337 (Cal. Ct. App. 1990); 13 Witkin, *Cal. Procedure*, Trusts, § 319 (2005).  Thus,

26       to the extent Plaintiffs seek to maintain an independent cause of action for a

27       constructive trust, no such cause of action is available.  Accordingly, the sixth

28       cause of action for a constructive trust is subject to dismissal.

RUTTER
HOBBS &
DAVIDOFF
INCORPORATED
LAWYERS

7631.019  826381.12

27

NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT

1    Second, "[a] constructive trust is an involuntary equitable trust created by operation of

2    law as a remedy to compel the transfer of property from the person wrongfully holding it to

3    the rightful owner." *Communist Party v. 522 Valencia, Inc.*, 35 Cal. App. 4th 980, 990, 41 Cal.

4    Rptr. 2d 618 (Cal. Ct. App. 1995). Plaintiff cannot obtain a constructive trust "where the

5    plaintiff seeks to impose general personal liability as a remedy for the defendant's monetary

6    obligations." *Honolulu Joint Apprenticeship & Training Comm. of United Ass'n Local Union No.*

7    *675 v. Foster*, 332 F.3d 1234, 1238 (9th Cir. 2003)(holding that where a plaintiff has a claim

8    at law for damages, he lacks a right to the remedy of a constructive trust). In other words,

9    "only the equitable owner of the trust res may obtain a constructive trust, not a creditor of the

10   equitable owner." *In re Sexton*, 166 B.R. 421, 425 (Bankr. N.D. Cal. 1994).

11   In the present case, Plaintiff alleges that Namco is a creditor of Bunherst, and that

12   Bunherst is an 18% owner of a property, namely the "Wilshire Bundy Ground Lease." FAC, at

13   ¶ 200. A constructive trust cannot properly be imposed based on Plaintiff's allegation that

14   Namco funds were used to help fund Bunherst so that it could become an 18% owner of the

15   property. While plaintiff may have a claim at law against Bunherst for money damages, there

16   is no basis for obtaining a constructive trust over a portion of the Wilshire Bundy Ground

17   Lease.

18   I.    <u>The Fifteenth Claim For Declaratory Relief is Duplicative and Should be Dismissed.</u>

19   "[D]eclaratory and injunctive relief are not causes of action; rather, they are remedies."

20   *Rosenfeld v. JPMorgan Chase Bank, N.A.*, 732 F. Supp. 2d 952, 975 (N.D. Cal.

21   2010)(dismissing claim for declaratory relief). *See also, Lane v. Vitek Real Estate Indus. Group*,

22   713 F. Supp. 2d 1092, 1104 (E.D. Cal. 2010) claim for "declaratory and injunctive relief"

23   where plaintiffs" other claims were dismissed since "declaratory and injunctive relief are not

24   causes of action in and of themselves"); *Johnson v. Bank United F.S.B.*, 2010 U. S. Dist. LEXIS

25   138078, *14 (E.D. Cal. Dec. 16, 2010) (same); *Santos v. Countrywide Home Loans*, 2009 U. S.

26   Dist. LEXIS 103453, *13 (E.D. Cal. Nov. 5, 2009) ("Declaratory and injunctive relief are not

27   independent claims, rather they are forms of relief."). Since declaratory relief is not a

28   recognized free-standing claim, it must be dismissed.

RUTTER
HOBBS &
DAVIDOFF
INCORPORATED
L A W Y E R S

28

NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT
7631.019   826381.12

Courts have recognized that where "a party has a fully matured cause of action for money, the party must seek the remedy of damages, and not pursue a declaratory relief claim." *Jensen v. Quality Loan Serv. Corp.*, 702 F. Supp. 2d 1183, 1189 (E.D. Cal. 2010). "A claim for declaratory relief is unnecessary where an adequate remedy exists under some other cause of action." *Mangindin v. Washington Mut. Bank*, 637 F. Supp. 2d 700, 707 (N.D. Cal. 2009); *see, e.g., Smithkline Beecham Corp. v. Cont'l Ins. Co.*, CIV.A. 04-2252, 2004 WL 1773713 (E.D. Pa. Aug. 4, 2004) ("Because Smithkline's breach of contract claims will afford Smithkline full relief, if successful, Smithkline's declaratory judgment claims are duplicative and will be dismissed."). "Similarly, where a plaintiff has alleged a substantive cause of action, a declaratory relief claim should not be used as a superfluous 'second cause of action for the determination of identical issues' subsumed within the first.'" *Jensen, supra, Fanning v. Montgomery County Children & Youth Services*, 702 F. Supp. 1184, 1189 (E.D. Pa. 1988); *see, United States v. State of Wash.*, 759 F.2d 1353, 1356-57 (9th Cir. 1985) ("Declaratory relief should be denied when it will neither serve a useful purpose in clarifying and settling the legal relations in issue nor terminate the proceedings and afford relief from the uncertainty and controversy faced by the parties.")

The Fifteenth Claim for Declaratory Relief is duplicative of Plaintiff's other claims. The FAC states at paragraph 214 that Plaintiff seeks "a declaration that Plaintiff is entitled possession and title to all property" <u>namely for the money</u> allegedly "transferred in the Namvar Fraudulent Transfers" which are those transfers collectively labeled and grouped together at paragraph 188 of the FAC. The Fifteenth Claim for Declaratory Relief is no different than Plaintiff's Eleventh Claim for Avoidance and Recovery of Fraudulent Transfers and is also overlapping of (and internally inconsistent with) Plaintiff's generalized claims for money damages based on breach of fiduciary and breach of contract theories as well by way of the Second and Third Claims for Relief.

J.    <u>The Sixteenth Claim for Equitable Subordination Does Not State a Valid Cause of Action.</u>

The Sixteenth Claim for Relief purports to be a claim for equitable subordination.

RUTTER
HOBBS &
DAVIDOFF
INCORPORATED
L A W Y E R S

NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT
7631.019  826381.12

1  "Although a bankruptcy court has the authority to subordinate a claim on equitable grounds.

2  . . . equitable subordination is an unusual remedy which should be applied only in limited

3  circumstances." *In re Lazar*, 83 F.3d 306, 309 (9th Cir. 1996)(citations omitted).  *See also*,

4  *Matter of Fabricators, Inc.*, 926 F.2d 1458, 1464 (5th Cir. 1991)("Despite the laudable animus

5  of the doctrine, this Court recognizes that equitable subordination is an unusual remedy

6  which should be applied only in limited circumstances. . . .  Moreover, the doctrine is

7  remedial, not penal, and should be applied only to the extent necessary to offset the specific

8  harm that the creditors suffered on account of the inequitable conduct.") (citations omitted).

9  The Sixteenth Claim for Relief is fatally defective for any number of reasons, each of which

10  standing alone requires dismissal.

11      First, Plaintiff does not identify which of the 33 named defendants is the subject of the

12  Sixteenth Claim for Relief.  Although the caption says that the claim is directed against "the

13  Namvar Defendants and LLC Defendants," those undefined terms appear to include all of the

14  defendants.  This ambiguity is exacerbated by the allegation in FAC ¶ 218, which says that the

15  Trustee is asserting his Sixteenth Claim for Relief only against "[c]ertain of the Namvar

16  Defendants and/or LLC Defendants in which any of them may claim a membership interest . .

17  . ." FAC at 37:24-26.  Moving Party Defendants apparently are expected to guess which of

18  them fall within the class of "certain" defendants.

19      Second, Plaintiff alleges no factual basis for his claim.  To the extent that paragraph

20  217 incorporates by reference all of the allegations contained in all 216 of the preceding

21  paragraphs of the FAC, it is meaningless and is an impermissible shotgun allegation that

22  makes it impossible for a defendant to ascertain what facts underlie the FAC's claim against

23  that particular defendant – assuming that any defendant can determine that the Sixteenth

24  Claim for Relief is asserted against him, her or it.

25      Third, to the extent that the Trustee bases his equitable subordination claim upon

26  alleged fraudulent conduct, his claim must be pleaded with the specificity required by Fed. R.

27  Civ. P. 9(b), made applicable to this adversary proceeding by Fed. R. Bankr. P. 7009.  *In re*

28  *AlphaStar Ins. Group Ltd.*, 383 B.R., 276-77(fraud-based equitable subordination claims must

RUTTER
HOBBS &
DAVIDOFF
INCORPORATED
LAWYERS

30

1   be pleaded with particularity).  The Trustee has not met that pleading requirement.  Instead,

2   he has alleged only the most general of legal conclusions that contain no detail whatsoever.

3          "[A] party must state with particularity the circumstances constituting the fraud."  Fed.

4   R. Civ. P. 9(b).  The plaintiffs must include the "who, what, when, where, and how" of the

5   fraud.  Additionally, "[w]here multiple defendants are asked to respond to allegations of

6   fraud, the complaint must inform each defendant of his alleged participation in the fraud."

7   *Lane*, 713 F. Supp. 2d, 1102-03 (citations omitted).  Obviously, the Sixteenth Claim for Relief

8   does not meet that pleading standard.  *In re AlphaStar Ins. Group Ltd.*, 383 B.R. at 276-77, the

9   Court granted a motion to dismiss an equitable subordination claim in a trustee's adversary

10  complaint, holding that fraud-based equitable subordination claims must be pleaded with

11  particularity under Fed. R. Civ. P. 9(b).  In the Sixteenth Claim for Relief of the FAC. Plaintiff

12  does not plead any specifics in this throwaway cause of action.  Plaintiff does not identify

13  what inequitable conduct of any of the Moving Party Defendants exist such that a specific

14  identified claim should be subordinated.  The Sixteenth Claim is devoid of content and just

15  pleads conclusions.

16         Defendants' motion to dismiss the Sixteenth Claim for relief should be granted.

17  **K.**    **The "Objection to Claims" Allegations Do Not State a Valid Cause of Action.**

18         The FAC's Objection to Claims purports to be an objection to every claim filed by each

19  of the 33 defendants sued in this adversary proceeding.  The Bankruptcy Rules explicitly

20  prohibit such wholesale lumping of objections.  *See*, Fed. R. Bankr. P. 3007(c) ("Unless

21  otherwise ordered by the court or permitted by subdivision (d), objections to more than one

22  claim shall not be joined in a single objection.") (emphasis added).  Here, there is no order of

23  court permitting lumping of objections to claims, nor does Fed. R. Bankr. P. 3007(d) permit

24  such lumping.  Plaintiff's objection is improper on its face and must be dismissed.

25         Even if Plaintiff were permitted to lump together his objections to all claims filed by

26  any of the 33 defendants in this adversary proceeding, his Objection to Claim still is defective.

27  First, it does not identify the claims to which the trustee is objecting.  Plaintiff's reference to

28  "any claim asserted in this case" by any of the 33 defendants does not identify any claim.

RUTTER
HOBBS &
DAVIDOFF
INCORPORATED
LAWYERS

31

1   Indeed, the FAC does not allege that any defendant has even filed a claim – in which case

2   Plaintiff would be objecting to theoretical claims that may be filed by one or more defendants

3   at some unspecified date in the future. Second, Plaintiff does not set forth the factual basis

4   for his objection. In substance, all that he alleges is that he is entitled to recover "property"

5   from some or all of the 33 defendants and/or is entitled to avoid transfers made to some or all

6   of those defendants and, therefore, all claims asserted by any of the 33 defendants should be

7   disallowed until each such defendant "has paid the amount or turned over any such property

8   for which such entity or transferee is liable . . . ." FAC ¶¶ 223-224, at 38:11-17.

9       Further, to the degree Plaintiff is now objecting to a claim, it must pin-point *which*

10  *claim* it is challenging *and on what grounds*. The "Objections to Claims" allegations at

11  paragraph 222 through 224 of the FAC do not state any facts and do not refer to any claims.

12  The pleadings only recite legal conclusions. The allegations fail to identify those particular

13  claims in the bankruptcy Plaintiff is objecting to. Plaintiff alleges at paragraph 224 that

14  "[u]nder section 502(b) any claim asserted in this case [no claim is identified] by any such

15  entity [no entity is specified] shall be disallowed unless such person or entity or transferee has

16  paid the amount or turned over any such property [again no property is specified] for which

17  such entity or transferee is liable under 11 U.S.C.A. §§ 542, 550, 553 (West)." The proper

18  procedure is for Plaintiff to specifically identify which claims it is objecting to, and to file an

19  objection. The vague "Objections to Claims" allegations in the FAC are not properly set forth

20  or included in the FAC, and does not constitute a valid cause of action.

21      Plaintiff does not plead any facts to support his legal conclusions. He does not identify

22  which defendants filed claims, what those claims are for, or the amount of money or the

23  identity of the property that any defendant allegedly must return to the estate before his, her

24  or its claim can be allowed. No defendant can be expected to respond to such general and

25  meaningless allegations. Moving Party Defendants' motion to dismiss the Objection to Claim

26  must be granted.

27

28

RUTTER
HOBBS &
DAVIDOFF
INCORPORATED
L A W Y E R S       7631.019  826381.12

1

III.

2

<u>CONCLUSION</u>

3          For all of the foregoing reasons, the FAC should be dismissed as against the Moving

4    Party Defendants without leave to amend.

5

6    DATED:  March 28, 2011                    RUTTER HOBBS & DAVIDOFF

7                                               INCORPORATED

8                                             By:_____

9                                               BRIAN L. DAVIDOFF
                                                GEOFFREY M. GOLD
10                                            Attorneys for Defendants MOUSA NAMVAR,
                                              MAGDIEL, LLC, DGADE OF DELAWARE, LLC,
11                                            WISHLAB, LLC, NAMCO 8, LLC and BUNHERST,
                                              LLC
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

RUTTER
HOBBS &
DAVIDOFF
INCORPORATED
L A W Y E R S

7631.019  826381.12

NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 1901 Avenue of the Stars, Suite 1700, Los Angeles, California 90067

A true and correct copy of the foregoing documents described as:

**NOTICE OF MOTION AND MOTION OF DEFENDANTS MOUSA NAMVAR, MAGDIEL, LLC, DGADE OF DELAWARE, LLC, WISHLAB 90, LLC, NAMCO 8, LLC AND BUNHERST, LLC TO DISMISS PLAINTIFF BRADLEY D. SHARP'S FIRST AMENDED COMPLAINT PURSUANT TO FRCP 12(B)(6); AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

I. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On March 28, 2011, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

II. **SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served)**:**
On March 28, 2011 I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

        ☒   Service information continued on attached page

III. **SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served)**:** Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on March 29, 2011, I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.

VIA HAND DELIVERY
Honorable Barry Russell
United States Bankruptcy Court
255 East Temple Street
Courtroom 1668
Los Angeles, California

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| March 28, 2011 | JAN REINGLASS | /s/ Jan Reinglass |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

RUTTER
HOBBS &
DAVIDOFF
INCORPORATED
LAWYERS
x
NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT
7631.019  826381.12

1    I. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING**

2    Richard S. Berger:   rberger@lgbfirm.com;
     Peter Gurfein: pgurfein@lgbfirm.com

3    Scott Bovitz:   bovitz@bovitz-spitzer.com
     Gillian Brown:   gbrown@pszjlaw.com

4    Richard Pachulski:   rpachulski@pszjlaw.com
     Alan Kornfeld:   akornfeld@pszjlaw.com

5    Dean A Ziehl:   dziehl@pszjlaw.com
     Stuart Koneig:   skoneig@cmkllp.com

6    David Poitras:   dpoitras@jmbm.com
     Damon Saltzburg:   ds@srblaw.com

7    Ashfin Youssefyeh:   ady@adylaw.com
     Russell Clementson: Russell.clementson@usdoj.gov

8    OUST:   ustpregion16.la.ecf@usdoj.gov

9    II. **SERVED BY VIA U.S. MAIL**
     Counsel for Defendant Haron Shabatian

10    Robert Mobasseri, Esq.
     Law Offices of Robert Mobasseri

11    445 South Figueroa Street, 27th Floor
     Los Angeles, California 90071

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

RUTTER
HOBBS &
DAVIDOFF
INCORPORATED
L A W Y E R S

NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT
7631.019   826381.12

# EXHIBIT B

LANDAU GOTTFRIED & BERGER LLP
RICHARD S. BERGER (State Bar No. 40672)
PETER J. GURFEIN (State Bar No. 127173)
1801 Century Park East, Suite 1460
Los Angeles, California 90067
Telephone: (310) 557-0050
Facsimile: (310) 557-0056

Attorneys for defendants Hooshang Namvar, Homayoun
Namvar, Ramin Namvar, Nataly Namvar, Trifish, LLC,
Tribun, LLC, Believers, LLC, Net, LLC, Light Source
Management, LLC (fka Light Source, LLC), Lacy 20,
LLC, Woodman Partners, LLC, Tritowne, LLC and
Trigrove, LLC

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

| | |
|---|---|
| In re<br><br>NAMCO CAPITAL GROUP, Inc., a California corporation,<br><br>        Debtor. | Case No.: 2:08-bk-32333-BR<br><br>Chapter 11<br><br>Adv. Proc. No. 2:10-ap-02945 |
| BRADLEY D. SHARP, solely in his capacity as Chapter 11 Trustee of NAMCO CAPITAL GROUP, INC.,<br><br>        Plaintiff,<br><br>        vs.<br><br>MOUSA NAMVAR, HOOSHANG NAMVAR, HOMAYOUN NAMVAR, RAMIN NAMVAR, HELEN SHADI, HILDA BAYANFAR, LIDA SHRAGA, NATALY NAMVAR, DANIEL NAMVAR, BENJAMIN NAMVAR, MALKA NAMVAR, SHIRAH NAMVAR, TRIFISH, LLC, TRIBUN, LLC, MAGDIEL, LLC, TRISISTER, LLC, BELIEVERS, LLC, NET, LLC, LIGHT SOURCE, LLC, L.A. HOTEL VENTURE, LLC, LANCAM PROPERTIES, LLC, LACY 20, LLC, NAM 5, LTD., NAMCO 8, LLC, WISHLAB 90, LLC, BUNHURST, LLC, DGADE OF DELAWARE, LLC, TOYRAM, LLC, NAMARI, LLC, WOODMAN PARTNERS, LLC, TRITOWNE, LLC, TRIGROVE, LLC AND HARON SHABATIAN,<br><br>        Defendants. | **NOTICE OF MOTION AND MOTION BY DEFENDANTS HOOSHANG NAMVAR, HOMAYOUN NAMVAR, RAMIN NAMVAR, NATALY NAMVAR, TRIFISH, LLC, TRIBUN, LLC, BELIEVERS, LLC, NET, LLC, LIGHT SOURCE MANAGEMENT, LLC (fka LIGHT SOURCE, LLC), LACY 20, LLC, WOODMAN PARTNERS, LLC, TRITOWNE, LLC AND TRIGROVE, LLC TO DISMISS FIRST AMENDED COMPLAINT FOR DAMAGES, EQUITABLE SUBORDINATION, DECLARATORY AND INJUNCTIVE RELIEF**<br><br>Date: May 3, 2011<br>Time: 2:00 p.m.<br>Place: Courtroom 1668<br>     Edward R. Roybal Federal Building<br>     and Courthouse<br>     255 East Temple Street<br>     Los Angeles, California 90012<br><br>Judge: Hon. Barry Russell |

LANDAU GOTTFRIED & BERGER LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1    **TO THE HONORABLE BARRY RUSSELL, UNITED STATES BANKRUPTCY JUDGE**

2    **AND TO ALL PARTIES IN INEREST:**

3         **PLEASE TAKE NOTICE** that at 2:00 p.m. on May 3, 2011, or soon thereafter as

4    can be heard by the Court, in Courtroom 1668 of the above-captioned Court, located at the Edward

5    R. Roybal Federal Building and Courthouse, 255 East Temple Street, Los Angeles, California

6    90012, Defendants Hooshang Namvar, Homayoun Namvar, Ramin Namvar, Nataly Namvar,

7    Trifish, LLC, Tribun, LLC, Believers, LLC, Net, LLC, Light Source Management, LLC (fka Light

8    Source, LLC), Lacy 20, LLC, Woodman Partners, LLC, Tritowne, LLC and Trigrove, LLC

9    (collectively, the "Defendants") will move the Court pursuant to Fed. R. Civ. P. 12(b)(6), made

10    applicable to this adversary proceeding by Fed. R. Bankr. P. 7012(b), and the applicable local rules

11    of this Court, to dismiss the First, Second, Third, Fourth, Fifth, Sixth, Seventh, Eighth, Tenth,

12    Eleventh, Fifteenth and Sixteenth Claims for Relief in the First Amended Complaint For Damages,

13    Equitable Subordination, Declaratory And Injunctive Relief (the "First Amended Complaint"),

14    insofar as said Claims for Relief are asserted against these moving Defendants (the "Motion").

15         The Motion will be made on the grounds that the First, Second, Third, Fourth, Fifth,

16    Sixth, Seventh, Eighth, Tenth, Eleventh, Fifteenth and Sixteenth Claims for Relief in the First

17    Amended Complaint fail to state claims upon which relief can be granted.  The Motion will be

18    based on this notice, the attached memorandum of points and authorities, the documents, pleadings

19    and records on file in this adversary proceeding and bankruptcy case, and upon such additional

20    documentary and oral evidence that may be presented to the Court prior to or at the hearing on the

21    Motion.

22         **PLEASE TAKE FURTHER NOTICE** that pursuant to the provisions of Local

23    Bankruptcy Rule 9013-1(f), any response to the Motion must be filed with the Court and served on

24    the following individuals and entities at the following addresses not later than fourteen (14) days

25    before the date of the hearing:

26         (1)     Counsel for Defendants Hooshang Namvar, Homayoun Namvar, Ramin

27    Namvar, Nataly Namvar, Trifish, LLC, Tribun, LLC, Believers, LLC, Net, LLC, Light Source

28    Management, LLC (fka Light Source, LLC), Lacy 20, LLC, Woodman Partners, LLC, Tritowne,

LANDAU GOTTFRIED & BERGER LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

2

1  LLC and Trigrove, LLC:  Richard S. Berger, Esq. and Peter J. Gurfein, Esq., Landau Gottfried &

2  Berger LLP, 1801 Century Park East, Suite 1460, Los Angeles, California 90067;

3              (2)      Counsel for defendants Mousa Namvar, Magdiel, LLC, DGADE Of

4  Delaware, LLC, Wishlab 90, LLC Namco 8, LLC and Bunherst, LLC:  Brian L. Davidoff, Esq. and

5  Geoffrey M. Gold, Esq., Rutter Hobbs & Davidoff Incorporated, 1901 Avenue of the Stars, Suite

6  1700, Los Angeles, California 90067;

7              (3)      Counsel for defendants Helen Shadi, Lida Shraga, Hilda Bayanfar and

8  Trisister, LLC:  Henley L. Saltzburg, Esq., Saltzburg, Ray & Bergman, LLP, 12121 Wilshire Blvd.,

9  #600, Los Angeles, California 90025;

10             (4)      Counsel for defendant Haron Shabatian:  Robert Mobasseri, Esq., Law

11 Offices Of Robert B. Mobasseri, A PC, 445 South Figueroa Street, 27th Floor, Los Angeles,

12 California 90071; and

13             (5)      All other individuals and entities requesting notice in addition to or other

14 than the notice provided by the Court's Notice of Electronic Filing.

15             **PLEASE TAKE FURTHER NOTICE** that pursuant to Local Bankruptcy Rule

16 9013-1(h), failure to timely file and serve an opposition to the Motion may be deemed by the court

17 to be consent to the granting of the Motion.

18 Dated: March 28, 2011                          LANDAU GOTTFRIED & BERGER LLP
                                                 RICHARD S. BERGER
19                                               PETER J. GURFEIN

20

21

22                                               By:_____
                                                     Richard S. Berger
23                                               Attorneys for defendants Hooshang Namvar,
                                                 Homayoun Namvar, Ramin Namvar, Nataly Namvar,
24                                               Trifish, LLC, Tribun, LLC, Believers, LLC, Net, LLC,
                                                 Light Source Management, LLC (fka Light Source,
25                                               LLC), Lacy 20, LLC, Woodman Partners, LLC,
                                                 Tritowne, LLC and Trigrove, LLC

26

27

28

LANDAU GOTTFRIED & BERGER LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

# TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................................. 1

II.  GENERAL PRINCIPLES ................................................................................... 2

III. ARGUMENT ....................................................................................................... 3

  A. The First Claim For Relief Is Fatally Defective And Must Be Dismissed. ............. 3

    1. The First Claim for Relief fails to state a claim for breach of
       fiduciary duty against Tony Namvar. ................................................................ 4

      a. The Trustee fails to allege that Tony Namvar participated in
         management of Namco or exercised discretionary authority
         with respect to the operation of Namco. ................................................. 4

      b. The Trustee fails to identify what fiduciary duty allegedly
         was breached. ........................................................................................... 6

      c. The First Claim for Relief does not allege how Tony
         Namvar purportedly breached his fiduciary duty ................................. 7

    2. The First Claim for Relief is barred by the business
       judgment rule. ................................................................................................. 8

  B. The Second Claim For Relief Is Fatally Defective And Must Be Dismissed. ......... 9

    1. The Trustee lacks standing to assert his aiding and abetting claim. .............. 9

    2. The validity of plaintiff's aiding and abetting claim depends on the
       validity of his breach of fiduciary duty claim. ............................................ 10

    3. The Trustee has not adequately pleaded an aiding and abetting claim. ......... 10

  C. The Third Claim For Relief Does Not State A Claim For Breach Of
     Express Or Implied Contract. ............................................................................. 13

    1. The Third Claim for Relief is time barred. ................................................... 14

    2. The Trustee has failed to plead essential elements of a claim
       for either breach of oral contract or breach of implied contract. ................ 15

  D. The Fourth Claim For Relief Does Not  State A Claim On An Open
     Book Account. ..................................................................................................... 17

  E. The Fifth Claim For Relief Is Not An Actionable Claim Because
     Unjust Enrichment Is A Remedy, Not A Claim. ................................................. 19

  F. The Sixth, Seventh, Eighth and Tenth Claims For Relief Are Not
     Well Pleaded And Must Be Dismissed. ............................................................... 19

    1. The Sixth, Seventh and Tenth Claims For Relief are are setoffs
       that cannot be preferential transfers under 11 U.S.C. § 547. ....................... 20

    2. The Sixth, Seventh and Tenth Claims for Relief are time barred. ................ 21

    3. The Eighth Claim for relief is insufficiently pleaded. ................................... 21

  G. The Eleventh Claim For Relief For Constructive Fraudulent Transfer
     Fails To State A Claim For Relief Against Any Of The Defendants. ................... 26

  H. The Fifteenth Claim For Relief Is Not An Actionable Claim Because
     Declaratory Relief Is A Remedy, Not A Claim. ................................................. 30

LANDAU GOTTFRIED & BERGER LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

i

I.    The Sixteenth Claim For Relief Fails To Plead A Claim For Equitable
Subordination...............................................................................................31

J.    The "Objection to Claims" Is Improper.............................................33

IV.  CONCLUSION. ...........................................................................................35

LANDAU GOTTFRIED & BERGER LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

ii

# **TABLE OF AUTHORITIES**

**Cases**

Ahcom, Ltd. v. Smeding,
623 F.3d 1248 (9th Cir. 2010) ................................................................5

Allen v. Powell,
248 Cal. App. 2d 502, 56 Cal. Rptr. 715 (1967) ..............................17

Angell v BER Care, Inc. (In re Careamerica, Inc.),
409 B.R. 737 (Bankr. E.D.N.C. 2009)............................................23, 28

Angell v. Burrell (In re Careamerica),
2009 Bankr. LEXIS 2328 (Bankr. E.D.N.C. July 28, 2009) ............29

Angell v. Burrell (In re Caremerica, Inc.),
409 B.R. 759 (Bankr. E.D.N.C. 2009)..........................................22, 24

Angell v. Day (In re Careamerica, Inc.),
415 B.R. 200 (Bankr. E.D.N.C. 2009).................................................28

Angell v. Havari (In re Caremerica, Inc.),
409 B.R. 346, 351 (Bankr. E.D.N.C. 2009).......................................23

Ashcroft v. Iqbal,
556 U.S. __, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009)..........passim

Bank of America. Nat'l Trust & Savings Ass'n v. Edgins (In re Edgins),
36 Bankr. 480 (B.A.P. 9th Cir. 1984)..................................................25

Bank of Marin v. England,
385 U.S. 99, 87 S.Ct. 274, 17 L. Ed. 2d 197 (1966)...........................10

Barnes v. State Farm Mutual Automobile Ins. Co.,
16 Cal. App. 4th 365, 20 Cal. Rptr. 2d 87 (1993) ...............................8

Bell Atlantic Corp. v. Twombly,
550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)...........passim

Buffington v. Ohmert,
253 Cal. App. 2d 254, 61 Cal. Rptr. 360 (1967) ...............................14

California Emergency Physicians medical Group v. PacifiCare of California,
111 Cal. App. 4th 1127, 4 Cal. Rptr. 3d 583 (2003) ..........................16

Campos v. Wells Fargo Bank,
345 B.R. 678 (E.D. Cal. 2005)....................................................20, 21

Canova v. Trustees of Imperial Irrigation District Employee Pension Plan,
150 Cal. App. 4th 1487, 59 Cal. Rptr. 3d 587 (2007) ......................30

Caplin v. Marine Midland Grace Trust Co.,
406 U.S. 416, 32 L. Ed. 2d 195, 92 S. Ct. 1678 (1972).......................9

Carter v. Canty,
181 Cal. 749, 186 P. 346 (1919)........................................................17

Casey v. U.S. Bank National Ass'n,
127 Cal. App. 4th 1139, 26 Cal. Rptr.3d 401 (2005) .............10, 11, 12

Conley v. Gibson,
355 U.S. 41, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)..................................2

LANDAU GOTTFRIED & BERGER LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

iii

*Dicello v. Jenkins (In re International Loan Network),*
    160 B.R. 1 (Bankr. D.D.C. 1993)...............................................................................27

*Dixon v. Ruth (In re Gluth Bros. Construction, Inc.),*
    424 B.R. 368 (Bankr. N.D. Ill. 2009) ........................................................................28

*Dorland v. Dorland,*
    66 Cal. 189, 5 P. 77 (1884)........................................................................................14

*Feder v. Lazar (In re Lazar),*
    83 F.3d 306, (9th Cir. 1996) ......................................................................................31

*Fiol v. Doellstedt,*
    50 Cal. App. 4th 1318, 1325-26, 58 Cal. Rptr. 2d 208 (1996) .............................11, 12

*First Commercial Mortgage Co. v. Reece,*
    89 Cal. App. 4th 731, 108 Cal. Rptr. 2d 23 (2001) ...................................................15

*First Interstate Bank of California v. State of California,*
    197 Cal. App. 3d 627, 243 Cal. Rptr. 8 (1987) .........................................................17

*GAB Business Services, Inc. v. Lindsey & Newsom Claim Services, Inc.,*
    83 Cal. App. 4th 1308D (2000) ...................................................................................4

*GAB Business Services, Inc. v. Lindsey & Newsom Claim Services, Inc.,*
    83 Cal. App. 4th 409, 99 Cal. Rptr. 2d 665 (2000) ....................................................4

*Gaillard v. Natomas Co.,*
    208 Cal. App. 3d 1250, 256 Cal. Rptr. 702 (1989) .....................................................8

*Henry v. Lehman Commercial Paper, Inc. (In re First Alliance Mortgage Co.,*
    471 F. 3d 977 (9th Cir. 2006) ....................................................................................11

*In re AlphaStar Ins. Group Ltd.,*
    383 B .R. 231, (Bankr. S.D. N.Y. 2008)....................................................................32

*In re Centolella,*
    142 B.R. 624 (Bankr. N.D.N.Y. 1992) ......................................................................20

*In re Fabricators, Inc.,*
    926 F.2d 1458 (5th Cir. 1991) ...................................................................................32

*In re General Motors Class E Stock Buyout Securities Litigation,*
    694 F. Supp. 1119 (D. Del. 1988) ...............................................................................9

*In re Harmon,*
    188 B.R. 421 (B.A.P. 9th Cir. 1995) .........................................................................21

*In re Lott,*
    79 B.R. 869 (Bankr. W.D. Mo. 1987) .......................................................................21

*In re Maxim Integrated Products, Inc., Derivative Litigation,*
    574 F. Supp. 2d 1046 (N.D. Cal. 2008)......................................................................11

*In re Monahan Ford Corp. of Flushing,*
    340 B.R. 1 (Bankr. E.D.N.Y. 2006) ..........................................................................13

*In re Morgan,*
    77 B.R. 81 (Bankr. S.D. Miss. 1987)..........................................................................21

*In re Santoro Excavating, Inc.,*
    32 B.R. 947 (Bankr. S.D.N.Y. 1983) .........................................................................25

*In re Voight,*
    24 B.R. 983 (Bankr. N.D.Tex. 1982) .........................................................................21

LANDAU GOTTFRIED & BERGER LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

LANDAU GOTTFRIED & BERGER LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

*Jensen v. Quality Loan Service Corp.,*
  702 F. Supp. 2d 1183, 1189 (E.D. Cal. 2010) ...................................................................30, 31

*Jogani v. Superior Court,*
  165 Cal.App.4th 901, 81 Cal. Rptr. 3d 503 (2008) .....................................................................19

*Johnson v. Bank United F.S.B.,*
  2010 U.S. Dist. LEXIS 138078, (E.D. Cal. Dec. 16, 2010) .........................................................30

*Joseph v. Frank (In re Troll Communications, LLC),*
  385 B.R. 110 (Bankr. D. Del. 2008)............................................................................................28

*Joslin v. Gertz,*
  155 Cal. App. 2d 62, 317 P.2d 155 (1957) ..................................................................................17

*Katz v. Chevron Corp.,*
  22 Cal. App.4th 1352, 27 Cal. Rptr. 2d 1681 (1994) ....................................................................8

*Katzir's Floor & Home Design, Inc. v. M-MLS COM,*
  394 F.3d 1143, (9th Cir. 2004)......................................................................................................6

*Lane v. Vitek Real Estate Industries Group,*
  713 F. Supp. 2d 1092, (E.D. Cal. 2010) ................................................................................30, 33

*Lauriedale Associates, Ltd. v. Wilson,*
  7 Cal. App. 4th 1439, 9 Cal. Rptr. 2d 774 (1992) ......................................................................19

*Lee v. Schweiker,*
  739 F.2d 870, (3d Cir. 1984) .......................................................................................................20

*Lehman Commercial Paper, Inc. v. Palmdale Hills Property, LLC*
  *(In re Palmdale Hills Property, LLC),* 423 B.R. 655, (B.A.P. 9th Cir. 2009) ............................33

*Leonard v. Gallagher,*
  235 Cal. App. 2d 362, 45 Cal. Rptr. 211 (1965) ........................................................................14

*Lill v. Bricker (In re Lill),*
  116 B.R. 543 (Bankr. N.D. Ohio 1990) .......................................................................................25

*Lingad v. IndyMac Federal Bank,*
  682 F. Supp. 2d 1142 (E.D. Cal. 2010) .........................................................................................6

*Lopez v. Washington Mutual Bank, F.A.,*
  2010 U.S. Dist. LEXIS 38307 (E.D. Cal. Apr. 16, 2010) ............................................................19

*LPC Alvarado Phase II v. Walsh (In re LCO Enters.),*
  12 F.3d 938, (9th Cir. 1993) ........................................................................................................25

*Luper v. Banner Industries, Inc. (In re Lee Way Holding Co.),*
  105 B.R. 404, (Bankr. S.D. Ohio 1989) ......................................................................................19

*Maganallez v. Hilltop Lending Corp.,*
  505 F. Supp. 2d 594 (N.D. Cal. 2007)...........................................................................................6

*Mangindin v. Washington Mutual Bank,*
  637 F. Supp. 2d 700 (N.D. Cal. 2009)..........................................................................................31

*Mason & Dixon Lines, Inc. v. St. Johnsbury Trucking Co.*
  *(In re Mason & Dixon Lines, Inc.),* 65 B.R. 973 (Bankr. M.D.N.C. 1986).................................25

*McMichael v. United States Filter Corp.,*
  2001 U.S. Dist. LEXIS 3918 (C.D. Cal. Feb. 22, 2001) ..........................................................7. 8

*Melchior v. New Line Productions, Inc.,*
  106 Cal.App.4th 779, 131 Cal. Rptr. 2d 347 (2003) ...................................................................19

*Moss v. U.S. Secret Service*,
 572 F. 3d 962, 969 (9th Cir. 2009) ........................................................................................... 3

*Neilson v. Union Bank of California, N.A.*,
 290 F. Supp. 2d 1101, 1120 (2003) ....................................................................................... 12

*O'Banion v. Select Portfolio Services*,
 2010 U.S. Dist. LEXIS 100876, (D. Idaho Aug. 13, 2010) ..................................................... 13

*Official Committee of Unsecured Creditors Hydrogen, L.L.C. v. Blomen*
 *(In re Hydrogen, L. L. C.)*, 2010 Bankr. LEXIS 1106 (Bankr. S.D.N.Y. Apr. 20, 2010) ........... 22

*Pierce v. Lyman*,
 1 Cal. App. 4th 1093, 3 Cal. Rptr. 2d 236 (1991) ................................................................. 12

*Reigelsperger v. Siller*,
 40 Cal.4th 574, 579, 53 Cal. Rptr. 3d 887, 150 P.3d 764 (2007) .......................................... 17

*Richard B. LeVine, Inc. v. Higashi*,
 131 Cal. App. 4th 566, 32 Cal. Rptr. 2d 244 (2005) .............................................................. 10

*Rosenfeld v. JPMorgan Chase Bank, N.A.*,
 732 F. Supp. 2d 952 (N.D. Cal. 2010) ................................................................................... 30

*Santos v. Countrywide Home Loans*,
 2009 U.S. Dist. LEXIS 103453 (E.D. Cal. Nov. 5, 2009) ........................................................ 30

*Shaoxing County Huayue Import & Export v. Bhaumik*,
 191 Cal. App. 4th 1189, 120 Cal. Rptr. 2d 303 (2011) .......................................................... 10

*Sharp International Corp. v. State Street Bank and Trust Co.*
 *(In re Sharp International Corp.)*, 281 B.R. 506 (Bankr. E.D.N.Y. 2002) ............................... 11

*Shearson Lehman Hutton, Inc. v. Wagoner*,
 944 F.2d 114, 120 (2nd Cir. 1991) ...................................................................................... 9, 10

*Silva v. Providence Hospital of Oakland*,
 14 Cal.2d 762, 97 P.2d 798 (1939) ....................................................................................... 16

*Simon v. Engineered Protection Systems, Inc. (In re Hatfield Elec. Co.)*,
 91 B.R. 782 (Bankr. N.D. Ohio 1988) .................................................................................... 25

*Smith v. Arthur Andersen LLP*,
 421 F. 3d 989 (9th Cir. 2005) ............................................................................................... 10

*Smith v. Simmons*,
 638 F. Supp. 2d 1180 (E.D. Cal. 2009) .................................................................................... 6

*Smithkline Beecham Corp. v. Continental Ins. Co.*,
 2004 U.S. Dist. LEXIS 15751 (E.D. Pa. 2004) .......................................................................... 2

*Sollberger v. Wachovia Securities, LLC*,
 2010 U.S. Dist. LEXIS 66233, *12 (C.D. Cal. June 30, 2010) ............................................. 2, 18

*Stevenson v. San Francisco Housing Authority*,
 24 Cal. App. 4th 269, 29 Cal. Rptr. 2d 398 (1994) .............................................................. 15

*Still v. Congress Financial Corp. (In re Southwest Equipment Rental, Inc.)*,
 137 B.R. 263, (Bankr. E.D. Tenn.1992) ................................................................................. 25

*Teledyne Industries, Inc. v. Eon Corp.*,
 401 F. Supp. 729 (S.D.N.Y. 1975) ........................................................................................... 5

*Tilden Lumber Company v. Perino*,
 2 Cal. App. 2d 133, 37 P. 2d 446(1934) ............................................................................... 14

LANDAU GOTTFRIED & BERGER LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

vi

*Tomaselli v. Transamerica Ins. Co.*,
  25 Cal. App. 4th 1269, 31 Cal. Rptr. 2d 433 (1994) ................................. 6

*Tronox Inc. v. Anadarka Petroleum Corp. (In re Tronox Inc.)*,
  429 B.R. 73 (Bankr. S.D.N.Y. 2010)........................................................ 33

*United States v. Washington*,
  759 F.2d 1353, 1356-57 (9th Cir. 1985).................................................. 31

*Valley Media v Borders (In re Valley Media)*,
  288 B.R. 189 (Bankr. D. Del. 2003).......................................................... 24

*Wagner v. First Horizon Pharmaceutical Corp.*,
  464 F.3d 1273 (11th Cir. 2006) ................................................................. 2

*Walker v. Equity 1 Lenders Group*,
  2009 U.S. Dist. LEXIS 40991 (S.D. Cal. 2009)....................................... 19

*Wight v. BankAmerica Corp.*,
  219 F. 3d 79 (2nd Cir. 2010) .................................................................... 10

*Williams v. California 1st Bank*,
  859 F.2d 664 (9th Cir. 1988) ................................................................... 10

*Yelverton v. Homes at Potomac Greens Associates, L.P. (In re Yelverton)*,
  2010 Bankr. LEXIS 1339, *11 (Bankr. D.D.C. Apr. 22, 2010) ..................... 27, 28, 30

*Youngman v. Nevada Irrigation District*,
  70 Cal.2d 240, 74 Cal. Rptr. 398, 449 P.2d 462 (1969) .......................... 16

**Statutes**

11 U.S.C. § 101(54).......................................................................................... 21

11 U.S.C. § 506(a)............................................................................................ 25

11 U.S.C. § 544(b)(1)....................................................................................... 27

11 U.S.C. § 547 ............................................................................. 20, 21, 22, 25

11 U.S.C. § 547(b)................................................................................ 21, 22, 23

11 U.S.C. § 547(b)(1)....................................................................................... 23

11 U.S.C. § 547(b)(5)....................................................................................... 25

11 U.S.C. § 547(f)............................................................................................ 24

11 U.S.C. § 548(a)(1)(B).................................................................................. 26

11 U.S.C. § 548(a)(1)(B)(ii)(I)........................................................................ 26

11 U.S.C. § 548(a)(1)(B)(ii)(II) and (III)........................................................ 26

11 U.S.C. § 550 ............................................................................................... 20

11 U.S.C. § 553 ................................................................................. 20, 21, 25

11 U.S.C. § 553(a)........................................................................................... 25

11 U.S.C. § 553(b)........................................................................................... 25

Cal. Civ. Code § 337a............................................................................... 17, 18

Cal. Civ. Code § 1550...................................................................................... 15

Cal. Civ. Code § 1621...................................................................................... 16

Cal. Civ. Code § 3439.02(a)............................................................................ 30

LANDAU GOTTFRIED & BERGER LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Cal. Civ. Code § 3439.04(a)(2) ........................................................................26, 27

Cal. Civ. Code § 3439.04(a)(2)(A) ...............................................................27

Cal. Civ. Code § 3439.04(a)(2)(B) ...............................................................27

Cal. Civ. Code § 3439.05 .................................................................26, 27, 28

Cal. Civ. Code § 3439.05(a)(2) .....................................................................26

Cal. Code Civ. Proc. § 339 ......................................................................13, 14

Cal. Corp. Code § 309 ...................................................................................7

## Rules

Fed. R. Civ. P. 8 ..............................................................................................3

Fed. R. Civ. P. 8(a) .......................................................................................29

Fed. R. Civ. P. 9(b) .......................................................................................32

Fed. R. Civ. P. 12(b)(6) ..................................................................................3

Fed. R. Bankr. P. 3007(c) .............................................................................33

Fed. R. Bankr. P. 7009 ..................................................................................32

## Treatises

4 COLLIER ON BANKRUPTCY ¶ 506.03[4][a] (Alan N. Resnick & Henry J. Sommer, eds.,
   15th ed. rev. 2009) ....................................................................................325

4 COLLIER ON BANKRUPTCY ¶ 510.01 (Alan N. Resnick & Henry J. Sommer, eds.
   15th ed. rev. 2009) ......................................................................................33

5 COLLIER ON BANKRUPTCY ¶ 553.04[4] (Alan N. Resnick & Henry J. Sommer, eds.,
   15th ed. rev. 2009) ......................................................................................25

5 COLLIER ON BANKRUPTCY ¶ 553.04[5] (Alan N. Resnick & Henry J. Sommer, eds.,
   15th ed. rev. 2009) ......................................................................................25

# MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS FIRST, SECOND, THIRD, FOURTH, FIFTH, SIXTH, SEVENTH, EIGHTH, TENTH, ELEVENTH, FIFTEENTH AND SIXTEENTH CLAIMS FOR RELIEF

Defendants Hooshang Namvar, Homayoun Namvar, Ramin Namvar, Nataly Namvar, Trifish, LLC, Tribun, LLC, Believers, LLC, Net, LLC, Light Source Management, LLC (fka Light Source, LLC), Lacy 20, LLC, Woodman Partners, LLC, Tritowne, LLC and Trigrove, LLC (collectively, the "Defendants") respectfully submit this memorandum of points and authorities in support of their motion to dismiss the First, Second, Third, Fourth, Fifth, Sixth, Seventh, Eighth, Tenth, Eleventh, Fifteenth and Sixteenth Claims for Relief in the First Amended Complaint insofar as those claims for relief purport to state claims against any or all of the Defendants.

## I.

## INTRODUCTION

The First Amended Complaint (the "FAC") is 40 pages long, contains 224 paragraphs and purports to assert 16 claims for relief against 33 named defendants. It also contains an "Objection to Claims" that does not identify either the claims to which the objection is addressed or the individual(s) or entity(ies) who filed those unidentified claims. The first 24 pages of the FAC, containing 126 paragraphs of introductory and general allegations that purport to set forth the factual bases for all of Plaintiff's 16 claims against all 33 defendants, and his objection to claims, are incorporated by reference into Plaintiff's First Claim for relief – a claim for breach of fiduciary duty that is asserted only against defendant Homayoun ("Tony") Namvar. *See*, FAC ¶127, at 24:27-28. Thereafter, the Second Claim for Relief – which purports to state a claim for aiding and abetting breach of fiduciary duty against defendants Mousa Namvar, Hooshang ("Sean") Namvar and Ramin Namvar – incorporates by reference all 126 paragraphs of the introductory and general allegations and all of the allegations in all 5 paragraphs of the First Claim for Relief. *See*, FAC ¶132, at 25:16-17. This wholesale incorporation by reference of all preceding allegations continues throughout all 16 claims for relief and culminates in the Objection to Claims, which purports to incorporate by reference every single allegation contained in all 221 preceding paragraphs. *See*,

1

1   FAC ¶222, at 38:9-10.  This is a classic example of what is known as a "shotgun pleading."[1]  It is

2   not now, and never has been, a permissible form of pleading.

3          The proper method in which to attack a shotgun complaint is by way of a motion for

4   more definite statement, and Defendants have filed such a motion concurrently with this motion.

5   Although the Court could and should simply reject Plaintiff's shotgun complaint by granting the

6   motion for more definite statement (thus avoiding the necessity of laboriously combing through all

7   of Plaintiff's lumped-together allegations in an attempt to divine whether there is a factual basis for

8   any of Plaintiff's allegations), to the extent that Defendants can understand those allegations, they

9   respectfully submit this motion to dismiss.

10                                          **II.**

11                            <u>**GENERAL PRINCIPLES**</u>

12         "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement

13  of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice

14  of what the . . . claim is and the grounds upon which it rests."  *Bell Atlantic Corp. v. Twombly*, 550

15  U.S. 544, 127 S. Ct. 1955, 1964, 167 L. Ed. 2d 929 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41,

16  47, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)).  To satisfy that requirement, a plaintiff must plead "more

17  than labels and conclusions, and a formulaic recitation of the elements of a cause of action . . . ."

18  *Id.* at 570.  To survive a motion to dismiss, a complaint must contain "enough facts to state a claim

19  to relief that is plausible on its face."  *Id.*

20         The requisite degree of plausibility was clarified in *Ashcroft v. Iqbal*, 556 U.S. __,

21  129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009):

22             A claim has facial plausibility when the plaintiff pleads factual content

23             that allows the court to draw the reasonable inference that the defendant is

24             liable for the misconduct alleged.  The plausibility standard is not akin to a

---

26  [1]  *See, e.g., Wagner v. First Horizon Pharmaceutical Corp.*, 464 F.3d 1273, 1279 (11th Cir. 2006) ("Shotgun
    pleadings are those that incorporate every antecedent allegation by reference into each subsequent claim for relief or

27  affirmative defense."); *Sollberger v. Wachovia Securities, LLC*, 2010 U.S. Dist. LEXIS 66233, *12 (C.D. Cal. June 30,
    2010) (describing shotgun pleading as one "where the plaintiff recites a collection of general allegations toward the

28  beginning of the Complaint, and then each count incorporates every antecedent allegation by reference.").

*(left margin)* LANDAU GOTTFRIED & BERGER LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1  "probability requirement," but it asks for more than a sheer possibility that

2  a defendant has acted unlawfully. Where a complaint pleads facts that are

3  "merely consistent with" a defendant's liability, it "stops short of the line

4  between possibility and plausibility of 'entitlement to relief'."

5  With this language, the Supreme Court made it clear that a conclusory pleading, which only raises

6  the mere *possibility* of liability, does not satisfy the pleading standards of Fed. R. Civ. P. 8, and

7  requires dismissal under Rule 12(b)(6).

8  *Iqbal* further outlined the two principles applicable to a reviewing court's analysis of

9  a complaint challenged under Rule 12(b)(6):

10  First, the tenet that a court must accept as true all of the allegations

11  contained in a complaint is inapplicable to legal conclusions. Threadbare

12  recitals of the elements of a cause of action, supported by mere conclusory

13  statements, do not suffice. . . . Second, only a complaint that states a

14  plausible claim for relief survives a motion to dismiss . . . . [W]here the

15  well-pleaded facts do not permit the court to infer more than the mere

16  possibility of misconduct, the complaint has alleged – but it has not

17  "show[n]" – "that the pleader is entitled to relief."

18  *Id.* at 1949-50. Thus, under Rule 12(b)(6), "for a complaint to survive a motion to dismiss, the non-

19  conclusory factual content, and reasonable inferences from that content, must be plausibly

20  suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv*ice, 572 F. 3d 962,

21  969 (9th Cir. 2009). Here, none of plaintiff's sixteen claims for relief meet that standard insofar as

22  they purport to state claims against these moving Defendants.

23  **III.**

24  **ARGUMENT**

25  **A.**    **The First Claim For Relief Is Fatally Defective And Must Be Dismissed.**

26  The First Claim for Relief in the First Amended Complaint is against Homayoun

27  ("Tony") Namvar for "breach of fiduciary duty." FAC ¶¶127-131, at 24:23-25:10. It is fatally

28  defective for at least two independent reasons and, therefore, must be dismissed.

LANDAU GOTTFRIED & BERGER LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

3

LANDAU GOTTFRIED & BERGER LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1.   **The First Claim for Relief fails to state a claim for breach of fiduciary duty against Tony Namvar.**

The First Claim for relief contains a number of defects, each of which renders it defective and justifies granting Defendants' motion to dismiss.

a.   **The Trustee fails to allege that Tony Namvar participated in management of Namco or exercised discretionary authority with respect to the operation of Namco.**

Under California law, "an officer who participates in management of the corporation, exercising some discretionary authority, is a fiduciary of the corporation as a matter of law. Conversely, a 'nominal' officer with no management authority is not a fiduciary." *GAB Business Services, Inc. v. Lindsey & Newsom Claim Services, Inc.*, 83 Cal. App. 4th 409, 420-421, 99 Cal. Rptr. 2d 665 (2000), *overruled on other grounds by Reeves v. Hanlon*, 33 Cal. 4th 1140, 17 Cal. Rptr. 3d 289, 95 P.3d 513 (2000). Of course "[w]hether a particular officer participates in management is a question of fact." *GAB Business Services, Inc. v. Lindsey & Newsom Claim Services, Inc.*, 83 Cal. App. 4th 1308D (2000) (opinion on denial of rehearing). Search as one may throughout the 131 paragraphs of material in, or purportedly incorporated by reference in, the First Claim for Relief, there is no allegation that Tony Namvar either participated in the management of Namco or exercised any discretionary authority with respect to the operation of Namco. Nor is there any factual allegation that Tony Namvar personally participated in any wrongful conduct; that he authorized or directed any wrongful conduct; or that he had knowledge of any wrongful conduct.[2] In fact, the First Claim for Relief does not allege that he had any managerial authority whatsoever with respect to Namco. That defect, in and of itself, is fatal to Plaintiff's claim.

The incorporation by reference of paragraphs 48 of the FAC, which, in substance alleges that each defendant was the agent of every other defendant and acted properly within the course and scope of that agency, further undermines the Trustee's breach of fiduciary duty claim.

---

[2]  In fact, in their First Financial Report [Case No. 2:08-bk-32333-BR; Dkt. #730, filed 02/26/10], the Trustees assert that "Ezri jealously guarded all decision making and had little or no strategy meetings of any kind, despite the ever increasing assortment of investments as detailed within this report. It is difficult to understand the rationale behind this centralized structure." First Financial Report at 12.

4

1           "[A] corporate officer or director will not be held responsible for the acts of lawfully

2 appointed subagents. . . . While the corporation itself may be liable for such acts, the individual

3 officer or director will be immune unless he authorizes, directs, or in some meaningful sense

4 actively participates in the wrongful conduct." *Teledyne Industries, Inc. v. Eon Corp.*, 401 F. Supp.

5 729, 737 (S.D.N.Y. 1975) (applying California law). The Trustee has alleged that each defendant,

6 while acting as an agent, "acted within the course and scope" of his or her agency relationship.

7 FAC at 8:27-9:2. There are no factual allegations whatsoever in the FAC that Tony Namvar ever

8 <u>authorized</u> any other defendant to perform any specific act, or any act at all, nor are there are any

9 factual allegations at all in the FAC that Tony Namvar <u>directed</u> any other defendant to perform any

10 specific act. Similarly, there are no factual allegations at all in the FAC that Tony Namvar actively

11 participated in any wrongful act.[3] As a result, to the extent that the FAC accuses Tony Namvar of

12 breaching some unidentified fiduciary duty he allegedly owed to Namco based on actions taken by

13 other defendants, it fails to state a claim.

14           Similarly, the incorporation by reference of paragraph 49 of the FAC, which in

15 substance alleges that each defendant is the alter ego of every other defendant (FAC at 9:3-9), adds

16 nothing to the breach of fiduciary duty claim because the Trustee lacks standing to assert an alter

17 ego claim against Defendants. *Ahcom, Ltd. v. Smeding*, 623 F.3d 1248 (9th Cir. 2010). In *Ahcom*,

18 the Ninth Circuit analyzed California law and concluded that California does not recognize a

19 *general* alter ego claim that would render a shareholder liable for all of a company's debts, but

20 instead recognizes only a *particularized* alter ego claim. The distinction is critical, because if under

21 California law an alter ego claim were a general claim belonging to the corporation, then it could be

22 asserted only by a bankruptcy trustee or another representative of the corporate debtor. But because

23 the Ninth Circuit found that an alter ego claim was a particularized claim that only could be pursued

24

25

26      [3] The allegation in paragraph 48 "in doing the things alleged in this Complaint, each Defendant acted . . . with
the knowledge, permission, consent, ratification, and/or adoption [*sic*] of the other Defendants" (FAC at 8:27-9:2), is

27 not a factual allegation. It is a legal conclusion that may be disregarded by the Court. *See Iqbal*, 129 S. Ct. at 1951
(bare legal conclusions that "amount to nothing more than a 'formulaic recitation of the elements' of a . . . claim . . . are

28 conclusory and not entitled to be assumed true.").

LANDAU GOTTFRIED & BERGER LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

by an individual claimant, it held that only the individual claimant and not the bankruptcy trustee

will have standing to assert the claim.[4]

The Trustee may bray as loudly as he chooses about how the alleged "mishandling

of funds invested in Namco breached . . . Tony's fiduciary duties," but without pleading a factual

basis for his claim that Tony Namvar owed fiduciary duties to Namco, that claim cannot survive. A

complaint requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."

*Iqbal*, 129 S.Ct. at 1949. Thus, a complaint like the Trustee's FAC that merely offers "naked

assertion[s]" devoid of "further factual enhancement" is insufficient to survive a motion to dismiss.

*Id.* (*citing Twombly*, 550 U.S. at 557).

### b. **The Trustee fails to identify what fiduciary duty allegedly was breached.**

"To state a claim for breach of fiduciary duty, a plaintiff must show: (1) the

existence of a fiduciary relationship; (2) the breach of that relationship; and (3) damage proximately

caused by the breach." *Lingad v. IndyMac Federal Bank,* 682 F. Supp. 2d 1142, 1152 (E.D. Cal.

2010). Here, Plaintiff's **only** allegations regarding the fiduciary duty that Tony allegedly owed to

Namco and the manner in which that duty was breached are:

---

[4] Even if the Trustee did have standing to assert an alter ego claim, he has not properly pleaded such a claim. "Although there is no specific 'litmus test' for identifying when an individual is the alter ego of an entity, there are, nevertheless, two general requirements: (1) there is such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist and (2) failure to disregard their separate identities would result in fraud or injustice." *Smith v. Simmons,* 638 F. Supp. 2d 1180, 1190 (E.D. Cal. 2009). Control alone is insufficient to establish an alter ego relationship. "The mere fact of sole ownership and control does not eviscerate the separate corporate identity that is the foundation of corporate law." *Katzir's Floor & Home Design, Inc. v. M-MLS COM,* 394 F.3d 1143, 1149 (9th Cir. 2004); *see also* William Meade Fletcher *et al.*, Fletcher Cyclopedia of the Law of Private Corporations § 41.35, at 671 (perm. ed., rev. vol. 1999) ("Allegations that the defendant was the sole or primary shareholder are inadequate as a matter of law to pierce the corporate veil. Even if the sole shareholder is entitled to all of the corporation's profits, and dominated and controlled the corporation, that fact is insufficient by itself to make the shareholder personally liable.").

Under California law, alter ego requires a showing of "inadequate capitalization, commingling of assets, disregard of corporate formalities, [or] other facts which demonstrate the critical element: that an inequitable result would have followed if the corporate separateness had been respected." *Tomaselli v. Transamerica Ins. Co.,* 25 Cal. App. 4th 1269, 1285, 31 Cal. Rptr. 2d 433 (1994). The FAC fails to allege any such facts with respect to any corporate veil the Trustee is seeking to pierce, nor does it establish any basis whatsoever for the allegation that any of the other individual defendants was the alter ego of Tony Namvar, or vice versa. The Trustee's minimal alter ego allegations are nothing but argument and bare legal conclusions. Of course, "[c]onclusory allegations of alter ego status will not survive a motion to dismiss." *Maganallez v. Hilltop Lending Corp.,* 505 F. Supp. 2d 594, 607 (N.D. Cal. 2007). Thus, to the extent the Trustee's breach of fiduciary duty claim against Tony Namvar is based on alleged alter ego relationships, it is doomed to failure.

LANDAU GOTTFRIED & BERGER LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

LANDAU GOTTFRIED & BERGER LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

128.     At all relevant times, Tony owed a fiduciary duty to Namco

to act in good faith, in the best interests of the corporation, with such care

as an ordinarily prudent person in a like position would use under similar

circumstances, and without conflict of interest.[5]

129.     In engaging in the conduct, directing, causing, authorizing

and entering into the transactions described and alleged herein, Tony

violated that fiduciary duty.

FAC ¶¶128-129, at 25:1-5.  Those allegations are not sufficient to state a claim for relief for breach

of fiduciary duty.  The Trustee's wholesale reference to every allegation in the 126 paragraphs

preceding his First Claim for Relief – which, in substance, compels both Defendants and the Court

to sift through every one of those allegations to determine whether or not Plaintiff intended the

allegation to be the basis for his breach of fiduciary duty allegations – is neither a permissible form

of pleading nor does it satisfy the specificity requirements of *Iqbal* and *Twombly*.

       c.     **The Trustee does not allege how Tony Namvar purportedly**

**breached his fiduciary duty.**

As noted in *McMichael v. United States Filter Corp.*, 2001 U.S. Dist. LEXIS 3918,

*31 (C.D. Cal. Feb. 22, 2001), there are three distinct fiduciary duties – the duty of due care, the

duty of loyalty and the duty of good faith.  Nowhere does the Trustee identify which of those

fiduciary duties allegedly has been breached, nor can it be ascertained from the First Claim for

Relief – or from the FAC as a whole – which of the numerous acts alleged in the complaint are

supposed to form the basis for the Trustee's accusation that Tony Namvar breached his fiduciary

obligations (if, indeed, he had any) to Namco.  All that is alleged in the FAC is that "[i]n engaging

in the conduct, directing, causing, authorizing and entering into the transactions described and

---

[5]  The allegations of paragraph 128 merely paraphrase Cal. Corp. Code § 309(a), which provides: "A director shall perform the duties of a director, including duties as a member of any committee of the board upon which the director may serve, in good faith, in a manner such director believes to be in the best interests of the corporation and its shareholders and with such care, including reasonable inquiry, as an ordinarily prudent person in a like position would use under similar circumstances."  This adds nothing to the First Amended Complaint.  *Iqbal*, 129 S.Ct. at 1949 (holding that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are insufficient pleadings).

alleged herein," Tony Namvar violated the fiduciary duty he allegedly owed to Namco. FAC 25:4-5. Missing are allegations specifying (1) what "conduct" by Tony caused a breach of any fiduciary duty and how did it cause that breach, (2) what transactions were "directed" by Tony and how did such "direction" breach any alleged fiduciary duty; (3) what transactions were "caused" by Tony and how did such "causing" breach any alleged fiduciary duty; (4) what transactions were "authorized" by Tony Namvar and how did such "authorization" breach any alleged fiduciary duty; and (5) what transactions were "entered into" by Tony and how did "entering into" such transactions" breach any alleged fiduciary duty. Those defects are fatal to the First Claim for Relief.[6]

### 2. The First Claim for Relief is barred by the business judgment rule.

Regardless whether Plaintiff's First Claim for Relief is a claim for breach of the duty of due care, the duty of loyalty or the duty of good faith, it must fail because it is barred by the business judgment rule.[7] *McMichael*, 2001 U.S. Dist. LEXIS at *31 (plaintiff "has the burden at the outset to rebut the rule's presumption").

To rebut the strong presumption of regularity created by the business judgment rule, a plaintiff "must 'provide evidence that directors, in reaching their challenged decision, breached

---

[6] It is "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' [which] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 554. To survive a motion to dismiss, this requires a complaint to have "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. Here, there is no such specific pleading. Instead, as is explained in Defendants' concurrently filed Motion For More Definite Statement, the Trustee simply has lumped all of his allegations together and incorporated all allegations into every claim for relief, thereby making it impossible for Defendants to ascertain which allegation pertains to what claim. This is an impermissible shotgun pleading and prevents Defendants from being able to understand, no less respond to, the charges that have been leveled against them.

[7] The business judgment rule is "'a judicial policy of deference to business judgment of corporate directors in the exercise of their broad discretion in making corporate decisions.'" *Barnes v. State Farm Mutual Automobile Ins. Co.*, 16 Cal. App. 4th 365, 368, 20 Cal. Rptr. 2d 87 (1993); *Gaillard v. Natomas Co.*, 208 Cal. App. 3d 1250, 1263, 256 Cal. Rptr. 702 (1989). The rule is based on the premise that those to whom the management of a business organization has been entrusted, and not the courts, are best able to judge whether a particular act or transaction is helpful to the conduct of the organization's affairs or expedient for the attainment of its purposes. *Barnes*, 16 Cal. App. 4th at 378; *Eldridge v. Tymshare, Inc.*, 186 Cal. App. 3d 767, 776, 230 Cal. Rptr. 815 (1986). The rule establishes a presumption that directors' decisions are based on sound business judgment, and it prohibits courts from interfering in business decisions made by the directors in good faith and in the absence of a conflict of interest. *Katz v. Chevron Corp.*, 22 Cal. App.4th 1352, 1366, 27 Cal. Rptr. 2d 1681 (1994); *Barnes*, 16 Cal. App. 4th at 379-80.

California's business judgment rule has been codified in Cal. Corp. Code § 309.

LANDAU GOTTFRIED & BERGER LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

LANDAU GOTTFRIED & BERGER LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1    any one of the triads of their fiduciary duty--good faith, loyalty or due care.'  If the plaintiff cannot

2    overcome the presumption, the business judgment rule attaches to protect corporate officers and

3    directors and the decisions they make, and courts hesitate to second-guess such decisions." *Id.* at

4    *31-*32 (citations omitted).  Only after a plaintiff rebuts the presumption created by the business

5    judgment rule, "the burden shifts to the defendant directors to prove the 'entire fairness' of the

6    transaction." *Id.* at *32.  *See, In re General Motors Class E Stock Buyout Securities Litigation*, 694

7    F. Supp. 1119, 1132 (D. Del. 1988) (holding that a plaintiff can "overcome the presumption of the

8    business judgment rule [only by] alleging **with particularity** facts which establish that the

9    contested decision was not a product of valid business judgment.") (emphasis added).  Here, of

10   course, the Trustee has not pleaded with particularity, or at all, **any** facts taking the complained-

11   about transactions (whatever they may be) out of the scope of the business judgment rule.

12          Because the Trustee has failed to allege any "specific facts of unreasonable

13   behavior" by Tony Namvar, he has not sufficiently pled around the business judgment rule and the

14   breach of fiduciary duty claim asserted in the First Claim for Relief must fail.

15          **B.     The Second Claim For Relief Is Fatally Defective And Must Be Dismissed.**

16          The Second Claim for Relief is against defendants Hooshang ("Sean") Namvar and

17   Ramin Namvar (as well as defendant Mousa Namvar who appears through other counsel) for

18   "aiding and abetting breach of fiduciary duty."  FAC ¶¶132-138, at 25:12-26:3.  It is fatally

19   defective for each of the reasons set forth below and must be dismissed.

20          **1.     The Trustee lacks standing to assert his aiding and abetting claim.**

21          The Trustee has no standing to assert his Second Claim for Relief.  "A claim against

22   a third party for defrauding a corporation with the cooperation of management accrues to creditors,

23   not to the guilty corporation." *Shearson Lehman Hutton, Inc. v. Wagoner*, 944 F.2d 114, 120 (2nd

24   Cir. 1991).[8]  This principle, which has come to be known as the *Wagoner* rule, "derives from the

---

26          [8]  A trustee in bankruptcy, of course, lacks standing to enforce claims belonging to creditors.  *See, e.g., Caplin
27   v. Marine Midland Grace Trust Co.*, 406 U.S. 416, 32 L. Ed. 2d 195, 92 S. Ct. 1678 (1972) (trustee has no standing as a
matter of law to bring third party or creditor claims that do not belong to the debtor); *Williams v. California 1st Bank*,
859 F.2d 664 (9th Cir. 1988) (bankruptcy trustee cannot pursue third party creditor claims, even where the party
28   assigned those claims to the trustee to pursue on their behalf).

1  fundamental principle of agency that the misconduct of managers within the scope of their

2  employment will normally be imputed to the corporation." *Wight v. BankAmerica Corp.*, 219 F. 3d

3  79, 86 (2nd Cir. 2010).  Because management's misconduct is imputed to the corporation, and

4  because a trustee stands in the shoes of the corporation,[9] the *Wagoner* rule bars a trustee from suing

5  to recover for a wrong that he himself essentially took part in.  *Id.* at 87.[10]

6        The FAC does not allege that either Sean Namvar or Ramin Namvar is an officer or

7  director or manager of any sort of Namco.  They are "third parties" as that term is used in

8  *Wagoner*.  The Second Claim for Relief thus alleges that Sean and Ramin Namvar – acting as third

9  parties – took unspecified acts inimical to the interest of Namco by "aiding and abetting" Tony

10  Namvar's alleged misconduct.  This is a classic *Wagoner* claim, and the Trustee lacks standing to

11  assert it.

12      **2.**    **The validity of plaintiff's aiding and abetting claim depends on the**

13          **validity of his breach of fiduciary duty claim.**

14      "Aiding and abetting" is not an independently actionable concept.  Rather, a

15  plaintiff is first required sufficiently to plead an actionable tort before he can properly plead that a

16  defendant aided and abetted, or was otherwise responsible for the commission of that tort.  *See,*

17  *e.g., Richard B. LeVine, Inc. v. Higashi*, 131 Cal. App. 4th 566, 574, 32 Cal. Rptr. 2d 244 (2005)

18  ("The unifying principle under either theory of recovery, civil conspiracy or aiding and abetting, is

19  that [defendant's] liability depends upon the actual commission of a tort.  Here, the underlying tort

20  is the alleged breach of fiduciary duty.").  As explained above, the Trustee has failed to allege a

21  viable claim for breach of fiduciary duty against Tony Namvar in his First Claim for Relief.  As a

22  result, the Trustee's Second Claim for Relief, which alleges that Sean and Ramin Namvar aided

---

25      [9] "The trustee succeeds only to such rights as the bankrupt possessed; and the trustee is subject to all claims
26  and defenses which might have been asserted against the bankrupt but for the filing of the petition." *Bank of Marin v. England*, 385 U.S. 99, 101, 87 S. Ct. 274, 17 L. Ed. 2d 197 (1966).  "[U]nder the Bankruptcy Code the trustee stands in the shoes of the bankrupt corporation and has standing to bring any suit that the bankrupt corporation could have
27  instituted had it not petitioned for bankruptcy."  *Smith v. Arthur Andersen LLP*, 421 F. 3d 989, 1002 (9th Cir. 2005).

28      [10] The *Wagoner* rule has been adopted in California.  *See, e.g., Shaoxing County Huayue Import & Export v. Bhaumik*, 191 Cal. App. 4th 1189, 120 Cal. Rptr. 2d 303 (2011); *Casey*, 127 Cal. App. 4th at 1142-43.

LANDAU GOTTFRIED & BERGER LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1   and abetted Tony Namvar's breach of fiduciary duty – and which is dependent upon the validity of

2   the First Claim for Relief – is equally defective and must be dismissed on that basis.

3           **3.**      **The Trustee has not adequately pleaded an aiding and abetting claim.**

4           Aider and abettor liability may be imposed on one who aids and abets the

5   commission of an intentional tort, if the person either "(a) knows the other's conduct constitutes a

6   breach of duty and gives substantial assistance or encouragement to the other to so act or (b) gives

7   substantial assistance to the other in accomplishing a tortious result and the person's own conduct,

8   separately considered, constitutes a breach of duty to the third person. *Fiol v. Doellstedt*, 50 Cal.

9   App. 4th 1318, 1325-26, 58 Cal. Rptr. 2d 208 (1996). "To satisfy the knowledge prong, the

10  defendant must have 'actual knowledge of the *specific primary wrong* the defendant substantially

11  assisted.'" *Henry v. Lehman Commercial Paper, Inc. (In re First Alliance Mortgage Co.*, 471 F. 3d

12  977, 993 (9th Cir. 2006) (quoting *Casey v. U.S. Bank National Ass'n*, 127 Cal. App. 4th 1139,

13  1145, 26 Cal. Rptr.3d 401 (2005)) (emphasis added). *See also, In re Maxim Integrated Products,*

14  *Inc., Derivative Litigation*, 574 F. Supp. 2d 1046, 1068 (N.D. Cal. 2008) (dismissing aiding and

15  abetting breach of fiduciary duty claim where complaint did not identify any action taken by alleged

16  aider and abettor that would constitute knowing participation in the breach).

17          Here, the Trustee's allegations are wholly conclusory.  In paragraphs 135 and 136 of

18  the FAC he alleges only that "Sean and Ramin had actual knowledge of Ezri's and Tony's

19  violation of such fiduciary duty," and that "Sean and Ramin substantially assisted Ezri and Tony in

20  breaching their fiduciary duty." FAC at 25:23-26.  This is simply a recitation of the formulaic

21  elements of an aider and abettor claim condemned by the Supreme Court in *Iqbal*, and it is wholly

22  inadequate to state a claim for aider and abettor liability against Sean and/or Ramin Namvar.

23          To begin, it is well-established that "it is necessary to ***identify precisely*** the breach of

24  fiduciary duty for which [the Trustee] seeks to hold [Sean and Ramin Namvar] liable." *Casey*, 127

25  Cal. App. 4th at 1147 (emphasis added) (quoting *Sharp International Corp. v. State Street Bank and*

26  *Trust Co. (In re Sharp International Corp.)*, 281 B.R. 506, 513 (Bankr. E.D.N.Y. 2002)).  The FAC

27  utterly fails to satisfy that pleading requirement.  Wholesale incorporation by reference of 131

28

LANDAU GOTTFRIED & BERGER LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

11

LANDAU GOTTFRIED & BERGER LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1   paragraphs of allegations is not "precise" identification of the breaches of fiduciary duty allegedly

2   committed by Ezri and Tony Namvar. Indeed, it is not identification at all.

3         Next, the Trustee must allege that Sean and Ramin Namvar had "actual knowledge"

4   of the specific breach of fiduciary duty for which the Trustee seeks to hold them liable. *Casey*, 127

5   Cal. App. 4th at 1148 ("[I]t is sufficient for a pleading to 'allege generally that defendants had

6   actual knowledge of *a specific primary violation*.'") (emphasis in original) (quoting *Neilson v.*

7   *Union Bank of California, N.A.,* 290 F. Supp. 2d 1101, 1120 (2003). Here, all that the Trustee

8   alleges is that Sean and Ramin Namvar "had actual knowledge of Ezri's and Tony's violations of

9   [their] fiduciary duty." FAC ¶ 135, at 25:23-24. This is not an allegation that Sean and Ramin

10  Namvar have knowledge of **a specific primary violation**. In fact, there is no identification

11  anywhere in the FAC of the alleged "specific primary violations" of fiduciary duty allegedly

12  committed by either Ezri or Tony Namvar. As a result, the Second Claim for relief is defective on

13  this ground as well.

14        Finally, the Trustee does not plead any facts in support of his legal conclusion that

15  Sean and Ramin Namvar "substantially assisted Ezri and Tony in breaching their fiduciary duty."

16  FAC ¶ 136, at 25:25-26. These conclusory allegations fail to describe in meaningful detail – or at

17  all – how Sean and Ramin Namvar's actions provided substantial assistance to Ezri and Tony

18  Namvar in breaching their fiduciary duties to Namco. Even if the Court were to conclude that the

19  Trustee properly alleged that Sean and Ramin Namvar had knowledge of Ezri and Tony Namvar's

20  breaches – and as previously explained, the Court cannot come to such a conclusion – "[m]ere

21  knowledge that a tort is being committed and the failure to prevent it does not constitute aiding and

22  abetting." *Fiol v. Doellstedt, supra,* 50 Cal. App. 4th at 1326; *see also, Pierce v. Lyman*, 1 Cal.

23  App. 4th 1093, 1110, n. 6, 3 Cal. Rptr. 2d 236 (1991) ("Mere knowledge by a third person that a

24  breach of trust is in process, coupled with the failure to notify the beneficiary or to interfere with

25  the action of the trustee, does not amount to a participation in a breach. Such conduct is inaction

26  which may be reprehensible under the highest standards of ethics, but no legal duty has been

27  violated.").

28

The Trustee's pleading deficiencies are exacerbated by the fact that he has alleged that Sean and Ramin Namvar aided and abetted Ezri and Tony Namvar's <u>fraudulent</u> conduct.

> [U]nder Fed. R. Civ. P. 9(b), the circumstances constituting fraud or mistake must be plead with particularity. A pleading is sufficient under Rule 9(b) if it "is specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." To satisfy this standard, plaintiffs must offer the "who, what, when, where, and how" in support their fraud allegations. Generally, ***aiding and abetting fraud claims are held to the same heightened pleading standard***.

*O'Banion v. Select Portfolio Services*, 2010 U.S. Dist. LEXIS 100876, 16-17 (D. Idaho Aug. 13, 2010) (citations omitted; emphasis added); *see also In re Monahan Ford Corp. of Flushing*, 340 B.R. 1, 33 (Bankr. E.D.N.Y. 2006) ("Claims of aiding and abetting fraud must meet the particularity standard of Rule 9(b).").

As Defendants already have noted, the Trustee has made only the most general of conclusory allegations in his Second Claim for relief. If he is accusing Sean and Ramin Namvar of aiding and abetting fraudulent conduct by Ezri and Tony Namvar, then he must alleged the "who, what, when, where, and how" in support of his aiding and abetting claim. His failure to do so requires that the claim be dismissed. Of course, the Second Claim for relief must be dismissed with prejudice if the Court determines that the Trustee cannot plead a claim against Tony Namvar for breach of fiduciary duty.

> **C.**     **The Third Claim For Relief Does Not State A Claim For Breach Of Express Or Implied Contract.**

The Trustee's Third Claim for Relief "for breach of express or implied contract" not only is not well pleaded, but also is barred by the two year statute of limitations found in Cal. Code Civ. Proc. § 339. It, therefore, must be dismissed with prejudice.

LANDAU GOTTFRIED & BERGER LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

### 1.     **The Third Claim for Relief is time barred.**

The Third Claim for Relief is based upon the allegation in paragraph 141 of the FAC that Defendants "understood and agreed" that the 18 so-called "transfers" listed in paragraph 140 of the FAC (only 9 of which involve any of these moving Defendants) "would be repaid to Namco, with interest from the time of such transfers." FAC ¶ 141, at 26:18-20.  The Trustee specifically alleges that the understanding and agreement was not in writing.  FAC¶ 142, at 26:21-22.

A claim based on "a contract, obligation or liability not founded upon an instrument of writing" must be filed within two years of accrual.  Cal. Code Civ. Proc. § 339.  When no time is specified for the repayment of a loan, it is payable on demand, and the statute of limitations begins to run when the loan is made.  This has been the law of California for more than a century.  *Dorland v. Dorland*, 66 Cal. 189, 190, 5 P. 77 (1884) ("No time being specified within which [the loan] was to be repaid, the presumption of the law is that it was to be repaid on demand; and that being so, the statute of limitations commenced to run from the time of the loan."); *Leonard v. Gallagher*, 235 Cal. App. 2d 362, 375, 45 Cal. Rptr. 211 (1965) (loans and notes with no time fixed for payment "were payable on demand"); *Tilden Lumber Co. v. Perino*,  2 Cal. App. 2d 133, 134, 37 P. 2d 446 (1934) (for notes due on demand, the statute begins to run on the date the note was created); *Buffington v. Ohmert*, 253 Cal. App. 2d 254, 256, 61 Cal. Rptr. 360 (1967) ("For the purposes of the statute of limitations, loans payable on demand are deemed payable at their inception, and the statute begins to run from such time.").

The FAC does not expressly state when each of the 18 identified transfers was made.  It does, however, disclose that the bulk of those transfers clearly were made more than two years before October 26, 2010 – the date on which this adversary proceeding was commenced.  As a result, insofar as this adversary proceeding seeks to enforce the alleged oral agreement by these moving Defendants to "repay" nine of those transfers, it is at least partially, and perhaps entirely, barred by the two-year statute of limitations contained in  Cal. Code Civ. Proc. § 339.[11]

---

[11]   The FAC contains the following information about the dates on which the nine transfers involving these moving Defendants were made and shows that most, if not all, of those transfers are time barred:  LA Marriott Transfers (transaction closed March 1, 2007 – FAC ¶50; all transfers most likely time barred); Flamingo Road Transfers (transaction closed February 27, 2006 – FAC ¶61; all transfers most likely time barred); Sunset Springs Footnote continued on following page

LANDAU GOTTFRIED & BERGER LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

14

## 2. The Trustee has failed to plead essential elements of a claim for either breach of oral contract or breach of implied contract.

In order to state a cause of action for breach of contract, a complaint must allege "the existence of the contract, performance by the plaintiff or excuse for nonperformance, breach by the defendant and damages." *First Commercial Mortgage Co. v. Reece*, 89 Cal. App. 4th 731, 735, 108 Cal. Rptr. 2d 23 (2001). The essential elements of a contract include: (1) parties capable of contracting; (2) their consent; (3) a lawful object; and (4) a sufficient cause or consideration. Cal. Civ. Code § 1550. When pleading an oral contract, a plaintiff also must allege the element of consideration. *Stevenson v. San Francisco Housing Authority*, 24 Cal. App. 4th 269, 284, 29 Cal. Rptr. 2d 398 (1994) ("The statutory presumption of consideration . . . does not, of course, apply to an oral contract. In an action on such an agreement, the essential element of consideration must normally be alleged."). Here, the Trustee's pleading of his breach of oral contract claim suffers from three defects – it does not identify which "transfers" were the subject of any particular oral contract, it does not describe the terms and conditions of the contracts and it does not allege what consideration was given for each contract. Each of these defects taken separately renders a claim for breach of oral contract defective. Taken together, they require the Court to dismiss the Trustee's breach of oral contract claim.

The Trustee alleges that "[a]s to each of the Namvar Family Transfers, "Defendants . . . agreed" to repay to Namco "transfers made by Namco to or for the benefit of a Defendant, or a Defendant's children . . . ." FAC ¶ 141, at 26:18-20. The Trustee, however, does not identify all of the transfers that allegedly were the subject of such an agreement. Significantly, in each case where he does identify a specific transfer, his right to enforce any purported oral agreement to repay that

---

Transfers (transaction closed February 20, 2006 – FAC ¶71; all transfers most likely time barred); Nam 5 transfers (first transfer made August 25, 2004; no date for subsequent transfers – FAC ¶75; all transfers most likely time barred); Trifish SP Transfers (made May 19, 2003, March 3, 2004, June 30, 2004, September 29, 2004 and December 29, 2006 FAC ¶86; all transfers time barred); Wilshire Bundy Transfers (transaction closed February 21, 2007; transfers were "subsequent" – FAC ¶¶90, 93; all transfers most likely time barred); Tritowne Transfer (made June 15, 2004 – FAC ¶101; all transfers time barred); Trigrove Transfer (made October 5, 2004 – FAC ¶96; all transfers time barred); and Red Feather Transfers (made commencing January 12, 2004 and February 4, 2002 – FAC ¶¶124-125; all transfers most likely time barred).¶

15

LANDAU GOTTFRIED & BERGER LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

transfer is barred by the statute of limitations.[12]  The Trustee should be compelled to specifically

identify each transfer he contends was the subject of an oral agreement to repay to avoid the

necessity of the parties having to litigate claims that may be barred by the statute of limitations.  If

he does not, then Defendants and the Court may be required to waste time and expense litigating

matters that the Trustee has no right to enforce.

The Trustee alleges that "Defendants agreed to be bound without written agreement

and/or confirmed such agreement by their conduct."  FAC ¶ 142, at 26:21-22.  He does not allege

the terms and conditions of the purported contract(s), but rather just offers the legal conclusion that

"as to each of the Namvar Family Transfers, Namco and Defendants understood and agreed that the

transfers . . . would be repaid to Namco with interest from the time of such transfers."  FAC ¶ 141,

at 26:18-20.  The Trustee does not allege (1) when each contract was entered into; (2) the nature of

each transfer; (3) if the transfer was a loan of money, to which Defendant was the loan made;

(4) whether a "transfer" was due on demand, due immediately on receipt or due at some specific

time in the future; or (5) the amount of the agreed-upon interest rate.  Of even greater significance,

the Trustee nowhere alleges, or even hints at, what consideration each defendant received for his

alleged oral agreement.  Putting aside all other defects in the Third Claim for relief, the Trustee's

claim for breach of oral contract cannot stand without alleging those facts.

The Third Claim for relief is equally defective if it is interpreted to be a claim for

breach of an implied contract.  An implied contract "consists of obligations arising from a mutual

agreement and intent to promise where the agreement and promise have not been expressed in

words."  *Silva v. Providence Hospital of Oakland*, 14 Cal.2d 762, 773, 97 P.2d 798 (1939); Cal.

Civ. Code § 1621.  In order to plead a cause of action for implied contract, "the facts from which

the promise is implied must be alleged."  *Youngman v. Nevada Irrigation District*, 70 Cal.2d 240,

247, 74 Cal. Rptr. 398, 449 P.2d 462 (1969); *California Emergency Physicians Medical Group v.*

*PacifiCare of California*, 111 Cal. App. 4th 1127, 1134, 4 Cal. Rptr. 3d 583 (2003) (same).  Here,

---

[12]  The "Trifish SP Transfers" were made on May 19, 2003, March 3, 2004, June 30, 2004, September 29, 2004 and December 29, 2006; all transfers are time barred.  The "Tritowne Transfer" was made on June 15, 2004 and is time barred.  The Trigrove Transfer" was made on October 5, 2004 and is time barred.

LANDAU GOTTFRIED & BERGER LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1  the Trustee has not pleaded any facts from which the alleged promise to repay Namco can be

2  implied.  All that the Trustee pleaded is the ambiguous legal conclusion that one, some or all of

3  the 33 defendants "agreed" that the identified transfers "would be repaid to Namco" with an

4  unspecified amount of interest.  This is not a sufficient pleading of an implied contract.  As a result,

5  if the Third Claim for Relief is not dismissed with prejudice because it is time barred, it

6  nevertheless must be dismissed because it is not well pleaded.

### D. The Fourth Claim For Relief Does Not State A Claim On An Open Book Account.

"A *book account* is a detailed statement of debit/credit transactions kept by a creditor

in the regular course of business, and in a reasonably permanent manner. . . .  In one sense, an *open-book account* is an account with one or more items unsettled.  However, even if an account is

technically settled, the parties may still have an open-book account, if they anticipate possible

future transactions between them." *Reigelsperger v. Siller*, 40 Cal.4th 574, 579, n.5, 53 Cal. Rptr.

3d 887, 150 P.3d 764 (2007) (italics in original).  "It is, of course, necessary for the book to show

against whom the charges are made." *Joslin v. Gertz,* 155 Cal. App. 2d 62, 65-66, 317 P.2d 155

(1957) (citations omitted).[13]

A common count may be used to state a cause of action on an open book account.

*Carter v. Canty*, 181 Cal. 749, 751-52, 186 P. 346 (1919).  Essential allegations of a common count

are (1) statement of indebtedness in a sum certain, (2) consideration and (3) non-payment. *First

Interstate Bank of California v. State of California*, 197 Cal. App. 3d 627, 635, 243 Cal. Rptr. 8

(1987); *Allen v. Powell*, 248 Cal. App. 2d 502, 512, 56 Cal. Rptr. 715 (1967).  The Trustee has not

pleaded these elements in the Fourth Claim for Relief.

---

[13] "Book account" is defined in Cal. Civ. Code § 337a as: "a detailed statement which constitutes the principal record of one or more transactions between a debtor and a creditor arising out of a contract or some fiduciary relation, and shows the debits and credits in connection therewith, and against whom and in favor of whom entries are made, is entered in the regular course of business as conducted by such creditor or fiduciary, and is kept in a reasonable permanent form and manner and is (1) in a bound book, or (2) on a sheet or sheets fastened in a book or to backing but detachable therefrom, or (3) on a card or cards of a permanent character, or is kept in any other reasonably permanent form or manner."

LANDAU GOTTFRIED & BERGER LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

The Fourth Claim for relief begins with a wholesale incorporation by reference of the 145 paragraphs preceding the Fourth Claim for Relief (FAC ¶146, at 28:5-6), and then alleges that "Namco and Defendants engaged in regular financial transactions" (FAC ¶147, at 28:7), and that "Defendants owe Namco money" (FAC ¶149, at 28:10). This, too, is an impermissible shotgun pleading. *See, Sollberger v. Wachovia Securities, LLC*, 2010 U.S. Dist. LEXIS 66233, *13 (C.D. Cal. June 30, 2010) ("One common type of shotgun pleading comes in cases with multiple defendants where the plaintiff uses the omnibus term 'Defendants' throughout a complaint by grouping defendants together without identifying what the particular defendants specifically did wrong."). The Trustee has sued 33 defendants in this adversary proceeding, yet failed to allege the existence of an open book account with any specific defendant. As the court explained in *Sollberger*, "[t]his shotgun pleading style deprives Defendants of knowing exactly what they are accused of doing wrong." That exactly is the situation here.

Turning to the required elements of a common count to recover on an open book account, the Trustee first alleges that Namco "kept accounts of the debits and credits in the investments in which the Namvar Family Transfers were made" and that "Defendants owe Namco money on such accounts, in the amounts and by the Defendants alleged in paragraph 136, *supra*." FAC ¶¶148-149, at 28:9-12. First, "accounts of the debits and credits in the investments in which the Namvar Family Transfers were made" does not allege the existence of an open book account (as defined in Cal. Civ. Code § 337a) with any named Defendant. One would expect that if the Trustee believed that an open book account exists between Namco and, for example, defendant Hooshang Namvar, or between Namco and defendant Homayoun Namvar or between Namco and defendant Ramin Namvar, he would plead the existence of such an account. But he has not.

Second – and as if failure to allege the existence of an open book account were not enough to doom his claim to failure – the Trustee attempts to establish the "statement of indebtedness in a sum certain" element of his claim by alleging that the 33 named Defendants "owe Namco money on such accounts, in the amounts and by the Defendants alleged in paragraph 136, *supra*." FAC ¶149, at 28:11-12. But Paragraph 136 does not identify the amounts allegedly owed. It states in its entirety: "Mousa, Sean and Ramin substantially assisted Ezri and Tony in breaching

LANDAU GOTTFRIED & BERGER LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

18

LANDAU GOTTFRIED & BERGER LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1  their fiduciary duty." FAC ¶ 136, at 25:25-26. This pleading error alone renders the Fourth Claim

2  for Relief fatally defective, since it does not specify the amount allegedly owed by each Defendant.

3  Defendants are not required to search through hundreds of paragraphs of allegations to find the

4  correct paragraph to which the Trustee intended to, but did not, refer.

5  Third, the Fourth Claim for Relief does not allege facts showing "consideration" –

6  the second element of a common count on an open book account. In fact, consideration is not

7  mentioned at all in the Fourth Claim for Relief.

8  Separately any one of these defects is enough to justify granting Defendants' motion

9  to dismiss. Taken together, they require that the Fourth Claim for Relief be dismissed.

10  **E.   The Fifth Claim For Relief Is Not An Actionable Claim Because Unjust**

11  **Enrichment Is A Remedy, Not A Claim.**

12  "[T]here is no cause of action in California for unjust enrichment." *Lopez v.*

13  *Washington Mutual Bank, F.A.*, 2010 U.S. Dist. LEXIS 38307, *28-*29 (E.D. Cal. Apr. 16, 2010);

14  *Walker v. Equity 1 Lenders Group*, 2009 U.S. Dist. LEXIS 40991 (S.D. Cal. 2009) (same); *Jogani*

15  *v. Superior Court*, 165 Cal. App. 4th 901, 911, 81 Cal. Rptr. 3d 503 (2008) (same); *Melchior v.*

16  *New Line Productions, Inc.*, 106 Cal. App. 4th 779, 794, 131 Cal. Rptr. 2d 347 (2003) (same). The

17  term unjust enrichment "does not describe a theory of recovery, but an effect: the result of a failure

18  to make restitution under circumstances where it is equitable to do so." *Lauriedale Associates, Ltd.*

19  *v. Wilson*, 7 Cal. App. 4th 1439, 1448, 9 Cal. Rptr. 2d 774 (1992); *Melchoir*, 106 Cal. App. 4th at

20  793 ("Unjust enrichment is '"a general principle, underlying various legal doctrines and remedies,'"

21  rather than a remedy itself. . . . It is synonymous with restitution.") (citations omitted).

22  Here, as was true in *Lopez*, the Trustee's claim for "unjust enrichment" does not

23  constitute a stand-alone claim for relief and must be dismissed.

24  **F.   The Sixth, Seventh, Eighth and Tenth Claims For Relief Are Not Well Pleaded**

25  **And Must Be Dismissed**.

26  The Sixth, Seventh, Eighth and Tenth Claims for Relief seek to avoid alleged

27  preferential transfers. They are not well pleaded, and on that ground must be dismissed. The Sixth

28  Seventh and Tenth Claims for Relief must be dismissed with prejudice because they cannot be

amended to state a preference avoidance claim and, additionally they are time barred by the
provisions of 11 U.S.C. § 553(b).

### 1. The Sixth, Seventh and Tenth Claims For Relief are are setoffs that cannot be preferential transfers under 11 U.S.C. § 547.

The Sixth, Seventh and Tenth Claims purport to be claims brought pursuant to 11
U.S.C. §§ 547 and 550 to avoid and recover preferential transfers. In fact, there were no
"transfers." Instead, in each case, a book entry was made which resulted in a setoff of debts
running between Namco and the transferee. The Trustee alleges that the setoff constituted a
preference under 11 U.S.C. § 547, under a theory that the so-called transfer was made on account of
an unspecified antecedent debt within one year of the Petition Date, and seeks to recover the
transfer not only from the LLC transferee, but also from Tony, Sean and Ramin Namvar.[14]

The so-called "transfers" alleged by the Trustee in his Sixth, Seventh and Tenth
Claims for Relief are not "transfers" at all. They are setoffs of mutual debts. *See* FAC ¶¶ 98, 103
and 113, at 19:11-14, 20:10-13 and 22:8-11. Bankruptcy Code section 553 governs setoffs in
bankruptcy. Section 547, which deals with preference claims arising out of transfers of a debtor's
property, is inapplicable to claims of preference arising upon the offsetting of accounts. *Campos v.
Wells Fargo Bank*, 345 B.R. 678, 684 (E.D. Cal. 2005). *See, Lee v. Schweiker*, 739 F.2d 870, 873
n. 4 (3d Cir. 1984) ("Where a setoff right is being asserted, *section 553*, rather than *section 547*,
governs the creditors' rights") (emphasis in original); *In re Centolella*, 142 B.R. 624, 627 (Bankr.

---

[14] The Sixth Claim for Relief seeks to avoid as preferential a purported transfer to Trigrove, LLC which, in fact, was a set off of debts running between Trigrove and Namco (the "Trigrove Transfer"). The Trustee seeks to recover the Trigrove Transfer not only from Trigrove, but also from Tritowne, LLC Trifish, LLC and Tony, Sean, and Ramin Namvar. FAC, ¶¶ 96-100, at 19:1-26.

The Seventh Claim for Relief seeks to avoid as preferential a purported transfer to Tritowne, LLC which, in fact, was a set off of debts running between Tritowne and Namco (the "Tritowne Transfer"). The Trustee seeks to recover the Tritowne Transfer not only from Tritowne, but also from Trifish and Tony, Sean, and Ramin Namvar. FAC ¶¶ 101-105, at 20:1-25.

The Tenth Claim for Relief seeks to avoid as preferential a purported transfer for the benefit of Trifish, LLC The purported transfer was effected by Namco's assumption of a liability of Trifish to RPM, LLC and concomitant setoff of a liability owed by Namco to Trifish (the "RPM Transfer"). In fact, no transfer occurred, but book entries were made which effected a set off of debts running between Trifish and RPM and between Trifish and Namco. The Trustee seeks to recover the RPM Transfer not only from Trifish, but also from Tony, Sean, and Ramin Namvar. FAC ¶¶ 111-114, at 22:1-19.

N.D.N.Y. 1992) ("questions of setoff under the Code are governed exclusively by Code § 553, and a setoff is thus not avoidable as a preference under Code § 547"); *In re Voight*, 24 B.R. 983, 987 (Bankr. N.D. Tex. 1982); *In re Lott*, 79 B.R. 869, 870 (Bankr. W.D. Mo. 1987); *In re Morgan*, 77 B.R. 81, 84 (Bankr. S.D. Miss. 1987); *Luper v. Banner Industries, Inc. (In re Lee Way Holding Co.*), 105 B.R. 404, 416 (Bankr. S.D. Ohio 1989).

The Bankruptcy Code defines the term "transfer" as: "(A) the creation of a lien; (B) the retention of title as a security interest; (C) the foreclosure of a debtor's equity of redemption; or (D) each mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with – (i) property; or (ii) an interest in property." 11 U.S.C. § 101(54). A "setoff" does not fall within the Code's definition of "transfer." A setoff is an "adjustment [] of mutual debts arising out of separate transactions between the parties." *Campos*, 345 at 685 n. 4, quoting *In re Harmon*, 188 B.R. 421, 425 (B.A.P. 9th Cir. 1995). The transactions alleged by the Trustee in his Sixth, Seventh and Tenth Claims for Relief fall clearly within the rubric of setoffs, and are not transfers. Accordingly, section 547(b) is inapplicable, and the Sixth, Seventh and Tenth Claims for Relief must be dismissed with prejudice.

**2.  The Sixth, Seventh and Tenth Claims for Relief are time barred.**

The Trustee's allegations in the Sixth, Seventh and Tenth Claims for Relief make out clear pre-petition setoffs of mutual debts running between the Debtor and the Defendants. Thus, section 553, not section 547, governs the determination of whether the so-called transfers were preferential. Under section 553(b), the Trustee may recover only those offsets that were made "on or within 90 days before the date of filing of the petition . . . ." Neither section 553(b) nor any other section of the Code provides for an extension of that recovery period beyond 90 days – whether the offset was made by or for the benefit of insiders or otherwise. Here, the Trustee has alleged that all of the offsets that he characterizes as "transfers" were made outside of the 90-day avoidance period prescribed by section 553(b). As a result, the Trustee cannot avoid these offsets under section 553, and his Sixth, Seventh and Tenth claims for Relief must be dismissed with prejudice.

///

///

LANDAU GOTTFRIED & BERGER LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

## 3.   The Eighth Claim for Relief is insufficiently pleaded.

The Eighth Claim for Relief purports to plead a claim for avoidance and recovery of a preference under 11 U.S.C. § 547.  That section authorizes the avoidance of "any transfer of an interest in property" if the transfer is:

(1)   To or for the benefit of a creditor;

(2)   For or on account of an antecedent debt owed by the debtor before such transfer was made;

(3)   Made while the debtor was insolvent;

(4)   Made – (A) on or within 90 days before the date of the filing of the petition; or (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

(5)   That enables such creditor to receive more than such creditor would receive if – (A) the case were a case under chapter 7 of this title; and (B) the transfer had not been made; and (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b).

The Eighth Claim for Relief recites the elements of a preference substantially in the words of the statute, but does not contain any factual allegations in support of those naked conclusions.  It merely identifies a series of transactions which allegedly are subject to avoidance. FAC ¶¶ 106-108, at 21:1-17.[15]  A complaint that merely identifies transactions allegedly subject to avoidance and then recites the language of §547 does not meet the minimum pleading requirements for a preference claim under *Iqbal* and *Twombly*.  *See, Official Committee of Unsecured Creditors Hydrogen, L.L.C. v. Blomen (In re Hydrogen, L. L. C.),* 2010 Bankr. LEXIS 1106 (Bankr. S.D.N.Y.

---

[15]   Assuming that the setoff transactions that give rise to the Sixth, Seventh and Tenth Claims for Relief can be considered to be "transfers" subject to avoidance under § 547 (and they cannot), those claims for relief suffer from the identical pleading defects as the Eighth Claim for Relief and also must be dismissed on these grounds.  *See,* FAC ¶¶ 96-100, 101-105 and 111-114, at 19:1-26, 20:1-25 and 22:1-19.

LANDAU GOTTFRIED & BERGER LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1    Apr. 20, 2010) (holding that a complaint that merely identifies transactions allegedly subject to

2    avoidance does not meet the *Iqbal* and *Twombly* pleading requirements). Here, too, the Trustee's

3    formulaic recitations of the elements of his preference claims are insufficient as a matter of law to

4    provide a factual basis for the claims, and the Eighth Claim for Relief must be dismissed.

5               The first element that the Trustee must plead in a preference action is that the

6    transfer was made "to or for the benefit of *a creditor*." 11 U.S.C. § 547(b)(1) (emphasis added).

7    Here, the Eighth Claim for Relief simply alleges that the identified transfer was made to the

8    identified Defendants. *See, e.g.*, FAC ¶¶ 169, at 30:22-24 ("The Trifish Preferential Transfers were

9    transfers of an interest of Namco in property, to or for the benefit of Trifish, Sean, Tony and Ramin

10   on account of an antecedent debt owed by Namco before such transfer was made."). Substantially

11   identical allegations are contained in the Sixth, Seventh and Tenth Claims for Relief. FAC ¶¶ 155,

12   162 and 181, at 29:7-9, 30:1-3 and 32:7-9. The Trustee has not alleged that any of the Defendants

13   were creditors of Namco at the time of the identified "transfer," nor has he alleged that the

14   antecedent debt allegedly owed by Namco was owed to any of the Defendants. The Trustee thus

15   has failed to plead the necessary first element of a preference claim. *See, Angell v. Havari (In re*

16   *Caremerica, Inc.)*, 409 B.R. 346, 351 (Bankr. E.D.N.C. 2009) (conclusory allegation that "each

17   preferential transfer was made to or for the benefit of the Defendant receiving such preferential

18   transfer as a creditor of the debtors" is insufficient). Here, of course, the Trustee has not even

19   conclusorily alleged that any of the Defendants were creditors of Namco.

20              The second element that must be pleaded by the Trustee is that the purported

21   "transfers" were made "for or on account of an antecedent debt owed by the debtor before such

22   transfer was made." U.S.C. § 547(b)(2). To satisfy this requirement, the Trustee simply parrots the

23   statutory language without setting forth any facts in support of his allegation. *See, e.g.,* FAC

24   ¶¶ 169, at 30:22-24 (transfer was "on account of an antecedent debt owed by Namco before such

25   transfer was made"). Substantially identical allegations are made in the Sixth, Seventh and Tenth

26   Claims for Relief. FAC ¶¶ 155, 162 and 181, at 29:7-9, 30:1-3 and 32:7-9. Any number of cases

27   have held that such a bare allegation does not satisfy the pleading requirements of *Iqbal* and

28   *Twombly*.

LANDAU GOTTFRIED & BERGER LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

23

LANDAU GOTTFRIED & BERGER LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1    [T]he trustee must assert the nature and amount of the antecedent

2    debt in order to allege a plausible claim for relief.  In the case at bar, the

3    Amended Complaint makes the conclusory assertion that each preferential

4    transfer was made "for, or on account of, an antecedent debt owed by the

5    Transferor to the Defendant before the transfer was made."  However, the

6    trustee fails to assert facts supporting the existence of an antecedent debt

7    owed by the debtors to the defendants.  ***In order to satisfy the pleading***

8    ***requirements under Iqbal, the court finds that the trustee is obligated to***

9    ***allege facts regarding the nature and amount of the antecedent debt***

10    ***which, if true, would render plausible the assertion that a transfer was***

11    ***made for or on account of such antecedent debt.***

12    *Angell v BER Care, Inc. (In re Careamerica, Inc.)*, 409 B.R. 737, 751 (Bankr. E.D.N.C. 2009)

13    (emphasis added); *Angell v. Burrell (In re Caremerica, Inc.)*, 409 B.R. 759, 764 (Bankr. E.D.N.C.

14    2009) (same"). *See also, Valley Media v Borders (In re Valley Media)*, 288 B.R. 189, 192 (Bankr.

15    D. Del. 2003) (requiring "an identification of the nature and amount of each antecedent debt").

16    The Trustee also must plead that the transfer was "made while the debtor was

17    insolvent."  11 U.S.C. § 547(b)(3).  To satisfy that requirement, all that the Trustee has alleged is

18    that the subject transfer "was made while Namco was insolvent."  FAC ¶ 156, at 29:10.  Again, the

19    identical allegation appears in the Sixth, Seventh and Tenth Claims for Relief.  FAC ¶¶ 163, 170

20    and 182, at 30:4, 30:25 and 32:10.  The Code presumes that the Debtors were "insolvent on and

21    during the 90 days immediately preceding the date of the filing of the petition."  11 U.S.C. § 547(f).

22    The petition was filed on December 22, 2008.  Accordingly, the presumption is that the Debtors

23    were insolvent from September 23, 2008 through December 22, 2008.  All of the "transfers" that

24    give rise to the Sixth, Seventh, Eighth and Tenth Claims for Relief occurred before September 23,

25    2008.  Accordingly, the Trustee must allege facts that, if true, would demonstrate that Namco was

26    actually insolvent when each of the so-called "transfers" was made. *See Angell v. Burrell (In re*

27    *Caremerica, Inc.)*, 409 B.R. 759, 764-765 (Bankr. E.D.N.C. 2009) ("In this case, the trustee asserts

28    that 'the preferential transfers were made while the [t]ransferor was insolvent.'  Without facts

24

LANDAU GOTTFRIED & BERGER LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1  supporting allegations of insolvency, however, the Trustee's mere recitation of an element of a

2  section 547 preference claim fails to satisfy the heightened pleading standard applicable to transfers

3  made before the 90-day preference period."). Neither the Eighth Claim for Relief – nor the Sixth,

4  Seventh and Tenth Claims for Relief if treated as preference claims – allege facts that, if true,

5  would be sufficient to meet that burden.

6  The final element of a preference under section 547 requires the Trustee to allege

7  that the Defendants received more than they would have received if the case were one under chapter

8  7 of the Code. 11 U.S.C. § 547(b)(5). Once again, the Trustee recites the language of the statute,

9  but supplies no facts indicating what the alleged creditor would have received under Chapter 7.

10  FAC ¶¶ 159, 166, 173, 179 and 185 at 29:14-17, 30:8-11, 31:1-4 and 32:13-16.[16]

11  Thus, the Eighth Claim for Relief (and the Sixth, Seventh and Tenth Claims for

12  Relief if they were to be considered as transfers avoidable under § 547) fail to meet the pleading

13

14

---

15  [16]  The Trustee clearly cannot plead the final element of an avoidance action under § 547 in his Sixth, Seventh
    and Tenth Claims for Relief because the effect of the setoff of mutually existing debts cannot satisfy the requirements

16  of the fifth element of a preference under § 547 – the realization of more than the creditor would have received under
    Chapter 7 if the transfer had not been made. Section 506(a) provides that a claim subject to setoff under § 553 is a

17  secured claim "to the extent of the amount subject to setoff." See generally, *Mason & Dixon Lines, Inc. v. St.
    Johnsbury Trucking Co. (In re Mason & Dixon Lines, Inc.)*, 65 B.R. 973, 977 (Bankr. M.D.N.C. 1986); *In re Santoro*

18  *Excavating, Inc.*, 32 B.R. 947, 950 (Bankr. S.D.N.Y. 1983); *Lill v. Bricker (In re Lill)*, 116 B.R. 543, 549 (Bankr. N.D.
    Ohio 1990); *Simon v. Engineered Protection Systems, Inc. (In re Hatfield Elec. Co.)*, 91 B.R. 782, 786 (Bankr. N.D.

19  Ohio 1988); *Still v. Congress Financial Corp. (In re Southwest Equipment Rental, Inc.)*, 137 B.R. 263, 269 (Bankr.
    E.D. Tenn.1992); *See also* 4 COLLIER ON BANKRUPTCY ¶ 506.03[4][a] (Alan N. Resnick & Henry J. Sommer, eds., 15th

20  ed. rev. 2009). Thus, since prepetition transfers made to fully secured creditors have no preferential effect, a prepetition
    setoff likewise will have no preferential effect. *LPC Alvarado Phase II v. Walsh (In re LCO Enters.)*, 12 F.3d 938, 941

21  (9th Cir. 1993) ("If a creditor is fully secured, a prepetition transfer to him is not preferential because the secured
    creditor is entitled to 100% of his claim.").

22
    Moreover, there should be no difference whether the case were a case under Chapter 7 or under Chapter 11.

23  Bankruptcy Code section 553(a) states:

24  Except as otherwise provided in this section and in sections 362 and 363 of this title, *this
    title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the*

25  debtor that arose before the commencement of the case under this title against a claim of such
    creditor against the debtor that arose before the commencement of the case. . .

26  11 U.S.C. § 553(a) (emphasis added.). And if the offset had not been made prepetition, the setoff right would have been
    preserved, and would have been entitled to adequate protection in Namco's Chapter 11 case. *Bank of America. Nat'l*

27  *Trust & Savings Ass'n v. Edgins (In re Edgins)*, 36 Bankr. 480, 483 (B.A.P. 9th Cir. 1984); see, also, 5 COLLIER ON
    BANKRUPTCY ¶¶ 553.04[4] and 553.04[5], at 553-74-553-76 (Alan N. Resnick & Henry J. Sommer, eds., 15th ed. rev.

28  2009).

requirement established by *Iqbal* and *Twombly*, are insufficient as a matter of law and must be dismissed.

### G. The Eleventh Claim For Relief For Constructive Fraudulent Transfer Fails To State A Claim For Relief Against Any Of The Defendants.

The Eleventh Claim for Relief seeks to recover seventeen different transfers made by Namco at different times, to different parties and under different circumstances as alleged fraudulent transfers under Cal. Civ. Code §§ 3439.04(a)(2)[17] and 3439.05[18], as made applicable to this adversary proceeding by 11 U.S.C. § 544. FAC ¶ 188, at 33:1-7. The Trustee does not allege which of the 17 transfers (which include the "transfers" alleged in the Sixth, Seventh and Tenth Claims for Relief, each of which was a setoff, not a transfer) were made to which of the 33 defendants, but rather only states in the caption of his Eleventh Claim for Relief that it is brought "Against all Defendants." FAC at 32:26. Moreover, the Trustee fails to allege any facts in support of his legal conclusions that there were fraudulent transfers. Specifically, to state his claim under Cal. Civ. Code § 3439.05(a)(2) the Trustee concludes without factual basis that "Namco did not receive reasonable equivalent value" in exchange for any one of the 17 transactions which are amassed in the Eleventh Claim for Relief and that at the time those transactions were made, Namco

---

[17] California Civil Code § 3934.04(a)(2) is the functional equivalent of 11 U.S.C. § 548(a)(1)(B)(ii)(II) and (III) and provides:

    a. A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether that creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation as follows:

                             \*         \*         \*

        (2) Without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor either:

            (A) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction.

            (B) Intended to incur, or believed or reasonably should have believed that he or she would incur, debts beyond his ability to pay as they came due.

[18] California Civil Code § 3934.05 is the functional equivalent of 11 U.S.C. § 548(a)(1)(B)(ii)(I) and provides:

    A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

LANDAU GOTTFRIED & BERGER LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1   "(i) was engaged or was about to be engaged in a business or transaction for which the remaining

2   assets of Namco were unreasonably small in relation to the business or transaction; or (ii) intended

3   to incur, or reasonably should have believed that it would incur, debts beyond its ability to pay as

4   they came due." FAC ¶¶ 188, 190, at 33: 1-7, 13-15. This is nothing more than a recitation of the

5   language of Cal. Civ. Code § 3439.04(a)(2)(A) and (B). *See*, footnote 17, *supra*.

6           The Trustee's claim under Cal. Civ. Code § 3439.05 also is substantially a verbatim

7   recitation of the language of the statute. *See*, footnote 18, *supra*. There, he alleges that the 17

8   identified transfers "were made without receiving reasonably equivalent value in exchange, and

9   Namco was insolvent at the time of each transfer, in that at fair valuations, the sum of its debts was

10  greater than all of its assets." FAC ¶ 190, at 33:13-15. Such rote recitation is not a sufficient

11  pleading of a fraudulent transfer claim.

12          First, Code section 544(b)(1) requires that before the Trustee can invoke Cal. Civ.

13  Code §§ 3439.04(a)(2) and 3439.05, there must be "a creditor holding an unsecured claim that is

14  allowable under section 502 of this title or that is not allowable only under section 502(e) of this

15  title." The Trustee must allege the existence of such a creditor. *Yelverton v. Homes at Potomac*

16  *Greens Associates, L.P. (In re Yelverton)*, 2010 Bankr. LEXIS 1339, *11 (Bankr. D.D.C. Apr. 22,

17  2010) ("A trustee seeking to avoid a transfer of the debtor in property or an obligation incurred by

18  the debtor must identify a 'creditor holding an unsecured claim that is allowable under § 502' . . . .

19  In other words, [Plaintiff] had to identify an actual unsecured creditor that both held a claim at the

20  time [of the transfer sought to be avoided], and had that claim as an allowed claim in this

21  bankruptcy."). *See, Dicello v. Jenkins (In re International Loan Network)*, 160 B.R. 1, 18 (Bankr.

22  D.D.C. 1993) ("The trustee may satisfy his requirement by identifying just one creditor.").

23  Additionally, under Cal. Civ. Code § 3439.04(a)(2) the Trustee must allege the existence of – and

24  identify – such a creditor. Here, the Trustee has neither alleged the existence of a qualifying

25  creditor nor identified such a creditor. As a result, the Trustee's Eleventh Claim for Relief is

26  defective and must be dismissed.

27          Second, to state a claim under Cal. Civ. Code § 3439.05, there must be "a creditor

28  whose claim arose **before** the transfer was made." Cal. Civ. Code §3439.05 (emphasis added). *See,*

LANDAU GOTTFRIED & BERGER LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

*T W M Homes, Inc. v. Atherwood Realty & Investment Co., Inc.*, 214 Cal. App. 2d 826, 843, 29 Cal. Rptr. 887 (1963) ("We are of the opinion therefore that it protects only existing creditors and that the person invoking the section must establish that he was a creditor at the time of the conveyance."). Moreover, the Trustee must allege not only the existence of such a creditor, but also to satisfy the *Iqbal* and *Twombly* pleading requirements must identify the creditor. *Yelverton*, 2010 Bankr. LEXIS 1339 at *11. Here, the Trustee has done neither. All that he has done is to allege that "[a]s of the Petition Date, there was at least one creditor whose claim arose prior to [the transfers]." FAC ¶ 191, at 33:16-17 This is insufficient for two reasons – (1) the fact that a creditor may have existed as of the Petition Date does not satisfy the statutory requirement that a creditor must exist at the time of the transfer in order to avoid the transfer under § 3439.05; and (2) the Trustee has not identified the creditor.

Third, although the Trustee has alleged that Namco "was insolvent at the time of each transfer," he has not alleged any factual basis for that legal conclusion. Instead, the FAC merely gives a formulaic recitation of the element. That is not enough to bring the FAC into the realm of plausibility. *See, e.g., Dixon v. Ruth (In re Gluth Bros. Construction, Inc.)*, 424 B.R. 368 (Bankr. N.D. Ill. 2009) (granting motion to dismiss fraudulent transfer action because Trustee did not "allege at least some minimal factual support" for insolvency allegation); *Angell v BER Care, Inc. (In re Careamerica, Inc.), supra*, 409 B.R. at 752 ("the trustee must allege facts sufficient to show that . . . insolvency is plausible"); *Angell v. Day (In re Careamerica, Inc.)* 415 B.R. 200, 208 (Bankr. E.D.N.C. 2009) (sustaining motion to dismiss because "facts supporting the debtors' insolvency at the time of the transfer" missing from complaint). Compare, *Joseph v. Frank (In re Troll Communications, LLC)*, 385 B.R. 110, 123-24 (Bankr. D. Del. 2008), where an insolvency allegation was found to be sufficient because the trustee's pleading contained a valuation of the debtors' accounts payable and other liabilities, as well as a negative valuation of the debtors' tangible net worth. In addition, the trustee provided notes from the debtors' accountant expressing the unlikelihood that the debtors could continue as a going concern.

Third, although the Trustee seeks to avoid 17 named transfers, he does not identify the date of those transfers, he does not identify the individual(s) or entity(ies) to whom or which the

LANDAU GOTTFRIED & BERGER LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

transfer was made and, in many cases, he gives no information at all about the transfer. For

example, the Trustee seeks to avoid the so-called "Flamingo Road Transfers." Those transfers are

described in FAC ¶ 66 as follows "[I]t was Namco that made all monthly payments on the Mirae

Bank loan from the closing date until October 1, 2008, and paid the property taxes. Namco made a

total of $2,015,845 in post-purchase transfers, for a combined total of $5,689,645 (the "Flamingo

Road Transfers")." No specific transfer is identified by date or amount and no specific transferee is

named, although the Eleventh Claim for Relief purports to seek a judgment against all 33

defendants named in the FAC.

The Trustee also seeks to avoid what he calls the Sunset Springs Transfers, which he

describes as a $35,497,957 "advance" by Namco to Lancam, LLC. FAC ¶ 70, at 13:14-16. The

Trustee then alleges that "Namco credited Lancam with $28,949,596 in repayments, leaving an

account balance of $6,648,361, with interest of $2,062,254 through September 15, 2010. Thus the

total owed to Namco in repayment of the Sunset Springs Transfers is $8,710,715." FAC ¶ 73, at

14:1-3). Again, the Trustee gives no information about the transfers, does not identify the

transferee(s) and, most importantly does not give the date or amount of any specific transfer.

Similar problems exist with substantially all of the 17 transfers. This type of pleading does not

satisfy the requirements of Fed. R. Civ. P. 8(a) and the heightened pleadings standards of *Iqbal* and

*Twombly* because it does not set forth the basic facts on which the Trustee's claim is based. It

therefore does not show that the relief sought by the Trustee is plausible. *See, e.g., Angell v. Burrell

(In re Careamerica)*, 2009 Bankr. LEXIS 2328, *7 (Bankr. E.D.N.C. July 28, 2009) (dismissing

preference claim for failure to allege "dates or amounts of each alleged transfer").

Fourth, the Trustee has not adequately pleaded the "less than reasonably equivalent

value" element of his claim. All that he says – twice (apparently for emphasis) – is that Namco

"did not receive reasonably equivalent value in exchange for" the transfers he seeks to avoid and

that such transfers "were made without receiving reasonably equivalent value in exchange." FAC

¶¶ 188, 190, at 33:1, 13-14. As Defendants have noted a number of times already, "a plaintiff must

plead "more than labels and conclusions, and a formulaic recitation of the elements of a cause of

action . . . ." *Twombly* at 570. The Trustee is required "to support these allegations with factual

LANDAU GOTTFRIED & BERGER LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

content describing the consideration received by each transferor . . . . In the absence of such factual

content, the trustee cannot show that avoidance of transfers under a theory of constructive fraud is

plausible." *Angell v. Haveri (In re Careamerica), supra*, 409 B.R. at 354. *See also, Yelverton*

*supra*, 2010 Bankr. LEXIS at *6 (339, *11(only mention of reasonably equivalent value was

conclusory statement that "at the time of the foreclosure, the Debtor was insolvent and did not

receive 'reasonably equivalent' value for the transfer;" court held that "[s]imply reciting

§ 548(a)(1)(B)'s test for fraudulent transfer avoidance actions is insufficient under *Twombly* to

survive Chase's motion to dismiss."). The identical allegations in this case deserve no better fate.

Finally, the Trustee has failed to plead any factual basis whatsoever for his allegation

that "Namco was insolvent at the time of each transfer." FAC ¶ 190, at 33:14-15. His allegation

simply is a quotation of the language in Cal. Civ. Code § 3439.02(a). Here, as in *Yelverton*, where

plaintiff simply recited the § 548(a)(1)(B) avoidance test, "this conclusory assertion is insufficient

to survive the motion to dismiss." *Id.* at *7.

### H. The Fifteenth Claim For Relief Is Not An Actionable Claim Because Declaratory Relief Is A Remedy, Not A Claim.

"[D]eclaratory and injunctive relief are not causes of action; rather, they are

remedies." *Rosenfeld v. JPMorgan Chase Bank, N.A.*, 732 F. Supp. 2d 952, 975 (N.D. Cal. 2010)

(dismissing claim for declaratory relief). *See also, Lane v. Vitek Real Estate Industries Group*, 713

F. Supp. 2d 1092, 1104 (E.D. Cal. 2010) (dismissing claim for "declaratory and injunctive relief"

where plaintiffs" other claims were dismissed since "declaratory and injunctive relief are not causes

of action in and of themselves"); *Johnson v. Bank United F.S.B.*, 2010 U.S. Dist. LEXIS 138078,

*14 (E.D. Cal. Dec. 16, 2010) (same); *Santos v. Countrywide Home Loans*, 2009 U.S. Dist. LEXIS

103453, *13 (E.D. Cal. Nov. 5, 2009) ("Declaratory and injunctive relief are not independent

claims, rather they are forms of relief."). Since declaratory relief is not a recognized free-standing

claim, it must be dismissed.

Additionally, courts have recognized that where "a party has a fully matured cause

of action for money, the party must seek the remedy of damages, and not pursue a declaratory relief

claim." *Jensen v. Quality Loan Service Corp.*, 702 F. Supp. 2d 1183, 1189 (E.D. Cal. 2010). *See,*

LANDAU GOTTFRIED & BERGER LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

*e.g., Canova v. Trustees of Imperial Irrigation District Employee Pension Plan*, 150 Cal. App. 4th

1487, 1497, 59 Cal. Rptr. 3d 587 (2007) ("Where, as here, a party has a fully matured cause of

action for money, the party must seek the remedy of damages, and not pursue a declaratory relief

claim."); *Mangindin v. Washington Mutual Bank*, 637 F. Supp. 2d 700, 707 (N.D. Cal. 2009) ("A

claim for declaratory relief is unnecessary where an adequate remedy exists under some other cause

of action"); *Smithkline Beecham Corp. v. Continental Ins. Co.*, 2004 U.S. Dist. LEXIS 15751 *2

(E.D. Pa. 2004) ("Because Smithkline's breach of contract claims will afford Smithkline full relief,

if successful, Smithkline's declaratory judgment claims are duplicative and will be dismissed.").

"Similarly, where a plaintiff has alleged a substantive cause of action, a declaratory relief claim

should not be used as a superfluous 'second cause of action for the determination of identical

issues' subsumed within the first.'" *Jensen, supra,* 702 F. Supp. at 1189; *see*, *United States v.*

*Washington,* 759 F.2d 1353, 1356-57 (9th Cir. 1985) ("Declaratory relief should be denied when it

will neither serve a useful purpose in clarifying and settling the legal relations in issue nor terminate

the proceedings and afford relief from the uncertainty and controversy faced by the parties.")

The Fifteenth Claim for Declaratory Relief is duplicative of Plaintiff's other claims.

The FAC states at paragraph 214 that Plaintiff seeks "a declaration that Plaintiff is entitled

possession and title to all property" namely for the money allegedly "transferred in the Namvar

Fraudulent Transfers," which are those transfers collectively labeled and grouped together at

paragraph 188 of the FAC. The Fifteenth Claim for Declaratory Relief is no different than

Plaintiff's Eleventh Claim for Avoidance and Recovery of Fraudulent Transfers and is also

overlapping of (and internally inconsistent with) the Trustee's generalized claims for money

damages alleged in his First, Second and Third Claims for Relief. For each of these reasons, the

Fifteenth Claim for Relief must be dismissed.

## I.    The Sixteenth Claim For Relief Fails To Plead A Claim For Equitable Subordination.

The Sixteenth Claim for Relief purports to be a claim for equitable subordination.

"Although a bankruptcy court has the authority to subordinate a claim on equitable grounds, . . .

equitable subordination is an unusual remedy which should be applied only in limited

31

LANDAU GOTTFRIED & BERGER LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

circumstances." *Feder v. Lazar (In re Lazar)*, 83 F.3d 306, 309 (9th Cir. 1996) (citations omitted). *See also, In re Fabricators, Inc.*, 926 F.2d 1458, 1464 (5th Cir. 1991) ("Despite the laudable animus of the doctrine, this Court recognizes that equitable subordination is an unusual remedy which should be applied only in limited circumstances. . . . Moreover, the doctrine is remedial, not penal, and should be applied only to the extent necessary to offset the specific harm that the creditors suffered on account of the inequitable conduct.") (citations omitted). The Sixteenth Claim for Relief is fatally defective for any number of reasons, each of which standing alone requires dismissal.

First, the Trustee does not identify which of the 33 named defendants is the subject of the Sixteenth Claim for Relief. The caption says that the claim is directed against "the Namvar Defendants and LLC Defendants," and those terms appear to include all of the Defendants. See, FAC ¶¶ 1 and 7, at 1:1-13 and 3:5-17 (defining "Namvar Defendants" and "LLC Defendants"). This ambiguity is exacerbated by the allegation in FAC ¶ 218, which says that the Trustee is asserting his Sixteenth Claim for Relief only against "**[c]ertain** of the Namvar Defendants and/or LLC Defendants in which any of them may claim a membership interest . . . ." FAC ¶ 218, at 37:24-26. Defendants apparently are expected to guess which of them fall within the class of "certain" defendants.

Second, the Trustee alleges no factual basis for his claim. To the extent that FAC ¶ 217 incorporates by reference all of the allegations contained in all 216 of the preceding paragraphs of the FAC, it is meaningless and is an impermissible shotgun allegation that makes it impossible for a defendant to ascertain what facts underlie the Trustee's claim against that particular defendant – assuming that any defendant can determine that the Sixteenth Claim for Relief is asserted against him, her or it.

Third, to the extent that the Trustee bases his equitable subordination claim upon alleged fraudulent conduct, his claim must be pleaded with the specificity required by Fed. R. Civ. P. 9(b), made applicable to this adversary proceeding by Fed. R. Bankr. P. 7009. *In re AlphaStar Ins. Group Ltd.*, 383 B .R. 231, 276-77 (Bankr. S.D. N.Y. 2008) (fraud-based equitable subordination claims must be pleaded with particularity). The Trustee has not met that pleading

LANDAU GOTTFRIED & BERGER LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

requirement. Instead, he has alleged only the most general of legal conclusions that contain no
detail whatsoever.

> "[A] party must state with particularity the circumstances constituting the fraud."
> Fed. R. Civ. P. 9(b). The plaintiffs must include the "who, what, when, where, and
> how" of the fraud. Additionally, "[w]here multiple defendants are asked to respond
> to allegations of fraud, the complaint must inform each defendant of his alleged
> participation in the fraud."

*Lane v. Vitek Real Estate Industries Group*, 713 F. Supp. 2d 1092, 1102-03 (E.D. Cal. 2010)
(citations omitted). Obviously, the Sixteenth Claim for Relief does not meet that pleading standard.

Finally, equitable subordination applies only to allowed claims. *See, e.g., Tronox Inc. v. Anadarka Petroleum Corp. (In re Tronox Inc.)*, 429 B.R. 73, 109 (Bankr. S.D.N.Y. 2010)
("The great weight of authority is that 'Section 510(c) does not permit subordination absent an allowed claim.'"); *Lehman Commercial Paper, Inc. v. Palmdale Hills Property, LLC (In re Palmdale Hills Property, LLC)*, 423 B.R. 655, 666 (B.A.P. 9th Cir. 2009) ("Section 510(c)(1)
allows for subordination of otherwise allowed claims 'when the principles of equity would be so offended by the allowance of such claims on a parity with those of other creditors.'") (quoting 4
COLLIER ON BANKRUPTCY ¶ 510.01 (Alan N. Resnick & Henry J. Sommer, eds. 15th ed. rev.
2009)); 11 U.S.C. § 510(c) (permitting subordination of "all or part of an allowed claim to all or part of another allowed claim"). Here, the Trustee not only has not alleged that the claims he seeks to subordinate are allowed claims, he has not even alleged that the claims are *existing* claims. This defect, too, requires that Defendants' motion to dismiss the Sixteenth Claim for relief be dismissed.

**J.      The "Objection to Claims" Is Improper.**

The Trustee's Objection to Claim purports to be an objection to every claim filed by each of the 33 defendants sued in this adversary proceeding. The Bankruptcy Rules explicitly prohibit such wholesale lumping of objections. *See*, Fed. R. Bankr. P. 3007(c) ("Unless otherwise ordered by the court or permitted by subdivision (d), **objections to more than one claim shall not be joined in a single objection**.") (emphasis added). Here, there is no order of court permitting

LANDAU GOTTFRIED & BERGER LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

lumping of objections to claims, nor does Fed. R. Bankr. P. 3007(d) permit such lumping. The

Trustee's objection is improper on its face and must be dismissed.

Even if the Trustee were permitted to lump together his objections to all claims filed

by any of the 33 defendants in this adversary proceeding, his Objection to Claim still is defective.

First, it does not identify the claims to which the trustee is objecting. The Trustee's reference to

"any claim asserted in this case" by any of the 33 defendants does not identify any claim. Indeed,

the Trustee does not alleged that any defendant has even filed a claim – in which case the Trustee

would be objecting to theoretical claims that may be filed by one or more defendants at some

unspecified date in the future. Second, the Trustee does not set forth the factual basis for his

objection. In substance, all that he alleges is that he is entitled to recover "property" from some or

all of the 33 defendants and/or is entitled to avoid transfers made to some or all of those defendants

and, therefore, all claims asserted by any of the 33 defendants should be disallowed until each such

defendant "has paid the amount or turned over any such property for which such entity or transferee

is liable . . . ." FAC ¶¶ 223-224, at 38:11-17. The Trustee does not plead any facts to support his

legal conclusions. He does not identify which defendants filed claims, what those claims are for, or

the amount of money or the identity of the property that any defendant allegedly must return to the

estate before his, her or its claim can be allowed. No defendant can be expected to respond to such

general and meaningless allegations. Defendants' motion to dismiss the Objection to Claim must

be granted.

///

///

///

///

///

///

///

///

///

34

## IV.

## CONCLUSION.

For each of the foregoing reasons, the First, Second, Third, Fourth, Fifth, Sixth,

Seventh, Eighth, Tenth, Eleventh, Fifteenth and Sixteenth Claims for Relief fail to plead viable

claims against these moving Defendants, and this motion to dismiss should be granted.  Similarly,

because the Objection to Claims is fatally defective, it must be overruled.

Dated March 28, 2011                    Respectfully submitted,

LANDAU GOTTFRIED & BERGER LLP
RICHARD S. BERGER
PETER J. GURFEIN


By:_____
                Richard S. Berger
Attorneys for defendants Hooshang Namvar,
Homayoun Namvar, Ramin Namvar, Nataly Namvar,
Trifish, LLC, Tribun, LLC, Believers, LLC, Net, LLC,
Light Source Management, LLC (fka Light Source,
LLC), Lacy 20, LLC, Woodman Partners, LLC,
Tritowne, LLC and Trigrove, LLC

LANDAU GOTTFRIED & BERGER LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

EXHIBIT C

Richard M. Pachulski (CA Bar No. 90073)
Dean A. Ziehl (CA Bar No. 84529)
Alan J. Kornfeld (CA Bar No. 130063)
Gillian N. Brown (CA Bar No. 205132)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd., 11th Floor
Los Angeles, California 90067-4100
Telephone: 310/277-6910
Facsimile: 310/201-0760
E-mail:rpachulski@pszjlaw.com
         dziehl@pszjlaw.com
         gbrown@pszjlaw.com
Special Counsel for Bradley D. Sharp, Chapter 11
Trustee for Estate of Namco Capital Group, Inc.

# UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA
## LOS ANGELES DIVISION

|  |  |
|---|---|
| In re:<br><br>NAMCO CAPITAL GROUP, INC., a California corporation,<br><br>        Debtor. | Case No.: 2:08-bk-32333-BR<br><br>Chapter 11 |
| BRADLEY D. SHARP, solely in his capacity as Chapter 11 Trustee of NAMCO CAPITAL GROUP, INC.,<br><br>        Plaintiff,<br><br>vs.<br><br>MOUSA NAMVAR, HOOSHANG NAMVAR, HOMAYOUN NAMVAR, RAMIN NAMVAR, HELEN SHADI, HILDA BAYANFAR, LIDA SHRAGA, NATALY NAMVAR, DANIEL NAMVAR, BENJAMIN NAMVAR, MALKA NAMVAR, SHIRAH NAMVAR, TRIFISH, LLC, TRIBUN, LLC, MAGDIEL, LLC, TRISISTER, LLC, BELIEVERS, LLC, NET, LLC, LIGHT SOURCE, LLC, LA HOTEL VENTURE, LLC, LANCAM PROPERTIES, LLC, LACY 20, LLC, NAM 5, LTD., NAMCO 8 LLC, WISHLAB 90, LLC, BUNHERST, LLC, DGADE OF DELAWARE, LLC, TOYRAM, LLC, NAMARI, LLC, WOODMAN PARTNERS, LLC, TRITOWNE, LLC, TRIGROVE, LLC and HARON SHABATIAN,<br><br>        Defendants. | Adv. Proc. No. 2:10-ap-02945<br><br>**TRUSTEE'S OPPOSITION TO MOTIONS TO DISMISS FIRST AMENDED COMPLAINT AND MOTION FOR MORE DEFINITE STATEMENT**<br><br>Date: May 3, 2011<br>Time: 2:00 p.m.<br>Place: Courtroom 1668 |

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**<u>TABLE OF CONTENTS</u>**

<u>Page</u>

I.     INTRODUCTION ................................................................................................. 1

II.    SUMMARY OF COMPLAINT ........................................................................... 2

       A.    Introductory Allegations ............................................................................ 2

       B.    General Allegations .................................................................................... 3

             1.    LA Marriott Hotel ........................................................................... 3

             2.    Las Vegas – Flamingo Road ........................................................... 4

             3.    Las Vegas – Sunset Springs ............................................................ 5

             4.    Nam 5, Ltd. Account Receivable ..................................................... 5

             5.    DGADE of Delaware, LLC .............................................................. 6

             6.    Security Pacific Bank ...................................................................... 6

             7.    Wilshire Bundy Ground Lease ......................................................... 6

             8.    Trigrove, LLC .................................................................................. 7

             9.    Tritowne, LLC .................................................................................. 7

             10.   Trifish, Mousa and RPM Preferential Transfers ............................ 7

             11.   Family Transfers .............................................................................. 7

             12.   Namco 8 and Red Feather Mall ...................................................... 8

III.   ARGUMENT ....................................................................................................... 8

       A.    The First Claim for Breach of Fiduciary Duty is Well-Pled.................... 9

             1.    The factual allegations make plausible that Tony had a fiduciary
                   duty to Namco ................................................................................. 9

             2.    Sufficient facts are pled to support a reasonable inference that
                   Tony breached every fiduciary duty that can be owed by an officer
                   to his corporation. ........................................................................ 10

             3.    The Business Judgment Rule is not a basis for dismissal .............. 11

       B.    The Second Claim for Aiding and Abetting Breach of Fiduciary Duty is
             Well-Pled ................................................................................................. 12

             1.    The Trustee has standing ............................................................... 12

             2.    An underlying claim for breach of fiduciary duty has been pled ... 13

             3.    The factual allegations are sufficient to state a plausible claim.... 14

       C.    The Third Claim for Breach of Express or Implied Contract is Well-Pled ........ 16

             1.    Plausible contract claims may reasonably be inferred ................. 16

             2.    The Statute of Limitations defense raises factual questions that
                   preclude dismissal ........................................................................ 18

3. The Alter Ego Allegations are Sufficient ............................................... 19

D. The Fourth Claim for Open Book Account is Well-Pled ..................................... 20

E. The Fifth Claim for Unjust Enrichment is Valid ................................................ 20

F. The Sixth Through Tenth Claims to Avoid Preferences are Well-Pled............... 21

1. The setoffs may be avoided as preferences and are not time-barred ....... 22

2. The preference claims are sufficiently pled ............................................. 24

G. The Eleventh Claim for Relief for Fraudulent Transfer is Well-Pled ................. 26

H. The Twelfth Claim for Relief for Fraudulent Transfer is Well-Pled .................. 29

I. The Thirteenth Claim for Relief for Constructive Trust is Valid ........................ 30

J. The Fourteenth Claim for Relief for Fraudulent Transfer is Not Challenged ..... 31

K. The Fifteenth Claim for Relief for Declaratory Relief Will Be Dismissed ......... 31

L. The Sixteenth Claim for Equitable Subordination is Well-Pled .......................... 31

M. The Objection to Claims is Proper ...................................................................... 33

IV. THE MOTION FOR MORE DEFINITE STATEMENT SHOULD BE DENIED ....... 33

V. CONCLUSION.............................................................................................................. 35

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Angell v. BER Care, Inc. (In re Careamerica),*
409 B.R. 737 (Bankr. E.D.N.C. 2009) .................................................................... 24

*Angell v. Burrell (In re Careamerica),*
409 B.R. 759 (Bankr. E.D.N.C. 2009) .................................................................... 24

*Ashcroft v. Iqbal,*
556 U.S. __, 129 S.Ct. 1937 (2009) ......................................................................... 8

*Automotriz etc. De California v. Resnick,*
47 Cal.2d 792 (1957) ............................................................................................ 19

*Baggett v. Hewlett-Packard Co.,*
582 F.Supp.2d 1261 (C.D. Cal. 2007) .................................................................... 21

*Bell Atlantic Corp. v. Twombly,*
550 U.S. 544, 127 S. Ct. 1955 (2007) ..................................................................... 8

*BGJ Assoc., LLC v. Superior Court,*
75 Cal.App.4th 952, 89 Cal.Rptr.2d 693 (1999) .................................................... 31

*Boles v. Filipowski (In re Enivid, Inc.),*
345 B.R. 426 (Bankr. D. Mass. 2006) .................................................................... 16

*California Emergency Physicians Medical Group v. PacifiCare of California,*
111 Cal.App.4th 1127, 4 Cal.Rptr.3d 583 (2003) .................................................. 18

*Campos v. Wells Fargo Bank,*
345 B.R. 678 (E.D. Cal. 2005) ............................................................................... 22

*CarrAmerica Realty Corp. v. NVIDIA Corp.,*
302 Fed.Appx. 514, 517 (9th Cir. 2008) ................................................................ 12

*Casey v. U.S. Bank National Ass'n,*
127 Cal.App.4th 1138, 26 Cal.Rptr.3d 401, 409-11 (2005) ................................... 14

*Desaigoudar v. Meyercord,*
108 Cal.App.4th 173 Cal.Rptr.2d 408 (2003) ........................................................ 12

*Dunkin v. Boskey,*
82 Cal.App.4th 171, 198 n. 15, 98 Cal.Rptr.2d 44 (2000) ..................................... 21

*Dunn v. Castro,*
621 F.3d 1196, 1205 n.6 (9th Cir. 2010) ................................................................. 8

*Durham v. SMI Indus., Corp.,*
882 F.2d 881 (4th Cir. 1989) ................................................................................. 23

*Floyd v. Hefner,*
556 F.Supp.2d 617 (S.D. Tex. 2008) ...................................................................... 13

*GAB Business Services,*
83 Cal.App.4th at 416 ...................................................................................... 9, 10

*GAB Business Services, Inc. v. Lindsey & Newsom Claim Services, Inc.,*
83 Cal.App.4th 409, 99 Cal.Rptr.2d 665 (2000) ..................................................... 9

*Gaillard v. Natomas Co.,*
208 Cal.App.3d 1250, 256 Cal.Rptr. 702 (1989) ................................................... 11

*Giuliano v. U.S. Nursing Corp. (In re Lexington Healthcare Group, Inc),*

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

339 B.R. 570 (Bankr. D. Del. 2006) ........................................................ 27

*Glenshaw Glass Co. v. Ontario Grape Growers Mktg. Bd. (In re Keystone Foods, Inc.),*
145 B.R. 502, 507 (Bankr. W.D. Pa. 1992) ........................................... 23

*Hernandez v. Lopez,*
180 Cal.App.4th 932, 103 Cal.Rptr.3d 376 (2009) ............................... 21

*In re 3dfx Interactive, Inc.,*
389 B.R. 842 (Bankr. N.D. Cal. 2008) ................................................... 29

*In re Amcast Indus. Corp.,*
365 B.R. 91 (Bankr. S.D. Ohio 2007) .................................................... 13

*In re C.R. Stone Concrete Contractors, Inc.,*
434 B.R. 208 (Bankr. D. Mass. 2010) ................................................... 25

*In re Careamerica, Inc.* ................................................................. 24, 28, 29

*In re Cellphone Fee Termination Cases,*
193 Cal.App.4th 298, --- Cal.Rptr.3d ----, 2011 WL 743462 *4 (2011) ............................. 21

*In re Felt Mfg. Co., Inc.,*
371 B.R. 589 (Bankr. D. N.H. 2007) ..................................................... 27

*In re First Financial Associates, Inc.,*
371 B.R. 877 (Bankr. N.D. Ind. 2007) ................................................... 27

*In re General Motors Class E Stock Buyout Sec. Lit.,*
694 F. Supp. 1119 (D. Del. 1988) .......................................................... 12

*In re Greater Southeast Cmty. Hosp. Corp.,*
333 B.R. 506 (Bankr. D. Col. 2005) ...................................................... 13

*In re Image Worldwide, Ltd.*
139 F.3d 574 (7th Cir. 1998) .................................................................. 27

*In re KDI Holdings, Inc.,*
277 B.R. 493 (Bankr. S.D.N.Y. 1999) ................................................... 13

*In re Musicland Holding Corp.,*
398 B.R. 761 (Bankr. S.D.N.Y. 2008) ................................................... 27

*In re National Century Financial Enterprises, Inc., Inv. Litigation,*
617 F.Supp.2d 700 (S.D. Ohio 2009) .................................................... 13

*In re Oakwood Homes Corp.,*
340 B.R. 510 (Bankr. D. Del. 2006) ...................................................... 13

*In re Randall's Island Family Golf Ctrs., Inc.,*
290 B.R. 55 (Bkrtcy. S.D.N.Y.2003) ..................................................... 24

*In re Rehab Project, Inc.,*
238 B.R. 363 (Bankr.N.D.Ohio 1999) ................................................... 23

*In re Schneider,*
417 B.R. 907 (Bankr. N.D. Ill. 2009) ..................................................... 27

*In re Semcrude, L.P.,*
399 B.R. 388 (Bankr. D. Del. 2009) ...................................................... 23

*In re Senior Cottages of America, LLC,*
482 F.3d 997 (8th Cir. 2007) ................................................................. 13

*In re Sharp Intern. Corp.,*
281 B.R. 506 (Bankr. E.D.N.Y. 2002) ................................................... 14

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

*In re Student Finance Corp.*,
  335 B.R. 539 (D. Del. 2005) ................................................................................. 13

*In re The Heritage Organization, L.L.C.*,
  413 B.R. 438 (Bankr. N.D. Tex. 2009) .................................................................. 27

*In re TOUSA, Inc.*,
  442 B.R. 852 (Bankr. S.D. Fla. 2010) ................................................................... 24

*In re Valley Media, Inc.*,
  288 B.R. 189 (Bankr. D. Del. 2003) ................................................................. 24, 25

*In re Walnut Leasing Co.*,
  No. 99-526, 1999 WL 729267, at *5 (E.D.Pa. Sept. 8, 1999) .............................. 13

*J.C. Peacock, Inc. v. Hasko*,
  196 Cal.App.2d 363, 16 Cal.Rptr. 525 (1961) ...................................................... 21

*Jones v. H.F. Ahmanson*,
  1 Cal.3d 93, 110, 81 Cal.Rptr. 592 (1969) ........................................................... 10

*Kenneally v. Bank of Nova Scotia*,
  711 F.Sup.2d 1174 (S.D. Cal. 2010) ..................................................................... 31

*LaChapelle v. Berkshire Life Ins. Co.*,
  142 F.3d 507 (1st Cir. 1998) ................................................................................. 19

*Lectodryer v. Seoulbank*,
  77 Cal.App.4th 723, 91 Cal.Rptr.2d 881 (2000) ................................................... 21

*Manzarek v. St. Paul Fire & Marine Ins. Co.*,
  519 F.3d 1025 (9th Cir. 2008) ................................................................................. 9

*Matter of United Sciences of America, Inc.*
  893 F.2d 720 (5th Cir. 1990) ................................................................................. 23

*Moya v. Northrup*,
  10 Cal.App.3d 276, 88 Cal.Rptr. 783 (1970) ........................................................ 21

*Neilson v. Union Bank of California, N.A.*,
  290 F.Supp.2d 1101 (C.D. Cal. 2003) ................................................................... 14

*Official Committee of Unsecured Creditors of The IT Group, Inc., v. Brandywine
  Apartments (In re The IT Group, Inc.)*,
  313 B.R. 370 (Bankr. D. Del. 2004) ...................................................................... 25

*Old Republic Ins. Co. v. FSR Brokerage, Inc.*,
  80 Cal.App.4th 666, 95 Cal.Rptr.2d 583 (2000) ................................................... 21

*Pardo v. Pacificare of Texas, Inc. (In re APF Co.)*,
  264 B.R. 344 (Bankr. D. Del. 2001) ...................................................................... 23

*Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP*,
  133 Cal.App.4th 658, 35 Cal.Rptr.3d 31 (2005) ................................................... 12

*Reeves v. Hanlon*,
  33 Cal.4th 1140, 17 Cal.Rptr.3d 289 (2000) ........................................................... 9

*Reigelsperger v. Siller*,
  40 Cal.4th 574, 53 Cal.Rptr.3d 887 (2007) ........................................................... 20

*Resolution Trust Corp. v. Dean*,
  854 F.Supp. 626 (D. Ariz. 1994 ............................................................................ 34

*Shaoxing County Huayue Import & Export v. Bhaumik*,
  191 Cal.App.4th 1189, 120 Cal.Rptr.2d 303 (2011) ............................................. 13

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

*Shearson Lehman Hutton, Inc. v. Wagoner*,
 944 F.2d 114 (2d Cir. 1991)............................................................................................ 12

*Sun Co., Inc. (R & M) v. Badger Design & Constructors, Inc.*, 939 F.Supp.
 365 (E.D. Pa. 1996)......................................................................................................... 34

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
 551 U.S. 308 (2007)........................................................................................................... 8

*The Habitat Trust for Wildlife, Inc. v. City of Rancho Cucamonga*,
 175 Cal.App. 4th 1306, 96 Cal.Rptr.3d 813 (2009)....................................................... 31

*Varni Bros. Corp. v. Wine World, Inc.*,
 35 Cal.App.4th 880, 41 Cal.Rptr.2d 740 (1995)............................................................ 18

*Walters v. Fidelity Mortg. of Cal.*,
 730 F.Supp.2d 1185 (E.D. Cal. 2010)............................................................................ 16

*Winder v. Winder*,
 18 Cal.2d 123, 114 P.2d 347 (1941) ............................................................................. 18

## STATUTES

11 U.S.C. § 101(31) (B)(vi) ............................................................................................... 13

11 U.S.C. § 502(d) ............................................................................................................ 33

11 U.S.C. § 544(b) ............................................................................................................ 26

11 U.S.C. § 547 ..................................................................................................... 22, 23, 25

11 U.S.C. § 553 ......................................................................................................... 22, 23

11 U.S.C. § 553(a) ............................................................................................................ 22

11 U.S.C. § 553(b) .................................................................................................... 22, 23

Cal. Civ. Code § 3439.04 .................................................................................................. 26

Cal. Civ. Code § 3439.04(a) ...................................................................................... 26, 30

Cal. Civ. Code § 3439.04(a)(1).......................................................................................... 26

Cal. Civ. Code § 3439.04(a)(2).......................................................................................... 26

Cal. Civ. Code § 3439.05 ........................................................................................... 26, 27

Cal. Code Civ. Proc. § 339 ................................................................................................ 18

## OTHER AUTHORITIES

*1 Marsh, Cal. Corporation Law*
 (2d ed. 1988) § 10.3, p. 576)........................................................................................... 12

5 Collier on Bankruptcy
 ¶ 553.09[1][c][ii] (Alan N. Resnick & Henry J. Sommer, eds.,15th ed. rev.) ..................... 23

Cal. Corp. Code § 309(a) .................................................................................................. 10

## RULES

Fed. R. Civ. Proc. 8(a)(2)..................................................................................................... 8

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Plaintiff Bradley D. Sharp, in his capacity as chapter 11 trustee (the "Trustee") of Namco Capital Group, Inc. ("Namco"), hereby opposes the motions to dismiss the *First Amended Complaint for Damages, Equitable Subordination, Declaratory and Injunctive Relief* (the "Complaint"), filed by (1) defendants Hooshang Namvar, Homayoun Namvar, Ramin Namvar, Nataly Namvar, Trifish, LLC, Tribun, LLC, Believers, LLC, Net, LLC, Light Source Management, LLC (fka Light Source, LLC), Lacy 20, LLC, Woodman Partners, LLC, Tritowne, LLC and Trigrove, LLC (collectively, the "Tribrother Defendants" and the "Tribrother Motion"), as joined by defendants Helen Shadi, Hilda Bayanfar, Lida Shraga, and Trisister, LLC, and (2) Mousa Namvar, Magdiel, LLC, DGADE of Delaware, LLC, Wishlab 90, LLC, Namco 8, LLC and Bunherst, LLC (collectively, the "Mousa Defendants" and the "Mousa Motion"), and the motion for more definite statement filed by the Tribrother Defendants. In support of such opposition, the Trustee submits the following memorandum of points and authorities.

## I.

## INTRODUCTION

The Complaint is the product of a substantial effort by the Trustee and his professionals to decipher Namco's books and track its disbursements. Hundreds of millions of dollars entrusted by creditors to Namco was distributed to Ezri Namvar and his family, or used to purchase assets that were placed in the name of hundreds of limited liability companies formed by the Namvar family with no capital, often in the form of speculative investments undertaken with little due diligence. These family transactions were made with little or no documentation other than ledger entries, and none of the protections that any prudent lender would insist upon. Ezri and his brother Tony were officers of Namco and frequently on both sides of transactions, and their brothers Sean, Ramin and Mousa were also central participants. Now these primary beneficiaries of Namco's reckless or willful cash giveaways seek to use Namco's no-document family lending policy to dismiss the Complaint without opportunity for discovery. They simultaneously depict the Complaint as reciting legal conclusions without factual support, and as an overlong exercise in shotgun pleading. It is neither. There are detailed, discrete and readily ascertainable factual allegations supporting each claim against each of defendant. Defendants' professed confusion as a result of general headings or

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

typographical errors is utterly contrived.  It is at all times clear who is being sued for what.  The Complaint provides all the notice required by Rule 8(a ).  Nor does it fail under Rule 12(b)(6), because Defendants' legal theories are in most instances contrary to law, and in all others are factually inapposite.  Accordingly, the motions should be denied.

## II.

## SUMMARY OF COMPLAINT

The following describes the organization and summarizes the substance of the Complaint, the manner in which the factual bases of the claims are alleged, and the manner in which those allegations are incorporated into its claims for relief and tied to specific Defendants.

### A.    Introductory Allegations

The Complaint alleges generally the dissipation of hundreds of millions of dollars entrusted to Namco, much of which was distributed to Ezri Namvar ("Ezri") and the other Namvar family members, principally his brothers, Mousa Namvar ("Mousa"), Hooshang Namvar ("Sean"), Homayoun Namvar ("Tony") and Ramin Namvar ("Ramin" and, collectively, the "Namvar Brothers"), and their sisters, Helen Shadi ("Helen"), Hilda Bayanfar ("Hilda") and Lida Shraga ("Lida"), along with their spouses and children.  (The defendant family members are referenced collectively as the "Namvar Defendants").  ¶ 1.  Namco distributed the money either directly to Namvar Defendants, or to limited liability companies ("LLCs") owned and controlled by Ezri and/or Namvar Defendants.  Much of the money was used to acquire and/or develop real estate projects, often with little due diligence or regard to economic fundamentals.  Namco advanced the funds without written agreements or security to LLCs that almost invariably were uncapitalized and which contributed nothing.  Namco might be repaid with interest when projects were sold at a gain, or proceeds might be rolled into a new project.  ¶¶ 2-4.  In this way Defendants enriched themselves at the expense of Namco's creditors, who were owed over $600 million when the music stopped in 2008.  ¶ 5.

The Complaint names as defendants thirteen individuals and twenty LLCs (the "LLC Defendants").  It identifies the members of each of the LLC Defendants, and where such members

are other LLC Defendants, the members of the members. Ultimate ownership of the LLC

Defendants rests with the individual Namvar Defendants. ¶¶ 26-45.

## B.    General Allegations

The General Allegations are organized in fourteen sections. Each section contains factual

allegations concerning a discrete, specifically identified investment or other use of Namco money, in

which Namco funds were transferred to or for the benefit of specified entities and individuals.[1]  ¶¶

50-126. Each such transfer or set of transfers is distinctly labeled and explained. Necessarily, each

describes the multiple layers of LLC Defendants through which the Namvar Defendants held

property paid for by Namco. Each identifies the entities and persons alleged to be responsible for

repayment, i.e., the recipients of the transfers or the property, typically LLCs, and upward through

the shell LLCs to their owner Namvar Defendants.

In turn, each claim for relief specifically references the defined transfers that are the subject

of that particular claim for relief. Several claims for relief (*e.g.*, breach of contract, open book

account, unjust enrichment and fraudulent transfer) reference these defined transfers and group them

into a single claim for relief, but in subparts and always by reference to defined transfers. As a

result, *there are no instances in which it is not clear who is being sued for what*. Defendants'

insistence that the Complaint sues everyone for everything is false, and while it is true that the

claims for relief incorporate all prior allegations by reference, the mantra of "shotgun pleading" is

inapt. In summary, the Complaint describes and defines the following sets of transfers.

### 1.    LA Marriott Hotel

Section A of the General Allegations illustrates the manner in which foundational facts are

alleged in the Complaint and so is summarized here in greater detail. It describes transfers of Namco

funds in connection with the acquisition and operations of the LA Marriott Hotel for the benefit of

family members. It alleges that Namco paid $24,133,218 of acquisition costs to Marriott and other

third parties and specifies the amounts and dates of four transfers totaling most of this amount,

---

[1] These are: (A) LA Marriott Hotel, (B) Las Vegas - Flamingo Road, (C) Las Vegas - Sunset Springs, (D) Nam 5, Ltd. Account Receivable, (E) DGADE of Delaware, LLC, (F) Security Pacific Bank, (G) Wilshire-Bundy Ground Lease, (H) Trigrove, LLC, (I) Tritowne, LLC, (J) Trifish Preferential Transfers, (K) Mousa Preferential Transfers, (L) RPM Preferential Transfers, (M) Family Transfers, and (N) Namco 8 and Red Feather Mall.

Pachulski Stang Ziehl & Jones LLP
Attorneys at Law
Los Angeles, California

$23,857,446.  ¶ 50.  It alleges further that Namco made another $3,776,115 in post-acquisition transfers that were booked to the same account.  These transfers are cumulatively labeled the "LA Marriott Transfers."  ¶ 58.

The Complaint then traces the ownership of the LLC Defendants to specific Namvar Defendants.  It identifies the entity in which title to the LA Marriott Hotel was placed, defendant LA Hotel Venture, LLC, identifies its sole member, Toyram, LLC, and that entity's sole member, Namari, LLC, then that entity's members, which included defendants Magdiel (14%), Trifish (9%) and Trisister (3%).  Finally, it identifies the members of these members, the ultimate beneficiaries of the LA Marriott Transfers:  Magdiel's owner (Mousa), Trisister's members (Helen, Lida and Hilda) and Trifish's members (Ramin, Sean and Tony).  ¶¶ 51-56.  For each LLC, it alleges the stated capital contribution of its members under the LLC agreements, typically nominal or none.  *Id*.

Finally, the Complaint alleges that based on, *inter alia*, the lack of capitalization or economic substance of the LLC Defendants and their use as mere conduits, "adherence to the fiction of the separate existence of the LLC Defendants would sanction fraud and promote injustice, and the *LLC Defendants LA Hotel Venture, Toyram, Namari, Magdiel, Trifish and Trisister and their member Namvar Defendants are jointly and severally liable for repayment of the LA Marriott Transfers*."  ¶ 59 (emphasis added).  Thus while the alter ego allegations contain general references to "LLC Defendants" and "Namvar Defendants," the request for imposition of alter ego liability is limited to the specific LLC Defendants involved in this set of transactions, and to only those Namvar Defendants that are members who own membership interests in those specific LLC Defendants.  This format is employed throughout the Complaint.

### 2.    Las Vegas – Flamingo Road

Paragraphs 60-69 describe the "Flamingo Road Transfers" of Namco funds made to acquire certain commercial real estate in Las Vegas.  It alleges four transfers of Namco funds to escrow on 6/16/05, 7/6/05, 2/23/06 and 2/24/06 in specified amounts.  It alleges that title was placed in Dynasty I Tower, LLC, owned by Ezri, and the immediate transfer of membership interests to LLC Defendant Lancam, LLC, the lack of capital contributions, its ownership by Lacy 20, LLC and its

lack of capitalization, then the ownership interests in Lacy 20 of various family members and other family-owned entities and, in turn, the interests of family members in those second and third tier entities. The Complaint further alleges that post-purchase, Namco made all payments on a bank loan to Mirae Bank from the closing date until October 1, 2008 and paid the property taxes, for a total of $2,015,845 in post-purchase transfers, bringing the total expenditures to $5,689,645. It alleges that credits of $3.7 million were made to the account as a result of a $3 million wire transfer received from a third party and another $700,000 in credits as a result of journal entries reclassifying four other transactions. It alleges that a principal balance remains of $1,989,645 on the Flamingo Road Transfers. Based on its lack of capitalization and other factors, it alleges that Lancam and its penultimate and ultimate owners, Lacy 20, Woodman Partners and their member Namvar Defendants, should be jointly and severally liable.

### 3. Las Vegas – Sunset Springs

Paragraphs 70-74 describe "Sunset Springs Transfers" of $35,497,957 by Namco to Lancam to develop vacant land in Las Vegas, acquired February 20, 2006, title to which was allocated 58% to Lancam (a shell owned by Lacy 20), and 42% to another LLC that involved certain identified Namvar Defendants and third parties. It breaks down the Namvar Defendants' ownership interests. It alleges that Lancam was credited with $28,949,596 in repayments, leaving a principal balance of $6,648,361, asserted to be owed jointly and severally by Lancam, Lacy 20, Woodman Partners and their member Namvar Defendants.

### 4. Nam 5, Ltd. Account Receivable

Paragraphs 75-77 describe an initial transfer of $5 million by Namco to Dream Team Partners, LLC on August 25, 2004 and subsequent transfers (not alleged individually) totaling $15,015,987.50 to Israeli banks for the accounts of "Dream Team Partners, LLC, Nam 5, Ltd and NUM 5 Ltd, all of which were booked under the same Namco ledger number in the name of Nam 5, alleged to be owned in equal 20% interests by Ezri, Tony, Sean, Mousa and Ramin. The Complaint alleges that $9,292,739 was repaid, leaving an unpaid principal balance of $5,723,248, for which these LLC Defendants and their owners, Tony, Sean, Mousa and Ramin, are asserted to be liable.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

### 5. DGADE of Delaware, LLC

Paragraphs 78-81 describe seven transfers by Namco to or for DGADE of Delaware, LLC ("DGADE"), alleged to be owned in 20% shares by Mousa's children. The Complaint specifies the dates and amounts and uses of the transfers, two of which were directly to DGADE. It alleges a principal balance of $6,934,030, owed jointly and severally by DGADE and Mousa. Paragraph 82 alleges that beginning in October 2008 (two months prior to Namco's bankruptcy) DGADE transferred $6,948,400 to Mousa, to hinder Namco's collection from DGADE and/or for lack of reasonably equivalent value to DGADE and rendering DGADE insolvent.

### 6. Security Pacific Bank

Paragraphs 83-89 describe transfers made by Namco for the purchase by or for various family members of stock in Security Pacific Bank, which as of December 31, 2006 was 97.53% owned by Namvar family members. The Complaint alleges: (a) 15 general journal entries and checks to Mousa, five in late 2002 and 10 on specific dates in 2003-05 (including on 12/30/05, 6/30/06 and 12/29/06, totaling $4,850,952 ("Mousa SP Transfers"); (b) 5 transfers totaling $1,807,871 to Trifish (owned by Sean, Ramin and Tony) by journal entries on 5/19/03, 3/3/04, 6/30/04, 9/29/04 and 12/29/06, offset by a $343,962 credit on 3/27/03 (the "Trifish SP Transfers"); (c) a 12/29/06 transfer of $805,231.43 to Trisister, owned by Hilda, Lida and Helen ("First Trisister SP Transfer"); and (d) a 8/29/08 transfer of $2,964,880 to Trisister ("Second Trisister SP Transfer").

### 7. Wilshire Bundy Ground Lease

Paragraphs 90-95 describe the "Wilshire Bundy Transfers" of $502,038 made by Namco to escrow for the February 21, 2007 purchase of the Wilshire Bundy Ground Lease, and another $148,373 in post-closing transfers. Title to the Wilshire Bundy Ground Lease was placed pursuant to a Tenants in Common Agreement in Tribun (owned by Trifish, i.e., Ramin, Tony and Sean), Bunherst (owned by DGADE, i.e., Mousa's children) and Bundy Dimes LLC (owned by Dimes, LLC and in turn 50% by Ezri and 50% by his children Daniel, Malka and Shirah). Certain limited debits to the accounts of Tribun and Bunherst and Bundy Dimes are alleged, along with certain limited repayments. A principal balance of $269,040 is alleged to be owed jointly and severally by Tribun, Trifish, Ramin, Sean and Tony.

**8. Trigrove, LLC**

Paragraphs 96-100 describe the "Trigrove Transfer" of $3,500,000 by Namco on October 5, 2004 to acquire a 300 unit apartment building in Jackson Mississippi, title to which was placed in Trigrove, an uncapitalized entity owned by Trifish, owned ultimately by Sean, Tony and Ramin through their own personal entities, Believers, LLC, Light Source LLC and Net, LLC, respectively. Also described is a cancellation of such liability on January 1, 2008 through a general journal entry by which it was applied toward a purported debt owned by Namco to Trifish, within 12 months of the petition date, which if given effect would constitute a preference (the "Trigrove Preferential Transfer"). Trigrove, Trifish, Ramin, Sean and Tony are asserted to be jointly and severally liable for repayment of the Trigrove Transfer or Trigrove Preferential Transfer.

**9. Tritowne, LLC**

Paragraphs 101-105 describe the "Tritowne Transfer" of $2,750,000 by Namco on June 15, 2004 for an apartment building, titled to Tritowne, an uncapitalized entity owned by Trifish (Sean, Tony and Ramin). It was not repaid. As with Trigrove, also alleged is the cancellation of this debt on January 1, 2008 by applying it against a debt owed by Namco to Trifish, which if given effect would constitute a preference (the "Tritowne Preferential Transfer"). Tritowne, Trifish, Ramin, Sean and Tony are asserted to be jointly and severally liable for repayment of the Tritowne Transfer or Tritowne Preferential Transfer.

**10. Trifish, Mousa and RPM Preferential Transfers**

Paragraphs 106-114 allege specific dates and amounts of transfers by Namco totaling $1,160,000 to Trifish ("Trifish Preferential Transfers") and $900,000 to Mousa ("Mousa Preferential Transfers"), all within a year of the bankruptcy. Also alleged is a $15.8 million preference to Trifish on 12/31/07: on that date, Namco reduced its debt to Trifish by assuming Trifish's $15.8 million debt to RPM Invesments (the "RPM Preferential Transfer").

**11. Family Transfers**

Paragraphs 115-119 allege that commencing on July 1, 1998, Namco made frequent transfers to or for the benefit of family members, and maintained accounts with credits and debits for each. Entries on such accounts are not itemized. Principal balances are alleged for the "Daniel Transfers"

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

of $51,198,185, "Benjamin Transfers" of $52,269,242, "Malka Transfers" of $51,206,578, "Shirah Transfers" of $51,243,147, and "Helen Transfers" of $767,933. Each amount is asserted to be owed by the person in whose name the account was maintained.

### 12. Namco 8 and Red Feather Mall

Paragraphs 120-126 describe the "Red Feathers Transfers" made by Namco to Namco 8, LLC, commencing February 4, 2002 and totaling $29,062,610, of which $18,594,767 was credited as paid, for a principal balance of $10,467,843. The transfers are not itemized. Ownership is traced to the Namvar Brothers. It is also alleged that Namco accounted separately for additional transfers, commencing January 12, 2004, totaling $6,454,552, with an unpaid principal balance of $3,450,455.62. Namco 8, Wishlab 90, and the Namvar Brothers are asserted to be jointly and severally liable.

**III.**

**ARGUMENT**

As Defendants acknowledge, Rule 8(a)(2) of the Federal Rules of Civil Procedure requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." On a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) courts must take as true all of the factual allegations in the complaint. *See Ashcroft v. Iqbal*, 556 U.S. __, 129 S.Ct. 1937, 1949 (2009). The complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949.

"'[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.'" *Dunn v. Castro*, 621 F.3d 1196, 1205 n.6 (9th Cir. 2010) (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)). Even when dismissal is proper under Rule

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

12(b)(6), a plaintiff must be granted leave to amend the complaint unless the complaint "'could not be saved'" by any amendment. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

## A.    The First Claim for Breach of Fiduciary Duty is Well-Pled

The First Claim for Relief (¶¶ 127-131) is asserted against Tony, an officer of Namco, for breach of fiduciary duty for his role in the wholesale dissipation of Namco's funds that is described generally in the introductory allegations and particularly through the transfers alleged throughout the General Allegations.  It incorporates the General Allegations and alleges that (1) Tony Namvar was an officer of Namco, (2) as such, he owed the corporation a fiduciary duty act in good faith, in the best interests of the corporation, with such care as an ordinarily prudent person in a like position would use under similar circumstances, and without conflict of interest, and (3) that in engaging in the conduct, directing, causing, authorizing and entering into the transactions described in the Complaint, he violated that fiduciary duty.

Both the Tribrother Motion and the Mousa Motion argue that the claim is deficient because (1) the Trustee fails to allege that Tony participated in management or exercised discretionary authority with respect to Namco's operations, (2) the Complaint fails to identify what specific duty was breached or how it was breached, and (3) it is barred by the business judgment rule.  None of these arguments have merit.

### 1.    The factual allegations make plausible that Tony had a fiduciary duty to Namco

The moving Defendants note correctly that California courts have articulated a rule that:

> an officer who participates in management of the corporation, exercising some discretionary authority, is a fiduciary of the corporation as a matter of law.  Conversely, a 'nominal' officer with no management authority is not a fiduciary.  Whether a particular officer participates in management is a question of fact.  We expect that in most cases this test will be easily met. And, as in all legally recognized fiduciary relationships, once this factual prerequisite is established, the law imposes a fiduciary duty.

*GAB Business Services, Inc. v. Lindsey & Newsom Claim Services, Inc.*, 83 Cal.App.4th 409, 420-21, 99 Cal.Rptr.2d 665 (2000), *overruled on other grounds by Reeves v. Hanlon*, 33 Cal.4th 1140, 17 Cal.Rptr.3d 289 (2000).  The court used the term "nominal" literally – in name only:  "a corporation

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

cannot make a mail clerk its fiduciary by simply bestowing upon the clerk the title of officer." *Id*. at 420. Thus the court rejected an officer's argument that he had no fiduciary duty because he could not hire or fire or sign documents. "[T]he test for fiduciary status is not control; it is, instead, merely participation in management. This low threshold is easily met in this case." *Id*. at 422.

The Complaint contains an overwhelming factual basis from which it may be deemed "plausible" that Tony had some level of participation in the management of Namco. Tony was not a mail clerk; rather, he formed Tribun and Trifish and was the direct or indirect owner of numerous other LLC Defendants and so *facilitated and was the recipient or beneficiary of many of the investments and transfers alleged in the Complaint* (and is a family member of each of the other recipients and beneficiaries). It is not just plausible but nearly certain on the alleged facts that Tony reviewed, discussed and otherwise facilitated investments or transfers with Ezri, or participated in some other manner, perhaps a very large manner, in decisions concerning the distribution of Namco funds for his own benefit and that of the family.[2]

### 2. Sufficient facts are pled to support a reasonable inference that Tony breached every fiduciary duty that can be owed by an officer to his corporation.

The moving Defendants also note correctly that California law imposes fiduciary duties to act in good faith, in the best interests of the corporation, with such care as an ordinarily prudent person in a like position would use under similar circumstances, and without conflict of interest. Cal. Corp. Code § 309(a). It is long-standing law in California that these duties apply alike to directors and officers. *GAB Business Services*, 83 Cal.App.4th at 416; *Jones v. H.F. Ahmanson*, 1 Cal.3d 93, 110, 81 Cal.Rptr. 592 (1969).

The Complaint alleges in detail the systematic looting of Namco in at least seventeen defined sets of transfers by which over $100 million of funds entrusted by investors to Namco was distributed to or for the benefit of Tony and other Namvar family members, without written agreements, collateral, guaranties or any other customary precautions that a prudent and faithful

---

[2] Tony's discussion of agency and alter ego is completely irrelevant. Motion at 5. The Complaint alleges liability based on Tony's own role, not on treating actions of agents as if they were his own, and alter ego is a basis for imposing liability, not attributing conduct to others. The Complaint alleges more than adequate facts to show plausibly that he breached his duty himself.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

manager would ensure were in place to safeguard the interests of his corporation.  It alleges further that Tony was at all relevant times an officer of Namco, a principal member of the LLC Defendants most frequently involved in these transfers and Namco projects, and almost always a direct or indirect beneficiary or family member of a beneficiary.  Tony was on both sides of many of the transfers at issue.

Based on these factual allegations, it is highly "plausible" that Tony's participation in or acceptance of benefits of any of these self-interested, unfair, imprudent and bad faith transactions violated these and any conceivable duty an officer could owe to his corporation.  Accordingly, unless the General Allegations are ignored, the argument that the claim fails to satisfy the "specificity requirements of *Iqbal* and *Twombly*" (Tribrother Motion at 7) cannot be that it consists only of "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 129 S. Ct. at 1949-50.  It must be that the allegations are <u>overinclusive</u> – they require him to "sift through every one of those [126 preceding] allegations to determine whether or not Plaintiff intended that allegation to be the basis for his breach of fiduciary duty allegations."  But the moving Defendants cite no authority entitling them to a bill of particulars that itemizes what specific aspect of Tony's conduct breached what specific fiduciary duty, what exactly it was that he directed, facilitated or acquiesced to, and how that conduct breached a specific fiduciary duty, or which transactions he caused or accepted the benefits of and how they breached his fiduciary duty. *Iqbal* and *Twombly* do not stand for such a rule of pleading. *These are details that require discovery into information that is within Tony's unique control*.  A plausible claim for breach of fiduciary duty has been pled.

### 3.     The Business Judgment Rule is not a basis for dismissal

The moving Defendants argue that the Complaint fails to allege "specific facts of unreasonable behavior" and therefore has not "sufficiently pled around the business judgment rule." Motion at 9.  They ignore adverse authority.  <u>In California, the business judgment rule does not apply to officers</u>. *Gaillard v. Natomas Co*., 208 Cal.App.3d 1250, 1265, 256 Cal.Rptr. 702 (1989) (directors were acting as officers, so "[t]he judicial deference afforded under the business judgment

Pachulski Stang Ziehl & Jones LLP
Attorneys at Law
Los Angeles, California

rule therefore should not apply.") (*citing 1 Marsh, Cal. Corporation Law* (2d ed. 1988) § 10.3, p. 576).[3]  Nor does it apply to breaches of fiduciary duty.  *Desaigoudar v. Meyercord*, 108 Cal.App.4th 173, 188, 133 Cal.Rptr.2d 408 (2003).  The argument is meritless.[4]

## B.   The Second Claim for Aiding and Abetting Breach of Fiduciary Duty is Well-Pled

The Second Claim of Relief (¶¶ 132-138) is asserted against Ramin, Sean and Mousa for aiding and abetting Tony's and Ezri's breaches of fiduciary duty.  In their motions, these Defendants contend that the claim for relief must be dismissed because the Trustee lacks standing to assert it, that there is no valid underlying claim for breach of fiduciary duty, and the allegations are conclusory.  Each argument fails.

### 1.   The Trustee has standing

The moving Defendants argue that the Trustee lacks standing to sue them for aiding and abetting breach of fiduciary duty because under the so-called "Wagoner rule" "[a] claim against a third party for defrauding a corporation with the cooperation of management accrues to creditors, not to the guilty corporation."  *Shearson Lehman Hutton, Inc. v. Wagoner*, 944 F.2d 114, 120 (2d Cir. 1991).  They assert that "[t]he Wagoner rule has been adopted in California."  Tribrother Motion at 10 n. 10.

Actually, the Wagoner rule – which applies *in pari delicto* as a question of standing rather than as an affirmative defense  – has been rejected by the Ninth Circuit, by the California court of appeal, and by most courts outside the Second Circuit (and criticized within the Second Circuit).  *CarrAmerica Realty Corp. v. NVIDIA Corp.*, 302 Fed.Appx. 514, 517 (9th Cir. 2008) ("the *Wagoner* rule has been much criticized and we decline to follow it");[5] *Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP*, 133 Cal.App.4th 658, 677, 35 Cal.Rptr.3d 31 (2005) (declining to

---

[3] The Tribrother Motion cites *Gaillard* in a footnote (Motion at 8 n. 7), but neglects to mention that it rejects application of the business judgment rule to officers.

[4] Not even the Delaware law cited in the Tribrother Motion helps their cause.  *See In re General Motors Class E Stock Buyout Sec. Lit.*, 694 F. Supp. 1119, 1132 (D. Del. 1988) ("Plaintiffs may prevent the application of the business judgment rule with well-pleaded facts establishing that the directors acted out of self-interest," and they "act in self-interest if they appear on "both sides of the transaction, or ... [derive] any personal financial benefit from it which did not devolve upon the corporation and the shareholders generally.") (citations omitted).  The Complaint alleges facts showing that Tony was frequently on both sides of the transactions at issue, and that both he and his family derived personal financial benefits...

[5] The opinion is nonprecedential but citeable per Ninth Circuit Rule 36-3(b).

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

decide *in pari delicto* defense as a question of standing because the two are "analytically distinct concepts"). *See also In re Senior Cottages of America, LLC*, 482 F.3d 997, 1003 (8th Cir. 2007) (collecting authorities criticizing *Wagoner* ). The California decision cited by Defendants does not adopt the "Wagoner rule" or even involve *in pari delicto*. It simply cites *Wagoner* for the basic proposition that a trustee may bring claims held by the bankrupt entity but not claims held by creditors. *Shaoxing County Huayue Import & Export v. Bhaumik*, 191 Cal.App.4th 1189, 1197, 120 Cal.Rptr.2d 303 (2011). In any event, standing in a federal court is a matter of federal law, not California law.

Moreover, *in pari delicto* does not even apply as an affirmative defense, much less as a challenge to the Trustee's standing. Defendants posit that since the Complaint does not allege that Sean, Ramin or Mousa are officers or directors or managers of any sort of Namco, they are "third parties" as the term is used in *Wagoner*. Tribrother Motion at 10. Not so. As family members, they are insiders of Namco under 11 U.S.C. § 101(31) (B)(vi), and caselaw is clear that *in pari delicto* is not a defense to claims against insiders. *In re National Century Financial Enterprises, Inc., Inv. Litigation*, 617 F.Supp.2d 700, 712-13 (S.D. Ohio 2009). *See In re Amcast Indus. Corp.*, 365 B.R. 91, 124 (Bankr. S.D. Ohio 2007) (in pari delicto defense "does not apply to bar claims against corporate insiders"); *Floyd v. Hefner*, 556 F.Supp.2d 617, 657-658 (S.D. Tex. 2008) (citing cases); *In re Student Finance Corp.*, 335 B.R. 539, 547 (D. Del. 2005) (" *In pari delicto* will not operate to bar claims against insiders of the debtor corporation."); *In re Walnut Leasing Co.*, No. 99-526, 1999 WL 729267, at *5 (E.D.Pa. Sept. 8, 1999) ("Vis-à-vis their corporations, insiders cannot avoid the consequences of their own handiwork."); *In re Oakwood Homes Corp.*, 340 B.R. 510, 536 (Bankr. D. Del. 2006) (" In pari delicto does not provide a defense for insiders."); *In re Greater Southeast Cmty. Hosp. Corp.*, 333 B.R. 506, 538-39 (Bankr. D. Col. 2005); *In re KDI Holdings, Inc.*, 277 B.R. 493, 518 (Bankr. S.D.N.Y. 1999) ("[T]he in pari delicto doctrine is inapplicable where a cause of action is brought against an insider."). The law would not countenance an equitable defense that affords insiders *carte blanche* to loot corporations with impunity.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

13

**2.  An underlying claim for breach of fiduciary duty has been pled**

Since the claim for relief against Tony for breach of fiduciary duty is well-pled, this is not a basis for dismissal.  Furthermore, the claim is also based on aiding and abetting *Ezri's* breach of fiduciary duty.  The Court could reasonably infer from the detailed factual allegations involving transactions that dissipated over $100 million of Namco assets that it is plausible that Ezri's conduct will satisfy the requirement of an underlying breach of Ezri's fiduciary duty to Namco.

**3.  The factual allegations are sufficient to state a plausible claim**

The moving Defendants argue that the Complaint's allegations that Sean, Ramin and Mousa knew of Tony's and Ezri's breaches of fiduciary duty and rendered substantial assistance are conclusory.  They complain about "shotgun pleading" and the incorporation of 131 preceding paragraphs into the claim, and demand "precise identification of the breaches of fiduciary duty allegedly committed by Ezri and Tony Namvar."  Tribrother Motion at 11-12.

"Generally, courts have found pleadings sufficient if they allege generally that defendants had actual knowledge of a specific primary violation."  *Neilson v. Union Bank of California, N.A.*, 290 F.Supp.2d 1101, 1120 (C.D. Cal. 2003).  That is far different than the "precise identification" standard for which they cite *In re Sharp Intern. Corp.*, 281 B.R. 506 (Bankr. E.D.N.Y. 2002).  There, the issue arose only because Sharp did *not* allege actual knowledge of the primary violation.  This was important because there were two types of wrongful conduct, only one of which was related to aiding and abetting claim.  Once the relevant violation (looting of assets) was identified, it was determined that the pleading was inadequate: plaintiff alleged only that an employee of the defendant (State Street) had reviewed reports revealing fraudulent inflation of Sharp's receivables, which the court found inadequate because "[t]he fact that a company is inflating its receivables does not necessarily mean that the company's principals are looting it."  *Id.* at 515.[6]

---

[6] Similar is *Casey v. U.S. Bank National Ass'n*, 127 Cal.App.4th 1138, 1145, 26 Cal.Rptr.3d 401, 409-11 (2005) (where actual knowledge was *not* alleged, and California law imposed no duty of investigation or disclosure on banks in favor of non-depositors, it was insufficient to allege in essence that "the banks knew something fishy was going on" because money was being withdrawn with forged checks that exceeded written limits).

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

In contrast, *Neilson* found that the requirement that banks knew of Reed Slatkin's Ponzi scheme was adequately supported by factual allegations very similar to but more general than the Complaint here:

> The complaint asserts that the Banks knew Slatkin was committing fraud and was breaching his fiduciary duties to class members. It also alleges that each bank actively participated in Slatkin's Ponzi scheme with knowledge of his crimes. Slatkin's crime, of course, was the operation of a Ponzi scheme that defrauded hundreds of investors and caused losses of hundreds of millions of dollars. The complaint details the manner in which the Ponzi scheme operated, describes Slatkin's fraudulent transactions, and outlines the Banks' involvement in these activities. It alleges, in particular, that the Banks utilized atypical banking procedures to service Slatkin's accounts, raising an inference that they knew of the Ponzi scheme and sought to accommodate it by altering their normal ways of doing business. This supports the general allegations of knowledge.

290 F.Supp.2d. at 1120-21. Indeed, the court rejected the demand that the trustee specify the breach of fiduciary duty that they allegedly knew was improper.

> The Banks argue that the pleading is insufficient because multiple types of "fraud" are alleged in the complaint. "Crimes," they assert, could refer to Slatkin's failure to register as an investment advisor or to his overdrawing of accounts, both of which are alleged in the complaint. . . . The complaint, however, references "crimes" in the context of an allegation that directly concerns Slatkin's Ponzi scheme, and asserts the Banks actively participated in it. Read liberally, as it must be for purposes of a Rule 12(b)(6) motion, this allegation pleads that the Banks knew of the Ponzi scheme. See Aetna Casualty and Surety Co., supra, 219 F.3d at 533-34 ("If one is aware that he has a role in an improper activity, . . . then surely he knows that the primary party's conduct is tortious"). The Banks' reading to the contrary seeks to parse the pleading too finely for Rule 8 purposes.

*Id*. at 1120-21. Similarly, the element of "substantial assistance" was satisfied by the allegation that the banks provided Slatkin with a steady flow of new funds, a "mechanism for managing investors' custodial accounts," and "an aura of legitimacy that allowed the scheme to flourish." *Id*. at 1109.

The Complaint alleges that Ramin, Sean and Mousa knew of the breaches of fiduciary duty by Ezri and Tony. Furthermore, the Complaint here is comparable and even more detailed than in *Neilson*. The Complaint alleges generally the systematic looting of Namco's assets to family members, and it alleges the particulars of at least 17 of these "investments" involving sets of transfers through a maze of LLC Defendants to or for the ultimate benefit of specified individual Namvar family members. These transfers of Namco cash were lacking any of the protections for repayment and other markings of an arms-length transaction that would protect Namco's rights.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

From the facts alleged it is clear that the scheme was inherently and facially tortious as to Namco. There was not just one fiduciary obligation breached nor one particular act that breached it. Rather there was an overall scheme – as in *Neilson* – and Ramin, Sean and Mousa did more than just "utilize atypical banking procedures" to facilitate it. They formed LLC Defendants that were the vehicles for the transfers, were the largest recipients and beneficiaries of Namco money, and were frequent participants in the Namco-funded development projects. Under *Neilson*, these allegations are a more than adequate basis for a plausible showing of knowledge and substantial assistance.[7]

**C.    The Third Claim for Breach of Express or Implied Contract is Well-Pled**

The Third Claim for Relief (¶¶ 139-145) specifically references certain of the transfers defined in the General Allegations, labels them the Namvar Family Transfers, and alleges as to each that: (1) it was agreed that they would be repaid, with interest; (2) Defendants agreed to be bound without a written agreement or confirmed the agreement by their conduct; and (3) all conditions to performance have been met.

Defendants claim repeatedly that the Trustee seeks to hold all Defendants liable for all transfers. That is incorrect. While the subheading states that the claim is asserted "Against All Defendants," *the Complaint in general and this claim in particular identify clearly who is responsible for which defined transfers*. The transfers are detailed and defined in the incorporated General Allegations, including the responsible parties. Further, **paragraph 144 compiles and lists in separate subparts each of the defined Namvar Family Transfers, specifying the amount owed and the persons and entities responsible for each**. It states that "[t]he Namvar Family Transfers identified below have not been repaid *by the parties responsible for the repayment of such transfers (as identified below in parentheses)*, in the following amounts (plus interest accrued after September 15, 2010)." ¶ 144 (emphasis added). (Subsequent claims for relief refer back to this list,

---

[7] Defendants' argument that the aiding and abetting claim fails to satisfy Rule 9(b) is largely irrelevant. The claim involves breach of fiduciary duty, not fraud. Rule 9(b) was deemed inapplicable on much more extreme facts in *Boles v. Filipowski (In re Enivid, Inc.)*, 345 B.R. 426, 442 (Bankr. D. Mass. 2006) (misrepresentation and nondisclosure allegations were "merely components of [an] overall legal theory that the Defendants violated their duties by disregarding their own business judgment" through reckless and irrational decision making, improper domination and control, and failure to debate questionable transactions at board meetings, such allegations are not "based in fraud" and are not subject to Rule 9(b) heightened pleading requirements. ).

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

but inadvertently refer to its location in the original complaint, ¶ 136, which Defendants pretend is terribly confusing).

### 1. Plausible contract claims may reasonably be inferred

The Trustee has alleged the elements of a breach of contract claim: (1) a contract; (2) plaintiff's performance or excuse for failure to perform; and (3) defendant's breach and (4) resulting damage to plaintiff. *Walters v. Fidelity Mortg. of Cal.*, 730 F.Supp.2d 1185, 1199 (E.D. Cal. 2010). The Trustee must plead sufficient facts to show that the claim for breach of contract is plausible. *Id.* at 1200.

The Trustee has pled facts demonstrating the existence of agreements to repay the Namvar Family Transfers. He has alleged that Namco maintained written accounts of credits and debits in respect of the transfers.[8] Moreover, he has alleged that payments have been made on the Namvar Family Transfers, thereby acknowledging the repayment obligations. The Complaint alleges that payments have been made in respect of nearly all of the Namvar Family Transfers, specifically including the LA Marriott Transfers, the Flamingo Road Transfers, the Sunset Springs Transfers, the Nam 5 Transfers, the Trifish SP Transfers, the Wilshire Bundy Transfers and the Red Feathers Transfers. Offsets were taken in respect of the Trigrove Transfers and Tritowne Transfers, which also represents acknowledgement of enforceable obligations. The Trustee has also alleged generally that transfers made by Namco in the same manner as those here were sometimes repaid with interest when the projects were sold, consistent with due on sale terms. Conversely, he has alleged no conduct by the parties suggesting any mutual intention that any of the Namvar Family Transfers be treated as short-term loans that become unenforceable two years from the date of each transfer.

Those facts give rise to plausible claims on express and implied contracts. If the Defendants were to deny that express oral agreements existed for the repayment of the Namvar Family Transfers, they would effectively be admitting to the conversion of over $100 million of Namco funds on these claims alone. Knowledge concerning specific terms on which they received Namco funds, however, rests with the Namvar Defendants. Discovery is required to ascertain them. Not all

---

[8] The Court may take judicial notice of proofs of claim filed by certain of the Defendants attaching such Namco ledgers, acknowledging their legitimacy.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

contract terms need be pled to establish a plausible claim for breach of contract. *Walters*, 730
F.Supp.2d at 1200 (finding existence of contact sufficiently pled despite failure to allege terms). It
would be an ironic and tremendous injustice if the Defendants' own failure to memorialize their
agreements to repay millions of dollars were to bar the Trustee from pleading and conducting
discovery on a claim for breach of contract to recover them.

Even if there was no express contract, there would be an implied contract. "[B]ecause no
terms were ever expressed or discussed, it was not an express written or oral contract, but rather an
implied contract, the terms of which must necessarily be determined by the parties' course of
conduct. Thus, the fact that no express contract existed does not mean there was no implied
contract." *Varni Bros. Corp. v. Wine World, Inc.*, 35 Cal.App.4th 880, 889, 41 Cal.Rptr.2d 740
(1995).

> An implied contract "consists of obligations arising from a mutual agreement and intent to
> promise where the agreement and promise have not been expressed in words." ( Silva v.
> Providence Hospital of Oakland (1939) 14 Cal.2d 762, 773, 97 P.2d 798; Civil Code § 1621.)
> In order to plead a cause of action for implied contract, "the facts from which the promise is
> implied must be alleged." (Youngman v. Nevada Irrigation Dist. (1969) 70 Cal.2d 240, 247,
> 74 Cal.Rptr. 398, 449 P.2d 462.) A course of conduct can show an implied promise. ( Varni
> Bros. Corp. v. Wine World, Inc. (1995) 35 Cal.App.4th 880, 889, 41 Cal.Rptr.2d 740
> [implied contract based upon appellant's distribution of wine for wine producer for many
> years].

*California Emergency Physicians Medical Group v. PacifiCare of California*, 111 Cal.App.4th
1127, 1134, 4 Cal.Rptr.3d 583 (2003). "[T]he elements of intention to pay on the one hand, and
expectation of compensation on the other, must be found to exist; but such elements, like other
ultimate facts, may be inferred from the relation and situation of the parties, the nature and character
of the services rendered, and any other facts or circumstances which may reasonably be said to
throw any light upon the question at issue." *Winder v. Winder*, 18 Cal.2d 123, 128, 114 P.2d 347
(1941) (citations omitted)

### 2. The Statute of Limitations defense raises factual questions that preclude dismissal

Defendants contend that because the contract claim is not based upon a written instrument, it
is governed by the two year statute of limitations of Cal. Code Civ. Proc. § 339, and since the

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

contracts do not specify a due date, it was due on demand and the claim for breach accrued immediately. They conclude that each of the Namvar Family Transfers became unrecoverable two years after it was made.

A statute of limitations defense can only be considered on a Rule 12(b)(6) motion if the complaint and any documents that properly may be read in conjunction with it show beyond doubt that the claim asserted is out of time. *LaChapelle v. Berkshire Life Ins. Co*., 142 F.3d 507, 509 (1st Cir. 1998). Here, the defense is premised on factual issues that cannot be decided on a motion to dismiss. While the Complaint does not allege any specific maturity dates, that does not mean they do not exist, and the alleged facts suggest that they did exist. The Complaint alleges that "Defendants agreed to be bound by such terms [i.e., to repay the transfers with interest] without a written agreement, and/or confirmed such agreement by their conduct." Complaint, ¶ 142. The conduct alleged is that repayment obligations were treated as enforceable by all parties long after two years after the transfers were made, as evidenced by making payments and taking offsets against obligations that, if Defendants are correct, they did not owe. The surrounding circumstances corroborate that the parties did not intend the Namvar Family Transfers to be short-term loans; many were made for the purpose of real estate acquisition and development, and were sometimes repaid when properties were sold. In short, the statute of limitations is an affirmative defense, and these are questions of fact. The claim for breach of contract cannot be summarily dismissed on this basis.

### 3. The Alter Ego Allegations are Sufficient

Mousa argues that the Trustee cannot utilize reverse-piercing to hold the LLC Defendants of which he is a member liable for any breach of contract by Mousa. Mousa Motion at 15. No such theory is asserted. Alter ego is used to pierce the zombie LLCs utilized by the Namvar Defendants so as to hold them, the true beneficiaries, liable. Mousa then argues that the Trustee has not pled sufficient facts to support an alter ego theory to hold Mousa liable for breaches of contract by the LLC Defendants of which he is a member. Mousa Motion at 16. That is frivolous. Mousa acknowledges the familiar standard and factors deemed relevant, including lack of capitalization, which alone can suffice. "If the capital is illusory or trifling compared with the business to be done

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

and the risks of loss, this is a ground for denying the separate entity privilege." *Automotriz etc. De California v. Resnick*, 47 Cal.2d 792, 796-797 (1957). Receiving tens of millions of dollars of other people's money for one's own investment purposes and one's children and holding assets purchased with such funds in a maze of shell LLCs founded with nominal or no stated capital contribution, all of which is alleged in detail in the Complaint, qualifies.

### D.    The Fourth Claim for Open Book Account is Well-Pled

The Fourth Claim for Relief (¶¶ 146-149) seeks to recover on an open book account. A "book account is a detailed statement of debit/credit transactions kept by a creditor in the regular course of business, and in a reasonably permanent manner." *Reigelsperger v. Siller*, 40 Cal.4th 574, 579, fn. 5, 53 Cal.Rptr.3d 887 (2007). Defendants have used Namco journals to evidence their proofs of claim.[9] The claim follows the Judicial Council's California Civil Jury Instructions for Judges ("CACI") 372, alleging that Namco and Defendants engaged in regular financial transactions, including the Namvar Family Transfers, that it kept accounts of the debits and credits in the investments in which the transfers were made,[10] and that "Defendants owe Namco money on such accounts in the amounts and by the Defendants alleged in paragraph 136, *supra*." ¶ 149. The referenced paragraph is the previously mentioned compilation of transfers, amounts and responsible parties, which gives clear notice which Namvar Family Transfers are attributed to which Defendants and in what amounts. It is a conspicuous full page single-spaced list that is no longer located at ¶ 136, as stated in the Complaint, but was pushed by the amendment to ¶ 144. According to the Defendants, this error means the claim must be dismissed. Mousa Motion at 19; Tribrother Motion at 19:1-4 ("This pleading error alone renders the Fourth Claim for Relief fatally defective. . . . Defendants are not required to search through hundreds of paragraphs of allegations to find the

---

[9]  The concurrently filed request for judicial notice attaches the following proofs of claims, all of which attach Namco ledgers, filed by Sean (No. 280); Woodman Partners, LLC (No. 272-2); Lacy 20, LLC (No. 248-2); Magdiel, LLC (No. 542-1); Trifish, LLC (No. 264).

[10] CACI 372 suggests: "kept an account of the debits and credits involved in the transactions." Defendants argue that the Complaint's use of "investments" instead of "transactions" means that no open book account with any Defendant has been alleged. In the context of this Complaint, however, each Defendant's liability will depend not only on direct transactions with Namco but with that Defendant's alter ego liability derived from liabilities incurred by lower tier LLCs. Given the ample notice afforded by the Complaint of the basis of this claim and its patent plausibility (not to mention Defendants' familiarity with the accounts), Defendants should conduct discovery and challenge any disputed accounts factually, not on the pleadings.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

correct paragraph.").  The allegations clearly suffice to show a plausible claim on open book accounts in respect of the Namvar Fraudulent Transfers, attributable in specific amounts to specific defendants on the basis of specific allegations concerning the underlying transactions.

### E.    The Fifth Claim for Unjust Enrichment is Valid

Defendants contend that the Fifth Claim for Relief for unjust enrichment (¶¶ 150-153) should be dismissed because unjust enrichment is not a cause of action, but only a concept, a term that describes the effect of failing to award restitution when it is warranted by equity.  The split of authority is recognized in *Baggett v. Hewlett-Packard Co.*, 582 F.Supp.2d 1261, 1270 (C.D. Cal. 2007).  *Lectodryer v. Seoulbank*, 77 Cal.App.4th 723, 726, 91 Cal.Rptr.2d 881 (2000) holds that it can be asserted as a separate claim, and the briefest of Westlaw searches confirms its common usage. *See, e.g.*, *In re Cellphone Fee Termination Cases*, 193 Cal.App.4th 298, --- Cal.Rptr.3d ----, 2011 WL 743462 *4 (2011) (trial court judgment included award on unjust enrichment claim).

It is much ado about little, except as an exercise in re-pleading if the Court requires it.  The purpose of the unjust enrichment claim is to serve as a basis for seeking restitution on equitable grounds in the event such remedy is warranted.  "Unjust enrichment is synonymous with restitution, and 'there is no particular form of pleading necessary to invoke the doctrine' of restitution." *Dunkin v. Boskey*, 82 Cal.App.4th 171, 198 n. 15, 98 Cal.Rptr.2d 44 (2000) (citation omitted); *Hernandez v. Lopez*, 180 Cal.App.4th 932, 939, 103 Cal.Rptr.3d 376 (2009).

If unjust enrichment is not deemed a viable claim upon which to seek restitution, the Trustee will replead to assert a common count for money had and received as a basis for the same relief, with little or no substantive effect.  "When a party lends or pays out money at the request of another, the law will imply a promise or obligation to repay the money stemming from the equitable principle of avoiding unjust enrichment.  *Old Republic Ins. Co. v. FSR Brokerage, Inc*., 80 Cal.App.4th 666, 676, 95 Cal.Rptr.2d 583 (2000) (citing *Moya v. Northrup*, 10 Cal.App.3d 276, 280–281, 88 Cal.Rptr. 783 (1970)).  Recovery under a common count for money had and received is also authorized in cases where a defendant knowingly joins an agent or fiduciary in an enterprise where the fiduciary breaches his or her fiduciary duty.  *J.C. Peacock, Inc. v. Hasko*, 196 Cal.App.2d 363, 369, 16

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Cal.Rptr. 525 (1961). Notably, "[a] pleading which is sufficient as a common count is not generally subject to general demurrer or to special demurrer on ground of uncertainty. . . . It is no objection to the complaint that the times when the indebtedness, or the various items thereof, accrued are not set forth." *Moya v. Northrup*, 10 Cal.App.3d at 279-80.

**F.     The Sixth Through Tenth Claims to Avoid Preferences are Well-Pled**

A subset of the Namvar Family Transfers and other transfers that are separately identified in the General Allegations, are alleged to be avoidable preferences. They are incorporated in the Sixth through Tenth Claims for Relief, which assert a right to avoid and recover as preferences the Trigrove Preferential Transfer (described in ¶¶ 96-99 of the General Allegations), the Tritowne Preferential Transfer (¶¶ 101-104), the Trifish Preferential Transfers (¶¶ 106-107), the Mousa Preferential Transfers (¶¶ 109-110) and the RPM Preferential Transfer (¶¶ 111-113).

The moving Defendants attack these claims on several grounds: (1) the alleged transfers are not transfers at all, but setoffs that cannot constitute preferences; (2) as setoffs, they are time-barred; and (3) the allegations are insufficient. The first two arguments misconstrue basic bankruptcy law and the third lacks merit.

**1.     The setoffs may be avoided as preferences and are not time-barred**

Trifish observes correctly that the Trigrove, Tritowne and RPM Preferential Transfers are setoffs. Within a year of the bankruptcy, Namco reduced its payable to Trifish by $6,250,000 by cancelling its receivables from Trigrove and Tritowne, and it reduced its payable to Trifish by another $15.8 million by assuming Trifish's debt to RPM. (The Trifish and Mousa Preferential Transfers are cash transfers.)

Trifish argues that setoffs are governed exclusively by section 553 of the Bankruptcy Code, and that "Section 547, which deals with preference claims arising out of transfers of a debtor's property, is inapplicable to claims of preference arising upon the offsetting of accounts." Tribrother Motion at 20 (citing *Campos v. Wells Fargo Bank*, 345 B.R. 678 (E.D. Cal. 2005)).

The argument misconstrues the law and *Campos*. Section 553 governs a creditor's setoff rights. Section 553(a) preserves a creditor's right to offset mutual prepetition debts after the petition

date. Section 553(b) addresses the effect of setoffs taken within 90 days prior to the bankruptcy, the period in which payments to non-insider creditors that improve their recovery may be recovered as preferential. In substance, it applies to prepetition setoffs the same treatment that is applied under section 547 to prepetition payments: If a creditor takes a setoff of mutual debts within the 90 day window, the trustee may recover only the amount by which the creditor's position was improved by the setoff. *See* 11 U.S.C. § 553(b). It is solely in that context that *Campos* and other courts articulate the principle that preferences arising from setoffs are governed exclusively by section 553 and not by section 547. *Id*. at 684 (holding that chapter 7 debtor could not avoid a bank's prepetition setoff against funds on account). As expressed by *In re Rehab Project, Inc*., 238 B.R. 363, 372 (Bankr.N.D.Ohio 1999) (quoted in *Campos*), "when § 553 is determined to be applicable, § 547 cannot thereafter be utilized to undo its effect."

When section 553 is <u>not</u> applicable, the law is the exact opposite of the rule for which Trifish cites *Campos*. A setoff that is improper or otherwise unprotected by section 553 is subject to avoidance under section 547. *Durham v. SMI Indus., Corp*., 882 F.2d 881, 882 (4th Cir. 1989). *See also Pardo v. Pacificare of Texas, Inc. (In re APF Co.)*, 264 B.R. 344, 356 (Bankr. D. Del. 2001) ("The court applies § 547 if it finds the setoff invalid or if it finds no right of setoff in bankruptcy."); *Glenshaw Glass Co. v. Ontario Grape Growers Mktg. Bd. (In re Keystone Foods, Inc.)*, 145 B.R. 502, 507 (Bankr. W.D. Pa. 1992) (improper setoff may constitute preference). The same rule applies if the setoff is not permitted under the terms of section 553 itself. Collier explains:

> Unlike section 553(a)(1), sections 553(a)(2) and 553(a)(3) do reach back to affect certain prepetition transactions. Under section 553(a)(2)(B), a setoff with respect to a claim that was transferred within the 90-day period before the debtor's bankruptcy case and while the debtor was insolvent does not qualify as a legitimate setoff. **Thus, if a setoff of this kind occurred, it may be subject to attack as a preference**. The same analysis applies with respect to section 553(a)(3).

5 Collier on Bankruptcy ¶ 553.09[1][c][ii] (Alan N. Resnick & Henry J. Sommer, eds.,15th ed. rev.) at 553-90 (emphasis added; footnotes omitted).

Ironically, therefore, Trifish's argument that the setoffs are time-barred because they occurred prior to the 90 day period covered by section 553(b) demonstrates not that the avoidance

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

actions are time-barred under section 553 but that they are *not* time-barred under section 547.
Regardless, even if they did not predate the 90 day window, the setoffs would not qualify under
section 553(b) for an additional independent reason: they are not mutual debts.  They were triangular
setoffs, involving debts of Namco/Trigrove/Trifish, Namco/Tritowne/Trifish, and
Namco/RPM/Trifish.  Triangular setoffs do not satisfy section 553's requirement of mutuality.  *In re
Semcrude, L.P.*, 399 B.R. 388, 398 (Bankr. D. Del. 2009) ("courts have routinely held that triangular
setoffs are impermissible in bankruptcy."); *Matter of United Sciences of America, Inc*. 893 F.2d 720,
723 (5th Cir. 1990).

### 2.  The preference claims are sufficiently pled

The preference claims incorporate the General Allegations, which allege facts concerning the
dissipation of hundreds of millions of dollars of money entrusted to Namco, leading to Namco owing
creditors over $600 million in 2008, the year that the bankruptcy commenced.  The Complaint also
alleges the distribution of over $100 million in unrepaid transfers to the Defendants, and alleges in
detail those transfers alleged to be preferential, including the dates and amounts of the alleged
transfers.

The moving Defendants ignore the incorporated allegations and focus on the recital of the
statutory elements, as applicable, and not surprisingly conclude that the Complaint "does not contain
any factual allegations in support of those naked conclusions."  Tribrother Motion at 22.
Specifically they insist that the Trustee must allege: (1) facts showing that they were creditors of
Namco; (2) the nature and amount of the antecedent debt; (3) facts showing insolvency, and (4) facts
showing that Defendants received more as a result of the transfers than they would receive in a
chapter 7 liquidation.

The authority on which the Tribrother Defendants rely most for such strict pleading
requirements is companion decisions from a North Carolina case, *In re Caremerica, Inc.*,[11] in which
a trustee filed an "omnibus" preference complaint that failed to list even the dates and amounts of

---

[11] *Angell v. BER Care, Inc*., 409 B.R. 737, 751 (Bankr. E.D.N.C. 2009) and *Angell v. Burrell*, 409 B.R. 759, 764 (Bankr. E.D.N.C. 2009).  In each, the court stated that the complaint "lacks information as to the dates, amounts, and number of transfers. Without factual assertions showing that it is plausible that the alleged transfers occurred, the complaint fails to satisfy the plausibility standard for pleadings."  409 B.R. at

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

the alleged transfers even after its first amendment. 409 B.R. at 744. *Caremerica* followed the

notorious *In re Valley Media, Inc*., 288 B.R. 189 (Bankr. D. Del. 2003), where the court was

presented with the same lack of pleading detail and imposed unusually strict requirements that even

*Caremerica* recognized as the minority view.[12]

Even after *Twombly* and *Iqbal*, "[m]any courts continue to disagree with *Valley Media* and

*Caremerica*." *In re TOUSA, Inc*. 442 B.R. 852, 854 (Bankr. S.D. Fla. 2010). Rejecting such

requirements, the TOUSA court wrote emphatically: "**so long as the complaint makes clear who**

**transferred what to whom and when, a preference defendant will have enough information to**

**mount whatever defenses may be available. To require more is to mandate pedantry and to**

**return federal courts to the days of gotcha pleadings before the adoption of the Federal Rules**

**of Civil Procedure**. *Id*. at 856 (emphasis added).

Valley Media is criticized even in Delaware.

> While plaintiffs should be encouraged to provide specific information in support of their
> claims whenever possible, to require them to do so in their initial pleading in all cases,
> particularly with the specificity demanded by *Valley Media*, is in this court's view
> inappropriate and unnecessarily harsh.

*Official Committee of Unsecured Creditors of The IT Group, Inc., v. Brandywine Apartments (In re*

*The IT Group, Inc.)*, 313 B.R. 370, 373 (Bankr. D. Del. 2004); *see also In re C.R. Stone Concrete*

*Contractors, Inc*., 434 B.R. 208, 221 (Bankr. D. Mass. 2010) ("I agree with Judge Lindsey's

conclusions and will not apply *In re Valley Media's* heightened pleading standard to the present

case.").

The Complaint plainly alleges facts that show plausible preference claims and that afford

more than ample notice of the claims against the preference defendants. Most importantly, by far,

the particulars of the transfers are alleged. Beyond that, section 547(b)(1) requires that the transfer

be made "to or for the benefit of a creditor," and so each of these preference claims identifies the

entities and persons to or for whose benefit the transfer(s) was or were made. That allegation ought

---

[12] *Caremerica*, 409 B.R. at 749 ("the majority of courts which have addressed the pleading requirements for § 547 claims
have required something less than the standard implemented in Valley Media to survive a 12(b)(6) motion to dismiss");
*In re Randall's Island Family Golf Ctrs., Inc*.,290 B.R. 55, 65 (Bkrtcy. S.D.N.Y.2003) ("a preference complaint may
provide a defendant with fair notice of the claim despite the lack of information required by Valley Media").

to suffice, but if it were somehow less than plausible that the preference defendants are creditors or that the transfers were made on account of an antecedent debts, the Court may take judicial notice that proofs of claim have been filed by Trifish (the direct recipient of the Trigrove, Tritowne, Trifish and RPM Preferential Transfers), Mousa (the recipient of the Mousa Preferential Transfers), Ramin, Tony and Sean.[13]  Next, the Complaint's allegation that Namco owed its creditors over $600 million in 2008 should suffice to make plausible the proposition that Namco was insolvent during the year preceding the commencement of the bankruptcy on December 22, 2008.  Finally, it is plausible from the existing allegations that the transfers enabled the preference defendants to receive more than they would have received in a chapter 7.  As even *Caremerica* recognizes, that requires only that the Trustee allege facts that render it plausible that creditors would receive less than 100% in a chapter 7 liquidation (a point on which the court simply took note of the record, specifically the schedule summary).  *Caremerica*, 409 B.R. at 753-54.[14]  In sum, under any reasonable pleading standard, the preference claims are sufficiently pled.

## G.    The Eleventh Claim for Relief for Fraudulent Transfer is Well-Pled

The Eleventh Claim for Relief (¶¶ 187-192) seeks to avoid under section 544(b) and Cal. Civ. Code §§ 3439.04 and 3439.05 specified transfers or sets of transfers, labeled the "Namvar Fraudulent Transfers" (¶ 188).  Defendants' demand for additional allegations is similar to its attack on the preference claims.  They argue that the claims are "rote recitations" of statutory elements unsupported by factual allegations, in particular concerning (1) the existence of an unsecured creditor under section 544(b) of the Bankruptcy Code, (2) the existence of a pre-transfer creditor under Cal. Civ. Code § 3439.05, (3) insolvency, (4) the dates of the transfers and their recipients, and (5) whether Namco received reasonably equivalent value for the transfers.

---

[13] Claims have been filed against Namco by Trifish (no. 264 for $1,301,016.11 and no. 399 in the amount of $118,380.00), Mousa (no. 478 individually for $37,000, no. 400 for wholly-owned Magdiel, LLC for $1,302,180 and no. 404 for Magdiel jointly with Wishlab 90 for $1,020,046.25), Hooshang (Sean) (nos. 279-81 for $6,012,720), Homayoun (Tony) (nos. 282-83 for $26,866,000), and Ramin (nos. 284-86 for $25,402,544)

[14] Trifish argues extensively in a footnote that the "Trustee clearly cannot plead the final element of an avoidance action . . . because the effect of the setoff of mutually existing debts cannot . . . [be] . . . the realization of more than the creditor would have received under Chapter 7 if the transfer had not been made."  Motion at 25 n. 16.  The basic notion is that the right to setoff a mutual debt gives a creditor the functional equivalent of a secured claim, and a fully secured creditor never receives less than 100% of its claim in liquidation.  Whatever its merits, the premise fails.  Trifish and Namco did not offset mutual debts.  They engineered triangular setoffs that paid down in 100 cent dollars the amount that Trifish was owed by Namco.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

<u>First</u>, the Complaint alleges that "[a]s of the Petition Date, there was at least one creditor whose claim arose prior to each of the Namvar Fraudulent Transfers" (¶ 191). This satisfies all statutory requirements. Section 544(b) requires only that there be an unsecured creditor on the petition date entitled to avoid transfers under applicable law. A pre-transfer creditor is not required in order to avoid transfers under either Cal. Civ. Code § 3439.04(a)(1) (transfers made with actual intent to hinder, delay or defraud) or § 3439.04(a)(2) (transfers made for less than reasonably equivalent value while or resulting in being undercapitalized or illiquid), as both are fraudulent as to a creditor "whether the creditor's claim arose before or after the transfer…." Cal. Civ. Code § 3439.04(a).

<u>Second</u>, inasmuch as ¶ 191 alleges that there was a pre-transfer creditor, it also satisfies Cal. Civ. Code § 3439.05 (providing that a transfer is fraudulent as to a pre-transfer creditor that is made for less than reasonably equivalent value during or resulting in balance sheet insolvency). Tribrothers argue the allegation does not satisfy § 3439.05's requirement of a pre-transfer creditor (Tribrother Motion at 28:8-10) but it is unclear why not.

The only issue is whether the creditor must be *identified* in the Complaint. Authority is mixed. *Neilson*, though opting to require identification, recognized that many courts hold otherwise. 290 F.Supp.2d at 1148. *See, e.g., In re Image Worldwide, Ltd.* 139 F.3d 574, 577 (7th Cir. 1998) (trustee does not need to identify creditor); *In re The Heritage Organization, L.L.C.*, 413 B.R. 438, 459 (Bankr. N.D. Tex. 2009) (trustee need not identify "golden creditor" by name); *In re Schneider*, 417 B.R. 907 (Bankr. N.D. Ill. 2009) (rejecting requirement) *In re Musicland Holding Corp.*, 398 B.R. 761, 780-81 (Bankr. S.D.N.Y. 2008) (same); *In re Felt Mfg. Co., Inc.*, 371 B.R. 589 (Bankr. D. N.H. 2007) (same); *In re First Financial Associates, Inc.*, 371 B.R. 877 (Bankr. N.D. Ind. 2007) (same). "The Court agrees with the Trustee and those cases which hold that the Trustee need not identify the name of a specific creditor on which the Trustee relies. The Trustee must eventually prove the existence of a specific creditor whose claim existed at the time of the alleged overpayments and on the petition date, but is not required to do so at this stage in the process." *Giuliano v. U.S. Nursing Corp. (In re Lexington Healthcare Group, Inc)*, 339 B.R. 570, 576 (Bankr. D. Del. 2006).

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

The Court can reasonably infer from the allegations and the record in this case that there are creditors with allowed unsecured claims (satisfying every statutory requirement except Cal. Civ. Code § 3439.05) and that at least one of those claims predates any of the Namvar Fraudulent Transfers. Furthermore, the Court can take judicial notice of filed proofs of claim that assert claims arising as long ago as 1998 (including claims of LLCs owned by Namvar Defendants).[15]

Third, the moving Defendants contend that the Complaint does not allege sufficient facts on which to base a conclusion that Namco was insolvent at the time of the transfers. But even under the heightened standards imposed by their most favored case, *Careamerica*, the Trustee need only allege facts sufficient to show that insolvency is *plausible*. 409 B.R. at 752. The debtor in this case is not a traditional business that has reached a point where it can no longer balance its books or pay current debts. The Complaint alleges an entity that took in money from trusting investors and doled it out to insiders, purchasing property and assigning title to family entities that paid nothing, and which by 2008 owed its investors $600 million. It is plausible that it was insolvent during the four years preceding December 22, 2008.

Fourth, the moving Defendants contend that the Trustee does not identify the dates of the transfers or their recipients. As an example they point to the "Flamingo Road Transfers." It is a very good example. The Complaint alleges that Namco paid 100% of the equity financing in four deposits to escrow in specified amounts on specified dates, totaling $3,673,800. ¶ 61. The balance was borrowed from Mirae Bank and the purchase closed on February 27, 2006. ¶ 61. Title was given to uncapitalized LLC Defendants ultimately owned by identified Namvar Family Defendants. ¶ 62. After the purchase, since the LLC Defendants had no capital, Namco continued to pay expenses, making all monthly payments on the Mirae Bank loan from the closing date until October 1, 2008 and paying the property taxes, making a total of $2,015,845 in post-purchase transfers, for a combined total of $5,689,645. ¶ 67. Namco received some of its money back, leaving a principal

---

[15] Claim No. 390-1 of Yousef Yousefi Zand for $249,970 attaches a Namco ledger indicating that he has been a creditor since July 1, 1998. Claim No. 454-1 of Ruben Kohanof for $305,197 arises from a $1 million note dated June 16, 2004. Claim No. 269 of Wilshire 19, LLC for $6,009,171.63 purports to originate on July 18, 2001. Claim No. 270 of Wilshire Bundy Holdings, LLC for $117,000 appears to originate in a loan booked on August 8, 2003. The Trustee is filing a request for judicial notice herewith.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

balance of $1,989,645. ¶ 68. Recovery of the balance with interest is sought from LLC Defendants Lancam, Lacy 20 and Woodman Partners and their member Namvar Defendants. ¶ 69.

It is hard to imagine how one could look at these allegations and assert: "**No specific transfer is identified by date or amount and no specific transferee is named, although the Eleventh Claim for Relief purports to seek a judgment against all 33 defendants named in the FAC**." Tribrother Motion at 29; Mousa Motion at 25. The Court need look no further than these bald misstatements and mischaracterizations to reject out of hand these and similar demands for more detailed pleading. The purchase transfers are identified by date and amount. The name of the escrow company is not an essential element of pleading. One might reasonably infer that the alleged monthly loan payments to Mirae Bank were paid to . . . Mirae Bank. Were it required, one might also reasonably infer that these payments were made at or around the first of each month. One might further infer reasonably that the property taxes were most likely paid to . . . the county tax collector, at or around their due dates. These are all reasonable inferences. These allegations give more than ample notice of the basis of the claims to those Defendants from whom repayment is sought (which the Complaint clearly alleges is *not* all 33 Defendants, but only three specified LLC Defendants and their Namvar Family Defendant members). Further detail is the domain of discovery, not pleading.

<u>Fifth</u>, and finally, the Defendants contend the Complaint lacks facts to support the Trustee's conclusory allegations that Namco did not receive reasonably equivalent value for the transfers. How so? The comparison to *Careamerica* is inapt, inasmuch as the complaint in that case truly lacked factual detail. Here, the Trustee has alleged in detail transfers by Namco of tens of millions of dollars for property that was then titled to uncapitalized LLC Defendants ultimately owned by family members, with no retention of any interest in the purchased assets. Furthermore, he has also alleged hundreds of millions of dollars of transfers on the accounts of spouses and children. *See* ¶¶ 115-119 (alleging principal balances for the "Daniel Transfers" of $51,198,185, "Benjamin Transfers" of $52,269,242, "Malka Transfers" of $51,206,578, "Shirah Transfers" of $51,243,147, and "Helen Transfers" of $767,933.). Namco received no effective rights to protect its assets, and by 2008 had a shortfall of over $600 million. Based on those allegations, it is plausible that Namco did not receive reasonably equivalent value for its transfers, particularly since the Defendants apparently

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

deny any obligation to repay them.  In sum, it is plausible that the alleged looting of Namco reduced the funds available for creditors, satisfying the test proffered by Mousa.  *In re 3dfx Interactive, Inc.*, 389 B.R. 842, 863 (Bankr. N.D. Cal. 2008).

### H.  The Twelfth Claim for Relief for Fraudulent Transfer is Well-Pled

The Twelfth Claim for Relief (¶¶ 193-198) seeks to set aside as fraudulent transfers $6,948,400 in transfers made by LLC Defendant DGADE to Mousa (described at ¶ 82).  Mousa argues that the claim is difficult to decipher.  It really is not.

As summarized above, the discussion of DGADE in the General Allegations has two components.  The "DGADE Transfers" (described in ¶¶ 78-81) consist of $6,943,030 in transfers by Namco to or for the benefit of DGADE (owned by Mousa's children).  The Complaint alleges that these DGADE Transfers are owed to Namco jointly and severally by DGADE and by Mousa, the DGADE members' father.

Two months before the bankruptcy, however, Mousa took back $6,948,400 from DGADE.  The Twelfth Claim for Relief seeks to recover these "DGADE Fraudulent Transfers," on the basis that they were made to deplete DGADE and so hinder Namco's attempt to collect the DGADE Transfers from DGADE.  Alternately, they were made by DGADE to Mousa without DGADE receiving reasonably equivalent value, and rendered DGADE insolvent.  This is the basis of the Twelfth Claim for Relief:  the claim is asserted as Mousa and not DGADE because Mousa was the transferee of the fraudulent transfer.  Mousa complains that the Complaint is "nebulous" because it "does not allege at all specifically what Mousa supposedly did concerning DGADE, or identify what transaction Plaintiff seeks to aside," and "does not allege that he actually received any property in October 2008 from DGADE."  Mousa Motion at 26.  Mousa denies receiving anything or doing anything wrong.  *Id.*  Evidently there are disputed facts that will need to be investigated.  But it does not appear that Mousa does not comprehend the basis of the Trustee's claim, even if he disputes it.

Next, Mousa argues that the claim is time-barred as to a portion of the subject transfers, but it is unclear how.  The four year statute of limitations for fraudulent transfer claims under Cal. Civ. Code §§ 3439.04(a) and (b) and 3439.05 encompasses all transfers made on or after December 22,

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

2004. All transfers alleged in the Twelfth Claim for Relief are alleged to have taken place in 2005 or

later. Mousa states that the DGADE transfers took place in 2005, 2006 and 2007 well before Namco

was in financial peril." Mousa Motion at 27. This factual assertion has nothing to do with the

statute of limitations and is legally irrelevant on a motion to dismiss.

## I. The Thirteenth Claim for Relief for Constructive Trust is Valid

The Thirteenth Claim for Relief (¶¶ 199-204) seeks to impose a constructive trust in favor of

Namco against the interests of LLC Defendants Tribun, LLC and Bunherst, LLC in the Wilshire

Bundy Ground Lease based on transfers by Namco (as described in Section G, ¶¶ 90-94). These

Defendants contend in the Mousa Motion that constructive trust cannot be asserted as a claim for

relief and that it is not available as a substitute remedy to a creditor for a monetary obligation. The

second of these arguments is inapplicable: Namco's entitlement to the Wilshire Bundy Ground

Lease does not arise from its damage claims; rather, Namco's entitlement arises from the fact that it

paid for the Wilshire Bundy Ground Lease directly (¶ 92), while Defendants paid nothing and own

their interest as a result of a breach of fiduciary duty.

Only three conditions need be met for the Court to impose a constructive trust: first, the

existence of a res is shown, the plaintiff has a right to the res, and the defendants acquired the res by

some wrongful act. *See The Habitat Trust for Wildlife, Inc. v. City of Rancho Cucamonga*, 175

Cal.App. 4th 1306, 1332, 96 Cal.Rptr.3d 813 (2009). "The cause of action is not based on the

establishment of a trust, but consists of the fraud, breach of fiduciary duty, or other act that entitles

the plaintiff to some relief. That relief, in a proper case, may be to make the defendant a

constructive trustee with a duty to transfer to the plaintiff." *Kenneally v. Bank of Nova Scotia*, 711

F.Sup.2d 1174, 1190 (S.D. Cal. 2010) (quoting *BGJ Assoc., LLC v. Superior Court*, 75 Cal.App.4th

952, 967, 89 Cal.Rptr.2d 693 (1999)).

The Complaint alleges each of these conditions precedent. However, even were the Court to

dismiss the *claim for relief* for constructive trust, the Complaint still alleges facts sufficient to

warrant the *remedy* of imposing a constructive trust, and the Trustee will remain entitled to seek

such relief.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**J.** **The Fourteenth Claim for Relief for Fraudulent Transfer is Not Challenged**

The Fourteenth Claim for Relief (¶¶ 205-213) seeks to avoid as a fraudulent transfer a note and trust deed given by Tony and Katayoun Namvar. No motion to dismiss has been filed as to this claim.

**K.** **The Fifteenth Claim for Relief for Declaratory Relief Will Be Dismissed**

The Fifteenth Claim for Relief (¶¶ 214-216) seeks a declaratory judgment that the Defendants that are recipients of the Namvar Fraudulent Transfers hold such property and its proceeds in constructive trust for the estate. The Trustee intends to dismiss this claim for relief.

**L.** **The Sixteenth Claim for Equitable Subordination is Well-Pled**

The Sixteenth Claim for Relief (¶¶ 217-221) requests the equitable subordination of any allowed claims filed by Namvar Defendants or LLC Defendants. Inherently, a claim for equitable subordination can only be asserted against persons who have filed proofs of claim, and the Complaint so states. The Tribrother Motion stays on message by attributing substantive significance to the subheading that does not include that limitation, and feigning confusion about who is being sued on this claim.

The Court may take judicial notice of the claims docket, which reflects that claims have been filed by the following Namvar Defendants and LLC Defendants:[16]

| Claimant | Claim Number | Claim Type | Claim Amount |
|---|---|---|---|
| Helen Shadi | 224 | Unknown | $33,000.00 |
| Lacy 20, LLC | 248 | Unsecured | $14,902,905.00 |
| Believers LLC / Hooshang Namvar | 253 | Unsecured | $12,720.00 |
| Trifish, LLC | 264 | Unsecured | $1,301,016.11 |
| Woodman Partners, LLC | 272 | Unsecured | $6,390,706.94 |
| Hooshang Namvar | 279 | Unsecured | $1,000,000.00 |
| Hooshang Namvar | 280 | Unsecured | $12,720.00 |
| Hooshang Namvar | 281 | Unsecured | $5,000,000.00 |
| Homayoun Namvar | 282 | Unsecured | $10,000,000.00 |
| Homayoun Namvar | 283 | Unsecured | $16,866,000.41 |
| Ramin Namvar | 284 | Unsecured | $36,544.17 |
| Ramin Namvar | 285 | Unsecured | $15,366,000.41 |
| Ramin Namvar | 286 | Unsecured | $10,000,000.00 |
| Hilda Bayanfar | 342 | Unsecured | $279,950.00 |
| Lancam Properties, LLC | 396 | Unsecured | $1,425,350.00 |
| Trifish, LLC | 399 | Unsecured | $118,380.00 |

[16] Defendant Haron Shabatian also has a claim, no. 477 for $5,350,000, but as he is not a Namvar Defendant or a LLC Defendant, the equitable subordination is not asserted against him.

| | | | |
|---|---|---|---|
| Magdiel, LLC | 400 | Unsecured | $1,302,180.00 |
| Wishlab 90, LLC | 401 | Unsecured | $180,041.38 |
| Wishlab 90, LLC / Magdiel, LLC | 404 | Unsecured | $1,020,046.25 |
| Mousa Namvar | 478 | Unknown | $37,000.00 |
| Magdiel, LLC | 542 | Unsecured | $1,500.00 |

Next, the Tribrother Motion argues that no factual basis is provided other than the incorporation of all preceding paragraphs, and that "is an impermissible shotgun allegation that makes it impossible for a defendant to ascertain what facts underlie the Trustee's claim against that particular defendant…." Tribrother Motion at 32. There are certainly cases in which "shotgun" pleading does not afford fair notice to defendants of the claims against them, but this is not one of them. The Complaint centers on 17 sets of transactions by which over a hundred million dollars was lifted from Namco for their benefit and not returned. The details concerning each of them are alleged in an organized manner. Each of them, the Complaint alleges, was a breach of fiduciary duty by Tony and Ezri, aided and abetted by Ramin, Sean and Mousa. All of these brothers, through their uncapitalized LLC Defendants, were principal direct or indirect recipients of the Namvar Family Transfers and central participants in the projects financed by Namco. It is impossible for the Trustee to allege at this time who said what to whom, nor does Rule 8 require him to do so.

## M.     The Objection to Claims is Proper

The Objection to Claims (¶¶ 222-224) requests the disallowance under section 502(d) of the Bankruptcy Code of the claims of any person or entity from whom property is recoverable under sections 542, 550 or 553 or that are transferees of transfers avoidable under sections 544, 547 or 548 of the Bankruptcy Code. The Tribrother Motion professes bewilderment. Against who? What claims? What facts? "No defendant can be expected to respond to such general and meaningless allegations." Tribrother Motion at 34; Mousa Motion at 32. The protest is ridiculous. It is a section 502(d) objection to any claims of Defendants against whom avoidance claims are being prosecuted, based on the avoidance claims being asserted in the Complaint. Other than to identify which Defendants have actually filed proofs of claim (as above), it is not clear how the basis of the objection could be clearer or what more needs to be alleged.

Finally, inasmuch as the avoidance claims upon which the claim objections are based are pending in the lawsuit and will presumably proceed on the same timetable, and the objections are

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

33

being asserted against parties to this proceeding, and the objection itself is derivative of the avoidance claims and so should require no expenditure of additional resources by the parties or the Court, the Trustee submits that it makes sense to allow them to remain grouped together in this proceeding, and the Court has authority under Bankruptcy Rule 3007(c) to do so.

## IV.

## THE MOTION FOR MORE DEFINITE STATEMENT SHOULD BE DENIED

"A stringent standard accompanies Federal Rule of Civil Procedure Rule 12(e). . . . **The basis for granting such a motion is unintelligibility, not lack of detail. As long as the defendant is able to respond, even if only with a simple denial, in good faith, without prejudice, the complaint is deemed sufficient for purposes of Rule 12(e).**" *Sun Co., Inc. (R & M) v. Badger Design & Constructors, Inc.*, 939 F.Supp. 365, 368 (E.D. Pa. 1996) (emphases added; citations omitted); *Resolution Trust Corp. v. Dean*, 854 F.Supp. 626, 649 (D. Ariz. 1994) ("Rule 12(e) is designed to strike at unintelligibility rather than want of detail.").

Under this standard, the motion for a more definite statement should be denied. In view of the principal theme of their motion to dismiss – that the Complaint is so lacking in factual detail as to require its dismissal – it starts with an unlikely emphasis on the length of the Complaint. It then observes that each claim for relief incorporates by reference all of the preceding allegations and classifies this serial incorporation as a form of "shotgun pleading" that violates Rule 8's requirement of a "short and plain" statement. It posits a *per se* rule that serial incorporation by reference makes it "virtually impossible to know which allegations of fact are intended to support which claim(s) for relief." But it only attacks the intelligibility of *this* Complaint in two misleading footnotes.

1.       Footnote 2 quotes ¶ 149 ("Defendants owe Namco money on such accounts") and states: "No defendant can tell if he, she, or it is being sued in that claim, nor can any defendant ascertain for what, if anything, he, she or it is being sued." **Except that the motion omits the rest of ¶ 149 ("… in the amounts and by the Defendants alleged in paragraph 136,** *supra***.").** That list specifies exactly who is being sued for which transfers. (Also as noted, the ¶ 136 list was pushed to ¶ 144 by an amendment, and so the reference is off by eight paragraphs; given that the lengthy list is now on the page immediately preceding ¶ 149, one trusts Defendants were not overly confused.)

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

34

2.      Footnote 3 refers to the subheadings to several claims for relief that state that the claim is asserted against all Defendants, as if the subheadings trump the substantive allegations, which are based on the Namvar Family Transfers, which are defined to assign responsibility to specific Defendants.

3.      Footnote 3 also claims "no defendant can possibly respond to the Fifth Claim for Relief," referring specifically to ¶¶ 151 and 152, which state in full:

> 151.  In making the Namvar Family Transfers alleged herein, Namco conferred a benefit upon the recipients and beneficiaries of the Namvar Family Transfers.

> 152.  Defendants knew of and accepted the benefit.

Inasmuch as "the Namvar Family Transfers alleged herein" specify which Defendants are responsible, the helplessness is apparently because "Defendants" in ¶ 152 only impliedly rather than expressly means the recipients and beneficiaries of the Namvar Family Transfers described in ¶ 151. Further, the representation that "[t]his situation repeats itself with respect to every claim for relief in the First Amended Complaint" is simply incorrect.

The Complaint is perfectly intelligible and the motion should be denied.

## V.

## <u>CONCLUSION</u>

For the foregoing reasons, the motions should be denied in their entirety. To the extent that any portion is granted, the Trustee should be granted leave to amend the Complaint.

Dated: April 19, 2010

PACHULSKI STANG ZIEHL & JONES LLP

By: _____/s/ Dean A. Ziehl_____
  Richard M. Pachulski
  Dean A. Ziehl
  Alan J. Kornfeld
  Gillian N. Brown
Special Counsel for Plaintiff

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:


A true and correct copy of the foregoing document described as **TRUSTEE'S OPPOSITION TO MOTIONS TO DISMISS FIRST AMENDED COMPLAINT AND MOTION FOR MORE DEFINITE STATEMENT** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

**I.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On **_April 19, 2011_,** I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

☒ Service information continued on attached page

**II.  SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served)**:**
On **_April 19, 2011_,** I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Robert B Mobasseri
445 S Figueroa St Ste 2700
Los Angeles, CA 90071

☐ Service information continued on attached page

**III.  SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **_April 19, 2011_,** I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.

**Via Personal Delivery**
Hon. Barry Russell
United States Bankruptcy Court
Edward R. Roybal Federal Building
255 E. Temple Street, Suite 1660
Los Angeles, CA  90012

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| April 19, 2011 | Megan J Wilson | /s/ Megan J Wilson |
|---|---|---|
| Date | Type Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*August 2010*                                                     **F 9013-3.1.PROOF.SERVICE**

**I.** **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")**

- Richard S Berger    rberger@lgbfirm.com, pbransten@lgbfirm.com;kmoss@lgbfirm.com
- J Scott Bovitz    bovitz@bovitz-spitzer.com
- Alan F Broidy    alan@broidylaw.com, sherrie@broidylaw.com
- Gillian N Brown    gbrown@pszjlaw.com, gbrown@pszjlaw.com
- Brian L Davidoff    bdavidoff@rutterhobbs.com,
  calendar@rutterhobbs.com;jreinglass@rutterhobbs.com
- Peter J Gurfein    pgurfein@lgbfirm.com
- Stuart I Koenig    Skoenig@cmkllp.com
- David M Poitras    dpoitras@jmbm.com
- Damon G Saltzburg    ds@srblaw.com, cs@srblaw.com
- Henley L Saltzburg    hls@srblaw.com
- United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov
- Afshin Youssefyeh    ady@adylaw.com
- Dean A Ziehl    dziehl@pszjlaw.com, dziehl@pszjlaw.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*August 2010*

**F 9013-3.1.PROOF.SERVICE**

**PROOF OF SERVICE**

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

I am over the age of 18 and not a party to the within action; I am employed by GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP in the County of Los Angeles at 1900 Avenue of the Stars, 21st Floor, Los Angeles, California 90067.

On September 30, 2013, I served the foregoing document(s) described as: **REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF OPPOSITION TO TRUSTEE'S MOTION IN LIMINE TO SEVER AND EXCLUDE EVIDENCE RELATING TO BANKRUPTCY CLAIMS AGAINST NAMCO CAPITAL GROUP, INC. [DOCKET NO. 283]**

☐ By placing the true copies thereof enclosed in sealed envelopes addressed as stated below.

☐ **(BY MAIL)** I placed said envelope(s) for collection and mailing, following ordinary business practices, at the business offices of GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP, and addressed as shown on the attached service list, for deposit in the United States Postal Service. I am readily familiar with the firm's practice for collection and processing correspondence for mailing with the United States Postal Service, and said envelope(s) will be deposited with the United States Postal Service on said date in the ordinary course of business.

☒ **(BY OVERNIGHT DELIVERY).** On **September 30, 2013** I caused said document(s) to be placed in a Norco Overnite envelope  and taken to the Norco Overnite Drop Box located at 1900 Avenue of the Stars, Los Angeles, California 90067 for delivery to the parties listed on the attached service list:

☒ **(BY ELECTRONIC SERVICE)** by causing the foregoing document(s) to be electronically filed using the Court's Electronic Filing System which constitutes service of the filed document(s) on the individual(s) listed on the attached mailing list.

☒ (Federal)  I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.  I declare under penalty of perjury that the above is true and correct.

Executed on September 30, 2013 at Los Angeles, California.

_/s/ Kaitlin Woodson_____
KAITLIN WOODSON

1 | *SERVICE LIST*
2 |
3 | **BY NORCO OVERNITE**
4 | Honorable Gary A. Feess
5 | United States District Court
  | 255 East Temple Street, Courtroom 740
  | Los Angeles, California 90012
6 |
7 | **SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")**
8 | Alan J Kornfeld:  akornfeld@pszyj.com
9 | Elissa Wagner: ewagner@pszyj.com
  |        Gillian Brown: gbrown@pszjlaw.com
10 | Richard Pachulski: rpachulski@pszjlaw.com
   | Daryl Parker:  dparker@pszyj.com
11 | Dean Ziehl: dziehl@pszyj.com
   | Genise R. Reiter:  grr@srblaw.com
12 | Alan Frank Broidy:  fbroidy@ix.netcom.com
   | Robert B Mobasseri:  Robert@lawyer.com
13 | Brian Leslie Davidoff:   BDavidoff@GreenbergGlusker.com;
   |        jreinglass@greenbergglusker.com; kwoodson@greenbergglusker.com
14 | Lori L Werderitch     LWerderitch@GreenbergGlusker.com,
   | Office of the U.S. Trustee:  ustpregion16.la.ecf@usdoj.gov

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590