PAUL T. DYE (State Bar No. 81753)
E-Mail: ptd@srblaw.com
GENISE R. REITER (State Bar No. 80578)
E-Mail: grr@srblaw.com
SALTZBURG, RAY & BERGMAN, LLP
12121 Wilshire Boulevard
Suite 600
Los Angeles, California 90025-1166
(310) 481-6700 – Fax: (310) 481-6720

**Attorneys for Defendants**
Lacy 20, LLC, Hooshang Namvar, Homayoun Namvar, Ramin Namvar, Trifish, LLC, Tribun, LLC, Believers, LLC, Net, LLC, Light Source Management, LLC, and Woodman Partners, LLC

BERNARD M. RESSER (State Bar No. 92873)
E-Mail: bdavidoff@greenbergglusker.com
LORI L. WERDERITCH (State Bar No. 247345)
E-Mail: lwerderitch@greenbergglusker.com
GREEN GLUSKER FIELDS CLAMAN & MACTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, CA 90067
(310) 553-3610 – Fax: (310) 553-0687

**Attorneys for Defendants** Mousa Namvar, Magdiel, LLC DGADE of Delaware, LLC, Namco 8, LLC, Bunherst, LLC and Wishlab 90, LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| In re: NAMCO CAPITAL GROUP, INC., a California corporation,<br><br>Debtor. | Case No.: 2:11-cv-05320-GAF (CWx)<br>Chapter 11<br>Bankr. Case No.: 2:08-bk-32333-BR<br>Adv. Proc. No.: 2:10-ap-02945-BR |
| BRADLEY D. SHARP, solely in his capacity as Chapter 11 Trustee of NAMCO CAPITAL GROUP, INC., | **OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE TO EXCLUDE EVIDENCE RELATING TO** |

1  OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE TO EXCLUDE EVIDENCE RELATING TO PROFESSIONAL FEES; AND DECLARATION OF PAUL T. DYE

161515.1 8257.005

| | |
|---|---|
| Plaintiff, | **PROFESSIONAL FEES; AND DECLARATION OF PAUL T. DYE** |
| vs. | *[Filed with Requests for Judicial Notice; and Exhibits]* |
| MOUSA NAMVAR *et al.*, | Hearing Date: October 21, 2013 |
| Defendants. | Hearing Time: 9:30 a.m. |
| | Hearing Place: Courtroom 740 |
| | Complaint Filed: October 26, 2010 |
| | Pretrial Conf.: September 23, 2013 |
| | Trial Date: October 29, 2013 |

A half-truth is more dangerous than a lie.

-- Thomas Aquinas

## OPPOSITION MEMORANDUM

Defendants Lacy 20, LLC, Hooshang "Sean" Namvar, Homayoun "Tony" Namvar, Ramin Namvar, Trifish, LLC, Tribun, LLC, Believers, LLC, Net, LLC, Light Source Management, LLC and Woodman Partners, LLC (collectively, the "STR Defendants") joined by defendants Mousa Namvar, Magdiel, LLC, DGADE of Delaware, LLC, Namco 8, LLC, Bunherst, LLC and Wishlab 90, LLC (collectively, the "Mousa Defendants") oppose Plaintiff's Motion In Limine To Exclude Evidence Relating To Professional Fees as follows.

## I. INTRODUCTION

For Plaintiff to suggest that the fees paid to his experts are irrelevant in this $350 million case, is disingenuous. His experts were critical in formulating Plaintiff's claims and have been counter-designated to provide a damage analysis, all based on the many millions of dollars they have been paid to analyze the records of Namco Capital Group, Inc. ("Namco"). And Plaintiff himself was involved in this analysis, and has been paid handsomely for this. Indeed, Plaintiff's

2   OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE TO EXCLUDE EVIDENCE RELATING TO PROFESSIONAL FEES; AND DECLARATION OF PAUL T. DYE

161515.1 8257.005

entire case was built by experts, his damage analysis depends on experts, and when Namco became insolvent, a central issue in this case, must be presented through his experts.

It is evident from a number of defendants' motions in limine that the timing of Namco's solvency is a critical issue in this case. As explained in defendants' motions, Plaintiff has no breach of fiduciary duty or aiding and abetting claims and no fraudulent transfer claim unless and until Namco became insolvent. His other claims (breach of contract, account stated and equitable subordination) are dependent on these claims and will be eviscerated or fail if Plaintiff's solvency analysis fails. Plaintiff, *through his experts* David Judd ("Judd") of Berkeley Research Group, LLC ("BRG") and their predecessors, LECG, LLC, has pegged the date of insolvency at March 31, 2006. Defendants vigorously dispute this date, asserting that insolvency occurred at or about the time when the bankruptcies were filed.

Virtually all of the $350 million of claimed damages hinges on the insolvency issue. Plaintiff's March 31, 2006 insolvency date is the cornerstone of his case and his well-paid experts' proof of this highly charged insolvency issue is pivotal. Plaintiff's failure to convince a jury that insolvency occurred on March 31st 2006 is a death knell for the Trustee and a sure challenge to his and his experts' multi-million dollar claim for fees.

It is no wonder that the Trustee is so vigorously resists this fee evidence. Its introduction demonstrates a clear bias of his experts, who must defend their insolvency analysis in the face of significant information to the contrary, or risk a defendants' verdict. This is a risk that the Trustee cannot tolerate. The staggering fees paid to the Trustee and his experts, showing a clear bias to testify along the party lines, jeopardize both the Trustee's multi-million dollar payday, as well as those of his experts. In addition, substantial fees are being deferred by Plaintiff

3    OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE TO EXCLUDE EVIDENCE RELATING TO PROFESSIONAL FEES; AND DECLARATION OF PAUL T. DYE

161515.1 8257.005

and his experts in the bankruptcy and the outcome of this case will affect the timing of those payments. (See Disclosure Statement, Exhibit 1332.) [1]

The jury weighs the evidence and decides which of the witnesses to believe. The fees paid to Plaintiff and his experts, just like the fees paid to any expert, are highly relevant to the issue of bias and credibility. Indeed, given that both the Trustee's and the professionals' fees require a further bankruptcy court approval, and are deferred, it is important to Plaintiff and his people to obtain a good result in this case. The jury needs to evaluate how this bias affects the credibility of the testimony on insolvency and the damage claims, and whether the claims are justified.

Moreover, when the jury is told that Plaintiff is a trustee appointed by the bankruptcy court, this "truth" is only half the story. It needs to be balanced by the rest of the truth: that he is a highly compensated person and that his highly compensated experts are part of an accounting group run by co-trustee Todd Neilsen (the trustee for Ezri Namvar's bankruptcy), who shares in their very large fees. Otherwise, the jury is left with the misimpression, prejudicial to Defendants' case, that Plaintiff has some special blessing as an independent unbiased "trustee" with no personal agenda, and his experts have a similar imprimatur from the bankruptcy court. As Plaintiff, parading in the "white hat" of a bankruptcy trustee,

---

[1] See also Deposition of David Judd taken on July 8, 2013, pp. 78:21 – 79:6:
    Q. With respect to the compensation, it's my understanding that some of the professionals in the Namvar and Namco bankruptcy cases have agreed to defer their compensation pursuant to the amended disclosure statement that's been submitted to the court. Are you familiar with that?
    A. I am.
    Q. Is BRG one of the professional organizations that has agreed to defer its fees in this case?
    A. Yes.

4   OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE TO EXCLUDE EVIDENCE RELATING TO PROFESSIONAL FEES; AND DECLARATION OF PAUL T. DYE

161515.1 8257.005

tells the jury that defendants robbed Namco, the fact that his and Neilsen's companies have made millions of dollars on these insolvent estates is decidedly relevant. This is particularly so as Plaintiff purports to represent creditor claims, and seeks to introduce evidence of creditor losses – which losses have been exacerbated by the huge fees paid to Plaintiff and his army of accountants.

Consequently, information relating to the professional fees that Plaintiff and his experts have charged is indispensable to the jury. Given the magnitude of these fees, and the interest in the outcome of this case of Plaintiff and his professional experts, it is not surprising that Plaintiff does not want the jury to be able to make fully informed determinations of crucial facts. Under these facts, denial of Plaintiff's Motion in Limine to Exclude Evidence Relating to Professional Fees is necessary.

## II. STATEMENT OF FACTS

The involuntary Chapter 11 bankruptcy petitions against Namco and against Ezri Namvar ("Ezri"), the debtor in the companion case, *In re Namvar*, U.S. Bankruptcy Court, Central District of California (the "Bankruptcy Court") Case No. 2:08-bk-32349-BR ("Ezri's Ch. 11 Case"), were filed on December 22, 2008. (*See* Plaintiff's First Amended Complaint ("FAC") ¶10.)

R. Todd Neilsen ("Neilsen") was appointed the trustee in Ezri's Ch. 11 case on March 11, 2009, and Plaintiff Bradley D. Sharp was appointed to be the trustee in Namco's bankruptcy case two months later, on May 8, 2009. (FAC, ¶13.)

The two trustees sought and obtained the appointment in both bankruptcy cases of LECG and Development Specialists, Inc. ("DSI") as their forensic accountants. At the time of these appointments, Plaintiff was (and still is) a principal of DSI, and Neilsen was a Director of LECG. Neilsen later moved to and became a director of BRG, and when this occurred, the trustees arranged for the appointment of BRG as their accountants. (*See* Requests for Judicial Notice ("RJN") ¶¶1-4, Ex. 1 (Neilsen's biographic profile from BRG's website), Ex. 2

5    OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE TO EXCLUDE EVIDENCE RELATING TO PROFESSIONAL FEES; AND DECLARATION OF PAUL T. DYE

161515.1 8257.005

(Neilsen's curriculum vitae from BRG's website), Ex. 3 (Judd's biographic profile from BRG's website); Declaration of Paul T. Dye ("Dye Decl.") ¶2, Ex. 4 (Plaintiff's Expert Witness Designation); *see also* Plaintiff's Witness List, which Plaintiff filed on September 17, 2013.)

    Plaintiff's claims, including the dismissed claims (which never had a remote basis in fact), were based on the DSI-LECG-BRG accounting analysis as overseen by Plaintiff. See Judd Depo, pp. 32:25-34:19; [2] pp. 38:18-39:14; [3] Sharp Depo, pp.

---

[2] The Judd transcript reads:
    Q. Did you have any involvement in the damages figures that are or the amounts of the transfers stated in the first amended complaint?
    A. Yes.
    Q. In particular, what did you do as part of your involvement in the damages figures that are in the first amended complaint?
    A. Myself and others working for me put together schedules that showed the transfers out of Namco Capital Group, and the offsetting credits were also accounted for by Namco Capital Group.

[3] The Judd transcript reads:
    Q. Okay. In preparing your rebuttal expert report, did you consult any of the schedules that were prepared for the trustee or counsel that were the basis for the damages amounts in the first amended complaint?
    A. Yes.
    Q. And is that the schedules that you prepared for the damages for the first amended complaint the starting point for your damages analysis in the rebuttal expert report? [Objection omitted]
    A: I don't know that those schedules were the starting point but the underlying support information that was in those binders would have -- would really be the starting point. That and the other books and records of Namco.
    Q. And the other information in the binders and the books and records of Namco were the source for the schedules that you prepared for counsel in connection with the first amended complaint, correct?
    A. Yes.

6   OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE TO EXCLUDE EVIDENCE RELATING TO PROFESSIONAL FEES; AND DECLARATION OF PAUL T. DYE

161515.1 8257.005

47:1-48:13. [4] In Plaintiff's remaining claims, Plaintiff alleges (1) a breach of fiduciary duty against Tony, (2) aiding and abetting breach of fiduciary duty against defendants Mousa, Sean and Ramin, (3) breach of contract, open book account and fraudulent transfer against the remaining defendants, and (4) equitable

---

[4] The Sharp transcript reads:
    Q. What role did you play in the preparation of Exhibit 5, the Complaint?
    A. I reviewed it in draft, and I ultimately approved it.
    Q. So this was drafted by the lawyers; correct?
    A. Yes.
    Q. Under your supervision?
    A. Yes.
    Q. How much money would you estimate-well, how much in fees would you estimate was
    incurred in connection with the preparation of this Complaint?
    A. I don't know. That would be reflected in our fee applications.
    Q. Okay. There would be fees to the lawyers for the preparation of the Complaint; correct?
    A. Yes.
    Q. There would be fees to the accountants in connection with the preparation of the Complaint; correct?
    A. Yes.
    Q. That would be a lot of work that was done to understand the Namco books and records and what they said about the various transactions that are identified here; correct?
    A. Yes.
    Q. Also in going through the books and records and determine where claims might be made against various Namvar family members; correct?
    A. Among others, yes.
    Q. Okay. There would also be fees by you and Mr. Neilson in connection with overseeing that whole process; correct?
    A. Certainly from me.

7    OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE TO EXCLUDE EVIDENCE RELATING TO PROFESSIONAL FEES; AND DECLARATION OF PAUL T. DYE

161515.1 8257.005

1  subordination of the STR Defendants' claims asserted against Namco in the
2  bankruptcy case. (*See generally* Plaintiff's FAC; Stipulation to dismiss certain
3  claims and defendants, which was filed in this action on July 22, 2013.)
4      At the time that experts were designated in this case, Plaintiff designated
5  Judd to testify on Namco's insolvency. Plaintiff failed to designate anyone to
6  testify on damages.
7      After Defendants' designated experts provided reports on Plaintiff's alleged
8  damages, Plaintiff belatedly counter-designated Judd to provide such an analysis.
9      Over the course of the past 4½ years, Plaintiff and Neilsen have filed
10 numerous fee applications, which are public record. These fee applications
11 included, *inter alia*, requests for payment of the trustees' respective fees, their
12 shared expert Judd's and BRG's fees and Plaintiff's consultant DSI's fees. (*See*
13 e.g. RJN ¶15, Ex. 15 (Plaintiff's Notice of Hearing on Applications of Chapter 11
14 Trustees and Professionals for Approval and Payment of Interim Compensation
15 and Reimbursement of Expenses (the "Fee Application Notice"), filed in Namco
16 Capital's bankruptcy case on September 21, 2012.)
17     In fact, when Mr. Judd was asked about the fees he charged for his work for
18 Plaintiff at his deposition, he referred defendants to his fee applications that
19 Plaintiff now wants to keep out.[5]

---

[5] *See also*, Deposition of David Judd taken on July 8, 2013, pp. 24:13 – 25:8:

> Q: And the time that you've spent providing the accounting and financial-related services that you've described, with respect to the Namco Capital Group estate, you -- your time was billed by BRG and LECG before that to the trustee by the companies you worked for, right?
> A. I don't know that we billed those services to the companies. I mean, we prepared fee applications that were filed with the court.
> Q. And those fee applications include time at your professional billing rate at both companies, right?

8   OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE TO EXCLUDE EVIDENCE RELATING TO PROFESSIONAL FEES; AND DECLARATION OF PAUL T. DYE

161515.1 8257.005

## III. LEGAL ARGUMENT

### A. Expert Fees Are Highly Relevant to Bias and Credibility.

The amount an expert witness is being paid for his study and testimony is relevant to bias and, therefore, discoverable and must be disclosed. *S.E.C. v. Sabhlok*, No. C 08-4238 CRB (JL), 2010 U.S. Dist. LEXIS 7082, at *5 (N.D. Cal. Jan. 13, 2010) ("an expert's compensation is **not** protected by any privilege or work-product immunity, and . . . the extent of the expert's financial interest in the case may be relevant to bias" (boldface and underlining added)).

In *Amster v. River Capital Group, LLC*, the court noted that a litigant's duty to disclose an expert's compensation under Federal Rule of Civil Procedure 26(a)(2)(B) is not limited to the expert's hourly rate; it extends to the expert's *total* compensation. *See Amster v. River Capital Group, LLC*, No. 00 Civ. 9708 (DC) (DF), 2002 U.S. Dist. LEXIS 16595, at *2-4 (S.D.N.Y. Sept. 3, 2002); *see also Butler v. Rigsby*, Civ. No. 96-2453, 1998 U.S. Dist. LEXIS 4618, at *10 (E.D. La. Apr. 7, 1998) ("[t]he courts have held that the amount of income derived from services related to testifying as an expert witness *is relevant to show bias or financial interest*" (emphasis added)); *County of Suffolk v. Long Island Lighting Co.*, 122 F.R.D. 120, 124 (E.D.N.Y. 1988) (ordering disclosure of the expert's best estimate of the total income he received from plaintiff, as well as an estimate of the percentage of his professional income attributable to his work for plaintiff).

---

    A.   Yes.
\* \* \*
    Q.   The fees that were -- for which applications were made for payment by the estate of Namco Capital Group were based upon the services that you – you and others at BRG, and LECG before that, had performed for the estate, correct?
    A.   Yes.

9   OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE TO EXCLUDE EVIDENCE RELATING TO PROFESSIONAL FEES; AND DECLARATION OF PAUL T. DYE

161515.1 8257.005

1 Similarly, in *LNC Investments, Inc. v. First Fidelity Bank,* the court held that because the plaintiffs intended to call its attorneys from the firm of Weil Gotshal & Manges LLP as material witnesses, "[i]n cross-examining those witnesses, counsel for Defendants are entitled to ***very considerable latitude*** in inquiring into circumstances that may show bias on the part of the witness in favor of the party calling him[;] . . . the amount of the fees an attorney has received from a client (or hopes to receive) may be probative of the attorney's possible bias when called as a fact witness by the client." *LNC Invs., Inc. v. First Fid. Bank,* No. 92 Civ. 7584 (CSH), 2000 U.S. Dist. LEXIS 11926, at *6 (S.D.N.Y. Aug. 18, 2000) (emphasis added).

Under the case law, fees paid to experts are clearly relevant. Thus, there should be no question that the amounts paid to Judd, BRG and LECG are relevant and should be admitted.[6]

**B.    Judd's Testimony Is Critical To All Of Plaintiff's Claims.**

The question of whether Namco was solvent at the time of each transaction that Plaintiff alleges to have occurred between Namco and the defendants is central to all of the claims that Plaintiff is pursuing in this action (including those that have since been dismissed). (See generally Plaintiff's FAC.) Briefly (as this issue is covered in defendants' motions in limine):

- Neither Tony nor Ezri owed a fiduciary duty to creditors unless and until Namco became insolvent. Plaintiff does not dispute this. Their duty pre-insolvency was to Namco's shareholder – which was Ezri. Without insolvency, Plaintiff's claim that Tony and Ezri breached their fiduciary duty by failing to document loan transactions and by self-dealing through loans to family controlled LLCs cannot succeed

---

[6] Judd's expert reports in this case were based on work done by many professionals at LECG and BRG.

10    OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE TO EXCLUDE EVIDENCE RELATING TO PROFESSIONAL FEES; AND DECLARATION OF PAUL T. DYE

161515.1 8257.005

as Ezri ran Namco and approved the deals that Plaintiff complains about.

- Without a breach of fiduciary duty, there can be no aiding and abetting.
- Insolvency is a required element of Plaintiff's fraudulent transfer claim.
- The contract and account stated claims are based in large part on alter ego. For the LA Marriott transaction for example, the Namco account on which the account stated is based is an account for LA Hotel Ventures, LLC. Any contract claim realistically would be between Namco and this LLC. In order to recover from Defendants, Plaintiff therefor must prove Defendants are alter egos of LA Hotel Venture. The evidence for alter ego is inextricably entwined with the breach of fiduciary duty/aiding and abetting analysis: to wit, if Defendants owed no duty to creditors, there is no inequity required to pierce the corporate veil.
- The same applies to the equitable subordination claim.

### C. Professional Fees Incurred by the Trustees Are Also Relevant to the Issues of Bias and Credibility.

Plaintiff designated both himself and Neilsen as material witnesses in this case. Accordingly, their professional fees are as relevant to the issues of bias and credibility as are the experts' fees. Therefore, it is wholly appropriate for the defendants to question Plaintiff and Neilsen about their professional fees at trial.

### D. The Trustees' Relationship With Their Experts And Consultants Demonstrates Bias.

In addition to the relevance based on the expert opinions being offered by Judd from his employment by LECG and BRG, the evidence in this case will show that the Namco and Ezri bankruptcy estates have overlapping issues and have been

11   OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE TO EXCLUDE EVIDENCE RELATING TO PROFESSIONAL FEES; AND DECLARATION OF PAUL T. DYE

161515.1 8257.005

in large part co-run by the two trustees. The evidence will also show that they use the same consultants and seek each other's approval on a regular basis. Thus, Neilsen's role as a principal of first LECG and then BRG and those firms' hiring as the forensic accountants for the two estates is relevant – making the fee information for those firms all the more relevant.

Neilsen's and Judd's co-employment with BRG is evidence of bias. BRG and LECG's collaboration with Plaintiff (and with Neilsen) has resulted in substantial billings for Plaintiff's experts. For example, in less than 2 years, LECG generated over $4.4 million in fees, and BRG billed nearly $5 million in the 2½ year period from March 1, 2011 through August 2013. (*See* RJN ¶¶5-8, 10, 12, Ex. 5 (LECG's Final Fee Application at 2:19-5:3), Ex. 6 (BRG's Amended First Fee Application at 2:24-3:13), Ex. 7 (BRG's Second Fee Application at 2:24-4:6).)[7]

Similarly, Plaintiff is a Senior Vice President with DSI. DSI generated over $2 million in fees in the 2½ year period from March 18, 2010, when DSI was approved to assist Plaintiff, through August 31, 2012. As of September 24, 2012, DSI received $1,460,435.71 of this amount. (See RJN ¶¶11-14, 16, 18, Ex. 8 7 (Sharp's biographic profile from DSI's website), Ex. 9 (DSI's First Fee Application at 2:1-7), Ex. 10 (DSI's Second Fee Application at 2:17-24), Ex. 11 8 (DSI's Third Fee Application at 2:14-21, 3:11-12, 13:18-20).)

As noted above, Plaintiff's theories for recovery against the defendants in this action are largely, if not entirely, dependent upon the testimony of Judd. And Judd depended upon information obtained from DSI to construct his expert analysis and opinions. (*Compare* Dye Decl. ¶3, Ex. 9 (Judd's Expert Report) *with*

---

[7] About $1 million of the $1.8 million that BRG requested in its most recent fee application appears to be related to this lawsuit alone , and $200,000 is related to Judd's solvency analysis/expert report. (See RJN ¶¶5-8, 10, -12, Ex. 5 (LECG's Final Fee Application at 2:19-5:3), Ex. 6, and BRG's Third Fee Application.

12   OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE TO EXCLUDE EVIDENCE RELATING TO PROFESSIONAL FEES; AND DECLARATION OF PAUL T. DYE

161515.1 8257.005

Plaintiff's FAC *and* Plaintiff's Memorandum of Contention of Facts and Law, which Plaintiff filed on September 17, 2013. *See also* Dye Decl. ¶3, Ex. 9 (Judd's Expert Report at 26 n.13).)

     Critically, Plaintiff's overall compensation from his employer, DSI, is intertwined with DSI's fees in this case, and Neilsen's (as well as Judd's) compensation from his employer, BRG, is intertwined with BRG's fees in this case. (*See* Dye Decl. ¶¶4-5, Ex. 10 (Sharp's August 5, 2013 Depo. Tr. at 42:10-46:2), Ex. 11 (Neilsen's July 10, 2013 Depo. Tr. 74:21-79:5).)

     The many millions of dollars in fees that Plaintiff's accounting have thus far charged are even more indicative of bias in this case than is otherwise typical. Here, Plaintiff's income is intertwined with DSI's income and Neilsen's income is intertwined with how much money LECG and BRG earn in this case, as well as in Namco and Ezri's bankruptcy cases. The $4.4 million in fees that Judd and Neilsen's former employer, LECG, generated before Judd and Neilsen's current employer, BRG, took over in providing expert services to Plaintiff are equally relevant to the issue of bias.

     Moreover, Judd expressly stated in his expert report that he relied upon DSI's analysis in formulating his own expert opinions. Incidentally, Plaintiff's income is directly intertwined with the $2 million plus in fees that his own employer, DSI, has thus far generated in this case and in the two bankruptcy cases.

     Therefore, the vast sums of money generated by Plaintiff's experts and by his employer, DSI, are highly relevant to the issue of bias and credibility, and none of the defendants, including the STR Defendants and the Mousa Defendants, should be precluded from disclosing the fees that Plaintiff paid (or expects to be paying) in exchange for the expert opinions that he is relying upon so heavily. The jurors should certainly be sufficiently informed so that they may weigh Plaintiff's expert's testimony at trial.

13    OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE TO EXCLUDE EVIDENCE RELATING TO PROFESSIONAL FEES; AND DECLARATION OF PAUL T. DYE

161515.1 8257.005

1  The jury needs to be clear that Plaintiff and his experts tell their story
2  because they are being well compensated to the extent of millions of dollars. For
3  the Trustee to argue that their pay scale should be excluded from examination by
4  the jury undermines the defendants' ability to show bias and the credibility of the
5  witnesses, which is critical in the jury determining the most significant issues in
6  this trial.

## IV. CONCLUSION

The fees paid to Plaintiff and his experts, just like the fees paid to any expert, are relevant to the issue of bias. Although perhaps no quite of the magnitude of the experts in the Jackson/AEG trial, the amount paid here is staggering. These are not independent witnesses. They are very well paid experts and the jury needs to be clear that Plaintiff and his experts tell their story because they are being well paid. Their bias, their pay scale, is very relevant. The jury's function is to decide material facts. This necessarily involves weighing evidence and deciding which witnesses to believe.

For the reasons set out in this Opposition, Defendants respectfully and jointly request that the Court deny Plaintiff's Motion in Limine to Exclude Evidence Relating to Professional Fees in its entirety.

DATED: September 30, 2013            **SALTZBURG, RAY & BERGMAN, LLP**

By: /s/ *Paul T. Dye*
        Paul T. Dye

Attorneys for Defendants
Lacy 20, LLC, Hooshang Namvar,
Homayoun Namvar, Ramin Namvar,
Trifish, LLC, Tribun, LLC, Believers, LLC,
Net, LLC, Light Source Management, LLC,
and Woodman Partners, LLC

14   OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE TO EXCLUDE EVIDENCE RELATING TO PROFESSIONAL FEES; AND DECLARATION OF PAUL T. DYE

161515.1 8257.005

| | | |
|---|---|---|
| 1 | DATED: September 30, 2013 | **GREEN GLUSKER FIELDS CLAMAN & MACTINGER LLP** |
| 2 | | |
| 3 | | By: /s/ *Bernard M. Resser* |
| 4 | | Bernard M. Resser |
| 5 | | |
| 6 | | Attorneys for Defendants |
| 7 | | Mousa Namvar, Magdiel, LLC DGADE of Delaware, LLC, Namco 8, LLC, |
| 8 | | Bunherst, LLC and Wishlab 90, LLC |

12121 Wilshire Boulevard, Suite 600
Los Angeles, California 90025-1166

15 OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE TO EXCLUDE EVIDENCE RELATING TO PROFESSIONAL FEES; AND DECLARATION OF PAUL T. DYE

161515.1 8257.005

# DECLARATION OF PAUL T. DYE

I, Paul T. Dye, declare as follows:

1. I am an attorney at law, authorized to practice before the Federal Courts in the Central District and before this Court. I am a partner in Saltzburg, Ray & Bergman, LLP, the attorneys for defendants Lacy 20, LLC, Hooshang "Sean" Namvar, Homayoun "Tony" Namvar, Ramin Namvar, Trifish, LLC, Tribun, LLC, Believers, LLC, Net, LLC, Light Source Management, LLC and Woodman Partners, LLC. The statements made herein are of my own personal knowledge and if called upon to testify, I could and would competently testify thereto.

2. A true and correct copy of plaintiff Bradley D. Sharp's May 17, 2013 Expert Witness Designation that we received in or around May 2013 is attached to the Exhibits in Support of Opposition to Plaintiff's Motion in Limine to Exclude Evidence Relating to Professional Fees, filed concurrently with this declaration and the attached Opposition, as Exhibit 4.

3. A true and correct copy of Plaintiff's expert David H. Judd's Expert Report is attached to the Exhibits as Exhibit 9.

4. True and correct copies of the cited, relevant portions of the transcript of Plaintiff's August 5, 2013 deposition are attached to the Exhibits as Exhibit 10.

5. True and correct copies of the cited, relevant portions of the transcript of R. Todd Neilsen's July 10, 2013 deposition are attached to the Exhibits as Exhibit 11.

6. True and correct copies of the cited, relevant portions of the transcript of Plaintiff's July 24, 2013 deposition are attached to the Exhibits as Exhibit 13.

///
///
///

161515.1 8257.005

1 | I declare under penalty of perjury under the laws of the United States of
2 | America that the foregoing is true and correct. Executed this 30th day of
3 | September 2013 at Los Angeles, California.

*/s/ Paul T. Dye*
Paul T. Dye

**PROOF OF SERVICE**
Case No. 2:11-cv-05320-GAF (CWx)

STATE OF CALIFORNIA )
) ss.
COUNTY OF LOS ANGELES )

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is 12121 Wilshire Boulevard, Suite 600, Los Angeles, California 90025.

On September 30, 2013, I caused the foregoing document(s) described as **OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE TO EXCLUDE EVIDENCE RELATING TO PROFESSIONAL FEES; AND DECLARATION OF PAUL T. DYE** to be served on the interested parties in this action as follows:

*PLEASE SEE THE ATTACHED SERVICE LIST*

**X   VIA COURT'S NOTICE OF ELECTRONIC FILING**

Pursuant to L.R. 5-3 and 5-4, following ordinary business practices, I electronically filed the foregoing document(s) with the Clerk of the Court by using the Court's automated CM/ECF system. I checked the CM/ECF docket for this case and determined that the person(s) indicated above are registered as CM/ECF Users who have consented to electronic service through the Notice of Electronic Filing transmission sent to the e-mail address(es) listed above.

**X   VIA PERSONAL DELIVERY**

In accordance with L.R. 5-4.5, the "mandatory chambers copy" of the foregoing document(s) will be delivered to:

The Honorable Gary A. Fees
U.S. District Court, Central District of California – Western Division
Edward R. Roybal Federal Building and United States Courthouse
255 E. Temple Street, Room 730
Los Angeles, CA  90012-3332
(Placed in the courtesy copy box outside the entry door to chambers)

**X   FEDERAL**

I declare under penalty of perjury under the laws of the United States of America that the above is true and correct. Executed on September 30, 2013, at Los Angeles, California.

                                                */s/ Aaron Rosenberg*
                                                Aaron Rosenberg

# SERVICE LIST
## Case No. 2:11-cv-05320-GAF (CWx)

Matthew Peter Chan Benham
benham.esq@gmail.com

Alan Frank Broidy
afbroidy@ix.netcom.com

Gillian N Brown
gbrown@pszjlaw.com

Brian Leslie Davidoff
bdavidoff@greenbergglusker.com,kwoodson@greenbergglusker.com,jreinglass@greenbergg, lusker.com,calendar@greenbergglusker.com

Alan J Kornfeld
akornfeld@pszyj.com

Richard Hyungil Lee
richard.lee@salisianlee.com,christina.cordero@salisianlee.com

Robert B Mobasseri
robert@lawyer.com,robertm@mobasseripc.com

Richard M Pachulski
jstang@pszjlaw.com

Daryl G Parker
dparker@pszjlaw.com

Bernard M Resser
bresser@greenbergglusker.com,calendar@greenbergglusker.com

Neal S Salisian
neal.salisian@salisianlee.com,christina.cordero@salisianlee.com

Newton C Tak
newton.tak@salisianlee.com

Elissa A Wagner
ewagner@pszjlaw.com

Lori L Werderitch
lwerderitch@greenbergglusker.com,jreinglass@greenbergglusker.com

Dean A Ziehl
dziehl@pszjlaw.com,mdj@pszjlaw.com

161515.1 8257.005