FILED
CLERK, U.S. DISTRICT COURT

NOV - 4 2014

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### LOS ANGELES DIVISION

| | |
|---|---|
| In re: | Case No. 2:11-cv-05320-GAF(CWx) |
| NAMCO CAPITAL GROUP, INC., a California corporation, | Chapter 11 |
| Debtor. | Bankr. Case No. 2:08-bk-32333-BR |
| | Bankr. Adv. No. 2:10-ap-02945-BR |
| BRADLEY D. SHARP, solely in his capacity as Liquidating Trustee of The Namco Liquidating Trust, | ~~[REVISED PROPOSED]~~ **FINDINGS OF FACT AND CONCLUSIONS OF LAW IN SUPPORT OF JUDGMENT IN FAVOR OF PLAINTIFF BRADLEY D. SHARP, LIQUIDATING TRUSTEE OF THE NAMCO LIQUIDATING TRUST** |
| Plaintiff, | |
| vs. | |
| MOUSA NAMVAR, *et al.*, | |
| Defendants. | |



1    Commencing on October 21, 2014, the Court held a two-day Trial on the

2    Eleventh Claim for Relief of the *First Amended Complaint for Damages, Equitable*

3    *Subordination, Declaratory and Injunctive Relief; Objection to Claims* in the

4    above-captioned action (the "Action").  Plaintiff Bradley D. Sharp, in his capacity

5    as the Liquidating Trustee (the "Trustee") of The Namco Liquidating Trust, was

6    represented at the Trial by Alan J. Kornfeld and Elissa A. Wagner of Pachulski

7    Stang Ziehl & Jones LLP.  Defendants Daniel Namvar, Benjamin Namvar, Malka

8    Namvar and Shirah Namvar (collectively, the "Defendants") were represented at the

9    Trial by Douglas D. Kappler of Margulies Faith LLP.  Having considered the

10   testimony of witnesses, documentary evidence and legal arguments presented by

11   counsel, the Court makes the following findings of fact and conclusions of law:

12

13                              **FINDINGS OF FACT**

14   **I.    Procedural History**

15         1.    On December 22, 2008 (the "Petition Date"), certain creditors filed an

16   involuntary petition for relief under chapter 11 of title 11 of the United States Code

17   (the "Bankruptcy Code") against Namco Capital Group, Inc. ("Namco"), a California

18   corporation, in the United States Bankruptcy Court for the Central District of

19   California (the "Bankruptcy Court").

20         2.    On the same date, certain creditors of Ezri Namvar ("Ezri"), the former

21   CEO and sole shareholder of Namco, filed an involuntary chapter 11 petition against

22   Ezri in the Bankruptcy Court.  Defendants Daniel Namvar and Benjamin Namvar are

23   Ezri's sons, and Defendants Malka Namvar and Shirah Namvar are Ezri's daughters.

24   Ezri is currently incarcerated in federal prison, having been convicted of wire fraud in

25   connection with improper transfers of funds from one of Ezri's 1031 exchange

26   companies, Namco Financial Exchange Corp. ("NFE"), *to entities owned or controlled by Ezri and his family members*.

27         3.    On May 8, 2009, the Bankruptcy Court approved the appointment of the

28   Trustee as the chapter 11 trustee in Namco's chapter 11 case (the "Namco Case").

-1-

1   The Bankruptcy Court also has approved the employment of Berkeley Research

2   Group, LLC ("BRG") to provide, among other things, forensic accounting services in

3   connection with the Namco Case.

4       4.      In his capacity as the chapter 11 trustee for Namco, the Trustee

5   commenced this Action in the Bankruptcy Court in the Namco Case on October 26,

6   2010. On June 24, 2011, the Bankruptcy Court transferred the Action to this Court.

7       5.      Following the confirmation of a joint liquidating plan in the Namco

8   Case, the Trustee has continued to prosecute this Action in his capacity as the

9   Liquidating Trustee of The Namco Liquidating Trust.

10      6.      The Trustee's Eleventh Claim for Relief against the Defendants, which

11  seeks to avoid and recover certain transfers (collectively, the "Transfers") pursuant to

12  11 U.S.C. § 544(b)(1), 11 U.S.C. § 550, Cal. Civ. Code § 3439.05 and Cal. Civ. Code

13  § 3439.07, was the sole claim for relief presented at the Trial. All other defendants

14  previously named in the Action have settled with the Trustee and/or have been

15  voluntarily dismissed by the Trustee.

16

17  **II.    Background Facts**

18      7.      Prior to the Petition Date, Namco operated as an investment company

19  and commercial real estate lender. The majority of Namco's investors were

20  individuals who were members of the Persian community in Los Angeles. In

21  general, Namco's investors would, in exchange for their deposits, receive promissory

22  notes from Namco that typically were payable within 30 days of demand.

23      8.      The vast majority of the funds Namco received from its investors were

24  used to purchase and subsidize a variety of real estate ventures owned directly or

25  indirectly by Ezri and his family members. Almost without exception, Namco did not

26  hold any ownership or security interests in those real estate ventures, and did not

27  receive any promissory notes, loan agreements or deeds of trust in exchange for the

28



-2-

*(which included millions of dollars / investor reports)*

1   use of its funds. Moreover, Namco received only sporadic (if any) interest payments

2   in connection with the funds it advanced for the Namvar family's real estate ventures.

3       9.      Namco's profits, if any, were to be derived from the difference between

4   the interest owed to Namco's investors and the interest due to Namco via its "lending"

5   activities.  With the bulk of Namco's "lending" activities concentrated in the Namvar

6   family's long-term real estate ventures, however, and with no notes, equity interests,

7   deeds of trust or other security interests, or stated repayment terms to protect Namco,

8   this "business model" ultimately proved unsustainable.

9       10.     The total amount of unsecured claims asserted in the Namco Case

10  exceeds $1 billion, with in excess of $238 million of claims to be allowed in the

11  Namco Case. *See* Tr. Exh. 898.

12

13  **III.   <u>The Transfers To Or For the Benefit of the Defendants</u>**

14      11.     Namco's financial books and records were maintained using the

15  QuickBooks software program ("<u>QuickBooks</u>").  Namco's general ledger is a

16  representation of the accounting entries contained within Namco's QuickBooks

17  records.  *See* Tr. Exh. 1995.  The Trustee's accounting professionals have determined

18  that Namco's QuickBooks records and general ledger are consistent with Namco's

19  bank records, and accurately reflect Namco's financial transactions.

20      12.     The following QuickBooks accounts were maintained for the

21  Defendants:  (a) all transfers and repayments attributable to Daniel Namvar were

22  maintained on Namco's books using account number 132.07; (b) all transfers and

23  repayments attributable to Benjamin Namvar were maintained on Namco's books

24  using account number 132.06; (c) all transfers and repayments attributable to Malka

25  Namvar were maintained on Namco's books using account number 132.08; and (d)

26  all transfers and repayments attributable to Shirah Namvar were maintained on

27  Namco's books using account number 132.09.  *See* Tr. Exh. 947-950.

28



Case 2:11-cv-05320-BRO-CW  Document 434  Filed 11/04/14  Page 5 of 25  Page ID #:20827
Case 2:11-cv-05320-GAF-CW  Document 429-1  Filed 10/30/14  Page 6 of 26  Page ID
#:20507

1       13.     With respect to Daniel Namvar, Namco's general ledger reflects that

2   Daniel Namvar owed approximately $50.6 million to Namco as of the Petition Date.

3   *See* Tr. Exh. 947. After the Petition Date, $20 million of that amount was written off

4   as a bad debt. *Id.*

5       14.     At the Trial, the Defendants stipulated on the record that, between April

6   17, 2006 and January 22, 2008, Namco made the following Transfers of its funds,

7   totaling $1,205,000, to Daniel Namvar or to taxing authorities on behalf of Daniel

8   Namvar (collectively, the "Daniel Transfers"):

9
10
| Date | Amount | Payee | Account No. |
| --- | --- | --- | --- |
| April 17, 2006 | $75,000 | U.S. Treasury | 132.07 – Daniel Namvar |
| April 17, 2006 | $125,000 | Franchise Tax Board | 132.07 – Daniel Namvar |
| June 16, 2006 | $140,000 | Daniel Namvar | 132.07 – Daniel Namvar |
| January 23, 2007 | $220,000 | Daniel Namvar | 132.07 – Daniel Namvar |
| April 17, 2007 | $400,000 | U.S. Treasury | 132.07 – Daniel Namvar |
| April 17, 2007 | $100,000 | Franchise Tax Board | 132.07 – Daniel Namvar |
| August 29, 2007 | $15,000 | Daniel Namvar | 132.07 – Daniel Namvar |
| January 22, 2008 | $130,000 | Daniel Namvar | 132.07 – Daniel Namvar |

16   *See* Tr. Exh. 2007. Each Daniel Transfer was made by Namco to or for the benefit of

17   Daniel Namvar.

18       15.     Daniel Namvar owed in excess of $50 million to Namco at the time of

19   each of the Daniel Transfers. *See* Tr. Exh. 947, 947A. Although the Daniel

20   Transfers are identified in Namco's QuickBooks records as receivables due from

21   Daniel Namvar, Namco was not repaid for the Daniel Transfers, and did not receive

22   any promissory notes, written agreements, verbal repayment promises, deeds of trust

23   or other collateral, or anything else of value in exchange for the Daniel Transfers.

24   Moreover, Daniel Namvar has not provided any goods or services to Namco, and has

25   not transferred any of his ownership interests in any LLCs to Namco or the Trustee.

26   Based on these facts, which the Trustee established by a preponderance of the

27   evidence, Namco did not receive reasonably equivalent value in exchange for the

28   Daniel Transfers.



-4-

16.     With respect to Benjamin Namvar, Namco's general ledger reflects that Benjamin Namvar owed approximately $52.2 million to Namco as of the Petition Date. *See* Tr. Exh. 948. After the Petition Date, $20 million of that amount was written off as a bad debt. *Id.*

17.     At the Trial, the Defendants stipulated on the record that, between April 17, 2006 and January 22, 2008, Namco made the following Transfers of its funds, totaling $1,660,000, to Benjamin Namvar or to taxing authorities on behalf of Benjamin Namvar (collectively, the "Benjamin Transfers"):

| Date | Amount | Payee | Account No. |
|------|--------|-------|-------------|
| April 17, 2006 | $80,000 | Franchise Tax Board | 132.06 – Benjamin Namvar |
| April 17, 2006 | $120,000 | U.S. Treasury | 132.06 – Benjamin Namvar |
| June 16, 2006 | $150,000 | Benjamin Namvar | 132.06 – Benjamin Namvar |
| October 17, 2006 | $340,000 | Benjamin Namvar | 132.06 – Benjamin Namvar |
| January 23, 2007 | $230,000 | Benjamin Namvar | 132.06 – Benjamin Namvar |
| April 17, 2007 | $400,000 | U.S. Treasury | 132.06 – Benjamin Namvar |
| April 17, 2007 | $100,000 | Franchise Tax Board | 132.06 – Benjamin Namvar |
| January 22, 2008 | $240,000 | Benjamin Namvar | 132.06 – Benjamin Namvar |

*See* Tr. Exh. 2004. Each Benjamin Transfer was made by Namco to or for the benefit of Benjamin Namvar.

18.     Benjamin Namvar owed in excess of $50 million to Namco at the time of each of the Benjamin Transfers. *See* Tr. Exh. 948, 948A. Although the Benjamin Transfers are identified in Namco's QuickBooks records as receivables due from Benjamin Namvar, Namco was not repaid for the Benjamin Transfers, and did not receive any promissory notes, written agreements, verbal repayment promises, deeds of trust or other collateral, or anything else of value in exchange for the Benjamin Transfers. Moreover, Benjamin Namvar has not provided any goods or services to Namco, and has not transferred any of his ownership interests in any LLCs to Namco or the Trustee. Based on these facts, which the Trustee established by a preponderance of the evidence, Namco did not receive reasonably equivalent value in exchange for the Benjamin Transfers.



19.     With respect to Malka Namvar, Namco's general ledger reflects that Malka Namvar owed approximately $50.6 million to Namco as of the Petition Date. *See* Tr. Exh. 949.  After the Petition Date, $20 million of that amount was written off as a bad debt. *Id.*

20.     At the Trial, the Defendants stipulated on the record that, between April 17, 2006 and January 22, 2008, Namco made the following Transfers of its funds, totaling $1,210,000, to Malka Namvar or to taxing authorities on behalf of Malka Namvar (collectively, the "Malka Transfers"):

| Date | Amount | Payee | Account No. |
| --- | --- | --- | --- |
| April 17, 2006 | $75,000 | U.S. Treasury | 132.08 – Malka Namvar |
| April 17, 2006 | $125,000 | Franchise Tax Board | 132.08 – Malka Namvar |
| June 16, 2006 | $140,000 | Malka Namvar | 132.08 – Malka Namvar |
| January 23, 2007 | $220,000 | Malka Namvar | 132.08 – Malka Namvar |
| March 2, 2007 | $1,000 | Malka Namvar | 132.08 – Malka Namvar |
| April 17, 2007 | $400,000 | U.S. Treasury | 132.08 – Malka Namvar |
| April 17, 2007 | $100,000 | Franchise Tax Board | 132.08 – Malka Namvar |
| May 4, 2007 | $4,000 | Malka Namvar | 132.08 – Malka Namvar |
| August 29, 2007 | $15,000 | Malka Namvar | 132.08 – Malka Namvar |
| January 22, 2008 | $130,000 | Malka Namvar | 132.08 – Malka Namvar |

*See* Tr. Exh. 2010.  Each Malka Transfer was made by Namco to or for the benefit of Malka Namvar.

21.     Malka Namvar owed in excess of $50 million to Namco at the time of each of the Malka Transfers. *See* Tr. Exh. 949, 949A.  Although the Malka Transfers are identified in Namco's QuickBooks records as receivables due from Malka Namvar, Namco was not repaid for the Malka Transfers, and did not receive any promissory notes, written agreements, verbal repayment promises, deeds of trust or other collateral, or anything else of value in exchange for the Malka Transfers. Moreover, Malka Namvar has not provided any goods or services to Namco, and has not transferred any of her ownership interests in any LLCs to Namco or the Trustee. Based on these facts, which the Trustee established by a preponderance of the



Case 2:11-cv-05320-BRO-CW   Document 434   Filed 11/04/14   Page 8 of 25   Page ID #:20830
Case 2:11-cv-05320-GAF-CW   Document 429-1   Filed 10/30/14   Page 9 of 26   Page ID
#:20510

1   evidence, Namco did not receive reasonably equivalent value in exchange for the

2   Malka Transfers.

3        22.    With respect to Shirah Namvar, Namco's general ledger reflects that

4   Shirah Namvar owed approximately $50.6 million to Namco as of the Petition Date.

5   *See* Tr. Exh. 950.  After the Petition Date, $20 million of that amount was written off

6   as a bad debt.  *Id.*

7        23.    At the Trial, the Defendants stipulated on the record that, between April

8   17, 2006 and January 22, 2008, Namco made the following Transfers of its funds,

9   totaling $1,212,000, to Shirah Namvar or to taxing authorities on behalf of Shirah

10   Namvar (collectively, the "Shirah Transfers"):

| Date | Amount | Payee | Account No. |
|------|--------|-------|-------------|
| April 17, 2006 | $125,000 | Franchise Tax Board | 132.09 – Shirah Namvar |
| April 17, 2006 | $75,000 | U.S. Treasury | 132.09 – Shirah Namvar |
| June 16, 2006 | $140,000 | Shirah Namvar | 132.09 – Shirah Namvar |
| January 23, 2007 | $220,000 | Shirah Namvar | 132.09 – Shirah Namvar |
| April 17, 2007 | $400,000 | U.S. Treasury | 132.09 – Shirah Namvar |
| April 17, 2007 | $100,000 | Franchise Tax Board | 132.09 – Shirah Namvar |
| May 4, 2007 | $2,000 | Shirah Namvar | 132.09 – Shirah Namvar |
| August 29, 2007 | $20,000 | Shirah Namvar | 132.09 – Shirah Namvar |
| January 22, 2008 | $130,000 | Shirah Namvar | 132.09 – Shirah Namvar |

19   *See* Tr. Exh. 2013.  Each Shirah Transfer was made by Namco to or for the benefit of

20   Shirah Namvar.

21        24.    Shirah Namvar owed in excess of $50 million to Namco at the time of

22   each of the Shirah Transfers.  *See* Tr. Exh. 950, 950A.  Although the Shirah Transfers

23   are identified in Namco's QuickBooks records as receivables due from Shirah

24   Namvar, Namco was not repaid for the Shirah Transfers, and did not receive any

25   promissory notes, written agreements, verbal repayment promises, deeds of trust or

26   other collateral, or anything else of value in exchange for the Shirah Transfers.

27   Moreover, Shirah Namvar has not provided any goods or services to Namco, and has

28   not transferred any of her ownership interests in any LLCs to Namco or the Trustee.



1   Based on these facts, which the Trustee established by a preponderance of the

2   evidence, Namco did not receive reasonably equivalent value in exchange for the

3   Shirah Transfers.

    24A. *In sum, Ezri's four children received from Namco $5,252,000 between April 17, 2006 and January 22, 2008.*

4

5   **IV.  Namco's Insolvency**

6       25.   At the Trial, David H. Judd, a Director at BRG, provided expert

7   testimony on behalf of the Trustee regarding Namco's insolvency at the time of each

8   of the Transfers.

9       26.   Mr. Judd opined that, as of March 31, 2006, the amount of Namco's

10  liabilities – which included a $119 million payable to NFE and substantial interest

11  payments owed to various LLCs – exceeded the fair value of Namco's assets – which

12  consisted primarily of unpaid, undocumented and uncollateralized receivables owed

13  by the Namvar family – by no less than approximately $4.1 million to $5.2 million.

14  *See* Tr. Exh. 153 at pgs. 3, 16, 18.

15      27.   This amount was conservative, in that it did not include any allowance

16  for doubtful accounts.  It is a common practice among lenders to record an allowance

17  for non-collectability of receivables.  As of March 31, 2006, Namco's account

18  receivables totaled approximately $515 million.  For every 1% allowance for doubtful

19  accounts, the net value of Namco's receivables would decrease, and Namco's

20  insolvency would increase, by approximately $5 million.  A modest 5% allowance for

21  doubtful accounts, which would not be unreasonable in this case, would decrease the

22  net value of Namco's receivables, and increase Namco's insolvency, by

23  approximately $25 million.

24      28.   Mr. Judd also opined that Namco's financial condition and access to

25  capital did not improve or change after March 31, 2006, and that Namco therefore was

26  insolvent on all dates after March 31, 2006.  *See* Tr. Exh. 153 at pgs. 3, 23-26.  Mr.

27  Judd's opinion in this regard was based on, among other things:  the ~~ongoing~~ lack of

28  documentation for Namco's receivables; the overwhelming percentage of receivables



-8-

Case 2:11-cv-05320-BRO-CW   Document 434   Filed 11/04/14   Page 10 of 25   Page ID
Case 2:11-cv-05320-GAF-CW   Document 428-1   Filed 10/30/14   Page 11 of 26   Page ID
#:20512

due from Namvar family members; the speculative nature of the Namvar family's real estate ventures; the steep decline in the real estate market beginning in 2007; and Namco's negative cash flows in 2007 and 2008. *Id.*

29.   Mr. Judd testified that, in evaluating Namco's financial condition, he used the "orderly disposition" valuation method. *See also* Tr. Exh. 153 at pgs. 9-10. The "orderly disposition" valuation method is appropriate where the likelihood that an entity's assets will generate future positive cash flow is so remote that a potential buyer would not evaluate the entity's assets based on their ability to generate future cash flows. *Id.*

30.   Mr. Judd's testimony regarding Namco's insolvency and his application of the "orderly disposition" valuation method was credible and consistent with Namco's financial records and other evidence presented at the Trial, which established the following:

        a.    Namco's assets consisted primarily of open receivables due from Namvar family members, most (if not all) of which were not supported by signed notes or other loan documentation, stated payment terms for principal or interest, or deeds of trust or other security agreements.  Many of Namco's receivables remained unpaid, and even increased, between March 31, 2006 and the Petition Date; some of those receivables also had existed for many years prior to March 31, 2006.  Accordingly, Namco's receivables  were not current assets, *i.e.*, assets that could be converted to cash within one year.

        b.    As of March 31, 2006, Namco's only current asset was its cash. Even accepting the cash balance identified by the Defendants'  expert witness, Namco had only $4 million of cash as of March 31, 2006. *See* Tr. Exh. 2032.



-9-

Case 2:11-cv-05320-BRO-CW   Document 434   Filed 11/04/14   Page 11 of 25   Page ID
Case 2:11-cv-05320-GAF-CW   Document 433   Filed 10/30/14   Page 12 of 26   Page ID
#:20513

    c.    As of March 31, 2006, Namco's liabilities totaled between $527.9 million, if accrued interest payable is excluded from the analysis, and $552.4 million, if accrued interest payable is included in the analysis. *See* Tr. Exh. 153 at pgs. 16, 18.  At least $323 million of Namco's liabilities were current liabilities payable on demand within 30 days to Namco's investors, or within 180 days to Ezri's 1031 exchange companies.  Thus, as of March 31, 2006, Namco did not have sufficient current assets to satisfy its current liabilities.

    d.    Namco's financial condition and access to capital did not improve after March 31, 2006.  In particular, Namco remained unable to convert its undocumented, uncollateralized receivables into cash.  Between December 31, 2004 and December 31, 2007, Namco's unadjusted account receivables increased from approximately $308.7 million to approximately $527.5 million. *See* Tr. Exh. 1995 at pgs. P12532, P13451; *see also* Tr. Exh. 2031 at pg. 58.  Namco's unadjusted interest receivables also continued to increase, from $8.1 million as of December 31, 2004 to $52.6 million as of December 31, 2007. *See* Tr. Exh. 1995 at pgs. P12487, P13400; *see also* Tr. Exh. 2031 at pg. 58.

    e.    Finally, Namco was cash flow negative, in significant amounts, from 2005 through 2008. *See* Tr. Exh. 153 at pg. 10.  Between December 31, 2005 and December 31, 2007, Namco lost approximately $31.2 million in cash. *See* Tr. Exh. 2031 at pg. 46.  By December 31, 2007, Namco's cash balance was negative $100,000. *See* Tr. Exh. 2032.

31.    In an effort to rebut Mr. Judd's opinions regarding Namco's insolvency, the Defendants offered the testimony and report of their expert witness, Jason A.




Case 2:11-cv-05320-BRO-CW   Document 434   Filed 11/04/14   Page 12 of 25   Page ID
Case 2:11-cv-05320-GAF-CW   Document 403-1   Filed 10/30/14   Page 13 of 26   Page ID
#:20514

Engel. *See* Tr. Exh. 2031, 2032.  Mr. Engel testified that, in his opinion, Namco remained solvent through 2008, and should have been evaluated as a going concern. The Court finds that Mr. Engel's testimony lacked credibility and was not supported by the evidence presented at the Trial, for the following reasons:

      a.    Mr. Engel testified that, in his opinion, Namco was solvent through 2008, yet candidly admitted that he had not performed a solvency analysis to determine the date on which Namco became insolvent.

      b.    Mr. Engel opined that Namco should be evaluated as a going concern because, among other reasons, negative cash flows are in the ordinary course of business for developers and construction lenders.  Mr. Engel, however, ignored the uncontroverted evidence regarding Namco's business and operations:  Namco was not a real estate developer, as Namco almost without exception did not own any interests in the real estate projects it funded; and Namco did not operate as a "typical" construction lender, in that Namco's lending was concentrated among members of the Namvar family or their related LLCs (many of which were controlled by Ezri), Namco's lending was not documented or secured by deeds of trust or other security agreements, and Namco did not receive regular interest or principal payments.

      c.    Mr. Engel testified that the value of Namco's account receivables was dependent upon the value of the real estate owned by the Namvar family members or their related LLCs.  Mr. Engel's testimony in this regard was misleading and not supported by the evidence, which established that Namco's loans to Namvar family members or their related LLCs were not documented or secured by deeds of trust or any other interest in the real estate owned by the Namvar family members or their related LLCs.

-11-



Case 2:11-cv-05320-BRO-CW   Document 434   Filed 11/04/14   Page 13 of 25   Page ID
Case 2:11-cv-05320-GAF-CW   Document 429-5   Filed 10/30/14   Page 14 of 26   Page ID
#:20515

1    d.   Mr. Engel admitted that he did not make any effort to determine

2         the value or collectability of Namco's account receivables.

3    e.   When faced with the undisputed evidence that Namco's current

4         liabilities exceeded Namco's current assets as of March 31, 2006,

5         Mr. Engel attempted to avoid acknowledging the generally

6         accepted definition of a "current" asset.

7    f.   Mr. Engel testified that, in his opinion, Namco's financial

8         performance should have been measured using accrual basis

9         accounting, instead of cash basis accounting.  Accrual basis

10        accounting, as it pertains to interest receivable, is based on the

11        premise that amounts owed to a company will, in fact, be paid.

12        Here, the overwhelming majority of Namco's receivables were

13        open (unpaid) accounts with no notes, no deeds of trust or other

14        security agreements, and no stated terms for principal or interest

15        payments.  Namco received interest payments only sporadically, if

16        at all.  Under these circumstances, accrual basis accounting would

17        vastly overstate the value of Namco's interest receivable.

18   g.   Mr. Engel criticized Mr. Judd's insolvency opinions on the

19        grounds that, according to Mr. Engel, Mr. Judd used hindsight to

20        determine Namco's insolvency as of March 31, 2006.  As an initial

21        matter, the Court rejected this argument prior to the Trial.  *See*

22        Docket No. 413.  Moreover, in an effort to pump up the value of

23        Namco's assets, Mr. Engel himself used hindsight to add

24        approximately $29 million to the value of Namco's assets as of

25        March 31, 2006, based on gains purportedly realized from the sale

26        of those assets in 2008.  Mr. Engel, however, did not apply this

27        hindsight where doing so would decrease the value of Namco's

28        assets.  As stated above, Mr. Engel did not analyze the



Case 2:11-cv-05320-BRO-CW   Document 434   Filed 11/04/14   Page 14 of 25   Page ID
Case 2:11-cv-05320-GAF-CW   Document 409-36   Filed 10/30/14   Page 15 of 26   Page ID
#:20516

1
2
3

4
5
6
7
8
9
10
11
12
13
14
15
16

17
18
19
20
21
22
23
24
25
26
27
28

collectability of Namco's receivables or determine the percentage
or amount of receivables that were outstanding as of March 31,
2006 and remained uncollected in 2008.

h.  Mr. Engel also challenged Mr. Judd's insolvency opinions on the
grounds that, according to Mr. Engel, Namco satisfied its
obligations to its creditors until late 2008. As established by Mr.
Judd's testimony, however, Namco was only able to satisfy its
obligations to some of its creditors by neglecting to fulfill its
obligations to other creditors between March 31, 2006 and the
Petition Date, including substantial amounts owed to Ezri's 1031
exchange companies and significant interest payments owed to
various LLCs. Moreover, Mr. Engel admitted that, in evaluating
Namco's liabilities, Mr. Engel did not take into account any
accrued interest payable to Ezri's 1031 exchange companies, even
though Namco's financial records reflected an accrued interest
payable to the 1031 exchange companies.

i.  Finally, Mr. Engel opined that the Trustee's First Financial Report,
which was filed in the Namco Case in February 2010, supports an
insolvency date in 2007 or 2008, rather than 2006. Mr. Engel
ignored, however, numerous statements in the First Financial
Report that identify early 2006 as the "breaking point" for Namco.
*See, e.g.,* Tr. Exh. 2030 at pg. 7 ("Once this downward trend
crossed the break-even point in April 2006, when cumulative
interest paid by Namco to its creditor/investors continuously
exceeded cumulative interest earned by Namco on its investment
portfolio, Namco started the descent into bankruptcy and never
recovered."); Tr. Exh. 2030 at pg. 8 (…"in April 2006 the interest
paid to creditor/investors exceeded the interest income being



-13-

Case 2:11-cv-05320-BRO-CW   Document 434   Filed 11/04/14   Page 15 of 25   Page ID
Case 2:11-cv-05320-GAF-CW   Document 428-7   Filed 10/30/14   Page 16 of 26   Page ID
#:20517

1    received from all other sources. At this point in time Namco was

2    descending into a monthly spiral of increasing expenses and

3    decreasing income."). Therefore, Mr. Judd's opinions regarding

4    Namco's insolvency – in particular, that Namco was insolvent as

5    of March 31, 2006 and all dates thereafter – are entirely consistent

6    with the First Financial Report.

7        32.    For the reasons set forth above, the Court accepts the opinions expressed

8    by Mr. Judd, and finds that the Trustee established by a preponderance of the evidence

9    that, as of March 31, 2006, Namco was insolvent by at least approximately $4.1

10   million to $5.2 million, and remained insolvent on all dates thereafter.

11

12   **V.    Namco's Creditors**

13       33.    At the Trial, the Defendants stipulated on the record that Namco had at

14   least one creditor with an unsecured claim that existed as of the date of Namco's

15   insolvency, remained in existence as of the Petition Date, and has been allowed in the

16   Namco Case.

17

18   **VI.    Prejudgment Interest**

19       34.    The principal amounts due and owing to Namco from each of the

20   Defendants are liquidated and undisputed, and the Defendants have stipulated as to

21   the amounts and dates of each of the Transfers. Accordingly, an award of

22   prejudgment interest from the date each Transfer was made is appropriate in this case

23   to compensate Namco's estate and its creditors for the loss of use of the funds that

24   were fraudulently transferred to or for the benefit of the Defendants, and wrongfully

25   withheld from Namco and its creditors.

26       35.    For the sake of calculation, prejudgment interest has been calculated

27   from the date of each of the Transfers through October 31, 2014, using the

28   following formula: (a) the per diem interest on each Transfer was determined by

-14-



1     multiplying the principal amount of the Transfer by the applicable interest rate

2     (here, 7% per annum), and dividing by 365 days in a year; and then (b) multiplying

3     that factor by the number of days between the date of the Transfer and October 31,

4     2014. *See* Tr. Exh. 2020, Tr. Exh. 2021, Tr. Exh. 2022, and Tr. Exh. 2023.

5        36.     Using this formula, the total amount of prejudgment interest awarded in

6     favor of the Trustee against each of the Defendants through October 31, 2014 is as

7     follows: against Daniel Namvar, prejudgment interest in the amount of $654,805

8     (*see* Tr. Exh. 2021); against Benjamin Namvar, prejudgment interest in the amount

9     of $902,212 (*see* Tr. Exh. 2020); against Malka Namvar, prejudgment interest in the

10     amount of $657,442 (*see* Tr. Exh. 2022); and against Shirah Namvar, prejudgment

11     interest in the amount of $658,367 (*see* Tr. Exh. 2023).

12        37.     The per diem amount of prejudgment interest against each Defendant for

13     each day from November 1, 2014 to the entry of judgment in this Action is as

14     follows: against Daniel Namvar, a per diem amount of $231.10 (*see* Tr. Exh. 2021);

15     against Benjamin Namvar, a per diem amount of $318.36 (*see* Tr. Exh. 2020); against

16     Malka Namvar, a per diem amount of $232.05 (*see* Tr. Exh. 2022); and against

17     Shirah Namvar, a per diem amount of $232.44 (*see* Tr. Exh. 2023).

18        38.     Any Finding of Fact set forth herein that may qualify as a Conclusion of

19     Law shall be equally considered as such.

20

21                     **CONCLUSIONS OF LAW**

22   **I.**     **Jurisdiction and Venue**

23        1.     The Court has jurisdiction over this Action pursuant to 28 U.S.C. § 1334,

24     and has personal jurisdiction over the Trustee and each of the Defendants.

25        2.     Venue in this district is proper pursuant to 28 U.S.C. § 1409(a).

26

27

28



Case 2:11-cv-05320-GAF-CW   Document 429-1   Filed 10/30/14   Page 18 of 26   Page ID
#:20519

## II.   The Trustee is Entitled to Avoid Each of the Transfers

3.      Pursuant to 11 U.S.C. § 544(b)(1), a trustee "may avoid any transfer of an interest of the debtor in property … that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502(e) of this title." 11 U.S.C. § 544(b)(1). Here, the Trustee seeks to avoid the Transfers pursuant to 11 U.S.C. § 544(b)(1) and California's Uniform Fraudulent Transfer Act, Cal. Civ. Code § 3439 *et seq.*

4.      Cal. Civ. Code § 3439.05 provides that a "transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation." Cal. Civ. Code § 3439.05. Pursuant to Cal. Civ. Code § 3439.07(a)(1), a creditor is entitled to avoid a transfer that is fraudulent as to that creditor. Cal. Civ. Code § 3439.07(a)(1).

5.      Thus, to avoid the Transfers pursuant to section 544(b)(1) of the Bankruptcy Code and sections 3439.05 and 3439.07(a)(1) of California's Uniform Fraudulent Transfer Act, the Trustee must prove, as to each Transfer, that: (a) Namco made the Transfer without receiving a reasonably equivalent value in exchange; (b) Namco was insolvent at the time of the Transfer, or became insolvent as a result of the Transfer; and (c) at least one creditor of Namco held an unsecured, allowable claim against Namco that arose before the Transfer was made.

6.      The Trustee bears the burden of proving each of these elements by a preponderance of the evidence. As discussed below, the Trustee has met this burden as to each of the Transfers.



-16-

Case 2:11-cv-05320-BRO-CW   Document 434   Filed 11/04/14   Page 18 of 25   Page ID
Case 2:11-cv-05320-GAF-CW   Document 428-10   Filed 10/30/14   Page 19 of 26   Page ID
#:20520

### A.     <u>Namco Did Not Receive Reasonably Equivalent Value in Exchange for the Transfers</u>

7.     In determining whether a debtor received "reasonably equivalent value" in exchange for a transfer, the analysis is "directed at what the debtor surrendered and what the debtor received irrespective of what any third party may have gained or lost." *In re United Energy Corp.*, 944 F.2d 589, 597 (9th Cir. 1991) (citations and internal quotations omitted). In this case, as outlined in the Findings of Fact, the evidence presented at the Trial established that Namco was not repaid for the Transfers, and did not receive any goods, services or anything else of value in exchange for the Transfers.

8.     Although Namco recorded the Transfers as receivables due from the Defendants, an account receivable cannot constitute reasonably equivalent value if the account receivable is doubtful or uncollectible. *See, e.g., In re USA Commercial Mortg. Co.*, 439 F. App'x 670, 671-72 (9th Cir. 2011) (debtor did not receive reasonably equivalent value for prepetition transfer, even though transfer was identified in debtor's general ledger as account receivable, because repayment promise was undocumented, party responsible for receivable was not recorded and its ability to pay receivable "would have been in doubt"). Here, the Transfers were undocumented, with no collateral, written terms or even verbal repayment promises, and were made at times when each of the Defendants owed in excess of $50 million to Namco. Under these circumstances, the identification of the Transfers as receivables in Namco's accounting records did not constitute reasonably equivalent value to Namco.

9.     Therefore, the Trustee has met his burden of establishing by a preponderance of the evidence that Namco did not receive reasonably equivalent value in exchange for any of the Transfers.



Case 2:11-cv-05320-BRO-CW   Document 434   Filed 11/04/14   Page 19 of 25   Page ID
Case 2:11-cv-05320-GAF-CW   Document 429-1   Filed 10/30/14   Page 20 of 26   Page ID
#:20521

**B.   Namco Was Insolvent at the Time of Each of the Transfers**

10.    Section 101(32)(A) of the Bankruptcy Code defines the insolvency of a corporation, such as Namco, as a "financial condition such that the sum of such entity's debts is greater than all of such entity's property, at a fair valuation." 11 U.S.C. § 101(32)(A).   Similarly, section 3439.02(a) of California's Uniform Fraudulent Transfer Act provides that a "debtor is insolvent if, at fair valuations, the sum of the debtor's debts is greater than all of the debtor's assets." Cal. Civ. Code § 3439.02(a).

11.    As set forth in the Findings of Fact, the Trustee has established that:  (a) each of the Transfers was made on or after April 17, 2006; (b) as of March 31, 2006, the amount of Namco's liabilities exceeded the fair value of Namco's assets by at least approximately $4.1 million to $5.2 million; and (c) Namco's financial condition and access to capital did not improve or change subsequent to March 31, 2006.  Therefore, the Trustee has established by a preponderance of the evidence that Namco was insolvent at the time of each of the Transfers.

**C.   At Least One Creditor of Namco Was Entitled to Avoid Each of the Transfers Under California Law**

12.    Under 11 U.S.C. § 544(b)(1) and Cal. Civ. Code § 3439.05, the Trustee must identify at least one creditor of Namco with an allowable, unsecured claim against Namco that arose before each Transfer was made.  *See* 11 U.S.C. § 544(b)(1) (trustee "may avoid any transfer of an interest of the debtor in property … that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502(e) of this title"); Cal. Civ. Code § 3439.05 (a "transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred …").



Case 2:11-cv-05320-BRO-CW Document 434 Filed 11/04/14 Page 20 of 25 Page ID
Case 2:11-cv-05320-GAF-CW Document 409-2 Filed 10/30/14 Page 21 of 26 Page ID
#:20522

13. As set forth in the Findings of Fact, the Defendants stipulated at the Trial that at least one creditor held an unsecured claim against Namco that existed as of the insolvency date (March 31, 2006), remained in existence as of the Petition Date (December 22, 2008), and has been allowed in the Namco Case. Each Transfer at issue in this Action was made between April 17, 2006 and January 22, 2008. Therefore, at least one creditor of Namco held an allowable, unsecured claim against Namco that arose before each Transfer was made.

14. In sum, the Trustee has established by a preponderance of the evidence that the Trustee is entitled to avoid each of the Transfers pursuant to 11 U.S.C. § 544(b)(1), Cal. Civ. Code § 3439.05 and Cal. Civ. Code § 3439.07.

## III.   The Trustee is Entitled to Recover the Transfers from the Defendants

15. The Trustee may recover the value of an avoided transfer from the "initial transferee" of the transfer or from the "entity for whose benefit" the transfer was made. 11 U.S.C. § 550(a)(1).

16. With certain exceptions not relevant to this Action, if a debtor's funds are paid by check directly to an individual, that individual is the "initial transferee" of the transfer. If, on the other hand, a debtor's funds are paid by check directly to an individual's creditor, the individual is the "entity for whose benefit" the transfer was made. *See, e.g., In re Video Depot, Ltd.*, 186 B.R. 126, 132 (Bankr. W.D. Wash. 1995) *subsequently aff'd,* 127 F.3d 1195 (9th Cir. 1997) (where an individual directly receives the debtor's funds, the individual is the "initial transferee" of the transfer, and where the debtor's funds are paid directly to an individual's creditor, the individual is the "entity for whose benefit" the transfer was made).

17. As set forth in the Findings of Fact, the Defendants stipulated on the record that Namco made the Daniel Transfers to Daniel Namvar or to taxing authorities on behalf of Daniel Namvar. Thus, as to each of the Daniel Transfers, Daniel Namvar was either the "initial transferee" or the "entity for whose benefit" the



-19-

Case 2:11-cv-05320-BRO-CW  Document 434  Filed 11/04/14  Page 21 of 25  Page ID
Case 2:11-cv-05320-GAF-CW  Document 409-43  Filed 10/30/14  Page 22 of 26  Page ID
#:20523

1   Daniel Transfers were made. Accordingly, the Trustee is entitled to recover each of

2   the Daniel Transfers, in the total principal amount of $1,205,000, from Daniel Namvar

3   pursuant to 11 U.S.C. § 550(a)(1).

4       18.   The Defendants also stipulated on the record that Namco made the

5   Benjamin Transfers to Benjamin Namvar or to taxing authorities on behalf of

6   Benjamin Namvar. Thus, as to each of the Benjamin Transfers, Benjamin Namvar

7   was either the "initial transferee" or the "entity for whose benefit" the Benjamin

8   Transfers were made. Accordingly, the Trustee is entitled to recover each of the

9   Benjamin Transfers, in the total principal amount of $1,660,000, from Benjamin

10  Namvar pursuant to 11 U.S.C. § 550(a)(1).

11      19.   As to Malka Namvar, the Defendants stipulated on the record that Namco

12  made the Malka Transfers to Malka Namvar or to taxing authorities on behalf of

13  Malka Namvar. Thus, as to each of the Malka Transfers, Malka Namvar was either

14  the "initial transferee" or the "entity for whose benefit" the Malka Transfers were

15  made. Accordingly, the Trustee is entitled to recover each of the Malka Transfers, in

16  the total principal amount of $1,210,000, from Malka Namvar pursuant to 11 U.S.C. §

17  550(a)(1).

18      20.   Finally, as to Shirah Namvar, the Defendants stipulated on the record that

19  Namco made the Shirah Transfers to Shirah Namvar or to taxing authorities on behalf

20  of Shirah Namvar. Thus, as to each of the Shirah Transfers, Shirah Namvar was either

21  the "initial transferee" or the "entity for whose benefit" the Shirah Transfers were

22  made. Accordingly, the Trustee is entitled to recover each of the Shirah Transfers, in

23  the total principal amount of $1,212,000, from Shirah Namvar pursuant to 11 U.S.C. §

24  550(a)(1).

25

26

27

28



Case 2:11-cv-05320-BRO-CW  Document 434  Filed 11/04/14  Page 22 of 25  Page ID
Case 2:11-cv-05320-GAF-CW  Document 428-44  Filed 10/30/14  Page 23 of 26  Page ID
#:20524

**IV.  The Trustee is Entitled to Prejudgment Interest at 7% Per Annum from the Date of Each Transfer**

21.   An award of prejudgment interest in a fraudulent transfer action brought under 11 U.S.C. § 544(b)(1) is determined by reference to applicable state law. *See In re Agric. Research & Tech. Group, Inc.*, 916 F.2d 528, 541 (9th Cir. 1990) (state law "regarding prejudgment interest is applicable via 11 U.S.C. § 544(b)).

22.   Under California law, prejudgment interest on the Trustee's fraudulent transfer claims is a matter of discretion for this Court. *See* Cal. Civ. Code § 3288 (in "an action for the breach of an obligation not arising from contract, and in every case of oppression, fraud, or malice, interest may be given, in the discretion of the jury"); *see also In re Slatkin*, 243 F. App'x 255, 259 (9th Cir. 2007) (prejudgment interest in action under 11 U.S.C. § 544(b) is "within the sound discretion of the trial court").

23.   As outlined in the Findings of Fact, prejudgment interest is appropriate in this Action because an "award of prejudgment interest to the trustee would unquestionably serve to compensate [Namco's] estate for [Defendants'] use of those funds that were wrongfully withheld" from Namco and its creditors. *In re Acequia, Inc.*, 34 F.3d 800, 818-819 (9th Cir. 1994) (citations and quotations omitted); *see also In re Richmond Produce Co., Inc.*, 195 B.R. 455, 465 (N.D. Cal. 1996) (award of prejudgment interest is appropriate to compensate debtor's estate for the loss of use of fraudulently transferred funds); *In re Fehrs*, 391 B.R. 53, 76-77 (Bankr. D. Idaho 2008) (prejudgment interest on fraudulent transfer claims was appropriate "given that the function of the judgment is to restore the estate to the financial condition that it would have enjoyed but for the improper transfer" and, absent interest from the date of the fraudulent transfer to the date of judgment, "the estate is not made whole").

24.   The calculation of the amount of prejudgment interest to be awarded on the Trustee's claims also is governed by California law. *See In re Agric. Research & Tech. Group, Inc.*, 916 F.2d at 541 (calculating prejudgment interest by reference to applicable state law). Under California law, if California statutes do not establish a



Case 2:11-cv-05320-BRO-CW   Document 434   Filed 11/04/14   Page 23 of 25   Page ID
Case 2:11-cv-05320-GAF-CW   Document 409-45   Filed 10/30/14   Page 24 of 26   Page ID
#:20525

1   rate of prejudgment interest for a particular type of claim, the interest rate defaults to

2   7% per annum.  *See* Cal. Const. art. XV, § 1 ("In the absence of the setting of such

3   rate by the Legislature, the rate of interest on any judgment rendered in any court of

4   the state shall be 7 percent per annum.").  California statutes do not set forth a rate of

5   prejudgment interest for fraud claims.  *See Michelson v. Hamada*, 29 Cal. App. 4th

6   1566, 1585 (1994) (there "is no legislative act specifying the rate of prejudgment

7   interest for a fraud claim, and therefore the constitutional rate of 7 percent applies").

8   Therefore, California's default rate of 7% per annum applies to the award of

9   prejudgment interest in this Action.  *See In re Slatkin*, 243 F. App'x at 259-260

10  (bankruptcy court reasonably awarded prejudgment interest on fraudulent transfer

11  claims at the California rate of 7% per annum).

12      25.    California law also provides for prejudgment interest to run as of the

13  date that a plaintiff's right to recovery is a "certain" amount or is "capable of being

14  made certain by calculation."  *See* Cal. Civ. Code § 3287(a); *see also Evanston Ins.

15  Co. v OEA, Inc.*, 566 F.3d 915, 921-922 (9th Cir. 2009) (finding that "vesting"

16  requirement of Cal. Civ. Code § 3287(a) is satisfied when amount of damages is

17  certain at the time funds were expended).  The Ninth Circuit has approved of

18  calculating prejudgment interest on fraudulent transfer recoveries under California's

19  Uniform Fraudulent Transfer Act "from the date each transfer was made."  *Donell v.

20  Kowell*, 533 F.3d 762, 772 (9th Cir. 2008).

21      26.    For the reasons set forth in the Findings of Fact, prejudgment interest is

22  awarded to the Trustee, as to each Transfer, at the rate of 7% per annum from the

23  date of each Transfer to the date of entry of judgment in this Action.

24

25  **V.    The Trustee is Entitled to Post-Judgment Interest at the Prevailing Rate**

26      27.    Pursuant to 28 U.S.C. § 1961(a), post-judgment interest "shall be allowed

27  on any money judgment in a civil case recovered in a district court."  28 U.S.C.

28  1961(a); *see also In re Keefe*, 401 B.R. 520, 526 (B.A.P. 1st Cir. 2009) (awarding



Case 2:11-cv-05320-BRO-CW   Document 434   Filed 11/04/14   Page 24 of 25   Page ID
Case 2:11-cv-05320-GAF-CW   Document 428-16   Filed 10/30/14   Page 25 of 26   Page ID
#:20526

1    post-judgment interest at federal statutory rate on trustee's state law fraudulent

2    transfer claims).  Post-judgment interest "shall be calculated from the date of the entry

3    of the judgment, at a rate equal to the weekly average 1-year constant maturity

4    Treasury yield, as published by the Board of Governors of the Federal Reserve

5    System, for the calendar week preceding [...] the date of the judgment." 28 U.S.C. §

6    1961(a).

7          28.    Accordingly, the Trustee is entitled to recover post-judgment interest

8    from the date of entry of judgment in this Action to the date of payment at the

9    prevailing legal rate.

10

11   **VI.**    **Conclusion**

12         29.    For the reasons set forth above and stated on the record, it is hereby

13   ORDERED that the Daniel Transfers, the Benjamin Transfers, the Malka Transfers

14   and the Shirah Transfers are avoided pursuant to 11 U.S.C. § 544(b)(1) and Cal. Civ.

15   Code §§ 3439.05, 3439.07(a)(1); and it is further ORDERED that judgment shall be

16   entered in favor of the Trustee on his Eleventh Claim for Relief as follows:

17         a.    Against Daniel Namvar, in the amount of $1,205,000.00 in principal

18              plus $654,805.00 in prejudgment interest, for a total of

19              $1,859,805.00, plus post-judgment interest at the federal rate from

20              the date of judgment to the date the judgment is paid in full;

21         b.    Against Benjamin Namvar, in the amount of $1,660,000.00 in

22              principal plus $902,212.00 in prejudgment interest, for a total of

23              $2,562,212.00, plus post-judgment interest at the federal rate from

24              the date of judgment to the date the judgment is paid in full;

25         c.    Against Malka Namvar, in the amount of $1,210,000.00 in principal

26              plus $657,442.00 in prejudgment interest, for a total of

27              $1,867,442.00, plus post-judgment interest at the federal rate from

28              the date of judgment to the date the judgment is paid in full; and

-23-

1            d.    Against Shirah Namvar, in the amount of $1,212,000.00 in principal

2    plus $658,367.00 in prejudgment interest for a total of

3    $1,870,367.00, plus post-judgment interest at the federal rate from

4    the date of judgment to the date the judgment is paid in full.

5        30.    Any Conclusion of Law set forth herein that may qualify as a Finding of

6    Fact shall be equally considered as such.

7

8    Dated: _____11/3_____, 2014

9

10                             The Hon. Gary A. Feess

United States District Court Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-24-

